**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civ. Action No. 1:19-cv-02184 |
| FACEBOOK INC., | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE**
**ELECTRONIC PRIVACY INFORMATION CENTER'S MOTION**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

I.      The history of EPIC's 2009 Complaint and the FTC's 2012 Consent Order against
        Facebook. ..................................................................................................................1

II.     The subsequent history of EPIC's complaints filed with the FTC against Facebook
        after the 2012 Consent Order. ...................................................................................5

III.    The FTC's proposed Consent Decree with Facebook. ..............................................7

ARGUMENT .........................................................................................................................9

I.      The Court should permit EPIC to intervene under Rule 24. .....................................9

        A.      EPIC has a right to intervene pursuant to FRCP 24(a). ................................9

        B.      Alternatively, EPIC should be permitted to intervene pursuant to Rule 24(b)......16

II.     Alternatively, the Court should grant EPIC's motion for leave to file an *amicus
        curiae* brief. ............................................................................................................18

III.    The Court should set a briefing schedule so that all interested parties can participate
        in the review of the proposed FTC consent decree. ................................................19

IV.     The Court should schedule a hearing to review the fairness and adequacy of the
        proposed FTC Consent Decree. ...............................................................................21

CONCLUSION ....................................................................................................................22

## INTRODUCTION

This matter concerns a proposed settlement between the Federal Trade Commission ("FTC" or "Commission") and Facebook regarding violations of a 2012 Consent Order that imposed obligations on both Facebook and the Commission to protect the privacy of Facebook users. But the proposed settlement fails to safeguard the interests of Facebook users.

The proposed Consent Decree, now before this Court, also directly implicates the rights of EPIC and others who have helped establish the underlying legal authority that is the basis for this settlement, who have routinely filed privacy complaints with the FTC alleging violations of the Consent Order, who have complaints currently pending before the Commission, and who have worked for more than a decade to protect the interests of Facebook users. EPIC has a direct interest in the Consent Decree under review and therefore seeks intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, either permissive intervention or amicus curiae status. Given the sweeping impact of this Consent Decree on EPIC and other similarly situated groups, the Court should adopt a briefing schedule for all interested parties and conduct a careful review of the fairness and adequacy of the proposed consent decree.

## BACKGROUND

**I.      The history of EPIC's 2009 Complaint and the FTC's 2012 Consent Order against Facebook.**

This case follows a Complaint and Consent Order that the FTC filed against Facebook in 2012 based on privacy violations that were first identified by EPIC and a coalition of privacy and civil liberties organization in a Complaint filed in December 2009, supplemental material by EPIC in February 2010, and an additional Complaint filed by EPIC and a coalition of privacy and civil liberties organizations in May 2010. Complaint, Request for Investigation, Injunction, and Other Relief of EPIC et al., *In re Facebook, Inc.* (Dec. 17, 2009) [hereinafter EPIC 2009

FTC Facebook Complaint] (Ex. 1);[1] Supplemental Materials Submitted by EPIC et al. in Support

of Pending Complaint and Request for Injunction, Request for Investigation and for Other Relief,

*In re Facebook, Inc.* (Jan. 14, 2010) [hereinafter EPIC 2010 Supplement] (Ex. 2);[2] Complaint,

Request for Investigation, Injunction, and Other Relief, *In re Facebook, Inc.* (May 5, 2010)

[hereinafter EPIC 2010 FTC Facebook Complaint] (Ex. 3).[3] EPIC's 2009 FTC Facebook

Complaint was filed along with the American Library Association, the Center for Digital

Democracy, the Consumer Federation of America, FoolProof Financial Education, Patient

Privacy Rights, Privacy Activism, the Privacy Rights Now Coalition, the Privacy Rights

Clearinghouse, and the U.S. Bill of Rights Foundation; the same groups also joined EPIC's

Complaint to the FTC in 2010, along with others. *Id.*

    In the 2009 Complaint, EPIC and others alleged that Facebook had changed the privacy

settings of users in a way that made personal information, such as names of friends and private

photos, publicly available and for Facebook's commercial benefit. EPIC 2009 FTC Facebook

Complaint, *supra*. EPIC further alleged that Facebook made personal information available to

application developers without users' knowledge or consent; that Facebook Connect decreased

users' control over disclosure of personal information; that Facebook's iPhone syncing secretly

disclosed personal information; that Facebook's social plugins revealed user information without

user consent; and that Facebook allowed developers to retain user data indefinitely. *Id.*

    Following the submission of its complaint, EPIC received a response from the FTC,

stating that "[y]our most recent complaint raises issues of particular interest for us at this time."

Letter from Director, FTC Bureau of Consumer Protection, to Marc Rotenberg, Director, EPIC

---

[1] https://epic.org/privacy/inrefacebook/EPIC-FacebookComplaint.pdf.
[2] https://epic.org/privacy/inrefacebook/EPIC_Facebook_Supp.pdf.
[3] https://epic.org/privacy/facebook/EPIC_FTC_FB_Complaint.pdf.

(Jan. 14, 2010) (Ex. 4).[4] On January 14, 2010, EPIC and others supplemented the original complaint and described Facebook's practices for access to users' passwords, representations regarding Facebook Connect, and representations regarding iPhone syncing were unfair and deceptive. EPIC 2010 Supplement, *supra*.

EPIC and other groups filed a second complaint with the Federal Trade Commission over Facebook's disclosure of users' previously-restricted personal information to Facebook's business partners and the general public. EPIC 2010 FTC Facebook Complaint, *supra*. The information disclosed by Facebook included employment history, education, location, hometown, film preferences, music preferences, and reading preferences. *Id.*

On November 29, 2011, the FTC announced a proposed settlement agreement with Facebook over the company's unfair and deceptive business practices. *In re Facebook, Inc.,* FTC File No. 092 3184 (2011) (Agreement Containing Consent Order) (Ex. 5).[5] The FTC identified eight specific counts, including changes to users' privacy settings, application access to user data, advertiser access to use data, photo and video deletion, and violations of the Safe Harbor Framework. *Id.* According to the FTC, "under the proposed settlement, Facebook is:

- barred from making misrepresentations about the privacy or security of consumers' personal information;

- required to obtain consumers' affirmative express consent before enacting changes that override their privacy preferences;

- required to prevent anyone from accessing a user's material more than 30 days after the user has deleted his or her account;

---

[4] https://epic.org/privacy/inrefacebook/Facebook_Vladeck_Letter.pdf.
[5] http://www.ftc.gov/os/caselist/0923184/111129facebookagree.pdf.

- required to establish and maintain a comprehensive privacy program designed to address privacy risks associated with the development and management of new and existing products and services, and to protect the privacy and confidentiality of consumers' information; and

- required, within 180 days, and every two years after that for the next 20 years, to obtain independent, third-party audits certifying that it has a privacy program in place that meets or exceeds the requirements of the FTC order, and to ensure that the privacy of consumers' information is protected."

Press Release, Fed. Trade Comm'n, *Facebook Settles FTC Charges that It Deceived Consumers by Failing to Keep Privacy Promises* (Nov. 29, 2011) [hereinafter FTC Nov. 29, 2011 Press Release].[6]

The Chairman of the Federal Trade Commission at the time, John Liebowitz, stated "Facebook is obligated to keep the promises about privacy that it makes to its hundreds of millions of users. Facebook's innovation does not have to come at the expense of consumer privacy. The FTC action will ensure it will not." *Id.*

The Commission made clear EPIC's role in the establishment of the Consent Order, which is the legal basis of the proposed Consent Decree now before this Court. In announcing the proposed Consent Order, the Commission stated that "Facebook's privacy practices were the subject of complaints filed with the FTC by the Electronic Privacy Information Center and a coalition of consumer groups." *Id.*

---

[6] http://www.ftc.gov/opa/2011/11/privacysettlement.shtm.

**II.     The subsequent history of EPIC's complaints filed with the FTC against Facebook after the 2012 Consent Order.**

Since 2012, EPIC has filed five detailed complaints with the Commission regarding Facebook's business practices, alleging violations of the Consent Order. All of these complaints, as well as many similar complaints brought to the Commission by consumer and privacy organizations representing the interests of Facebook users, would be extinguished by the proposed consent decree that the FTC and Facebook have submitted.

In 2014, EPIC submitted a complaint to the FTC concerning Facebook's manipulation of users' News Feeds for psychological research. Complaint, *In re Facebook, Inc*. (July 3, 2014) [hereinafter EPIC 2014 Facebook Complaint] (Ex. 6).[7] EPIC argued that Facebook had "altered the News Feeds of Facebook users to elicit positive and negative emotional responses." *Id.* at 1. EPIC further alleged that the researchers "failed to follow standard ethical protocols for human subject research" and that Facebook violated Section 5 of the FTC Act when it did not get users' permission to conduct this study or notify users that their data would be disclosed to researchers. *Id.* These allegations have not been addressed by the FTC.

Also in 2014, Facebook acquired the private messaging application WhatsApp and EPIC, along with the Center for Digital Democracy, filed a complaint urging the Commission to block the acquisition. Complaint, *In re WhatsApp, Inc*. (Mar. 6, 2014) [hereinafter EPIC 2014 WhatsApp Complaint] (Ex. 7).[8] In 2016, after the merger had been approved, WhatsApp announced its plans to transfer users' personal information to Facebook, including their phone numbers, for Facebook to use for targeted advertising. *Looking Ahead for WhatsApp*, WhatsApp Blog (Aug. 25, 2016).[9] EPIC and CDD filed a complaint with the FTC opposing the transfer of

---

[7] https://epic.org/privacy/internet/ftc/facebook/psycho/Facebook-Study-Complaint.pdf.
[8] https://epic.org/privacy/ftc/whatsapp/WhatsApp-Complaint.pdf.
[9]  https://blog.whatsapp.com/10000627/Looking-ahead-for-WhatsApp.

WhatsApp use data to Facebook and arguing that the proposed policy changes violated Section 5 of the FTC Act. Complaint, *In re WhatsApp, Inc*. (Aug 29, 2016) [hereinafter EPIC 2016 WhatsApp Complaint] (Ex. 8).[10] These allegations have not been addressed by the FTC.

In 2018, EPIC and a coalition of consumer privacy organizations filed a complaint with the Federal Trade Commission charging that Facebook's facial recognition practice lacked privacy safeguards and violated the 2011 Consent Order with the Commission. Complaint, *In re Facebook, Inc. and Facial Recognition* (Apr. 6, 2018) [hereinafter EPIC 2018 Facebook Complaint] (Ex. 9).[11] As EPIC explained in its complaint, in early 2018, Facebook began routinely scanning photos, posted by users, for biometric facial matches without the consent of either the image subject or the person who uploaded the photo. *Id.* EPIC and consumer groups requested that "the Commission investigate Facebook, enjoin the deployment of additional facial recognition techniques as a violation of the 2011 Consent Order, and require Facebook to modify its biometric data practices to protect the privacy of Facebook users and non-users." *Id.* at 38. These allegations have not been addressed.

Perhaps most significantly in 2018, EPIC along with sixteen consumer organizations wrote the FTC a letter urging the Commission to investigate the unprecedented disclosure of personal data uncovered in the Facebook Cambridge Analytica scandal. The organizations wrote: "On behalf of leading consumer privacy organizations in the United States, we urge you to immediately investigate whether Facebook's alleged disclosure of the personal data of 50 million Americans to the data mining firm Cambridge Analytica violated the FTC Consent Order with Facebook we helped obtain."  Letter from EPIC et al. to Maureen Ohlhausen, Acting Chairman,

---

[10] https://epic.org/privacy/ftc/whatsapp/EPIC-CDD-FTC-WhatsApp-Complaint-2016.pdf.
[11] https://epic.org/privacy/facebook/FTC-Facebook-FR-Complaint-04062018.pdf.

FTC, and Terrell McSweeney, Commissioner, FTC (Mar. 20, 2018) (Ex. 10).[12] One week later, the FTC announced it would reopen the investigation of Facebook. Press Release, Fed. Trade Comm'n, *Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns About Facebook Privacy Practices* (Mar. 26, 2018).[13]

These actions and complaints pursued by EPIC and others on behalf of Facebook users are directly relevant to the Court's consideration of the FTC's proposed Consent Decree with Facebook.

But even the actions of EPIC and the associated organizations do not describe the full range of public interest in this matter. More than 26,000 consumer complaints about Facebook are currently pending at the Commission, and the number of complaints against the company has been doubling annually. FOIA Request from EPIC to FTC (Mar. 13, 2019) [hereinafter EPIC 2019 FOIA Request].[14] In 2018 alone, the FTC received 8,391 consumer complaints about Facebook, nearly twice the number received in 2016 (4,612), and more than four times the number received in 2014 (1,860). FTC Response to EPIC FOIA Request (Apr. 2, 2019).[15]

## III.   The FTC's proposed Consent Decree with Facebook.

The FTC's proposed Consent Decree with Facebook is both the most significant and most controversial decree in the history of the Commission. The proposed Consent Decree concerns the business practices of the world's largest social media company, the privacy interests

---

[12] https://epic.org/privacy/facebook/EPIC-et-al-ltr-FTC-Cambridge-FB-03-20-18.pdf. The organizations that signed the March 20, 2018 to the Commission were: the Electronic Privacy Information Center, Access Now, Campaign for Commercial Free Childhood, Center for Digital Democracy, Constitutional Alliance, Consumer Action, Consumer Federation of America, Consumer Watchdog, Cyber Privacy Project, Defending Rights & Dissent, Government Accountability Project, Patient Privacy Rights, Privacy Rights  Clearinghouse, Privacy Times, Public Citizen, U.S. PIRG, and the World Privacy Forum.
[13] https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumer-protection.
[14] https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190313-Request.pdf.
[15] https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190402-Complaint-Number-Breakdown.pdf.

of hundreds of millions of Americans, and more than 2.3 billion people around the globe. The decree also directly impacts the interests of EPIC and other groups, who have worked diligently to safeguard the interests of Facebook uses and who have submitted comprehensive complaints to the FTC concerning violations of the 2012 Consent Order.

The proposed Consent Decree, now before this Court, states that "[t]he parties have consented to entry of this Stipulated Order to resolve any and all claims that Defendant, its officers, and directors, prior to June 12, 2019, violated the Commission's Decision and Order in *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012). Furthermore, this Consent Decree resolves all consumer-protection claims known by the FTC prior to June 12, 2019, that Defendant, its officers, and directors violated Section 5 of the FTC Act." Stipulated Order, ECF No. 2-1. If adopted, this Consent Decree would preclude EPIC and other advocacy groups from pursuing the complaints previously filed at the FTC.

Commissioner Rohit Chopra and Commissioner Rebecca Slaughter both dissented from the FTC's approval of the Consent Decree, highlighting that the settlement immunizes the firm for undisclosed violations. Commissioner Chopra said: "This shield represents a major win for Facebook, but leaves the public in the dark as to how the company violated the law, and what violations if any are going unaddressed." Dissenting Statement of Commissioner Rohit Chopra, *In re Facebook, Inc.*, Commission File No. 1823109 at 17 (July 24, 2019).[16] Commissioner Slaughter said: "I am concerned that a release of this scope is unjustified by our investigation and unsupported by either precedent or sound public policy. To the contrary, in every recent major federal settlement, if there was a liability release, it was cabined to the offenses described in the

---

[16] https://www.ftc.gov/system/files/documents/public_statements/1536911/chopra_dissenting_statement_on_facebook_7-24-19.pdf.

complaint." Dissenting Statement of Commissioner Rebecca Slaughter, *In re Facebook, Inc.*, Commission File No. 1823109 at 14 (July 24, 2019).[17]

Members of Congress have been outspoken in their opposition to the settlement. Senator Markey (D-MA) said: "With its settlement with Facebook, the FTC not only fell short, it fell on its face. Facebook is getting away with some of the most egregious corporate bad behavior in the age of the internet." Ed Markey, *Senator Markey Blasts FTC Facebook Privacy Settlement* (July 24, 2019).[18] Senator Hawley (D-MO) said: "This is very disappointing. This settlement does nothing to change Facebook's creepy surveillance of its own users & the misuse of user data. It does nothing to hold executives accountable. It utterly fails to penalize Facebook in any effective way." Josh Hawley (@HawleyMO), Twitter (July 24, 2019, 10:36 AM).[19] *See also,* Editorial Board*, A $5 Billion Fine for Facebook Won't Fix Privacy: The Federal Trade Commission's Record-breaking Levy Has Barely Dented the Company's Stock Price*, N.Y. Times (July 25, 2019).[20]

## ARGUMENT

**I.      The Court should permit EPIC to intervene under Rule 24.**

**A.      EPIC has a right to intervene pursuant to FRCP 24(a).**

Rule 24(a)(2) states that a court "must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

---

[17] https://www.ftc.gov/system/files/documents/public_statements/1536918/182_3109_slaughter_statement_on_facebook_7-24-19.pdf.
[18] https://www.markey.senate.gov/news/press-releases/senator-markey-blasts-ftc-facebook-privacy-settlement.
[19] https://twitter.com/HawleyMO/status/1154037744290557952.
[20] https://www.nytimes.com/2019/07/25/opinion/facebook-fine-5-billion.html.

protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P.

24(a)(2). Courts have interpreted Rule 24(a) to require the following:

> (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.

*Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citing *SEC v. Prudential Sec. Inc.*, 136

F.3d 153, 156 (D.C. Cir. 1998)). Additionally, an intervenor must have Article III standing.

*Town of Chester, N.Y. v. Laroe Est., Inc*, 137 S. Ct. 1645, 1651 (2017). EPIC satisfies all the

necessary elements for intervention.

### 1.    EPIC's motion to intervene is timely.

A third party must "move for intervention once it becomes clear that failure to intervene

would jeopardize her interest in the action." *In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017).

Instead, when considering timeliness, "it is important to consider the purpose for which

intervention is granted." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1294 (D.C. Cir.

1980).

In *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), the D.C. Circuit

determined that filing a motion to intervene "*less than two months* after the plaintiffs filed their

complaint" was timely. *Id.* at 735 (emphasis added); *see also Sault Ste. Marie Tribe of Chippewa

Indians v. Bernhardt*, 331 F.R.D. 5, 12 (D.D.C. 2019) (determining that a motion filed within

sixteen days was sufficiently timely); *Connecticut v. Dep't of the Interior*, 344 F. Supp. 3d 279,

304 (D.D.C. 2018) (explaining that intervention was timely because it was filed within a month);

*Eagle Pharmaceuticals, Inc. v. Price*, 322 F.R.D. 48, 49–50 (D.D.C. 2017) (granting intervention

where motion to intervene was filed within one month).

Here EPIC is filing its motion to intervene *within days* after the FTC revealed its proposed Consent Decree against Facebook. EPIC's motion is undoubtedly timely.

### 2.     EPIC has a legally protected interest in the action.

EPIC has brought multiple complaints to the FTC against Facebook on behalf of consumers and EPIC members. EPIC thus has a legally protected interest in this action. Courts in this Circuit have explained that the legally protected interest standard "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *United States v. Morten*, 730 F. Supp. 2d 11, 16 (D.D.C. 2011) (international quotation marks omitted). Courts have held that "the resolution of [an individual's] claim" is a legally protected interest. *In re $6,871,042.36*, 217 F. Supp. 3d. 84, 94 (D.D.C. 2016). The right to bring a "complaint or request for Commission action" is codified in 16 CFR § 2.2(a). EPIC's complaints with the FTC on behalf of its members and Facebook users put EPIC, and other similar organizations, in a unique position with respect to the proposed Consent Decree. If the proposed settlement is adopted, EPIC's prior complaints at the FTC will be dismissed. Thus, EPIC has a clear interest in the outcome of this case.

### 3.     The proposed Consent Decree between the FTC and Facebook threatens to impair EPIC's legally protected interest.

If the proposed Consent Decree is approved, multiple complaints brought by EPIC will be extinguished. Thus, EPIC has a legally protected interest that is threatened by the proposed decree. This Court has acknowledged that this factor is "not a rigid one." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010). To determine if an intervener has a legally protected interest that may be threatened, courts in this Circuit "look to the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[] available." *Nat. Resources Def. Council v. Costle*, 561 F.2d 904, 907 (D.C. Cir. 1977). "An

action has the practical consequence of impairing prospective intervenors' interests when the unsuccessful 'disposition of the action would result in a substantial change in the status quo with respect to these interests,' such that 'the task of reestablishing the status quo . . . will be difficult and burdensome." *Waterkeeper Alliance, Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018) (citing *District of Columbia v. Potomac Electric Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011)).

EPIC was the first to identify Facebook's privacy violations and bring them to the attention of the FTC. In 2009, EPIC and other consumer organizations, filed a complaint with the FTC alleging that Facebook's privacy practices were unfair and deceptive. EPIC 2009 FTC Facebook Complaint, *supra*. As the organization that initiated the complaint against Facebook that led to the underlying investigation, the FTC credited EPIC with providing the factual basis for the Commission's Complaint and Consent Order: "Facebook's privacy practices were the subject of complaints filed with the FTC by the Electronic Privacy Information Center and a coalition of consumer groups." FTC Nov. 29, 2011 Press Release, *supra*. Since then, EPIC has filed numerous additional complaints to the FTC regarding Facebook's privacy settings and policies. *See* EPIC 2018 Facebook Complaint, *supra*; EPIC 2016 WhatsApp Complaint, *supra*; EPIC 2014 Facebook Complaint, *supra*; Supplemental Complaint, *In the Matter of WhatsApp, Inc.* (Mar. 21, 2014);[21] EPIC 2014 WhatsApp Complaint, *supra*; EPIC 2010 FTC Facebook Complaint, *supra*; EPIC 2010 Facebook Supplemental Complaint, *supra*.

The "practical consequence" of denying EPIC's motion to intervene would be to extinguish all of EPIC's pending FTC complaints against Facebook—all without EPIC having a voice in the decision. The dismissal of all of EPIC's complaints would cause "a substantial change in the status quo," which would "be difficult and burdensome" to overcome because the

---

[21] https://epic.org/privacy/internet/ftc/whatsapp/WhatsApp-Nest-Supp.pdf.

proposed Consent Decree wipes Facebook's slate clean without Facebook even having to admit guilt for its privacy violations.

        **4.**        **Neither the FTC nor Facebook adequately represent EPIC's interest.**

A third party may only intervene if its interests are not "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). Courts in this Circuit have held that this adequate representation standard is "low," *Fund for Animals, Inc.*, 322 F.3d at 735, 736 n.7, "minimal," *In re Brewer*, 863 F.3d at 873, and "not onerous," *Am. Tel. & Tel. Co.*, 642 F.2d at 1293. *See also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1973). A party who moves to intervene "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Commission*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citations omitted). Additionally, courts in this Circuit "look skeptically on government entities serving as adequate advocates for private parties," *id.*, and have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals*, 322 F.3d at 736. It is clear that Facebook does not adequately represent EPIC's interest. Thus, only the question of whether the FTC adequately represents EPIC's interests will be discussed.

In *Crossroads*, the D.C. Circuit held that Crossroads could intervene in a suit challenging a Federal Election Commission's ("FEC") ruling that benefited them. 788 F.3d at 314. The D.C. Circuit reversed the lower court's finding that Crossroads' interests were aligned with the FEC on the basis that the FEC and Crossroads disagreed "about the extent of the [Federal Election] Commission's regulatory power, the scope of the administrative record, and post-judgement strategy." *Id.* at 321; *see also Costle*, 561 F.2d at 913 (allowing a chemical company to intervene despite the fact that another chemical company was party in the lawsuit because one company

"may not have interests that bear upon all of the industrial categories of concern"). Similarly, here the FTC does not adequately represent EPIC's interests. Though those who object to EPIC's motion may attempt to argue that EPIC and the FTC have the same general goal—to protect consumers and their privacy—*see* EPIC, About EPIC (2019);[22] FTC, About the FTC (2019).[23] EPIC has an established history of disagreeing with the FTC's regulatory actions and policies.

In 2011, EPIC submitted public comments urging the FTC to strengthen its proposed 2011 Consent Order. EPIC, Comments In re Facebook, Inc., FTC File No. 092 3184 (2011).[24] In 2012, the FTC ignored EPIC's comments and adopted a Final Order against Facebook with no modifications, which EPIC criticized. Frustrated by the FTC's failure to enforce the 2011 Consent Order, EPIC filed a Freedom of Information Act request, which eventually became a lawsuit, against the FTC. *See* FOIA Request from EPIC to FTC (Mar. 20, 2018);[25] Complaint for Injunctive Relief, *EPIC v. FTC*, No. 18-932 (D.D.C. filed Apr. 20, 2018).[26] Though the FTC eventually announced that it would reopen their investigation of Facebook's business practices in 2018, EPIC continues to criticize the FTC for not having done and doing enough. *See* #EnforcetheOrder. EPIC, #EnforceTheOrder, @FTC (2019);[27] EPIC 2019 FOIA Request, *supra* (revealing that there are 26,000 pending consumer complaints against Facebook, while under the Consent Order).[28]

Additionally, EPIC has repeatedly emphasized that the FTC must use its antitrust authority to block mergers that threaten user privacy and has criticized the FTC for not doing

---

[22] https://epic.org/epic/about.html.
[23] https://www.ftc.gov/about-ftc.
[24] https://epic.org/privacy/facebook/Facebook-FTC-Settlement-Comments-FINAL.pdf.
[25] https://epic.org/foia/FTC/facebook/EPIC-18-03-20-FTC-FOIA-20180320-Request.pdf.
[26] https://epic.org/foia/ftc/facebook/EPIC-v-FTC-Complaint.pdf.
[27] https://epic.org/enforce-the-order/.
[28] https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190313-Request.pdf.

enough to protect consumers. *See, e.g.*, Letter from EPIC to Senators Michael S. Lee and Amy

Klobuchar (Dec. 12, 2017) ("[T]he FTC has repeatedly failed to even consider consumer privacy

and data security in its merger review process.");[29] EPIC, Comments In re Remedy Study, FTC

File No. P143100 ("The failure of the FTC to take [privacy protections for consumers] into

account during merger review is one of the main reasons consumer privacy in the United States

has diminished significantly in the last 15 years.");[30] Marc Rotenberg, EPIC President, *How the*

*FTC Could Have Prevented the Facebook Mess,* Techonomy (Mar. 22, 2018).[31]

Given EPIC's track record of disagreeing with the FTC's approach to privacy issues, the

FTC cannot claim to represent the interests of EPIC. EPIC should "not need to rely on a doubtful

friend to represent its interests, when it can represent itself." *Costle*, 561 F.2d at 913; *see also*

*Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986); *Cayuga Nation v.*

*Zinke*, 324 F.R.D. 277, 283 (D.D.C. 2018).

### 5.     EPIC has Article III standing to intervene.

Courts in this Circuit have recognized that Article III standing and the requisite interest

under Rule 24(a)(2) go hand-in-hand. *See, e.g.*, *Wildearth Guardians*, 272 F.R.D. at 13 n.5

("[W]hen a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also

meet constitutional standing requirements, and *vice versa*); *Jones v. Prince George's City,*

*Maryland*, 348 F.3d 1014, 1018–19 (D.C. Cir. 2003) ("[B]ecause [the intervenor] has suffered a

cognizable injury sufficient to establish Article III standing, she also has the requisite interest

under Rule 24(a)(2)."); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir.

1998) ("[An intervenor] need not show anything more that it has standing to sue in order to

---

[29] https://epic.org/testimony/congress/EPIC-SJC-Subcomm-Antitrust-Dec2017.pdf.
[30] https://epic.org/privacy/internet/ftc/Merger-Remedy-3-17.pdf.
[31] https://techonomy.com/2018/03/how-the-ftc-could-have-avoided-the-facebook-mess/.

demonstrate the existence of a legally protected interest for the purposes of Rule 24(a).”). Thus, because EPIC has a legally cognizable interest under Rule 24(a)(2), as discussed above, EPIC also has standing.

However, even if Article III standing is considered independently, EPIC has standing. “For standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor.” *Crossroads*, 788 F.3d at 318. In *Crossroads*, the D.C. Circuit determined that Crossroads had standing because if the FEC ruling in question was overturned, Crossroads “would return to the position of a respondent subject to enforcement proceedings before a federal agency.” *Id*. at 317. Here, the proposed Consent Decree would “resolve any and all claims” that Facebook violated the 2011 Consent Order. If the decree is accepted, EPIC would be deprived of the opportunity to pursue complaints previously filed against the FTC.

Because EPIC has satisfied all the elements of a motion to intervene, the Court should thus grant EPIC’s motion to intervene under Rule 24(a).

### B.       Alternatively, EPIC should be permitted to intervene pursuant to Rule 24(b).

Even if this Court determines that EPIC does not have a right to intervene under Rule 24(a), the Court should nevertheless grant EPIC’s motion to intervene under Rule 24(b). Rule 24(b) states that “On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact. Under Rule 24(b), a movant may be permitted to intervene if he “has a claim or defense that shares with the main action a common question of law or fact.” Fed. R. Civ. P. 24(b)(1)(B).

Because “permissive intervention is an inherently discretionary enterprise,” district courts have “wide latitude” in determining whether a third-party should be permitted to intervene under Rule 24(b). *EEOC v. Nat'l Child. Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). A prospective

16

intervener must present: (1) an independent ground for subject matter jurisdiction; (2) a timely

motion; and (3) a claim or defense that has a question of law or fact in common with the main

action. *Id*. In addition, courts "may also consider whether parties seeking intervention will

significantly contribute to the just and equitable adjudication of the legal question presented."

*Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015) (internal quotation marks and

alterations omitted). Finally, it is an "open question" whether Article III standing is required for

permissive intervention in District of Columbia courts. However, this question does not need to

be resolved in this case as EPIC has standing as demonstrated above. *Sevier v. Lowenthal*, 302 F.

Supp. 3d 312, 323 (D.D.C. 2018).

EPIC satisfies all three requirements for permissive intervention. First, EPIC has an

independent ground for subject matter jurisdiction. Like the underlying claims in this case,

EPIC's proposed objections arise under federal law and fall within the Court's federal-question

jurisdiction. 28 U.S.C. § 1331. Given this, "because the Court has federal question jurisdiction

over this case, it has independent jurisdiction over the movant['s] answers and future motions."

*Sault Ste. Marie Tribe of Chippewa Indians*, 331 F.R.D. at 14 (granting motion to intervene

under 24(b)). Second, EPIC has filed a timely motion. As discussed above, EPIC filed a motion

to intervene within only two days of the filing of the proposed Consent Decree between

Facebook and the FTC. Third, EPIC's claims have a common question of law or fact with the

main action. EPIC's claims rest on the complaints levied against Facebook in this case, which

are directly connected with EPIC's 2009 Complaint to the FTC about Facebook's privacy

violations, and the resulting Consent Decree.

Finally, allowing EPIC to intervene will "significantly contribute to the just and equitable

adjudication of the legal question presented." *Sierra Club*, 308 F.R.D. at 12. The proposed

17

Consent Decree does not adequately address the consumer privacy complaints raised against

Facebook by the FTC, numerous consumer privacy groups like EPIC, and individuals. EPIC's

arguments will assist the Court in reviewing the proposed Consent Decree and achieving a just

and equitable adjudication in this case. This Court should leverage its significant discretion in

granting third-party intervention under Rule 24(b) to allow EPIC to intervene in this case and

thus, contribute to the just and equitable adjudication of the legal questions presented.

## II.     Alternatively, the Court should grant EPIC's motion for leave to file an *amicus curiae* brief.

This Court has "broad discretion" to permit participation by *amici curiae*. *District of*

*Potomac Electric Power Co.*, 826 F. Supp. 2d at 227. Participation of an *amicus* is especially

desirable when the proposed *amicus* may provide a "unique perspective" on the issues before the

court. *Keepseagle v. Vilsak*, 307 F.R.D. 233 (D.D.C. 2014).

A motion for leave to file an *amicus* brief must "state the nature of the movant's interest."

LCvR 7(o)(2). EPIC is a public interest research center in Washington, D.C.  EPIC was

established in 1994 to focus public attention on emerging civil liberties issues and to protect

privacy, the First Amendment, and other constitutional values. EPIC frequently participates as

*amicus curiae* in federal courts in cases about emerging privacy and civil liberties issues. EPIC

was a party to the original 2009 FTC consumer privacy complaint against Facebook. The 2012

Consent Order that resulted from that complaint is the basis for the proposed settlement currently

before this Court. EPIC has filed five more complaints to the FTC since the 2012 Consent Order

concerning Facebook's manipulation of users' News Feeds for psychological research,

Facebook's acquisition of Whatsapp, and the transfer of Whatsapp data to Facebook. EPIC has

also focused public attention on Facebook's privacy practices.

A motion for leave to file as amicus must also "identify the party or parties supported, if any." *Id.* EPIC does not support either party to the current proceedings.

A prospective *amicus* must "set forth the reasons why an *amicus* brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case." *Id.* EPIC can offer a unique perspective on the issues before this Court because of its long participation in FTC proceedings against Facebook and its expertise in consumer privacy. An *amicus* brief from EPIC would provide this Court with information about whether the proposed settlement will effectively address Facebook's violations of Section 5 and the 2012 Consent Order. As described in the section above, neither Facebook nor the FTC will adequately represent EPIC's position as EPIC disagrees with both parties concerning the public interest of the proposed settlement.

A motion for leave must state "the position of each party as to the filing of such a brief." *Id.* Facebook has not appeared in this case and the United States has not taken a position on EPIC's motion.

Finally, a motion to file an *amicus* brief must "be filed in a timely manner such that it does not unduly delay the Court's ability to rule on any pending matter." *Id.* This motion will not unduly delay the Court's ability to rule on the pending matter because this Court has yet to approve the Consent Decree.

## III.    The Court should set a briefing schedule so that all interested parties can participate in the review of the proposed FTC consent decree.

EPIC seeks the opportunity to participate in the matter now before this Court, but perhaps more critically respectfully asks this Court to provide an opportunity for others, including those organizations and individuals who have complaints pending before the Commission, to be heard. There are hundreds of millions of Americans whose privacy rights are implicated by this

proposed Consent Decree, and many consumer and privacy organizations have diligently studied Facebook's business practices and proposed specific changes that could safeguard consumers.[32] Moreover, there are concerns that complaints regarding children's privacy and alleged violations of the Children's Online Privacy Protection Act, currently pending before the Commission, may be extinguished as a consequence of the proposed settlement. *See, e.g.,* Letter from Institute for Public Representation and 18 other organizations to Donald S. Clark, Secretary, FTC, and Andrew Smith, Director, Bureau of Consumer Protection (Oct. 3, 2018).[33]

This Court has inherent authority to grant leave for any and all interested parties to submit their views on this settlement, and establishing an orderly process for such submissions would serve the public interest. *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) (permitting filing, opportunity to be heard, and objection by EPIC and Junkbusters); *United States v. District of Columbia*, 933 F. Supp. 42, 43 (D.D.C. 1996) (granting intervenor status to Virginia and reviewing the fairness of a proposed consent decree between the EPA and District of Columbia); *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (reviewing the objections of intervenor organizations to a settlement agreement between environmental groups and the EPA); *see also United States v. Google*, No. 12-4177, 2012 WL 5833994 (N.D. Cal. 2012) (considering the arguments of *amicus curiae* Consumer Watchdog in opposition to the proposed FTC settlement with Google).

---

[32] Center for Digital Democracy, *New EU and US Consumer Studies Show Facebook, Google, Microsoft Fail Privacy; Eight Consumer Advocacy Groups Call Upon FTC to Investigate* (June 27, 2018) (discussing two studies of Facebook's business practices and their impact on consumer privacy).
[33] http://www.commercialfreechildhood.org/sites/default/files/devel-generate/wab/FTC%20FB%20Messenger%20Kids%20Letter.pdf.

**IV.    The Court should schedule a hearing to review the fairness and adequacy of the proposed FTC Consent Decree.**

This Court should not adopt the proposed Consent Decree because the parties have not established that it would be fair, adequate, reasonable, appropriate, or consistent with the public interest. The D.C. Circuit has held that a court reviewing a consent decree "must satisfy itself of the settlement's 'overall fairness to beneficiaries and consistency with the public interest.'" *Gorsuch*, 718 F.2d at 1126 (quoting *United States v. Trucking Employers, Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977). A court analyzing a proposed Consent Decree must ensure that the decree is: (1) "both procedurally and substantively fair;" (2) "adequate, reasonable, and appropriate" "from an objective point of view," focusing "on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal;" and (3) "consistent with the public interest." *Appalachian Voices v. McCarthy*, 38 F. Supp. 3d 52, 55–57 (D.D.C. 2014).

The proposed consent decree does not appear to satisfy any of the three requirements. First, the settlement is neither procedurally or substantively fair, as it violates the Federal Trade Commission's procedural mandate to review consumer complaints and does not sufficiently "incorporate[] concepts of corrective justice and accountability." *Id.* at 55. Second, the proposed Consent Decree is not adequate, reasonable, or appropriate. Its scope goes far beyond the dispute in question, extinguishing all 26,000 pending consumer complaints about Facebook made while under the Consent Order. It also does not contain adequate provisions to accomplish its goal of ensuring consumer privacy on Facebook. Finally, the proposed settlement is clearly not in the public interest, as it leaves consumer complaints unaddressed while still failing to ensure consumer privacy on Facebook.

Given the failure of the parties to establish that the proposed consent decree meets any of the three factors required, this Court should accept briefing from all interested groups and hold a hearing to evaluate the fairness of the proposed consent decree. This Court has a mandate not to "stand by and approve any consent decree placed before it" and "is not obliged to accept one that appears to make a mockery of judicial power" like the Consent Decree proposed in this case. *United States v. District of Columbia*, 933 F. Supp. at 47.

## CONCLUSION

For the above stated reasons, the Court should grant EPIC's motion to intervene, establish a briefing schedule for intervenors and interested parties, and schedule a hearing to review the fairness and adequacy of the parties' proposed consent decree.

Respectfully Submitted,

MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

/s/ Alan Butler
ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel

MEGAN IORIO, D.C. Bar #1618365
EPIC Appellate Advocacy Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
   Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiff EPIC* [34]

Dated: July 25, 2019

---

[34] EPIC Consumer Protection Counsel Christine Bannan, a member of the Massachusetts Bar whose admission is pending in the District of Columbia, contributed to this motion.