# Exhibit 8

FEDERAL TRADE COMMISSION
Washington, DC 20580

In the Matter of                                    )
                                                    )
WhatsApp, Inc.                                      )
                                                    )
_____)

**Complaint, Request for Investigation, Injunction, and Other Relief**

**Submitted by**

**The Electronic Privacy Information Center (EPIC)**

**And**

**The Center for Digital Democracy (CDD)**

## I. Introduction

1. This complaint concerns the proposed use and transfer of WhatsApp, Inc. user data to Facebook, Inc. for targeted advertising and other purposes.

2. As set forth in detail below, WhatsApp plans to transfer user data that was previously collected under the promise this data would not be used or disclosed for marketing purposes. WhatsApp plans to require users to opt out of the transfer of their personal information to Facebook.

3. The proposed change in business practices will therefore constitute an unfair and deceptive trade practice, subject to investigation and injunction by the Federal Trade Commission ("FTC").

## II. Parties

4. The Electronic Privacy Information Center ("EPIC") is a public interest research center located in Washington, D.C. EPIC focuses on emerging privacy and civil liberties issues and is a leading consumer advocate before the FTC. EPIC has a particular interest in protecting consumer privacy, and has played a leading role in developing the authority of the FTC to address emerging privacy issues and to safeguard the privacy rights of consumers.[1] A complaint filed by EPIC and a

---

[1] *See, e.g.*, Letter from EPIC Exec. Dir. Marc Rotenberg to FTC Comm'r Christine Varney (Dec. 14, 1995) (urging the FTC to investigate the misuse of personal information by the

coalition of privacy and civil liberties organization in December 2009, concerning Facebook's changes to user privacy settings, and a supplemental complaint filed by EPIC in February 2010 led to the Commission's comprehensive settlement with Facebook in 2012.[2] In 2014, EPIC and the Center for Digital Democracy filed a complaint with the FTC requesting an injunction and investigation of Facebook's proposed acquisition of WhatsApp, specifically in regards to the effect of the transaction on user privacy.[3] In response, the Commission notified Facebook and WhatsApp that they must honor their privacy commitments to users.[4]

5.  The Center for Digital Democracy ("CDD") is a not-for-profit D.C.-based organization focused on protecting consumers in the digital marketplace.[5] During the 1990's (and then operating as the Center for Media Education) its work to protect privacy on the Internet led to the passage of the Children's Online Protection Act (COPPA) by Congress in 1998.[6] CDD's advocacy on the Google-Doubleclick merger played a major role in the FTC's decision to address privacy concerns arising from online behavioral advertising.[7] Through a series of complaints filed at the commission, CDD has brought attention to privacy

---

direct marketing industry), http://epic.org/privacy/internet/ftc/ftc_letter.html; DoubleClick, Inc., *FTC* File No. 071-0170 (2000) (Complaint and Request for Injunction, Request for Investigation and for Other Relief), http://epic.org/privacy/internet/ftc/DCLK_complaint.pdf; Microsoft Corporation, FTC File No. 012 3240 (2002) (Complaint and Request for Injunction, Request for Investigation and for Other Relief), http://epic.org/privacy/consumer/MS_complaint.pdf; Choicepoint, Inc., FTC File No. 052-3069 (2004) (Request for Investigation and for Other Relief) , http://epic.org/privacy/choicepoint/fcraltr12.16.04.html.

[2] In the Matter of Facebook, Inc., (2009) (EPIC Complaint, Request for Investigation, Injunction, and Other Relief), https://epic.org/privacy/inrefacebook/EPIC-FacebookComplaint.pdf; In the Matter of Facebook, Inc., (2010) (EPIC Supplemental Materials in Support of Pending Complaint and Request for Injunction, Request for Investigation and for Other Relief), https://*epic.org/privacy/inrefacebook/EPIC_Facebook_Supp.pdf*; In the Matter of Facebook, Inc., (2010) (EPIC Complaint, Request for Investigation, Injunction, and Other Relief) , https://epic.org/privacy/facebook/EPIC_FTC_FB_Complaint.pdf; *In re Facebook. Inc.*, Decision and Order, No. C-4365 (2012), available at http://www. ftc.gov/en forcementlcases-proceedings/092-3184/facebook-inc.

[3] In the Matter of WhatsApp, Inc., (2014) (EPIC Complaint, Request for Investigation, Injunction, and Other Relief), https://www.epic.org/ftc/WhatsApp-Complaint.pdf.

[4] Letter from Jessica Rich, Director of FTC Bureau of Consumer Protection, to WhatsApp and Facebook (Apr. 10, 2014) https://www.ftc.gov/system/files/documents/public_statements/297701/140410facebookwhatappl tr.pdf [Exhibit A].

[5] Ctr. for Digital Democracy, *About CDD*, http://www.democraticmedia.org/about-cdd (last accessed Mar. 6, 2014).

[6] Katherine C. Montgomery, *Generation Digital*, MIT Press, http://mitpress.mit.edu/books/generation-digital (last accessed Mar. 6, 2014).

[7] Louise Story, *F.T.C. Approves Doubleclick Deal*, N.Y. Times, Dec. 21, 2007, *available at* http://www.nytimes.com/2007/12/21/business/21adco.html.

---

concerns with mobile devices, real-time tracking and targeting platforms, social media, and from the databroker industry.[8] CDD's four-year campaign to ensure that COPPA was effectively implemented across all major platforms and applications resulted in the FTC's December 2012 decision to strengthen its rules on children's privacy.[9]

6.  WhatsApp, Inc. is an American company owned and operated by Facebook, Inc.[10] WhatsApp, Inc. is incorporated in Delaware and its primary place of business is 650 Castro Street, Suites 120-219, Mountain View, California, 94041.[11] WhatsApp, Inc. is the developer of WhatsApp, a cross-platform Small Message Service (SMS) application for mobile phones.[12] WhatsApp, Inc. was formed in 2009 and acquired by Facebook, Inc. in 2014.[13] As of February 1, 2016, the app has one billion users worldwide.[14]

7.  Facebook, Inc. is an American company incorporated in Delaware and headquartered at 1 Hacker Way, Menlo Park, California 94025.[15] The company operates a social network service with 1.13 billion daily active users worldwide as of June 2016.[16]

## III. Factual Background

### A.  WhatsApp Proposes to Transfer Previously Collected User Data to Facebook for Targeted Advertising Purposes

8.  On August 25, 2016, WhatsApp posted an entry to the company blog announcing the first update to its Terms of Service and Privacy Policy in more than four years "as part of [WhatsApp's] plans to test ways for people to communicate with businesses in the months ahead."[17]

---

[8] Rimma Katz, *Center for Digital Democracy asks FTC to investigate mobile data targeting*, MOBILE MARKETER, Apr. 9, 2010, *available at* http://www.mobilemarketer.com/cms/news/legal-privacy/5927.html.
[9] Press Release, Federal Trade Comm'n, FTC Strengthens Kids' Privacy, Gives Parents Greater Control Over Their Information By Amending Childrens Online Privacy Protection Rule (Dec. 19, 2012), http://www.ftc.gov/news-events/press-releases/2012/12/ftc-strengthens-kids-privacy-gives-parents-greater-control-over.
[10] *The Facebook Companies*, FACEBOOOK, https://www.facebook.com/help/111814505650678.
[11] *Contact WhatsApp*, WHATSAPP, https://www.whatsapp.com/contact/.
[12] *Id.*
[13] WhatsApp Blog, *Facebook* (Feb. 19, 2014), https://blog.whatsapp.com/499/Facebook.
[14] WhatsApp Blog, *One Billion* (Feb. 1, 2014), https://blog.whatsapp.com/616/One-billion.
[15] Facebook Newsroom, *Company Info*, http://newsroom.fb.com/company-info/.
[16] *Id.*
[17] WhatsApp Blog, *Looking Ahead for WhatsApp* (Aug. 25, 2016), https://blog.whatsapp.com/10000627/Looking-ahead-for-WhatsApp.

9. According to WhatsApp, the company "plan[s] to share some information with Facebook and the Facebook family of companies that will allow [WhatsApp] to coordinate more" with Facebook.[18]

10. According to WhatsApp, the company plans to transfer "the phone number [users] verified when [they] registered with WhatsApp" and the last time users accessed the app.[19]

11. WhatsApp users provide their mobile phone numbers to the company in order to create a WhatsApp account.[20] Users can only install WhatsApp if they provide their mobile phone number and allow WhatsApp to send them an SMS message with an activation code.[21] A phone number is widely considered a unique personal identifier that enables the linking of personal information, including medical records, financial records, and education records, as well as web site visits, and other personal data.[22]

12. As of February 1, 2016, WhatsApp has one billion users worldwide. According to the company, "[t]hat's nearly one in seven people on Earth who use WhatsApp each month."[23]

13. Facebook and WhatsApp are currently the two largest social networks worldwide, with an estimated two-and-a-half billion active users combined.[24]

14. According to WhatsApp, WhatsApp and Facebook intend to use WhatsApp user data to provide "friend suggestions and more relevant ads on Facebook."[25]

---

[18] WhatsApp FAQ, *I Have Questions About the Updated Terms of Service and Privacy Policy*, https://www.whatsapp.com/faq/general/28030012.

[19] *Id.*

[20] WhatsApp, *Privacy Policy* (last modified Aug. 25, 2016), https://www.whatsapp.com/legal/?l=en#privacy-policy [hereinafter "WhatsApp Updated Privacy Policy"].

[21] Paul Ducklin, *WhatsApp and Privacy – Will Facebook Make Things Better, Worse, or Both?*, NAKED SECURITY (Mar. 19, 2014), https://nakedsecurity.sophos.com/2014/03/19/whatsapp-and-privacy-will-facebook-make-things-better-worse-or-both/

[22] *See, e.g.*, NIST, Guide to Protecting the Confidentiality of Personally Identifiable Information (PII) at § 2.1 (2010), http://www.nist.gov/customcf/get_pdf.cfm?pub_id=904990 (telephone number is example of PII data); California Online Privacy Protection Act, Cal. Bus. & Prof. Code §§ 22575–22579 (2014) (definition of PII includes telephone number); Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6501 (2014) (definition of "personal information" includes telephone number).

[23] WhatsApp Blog, *One Billion* (Feb. 1, 2016), https://blog.whatsapp.com/616/One-billion.

[24] Mark James, *Mark Zuckerberg Doesn't Care About Your Holiday Snaps – Facebook is There to Make Money*, INTERNATIONAL BUSINESS TIMES (Aug. 26, 2016), http://www.ibtimes.co.uk/mark-zuckerberg-doesnt-care-about-your-holiday-snaps-facebook-there-make-money-1578224.

15. According to WhatsApp, users may receive messages containing marketing information.[26]

16. According to WhatsApp, "Facebook and the other companies in the Facebook family also may use information from us to improve your experiences within their services such as making product suggestions (for example, of friends or connections, or of interesting content) and showing relevant offers and ads."[27]

## B. WhatsApp Will Require Users to Opt Out of the Facebook Data Transfer

17. According to WhatsApp, existing users will have a 30-day time period to opt out of the proposed data transfer to Facebook for advertising purposes.[28]

18. WhatsApp identifies two options for users to opt out of the proposed data transfer to Facebook, which the company describes in a blog post as "Option 1" and "Option 2."[29]

19. According to WhatsApp, users can opt out via "Option 1" when they are prompted to accept WhatsApp's updated Terms of Service and Privacy Policy. WhatsApp provides a visual image of this notice, which does not reference the proposed data transfer to Facebook:

---

[25] WhatsApp FAQ, *I Have Questions About the Updated Terms of Service and Privacy Policy*, https://www.whatsapp.com/faq/general/28030012.
[26] WhatsApp Updated Privacy Policy.
[27] WhatsApp Updated Privacy Policy.
[28] WhatsApp FAQ, *How Do I Choose Not to Share My Account Information With Facebook to Improve My Facebook Ads and Products Experiences?*, https://www.whatsapp.com/faq/en/general/26000016.
[29] *Id.*



20. In order to opt out via Option 1, users must navigate to a separate screen and "uncheck the box or toggle the control" to prevent their account information from being shared with Facebook for advertising purposes.[30] WhatsApp provides a visual image of this step:



21. According to WhatsApp, users can opt out via "Option 2" within 30 days by navigating to their WhatsApp account settings and "uncheck[ing] the box or toggl[ing] the control" to prevent their account information from being shared with Facebook for advertising purposes.[31] WhatsApp provides a visual image of this step:

---

[30] *Id.*

[31] *Id.*



22. According to WhatsApp, even when users opt out of the data transfer to Facebook, "Facebook and the Facebook family of companies will still receive and use [user account] information for other purposes, such as improving infrastructure and delivery systems, understanding how [WhatsApp] services or [Facebook's] are used, securing systems, and fighting spam, abuse, or infringement activities."[32]

23. Other companies in the Facebook family include Instagram LLC, advertising companies Atlas and LiveRail, and virtual reality company Oculus.[33]

**C. WhatsApp and Facebook Repeatedly Promised that WhatsApp User Data Would Not Be Used for Marketing Purposes Without User Consent**

24. Prior to the August 25, 2016 update, WhatsApp's privacy policy promised, "We do not use your mobile phone number or other Personally Identifiable Information to send commercial or marketing messages without your consent . . . ."[34]

25. On November 19, 2009, founder Jan Koum posted to the WhatsApp official Blog, "So first of all, let's set the record straight. We have not, we do not and we will

---

[32] *Id.*

[33] Facebook, *The Facebook Companies*, https://www.facebook.com/help/111814505650678.

[34] WhatsApp, *Privacy Policy* (last modified July 7, 2012), https://www.whatsapp.com/legal/?doc=privacy-policy&version=20120707.

not **ever** sell your personal information to anyone. Period. End of story. Hopefully this clears things up."[35]

26. On June 18, 2012, Koum posted to the WhatsApp Blog:

> At every company that sells ads, a significant portion of their engineering team spends their day tuning data mining, writing better code to collect all your personal data, upgrading the servers that hold all the data and making sure it's all being logged and collated and sliced and packaged and shipped out… And at the end of the day the result of it all is a slightly different advertising banner in your browser or on your mobile screen. … At WhatsApp, our engineers spend all their time fixing bugs, adding new features and ironing out all the little intricacies in our task of bringing rich, affordable, reliable messaging to every phone in the world. That's our product and that's our passion. Your data isn't even in the picture. We are simply not interested in any of it.[36]

27. On February 19, 2014, Koum posted to the WhatsApp Blog:

> Here's what will change for you, our users: nothing. WhatsApp will remain autonomous and operate independently. You can continue to enjoy the service for a nominal fee. You can continue to use WhatsApp no matter where in the world you are, or what smartphone you're using. And you can still count on absolutely no ads interrupting your communication. There would have been no partnership between our two companies if we had to compromise on the core principles that will always define our company, our vision and our product.[37]

28. On February 24, 2014, Facebook chief executive Mark Zuckerberg was quoted as saying "We are absolutely not going to change plans around WhatsApp and the way it uses user data. WhatsApp is going to operate completely autonomously."[38]

---

[35] WhatsApp Blog, *Just Wanted to Say a Few Things,*
https://blog.whatsapp.com/index.php/2009/11/a-few-things/ (Nov. 9, 2009).
[36] WhatsApp Blog, *Why We Don't Sell Ads*, http://blog.whatsapp.com/index.php/2012/06/why-we-dont-sell-ads/ (Jun. 18, 2012).
[37] WhatsApp Blog, *Facebook*, http://blog.whatsapp.com/index.php/2014/02/facebook/ (Feb. 19, 2014).
[38] *Id* (quoting Jessica Guynn, *Mark Zuckerberg: WhatsApp Worth Even More Than $19 Billion*, Los Angeles Times (February 24, 2014), http://www.latimes.com/business/technology/la-fi-tn-mark-zuckerberg-whatsapp-wortheven-more-than-19-billion-20 140224,0.603681 l.storv#axzz2vluc7 Aev).

### III. The WhatsApp Proposed Change is Widely Viewed as a Reduction of WhatsApp User Privacy

29. Following the announcement of the proposed change in business practices, numerous experts, media outlets, and technologists described the proposed change as bad for the privacy of WhatsApp users.

30. The Indian Express reported that the change will "mark a significant departure from how WhatsApp has been viewed, an app that was strictly about no ads."[39]

31. Wired noted, "Another aspect of the privacy rollback likely to rankle users is that not only will the phone number and analytics sharing be activated by default, WhatsApp users will only have a month in which to opt out."[40]

32. Gizmodo explained, "This very obviously betrays WhatsApp's commitment to privacy that it has long held."[41]

33. A reporter with InvestorPlace asked, "What's that? That's just the sound of Facebook Inc tearing up the privacy agreement of WhatsApp's billion users, allowing businesses to invade user inboxes."[42]

34. Another technology reporter observed, "WhatsApp's foundation is secure, encrypted, private chats across all platforms. Anything that pushes against that, like sharing information with another company, poses a risk to maintaining that privacy and security."[43]

35. Elizabeth Denham, the Information Commissioner for the United Kingdom, recently announced her office is investigating the changes

---

[39] Shruti Dhapola, *WhatsApp's Privacy Policy is Bigger Than Just Sharing Info With Facebook*, THE INDIAN EXPRESS (Aug. 29, 2016), http://indianexpress.com/article/technology/opinion-technology/whatsapps-new-privacy-policy-goes-beyond-sharing-info-with-facebook/.

[40] Brian Barrett, *WhatsApp's Privacy Cred Just Took a Big Hit*, WIRED (Aug. 25, 2016), https://www.wired.com/2016/08/whatsapp-privacy-facebook/.

[41] William Turton, *WhatsApp Betrays Privacy Stance, Will Share Data With Facebook*, GIZMODO (Aug. 25, 2016), http://gizmodo.com/whatsapp-betrays-privacy-stance-will-share-data-with-f-1785733967.

[42] John Kilhefner, *Facebook Inc (FB) About-Faces on WhatsApp Privacy*, INVESTORPLACE (Aug. 27, 2016), http://investorplace.com/2016/08/facebook-inc-fb-stock-shares-whatsapp/.

[43] Jeff Gamet, *WhatsApp's New Privacy Policy is a Big Trust Killer*, THE MAC OBSERVER (Aug. 26, 2016), https://www.macobserver.com/news/whatsapps-new-privacy-policy-is-a-big-trust-killer/.

WhatsApp and Facebook are making to how they handle customers' personal data.[44] Her announcement noted that the changes "will affect a lot of people" and users "may be concerned by the lack of control."

## IV. Prior FTC Statements

### A. The FTC's April 10, 2014 Letter to WhatsApp and Facebook Requires Opt-In Consent for the Proposed WhatsApp User Data Transfer to Facebook

36. In 2014, when Facebook proposed to acquire WhatsApp, numerous experts and consumer advocates warned that, if approved, Facebook would fail to uphold user privacy.[45]

37. On March 6, 2014, EPIC and CDD filed a complaint with the FTC concerning the impact on consumer privacy of Facebook's acquisition of WhatsApp.[46] According to the complaint,

> WhatsApp built a user base based on its commitment not to collect user data for advertising revenue. Acting in reliance on WhatsApp representations, Internet users provided detailed personal information to the company including private text to close friends. Facebook routinely makes use of user information for advertising purposes and has made clear that it intends to incorporate the data of WhatsApp users into the user profiling business model. The proposed acquisition will therefore violate WhatsApp users' understanding of their exposure to online advertising and constitutes an unfair and deceptive trade practice, subject to investigation by the Federal Trade Commission.[47]

38. In response to EPIC and CDD's complaint, on April 10, 2014, Jessica Rich, Director of the FTC's Consumer Protection Bureau, sent a letter to the Chief Privacy officer of Facebook, Inc. and the General Counsel of WhatsApp, Inc. in connection with Facebook's proposed acquisition of WhatsApp.[48]

---

[44] Information Commissioner's Office, *Statement on Changes to WhatsApp and Facebook's Handling of Personal Data* (Aug. 26, 2016), https://ico.org.uk/about-the-ico/news-and-events/news-and-blogs/2016/08/statement-on-changes-to-whatsapp-and-facebook-s-handling-of-personal-data/.

[45] *See* In the Matter of WhatsApp, Inc., (2014) (EPIC Complaint, Request for Investigation, Injunction, and Other Relief), https://www.epic.org/ftc/WhatsApp-Complaint.pdf.

[46] *Id.*

[47] *Id* at 1.

[48] Letter from Jessica Rich, Director of FTC Bureau of Consumer Protection, to WhatsApp and Facebook (Apr. 10, 2014) https://www.ftc.gov/system/files/documents/public_statements/297701/140410facebookwhatappltr.pdf [Exhibit A at 2].

39. According to the FTC letter, WhatsApp users "have agreed to use the WhatsApp service, and to have WhatsApp collect and transmit their information, with the understanding that these promises will be honored."[49]

40. According to the FTC letter, "<u>WhatsApp's privacy policy clearly states, among other things, that users' information will not be used for advertising purposes</u> or sold to a third party for commercial or marketing use without the users' consent."[50] The letter further states, "Facebook has recently promised consumers that it would not change the way WhatsApp uses customer information."[51]

41. According to the FTC letter, "The statements in WhatsApp's privacy policy, combined with the recent public statements by both Facebook and WhatsApp, constitute clear promises to consumers about the collection and use of their data by WhatsApp and, following WhatsApp's purchase, Facebook."[52]

42. According to the FTC letter, "<u>the FTC has made clear that, absent affirmative express consent by a consumer, a company cannot use data in a manner that is materially inconsistent with promises made at the time the data was collected</u>, and that such use of data could be an unfair practice under Section 5."[53]

43. In light of these promises, the FTC explains that "<u>any use of WhatsApp's subscriber information that violates these privacy promises, by either WhatsApp or Facebook, could constitute a deceptive or unfair practice under the FTC Act</u>."[54]

44. The FTC directs WhatsApp and Facebook that "<u>if [they] choose to use data collected by WhatsApp in a manner that is materially inconsistent with the promises WhatsApp made at the time of collection, [they] must obtain consumers' affirmative consent before doing so</u>."[55]

## B. FTC Press Releases and Blog Posts Clarify WhatsApp and Facebook Must Obtain Opt-In Consent Prior to the Proposed Data Transfer

45. The FTC's press release on the April 10, 2014 letter to WhatsApp and Facebook clarifies that "<u>before making any material changes to how they use data already</u>

---

[49] Ex. A at 2.
[50] *Id* at 3 (emphasis added).
[51] *Id.*
[52] *Id.*
[53] *Id* at 3 (citing *In re Facebook, Inc.*, Decision and Order, No. C-4365 (2012), http://www.ftc.gov/enforcementlcases-proceedings/092-3184/facebook-inc.) (emphasis added); *In re Gateway Learning Corp.*, Decision and Order, No. C-4120 (2004), http://www.ftc.e:ov/enforcementlcases-proceedings/042- 3047 /gateway-learning-corp-matter).
[54] *Id* (emphasis added).
[55] *Id* (emphasis added).

collected from WhatsApp subscribers, the companies must get affirmative consent."[56]

46. On March 25, 2015, the FTC posted a blog entry on "Mergers and Privacy Promises" that discussed the implications of the April 10, 2014 letter to WhatsApp and Facebook and provided the following guidance:

> What if [a company] want[s] to materially change [its] practices for information [it] collected before the merger – for example, by sharing with third parties information [it] originally promised would not be shared? To change the privacy promises already made to consumers, [the company will] need to inform consumers and get their express affirmative consent to opt in to [the] new practices.[57]

## V. Legal Analysis

### A. The FTC's Section 5 Authority

47. The FTC Act prohibits unfair and deceptive acts and practices, and empowers the Commission to enforce the Act's prohibitions.[58] These powers are described in FTC Policy Statements on Deception[59] and Unfairness.[60]

48. A trade practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."[61]

49. The injury must be "substantial."[62] Typically, this involves monetary harm, but may also include "unwarranted health and safety risks."[63] Emotional harm and

---

[56] FTC, *FTC Notifies Facebook, WhatsApp of Privacy Obligations in Light of Proposed Acquisition* (Apr. 10, 2014), https://www.ftc.gov/news-events/press-releases/2014/04/ftc-notifies-facebook-whatsapp-privacy-obligations-light-proposed (emphasis added) [Exhibit B].

[57] FTC, *Mergers and Privacy Promises* (Mar. 25, 2016), https://www.ftc.gov/news-events/blogs/business-blog/2015/03/mergers-privacy-promises [Exhibit C].

[58] *See* 15 U.S.C. § 45 (2010).

[59] Fed. Trade Comm'n, FTC Policy Statement on Deception (1983), available at http://www.ftc.gov/bcp/policystmt/ad-decept.htm [hereinafter FTC Deception Policy].

[60] Fed. Trade Comm'n, FTC Policy Statement on Unfairness (1980), available at http://www.ftc.gov/bcp/policystmt/ad-unfair.htm [hereinafter FTC Unfairness Policy].

[61] 15 U.S.C. § 45(n); *see, e.g., Fed. Trade Comm'n v. Seismic Entertainment Productions, Inc.*, Civ. No. 1:04-CV- 00377 (Nov. 21, 2006) (finding that unauthorized changes to users' computers that affected the functionality of the computers as a result of Seismic's anti-spyware software constituted a "substantial injury without countervailing benefits.").

[62] FTC Unfairness Policy, *supra*.

[63] *Id.*; *see, e.g., Fed. Trade Comm'n v. Information Search, Inc.*, Civ. No. 1:06-cv-01099 (Mar. 9, 2007) ("The invasion of privacy and security resulting from obtaining and selling confidential

other "more subjective types of harm" generally do not make a practice unfair.[64] Secondly, the injury "must not be outweighed by an offsetting consumer or competitive benefit that the sales practice also produces."[65] Thus the FTC will not find a practice unfair "unless it is injurious in its net effects."[66] Finally, "the injury must be one which consumers could not reasonably have avoided."[67] This factor is an effort to ensure that consumer decision making still governs the market by limiting the FTC to act in situations where seller behavior "unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking."[68] Sellers may not withhold from consumers important price or performance information, engage in coercion, or unduly influence highly susceptible classes of consumers.[69]

50. An act or practice is deceptive if it involves a representation, omission, or practice that is likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment."[70]

51. The Commission has previously found that retroactive application of materially changed privacy policies to previously collected consumer data is an unfair trade practice.[71]

52. There are three elements to a deception claim. First, there must be a representation, omission, or practice that is likely to mislead the consumer.[72] The relevant inquiry for this factor is not whether the act or practice actually misled the consumer, but rather whether it is likely to mislead.[73]

53. Second, the act or practice must be considered from the perspective of a reasonable consumer.[74] "The test is whether the consumer's interpretation or

---

customer phone records without the consumers' authorization causes substantial harm to consumers and the public, including, but not limited to, endangering the health and safety of consumers.").

[64] FTC Unfairness Policy, *supra*.

[65] *Id*.

[66] *Id*.

[67] *Id*.

[68] *Id*.

[69] *Id*.

[70] FTC Deception Policy, *supra*.

[71] *See In re Gateway Learning Corp.*, Decision and Order, No. C-4120 (2004), http://www.ftc.e:ov/enforcementlcases-proceedings/042- 3047 /gateway-learning-corp-matter).

[72] FTC Deception Policy, *supra* ; *see, e.g.*, *Fed Trade Comm'n v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) (holding that Pantron's representation to consumers that a product was effective at reducing hair loss was materially misleading, because according to studies, the success of the product could only be attributed to a placebo effect, rather than on scientific grounds).

[73] FTC Deception Policy, *supra*.

[74] *Id.*

reaction is reasonable."[75] The FTC will look at the totality of the act or practice and ask questions such as "how clear is the representation? How conspicuous is any qualifying information? How important is the omitted information? Do other sources for the omitted information exist? How familiar is the public with the product or service?"[76]

54. Finally, the representation, omission, or practice must be material.[77] Essentially, the information must be important to consumers. The relevant question is whether consumers would have chosen another product if the deception had not occurred.[78] Express claims will be presumed material.[79] Materiality is presumed for claims and omissions involving "health, safety, or other areas with which the reasonable consumer would be concerned."[80]

55. The FTC presumes that an omission is material where "the seller knew, or should have known, that an ordinary consumer would need omitted information to evaluate the product or service, or that the claim was false . . . because the manufacturer intended the information or omission to have an effect."[81]

56. The Commission has previously found that a company may not alter the privacy settings of its users.[82]

57. The Commission has previously found that a company may not repurpose user data for a use other than the one for which the user's data was collected without first obtaining the user's "express affirmative consent."[83]

58. As the FTC has stated,

> When companies tell consumers they will safeguard their personal information, the FTC can and does take law enforcement action to make sure that companies live up these promises. The FTC has brought legal actions against organizations that have violated consumers' privacy rights, or misled them by failing to maintain security for sensitive consumer information. In many of these cases, the FTC has charged the defendants with violating Section 5

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 110 (1984).

[82] *In the Matter of Facebook, Inc., a corporation; FTC File No. 092 3184*, FTC.gov (Dec. 30, 2011), http://www.ftc.gov/enforcement/cases-proceedings/092-3184/facebook-inc.

[83] *In the Matter of Google, Inc.; FTC File No. 102 3136* (Oct. 13, 2011) (Decision and Order), http://www.ftc.gov/sites/default/files/documents/cases/2011/10/111024googlebuzzdo.pdf.

of the FTC Act, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.[84]

## C. WhatsApp and Facebook's Proposed Change in Business Practices Constitute Unfair and Deceptive Trade Practices

59. As described above, WhatsApp previously collected phone numbers and other personal information from over one billion users before announcing its plan to transfer user data to Facebook.

60. As described in detail above, WhatsApp represented to users that this information would not be used or disclosed for marketing purposes.

61. As of February 1, 2016, over one billion individuals provided their phone numbers and other personal information to WhatsApp with the understanding that their information would not be used or disclosed for marketing purposes.

62. As described in detail above, WhatsApp now plans to use and transfer previously collected user data to Facebook for marketing purposes.

63. As described above, WhatsApp will require existing users to opt out of the transfer of previously collected data to Facebook.

64. As described above, WhatsApp will not obtain affirmative express consent from its users to use and disclose data that "in a manner that is materially inconsistent with promises made at the time the data was collected."[85]

65. Therefore, WhatsApp's proposed change in business practices constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## V. Prayer for Investigation and Relief

1. EPIC urges the Commission to investigate WhatsApp, Inc. and Facebook, Inc.'s proposed plan to transfer WhatsApp user data to Facebook and to use WhatsApp user data for marketing purposes, and to enjoin its unfair and deceptive data practices.

2. Specifically, EPIC requests the Commission to:

---

[84] FTC, *Enforcing Privacy Promises*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/enforcing-privacy-promises.
[85] Ex. A at 3.

a.  Initiate an investigation of the proposed transfer of WhatsApp user data to Facebook;

b.  Initiate an investigation of the proposed use of WhatsApp user data for marketing purposes; and

c.  Provide such other relief as the Commission finds necessary and appropriate.

Respectfully Submitted,

*Marc Rotenberg*

Marc Rotenberg, EPIC Executive Director

*Claire Gartland*

Claire Gartland, EPIC Consumer Protection Counsel

Electronic Privacy Information Center (EPIC)
1718 Connecticut Ave. NW Suite 200
Washington, DC 20009
202-483-1140 (tel)
202-483-1248 (fax)

Jeff Chester, CDD Executive Director
Katharina Kopp, CDD Deputy Director
Center for Digital Democracy (CDD)
1621 Connecticut Ave. NW Suite 550
Washington, DC 20009
(202) 986-2220 (tel)

# EXHIBIT A



Jessica L. Rich
Office of the Director
Bureau of Consumer Protection

UNITED STATES OF AMERICA
Federal Trade Commission
WASHINGTON, D.C. 20580

April 10, 2014

Erin Egan
Chief Privacy Officer
Facebook, Inc.
1155 F Street, NW
Washington, DC  20004
erinegan@fb.com

Anne Hoge
General Counsel
WhatsApp Inc.
303 Bryant Street, Suite 100
Mountain View, CA  94041
hoge@whatsapp.com

Dear Ms. Egan and Ms. Hoge:

I am sending you this letter in connection with Facebook, Inc.'s proposed acquisition of WhatsApp Inc., a company that offers an instant messaging service with reportedly hundreds of millions of users worldwide.[1]  As you know, both companies collect data from consumers but make different promises and statements with respect to consumers' privacy.  In particular, and as discussed in more detail below, WhatsApp has made a number of promises about the limited nature of the data it collects, maintains, and shares with third parties – promises that exceed the protections currently promised to Facebook users.  We want to make clear that, regardless of the acquisition, WhatsApp must continue to honor these promises to consumers.  Further, if the acquisition is completed and WhatsApp fails to honor these promises, both companies could be in violation of Section 5 of the Federal Trade Commission (FTC) Act and, potentially, the FTC's order against Facebook.[2]

**WhatsApp's Statements to Consumers Regarding Privacy**

In its most recent privacy policy, dated July 7, 2012, WhatsApp makes several statements about the types of data that it collects.  It states that "WhatsApp does not collect names, emails,

---

[1] This letter represents my views and does not necessarily represent the views of the Commission or any individual Commissioner.
[2] *See In re Facebook, Inc.,* Decision and Order, No. C-4365 (2012), *available at* http://www.ftc.gov/enforcement/cases-proceedings/092-3184/facebook-inc.

addresses or other contact information from its users' mobile address book or contact lists other than mobile phone numbers . . . ."[3]  It also states that "We do not collect location data" and that "The contents of messages that have been delivered by the WhatsApp Service are not copied, kept or archived by WhatsApp."[4]  The policy further represents that "We do not use your mobile phone number or other Personally Identifiable Information to send commercial or marketing messages without your consent . . . ."  Similarly, it states that "We do not sell or share your Personally Identifiable Information (such as mobile phone number) with other third-party companies for their commercial or marketing use without your consent."[5]  WhatsApp's hundreds of millions of users have agreed to use the WhatsApp service, and to have WhatsApp collect and transmit their information, with the understanding that these promises will be honored.

**Statements Made by WhatsApp and Facebook After the Purchase of WhatsApp**

Following Facebook's announced intent to acquire WhatsApp, both companies have made public statements indicating that the promises in WhatsApp privacy policies would be honored.  Following the announcement of the purchase, an article was placed on the WhatsApp blog that stated:

> Here's what will change for you, our users: nothing . . . . And you can still count on absolutely no ads interrupting your communication.  There would have been no partnership between our two companies if we had to compromise on the core principles that will always define our company, our vision and our product.[6]

Following the announcement of the proposed acquisition of WhatsApp, Facebook chief executive Mark Zuckerberg was quoted as saying "We are absolutely not going to change plans around WhatsApp and the way it uses user data."[7]  Similarly, a Facebook spokesperson stated that "As we have said repeatedly, WhatsApp will operate as a separate company and will honor its commitments to privacy and security."[8]

**Future Uses of WhatsApp User Data**

The statements in WhatsApp's privacy policy, combined with the recent public statements by both Facebook and WhatsApp, constitute clear promises to consumers about the collection and use of their data by WhatsApp and, following WhatsApp's purchase, Facebook.  As you know, the FTC has brought many cases alleging that the failure to keep promises made

---

[3] WhatsApp Privacy Policy, July 7, 2012, *available at* www.whatsapp.com/legal.
[4] *Id.*
[5] *Id.*
[6] WhatsApp Blog, *Facebook*, February 19, 2014, *available at* blog.whatsapp.com/index.php/2014/02/facebook.
[7] Jessica Guynn, "Mark Zuckerberg: WhatsApp worth even more than $19 billion," Los Angeles Times (February 24, 2014), *available at* http://www.latimes.com/business/technology/la-fi-tn-mark-zuckerberg-whatsapp-worth-even-more-than-19-billion-20140224,0,6036811.story#axzz2vluc7Aey.
[8] Jessica Guynn, "Privacy Groups Urge FTC to probe Facebook's deal to buy WhatsApp," Los Angeles Times (March 6, 2014), *available at* http://www.latimes.com/business/technology/la-fi-tn-privacy-groups-urge-ftc-to-probe-facebooks-whatsapp-deal-20140306,0,5616080.story#axzz2vEhEBQqd.

about privacy constitutes a deceptive practice under Section 5 of the FTC Act.[9]  In addition, the FTC has made clear that, absent affirmative express consent by a consumer, a company cannot use data in a manner that is materially inconsistent with promises made at the time the data was collected, and that such use of data could be an unfair practice under Section 5.[10]

WhatsApp's privacy policy clearly states, among other things, that users' information will not be used for advertising purposes or sold to a third party for commercial or marketing use without the users' consent.  Facebook's purchase of WhatsApp would not nullify these promises and WhatsApp and Facebook would continue to be bound by them.  Further, Facebook has recently promised consumers that it would not change the way WhatsApp uses customer information. Therefore, any use of WhatsApp's subscriber information that violates these privacy promises, by either WhatsApp or Facebook, could constitute a deceptive or unfair practice under the FTC Act.  Moreover, such an action could violate the FTC's order against Facebook.  Among other things, the Order enjoins Facebook and its subsidiaries from misrepresenting the extent to which they maintain the privacy or security of consumers' personal information and requires Facebook and its subsidiaries to obtain consumers' affirmative express consent before sharing their nonpublic information in a manner that materially exceeds any privacy setting.

Before changing WhatsApp's privacy practices in connection with, or following, any acquisition, you must take steps to ensure that you are not in violation of the law or the FTC's order.  First, if you choose to use data collected by WhatsApp in a manner that is materially inconsistent with the promises WhatsApp made at the time of collection, you must obtain consumers' affirmative consent before doing so.  Second, you must not misrepresent in any manner the extent to which you maintain, or plan to maintain, the privacy or security of WhatsApp user data.  Failure to take these steps could constitute a violation of Section 5 and/or the FTC's order against Facebook.[11]  Finally, if you choose to change how you collect, use, and share newly-collected WhatsApp data, we recommend that you offer consumers an opportunity to opt out of such changes or, at least, that you make clear to consumers that they have an opportunity to stop using the WhatsApp service.

---

[9] See, e.g., In re Genelink, Inc., File No. 1123095 (2014) (proposed consent order), available at http://www.ftc.gov/enforcement/cases-proceedings/112-3095/genelink-inc-matter; In re Upromise, Inc., Decision and Order, No. C-4351 (2012), available at http://www.ftc.gov/enforcement/cases-proceedings/102-3116/upromise-inc; In re Twitter, Inc., Decision and Order, No. C-4316 (2011), available at http://www.ftc.gov/enforcement/cases-proceedings/092-3093/twitter-inc-corporation.

[10] See In re Facebook, Inc., Decision and Order, No. C-4365 (2012), available at http://www.ftc.gov/enforcement/cases-proceedings/092-3184/facebook-inc.; In re Gateway Learning Corp., Decision and Order, No. C-4120 (2004), available at http://www.ftc.gov/enforcement/cases-proceedings/042-3047/gateway-learning-corp-matter.

[11] Violation of the order could subject the company to civil penalties of up to $16,000 per violation.

Hundreds of millions of users have entrusted their personal information to WhatsApp. The FTC staff will continue to monitor the companies' practices to ensure that Facebook and WhatsApp honor the promises they have made to those users.

Sincerely,

Jessica Rich
Director
Bureau of Consumer Protection

4

# EXHIBIT B

FTC Notifies Facebook, WhatsApp of Privacy Obligations in Light of Proposed Acquisition | Federal Trade Commission    8/29/16, 1:55 PM

Case 1:19-cv-02184-TJK   Document 5-9   Filed 07/26/19   Page 24 of 28



# FEDERAL TRADE COMMISSION
## PROTECTING AMERICA'S CONSUMERS

# FTC Notifies Facebook, WhatsApp of Privacy Obligations in Light of Proposed Acquisition

FOR YOUR INFORMATION

April 10, 2014

**TAGS:** Technology | Bureau of Consumer Protection | Consumer Protection | Privacy and Security | Consumer Privacy

The director of the Federal Trade Commission's Bureau of Consumer Protection notified Facebook and WhatsApp about their obligations to protect the privacy of their users in light of Facebook's proposed acquisition of WhatsApp.

In a letter to the two companies, Bureau Director Jessica Rich noted that WhatsApp has made clear privacy promises to consumers, and that both companies have told consumers that after any acquisition, WhatsApp will continue its current privacy practices.

"We want to make clear that, regardless of the acquisition, WhatsApp must continue to honor these promises to consumers. Further, if the acquisition is completed and WhatsApp fails to honor these promises, both companies could be in violation of Section 5 of the Federal Trade Commission (FTC) Act and, potentially, the FTC's order against Facebook," the letter states.

In 2011, Facebook settled FTC charges that it deceived consumers by failing to keep its privacy promises. Under the terms of the FTC's order against the company, it must get consumers' affirmative consent before making changes that override their privacy settings, among other requirements.

The letter notes that before making any material changes to how they use data already collected from WhatsApp subscribers, the companies must get affirmative consent. In addition, the letter notes that the companies must not misrepresent the extent to which they maintain the privacy or security of user data. The letter also recommends that consumers be given the opportunity to opt out of any future changes to how newly-collected data is used.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP (1-877-382-4357). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 2,000 civil and criminal law enforcement agencies in the U.S. and abroad. The FTC's website provides free information on a variety of consumer topics. Like the FTC on Facebook, follow us on Twitter, and subscribe to press releases for the latest FTC news and resources.

**PRESS RELEASE REFERENCE:**

Facebook Settles FTC Charges That It Deceived Consumers By Failing To Keep Privacy Promises

FTC Notifies Facebook, WhatsApp of Privacy Obligations in Light of Proposed Acquisition | Federal Trade Commission    8/29/16, 1:55 PM

Case 1:19-cv-02184-TJK   Document 5-9   Filed 07/26/19   Page 25 of 28

# Contact Information

MEDIA CONTACT:

Jay Mayfield,
*Office of Public Affairs*
202-326-2181



ftc.gov

# EXHIBIT C



# FEDERAL TRADE COMMISSION
## PROTECTING AMERICA'S CONSUMERS

//////////////////////

# Mergers and privacy promises

**Jamie Hine**
**Mar 25, 2015**

TAGS:  Bureau of Consumer Protection  |  Consumer Protection  |  Privacy and Security  |  Consumer Privacy

Every company takes a different approach to how it collects, maintains, and shares consumers' personal information. Companies that want to do right by their customers are careful to explain how they handle that data. That way, consumers will know how their data will be treated.

But what happens when a company changes owners or merges with another entity? Do the representations the company made to consumers before a merger about how their information will be used apply *after* the merger? Are there limits on how it can be used and shared?

The Commission recognizes that to innovate and keep pace in today's economy, businesses may acquire other companies or sell business units. However, companies must still live up to their privacy promises. One company's purchase of another doesn't nullify the privacy promises made when the data was first collected. When a purchase or acquisition does occur, companies have two choices. They can simply abide by their promises – that is, handle the data as promised when they collected it from consumers. Or, if they want to materially change how they collect, use, or share consumers data, they must get permission from the consumers to whom they made the original promise.

The Commission has addressed this issue in its enforcement actions, and has made clear that it could be an unfair practice under Section 5 for a company to alter its privacy policies in a way that's inconsistent with the promises made when the information was collected. For example, in Gateway Learning the company told consumers it wouldn't share information with third parties. But after collecting consumers' information, Gateway Learning changed its privacy policy to allow it to share the information with third parties and then proceeded to share the information without notifying consumers or getting their consent. The FTC alleged it was an unfair practice for Gateway to retroactively apply the new privacy policy to information it had collected from consumers when the earlier policy was in effect.

These same rules apply when one company acquires another. For example, Facebook's acquisition of WhatsApp raised certain privacy issues. WhatsApp had made promises to its users about what data it collected, maintained, and shared – protections that went beyond those promised to Facebook users. The FTC staff made it clear that regardless of the acquisition, WhatsApp must continue to honor its promises to consumers. And if WhatsApp failed to honor these promises, both companies could be in violation of Section 5.

So what should companies do in the event of a merger or acquisition? If you've acquired a company or merged with one and are thinking of changing how you handle people's personal information, here are some options to consider:

1. You can continue to honor the privacy promises made to consumers before the merger or acquisition.

Mergers and privacy promises | Federal Trade Commission   8/29/16, 1:55 PM

2.  What if you want to materially change your practices for information you collected before the merger – for example, by sharing with third parties information you originally promised would not be shared? To change the privacy promises already made to consumers, you'll need to inform consumers and get their express affirmative consent to opt in to your new practices.

3.  If you plan to change how you use information you collect *in the future*, you also need to provide consumers with notice of the change and choice about whether to agree it. Simply revising the language in a privacy policy or user agreement isn't sufficient because existing customers may have viewed the original policy and may reasonably assume it's still in effect. Although it may not be necessary to provide affirmative express consent, the notice and choice must be sufficiently prominent and robust to ensure that existing customers can see the notice and easily exercise their choices.



ftc.gov