**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>FACEBOOK, Inc.,<br>a corporation,<br><br>Defendant. | Case No. 19-cv-2184-TJK |

**PLAINTIFF'S RESPONSE TO THE ELECTRONIC PRIVACY INFORMATION CENTER'S MOTION TO INTERVENE**

Plaintiff, the United States of America, respectfully files this response to the motion to intervene or for leave to file an *amicus curiae* brief (Dkt. 5) filed by the Electronic Privacy Information Center ("EPIC"), Motion to Intervene, ECF No. 5 (hereinafter "EPIC Motion").  The Court should deny the motion to intervene because EPIC lacks Article III standing and does not satisfy the elements for either intervention as of right or permissive intervention.  The United States takes no position on EPIC's alternative request for leave to file an *amicus curiae* brief, but it urges an expedited briefing schedule and does not believe a hearing is necessary if leave is granted.

**INTRODUCTION**

On July 24, 2019, the United States, upon referral from the Federal Trade Commission ("FTC"), filed the Complaint (ECF No. 1) against Facebook, Inc., which includes five counts alleging that Facebook violated a 2012 FTC administrative order and one count alleging that Facebook violated the FTC Act, 15 U.S.C. § 45(a).  The

Complaint seeks civil penalties and injunctive relief.  The United States immediately

thereafter filed a Consent Motion for Entry of a Stipulated Order for Civil Penalty,

Monetary Judgment, and Injunctive Relief (ECF No. 4), asking the Court to settle the

case by issuing the Stipulated Order for Civil Penalty, Monetary Judgment, and

Injunctive Relief (ECF No. 4-1) (hereinafter "Stipulated Order").

 The Stipulated Order represents a historic data-privacy settlement arising out of a

major FTC investigation into allegations that Facebook engaged in deceptive conduct that

violated the 2012 Order and the FTC Act, as well as months of intensive negotiations.

The $5 billion civil penalty is more than 20 times larger than the largest privacy-related

penalty assessed anywhere in the world, is the second largest civil penalty ever assessed

in the history of the republic, and represents almost a quarter of Facebook's 2018 profits.[1]

 The sweeping injunctive relief is also unprecedented.  Under the proposed FTC

administrative order attached to the Stipulated Order, ECF No. 4-1 at 9 (hereinafter "FTC

order"), Facebook will have to amend its corporate charter to create two new independent

committees on its Board of Directors, including one committee whose sole focus will be

privacy oversight and compliance with the FTC order.  Facebook will have to implement

a privacy program that assesses all aspects of its operations for privacy risks, implements

safeguards that control for those risks, reviews all new or modified products or services

before implementation for privacy risks, and documents its privacy decisions in a manner

---

[1] EPIC, along with other privacy advocacy groups, publicly urged the FTC to obtain a $2 or $2.2 billion judgment—less than half of what the government ultimately obtained. *See* https://epic.org/privacy/facebook/2011-consent-order/US-NGOs-to-FTC-re-FB-Jan-2019.pdf.

that will provide unprecedented transparency and scrutiny into Facebook's privacy practices.

The FTC order also strengthens external oversight of Facebook, and requires Facebook's compliance officials and CEO to certify regularly that Facebook's privacy program complies with the FTC order—subjecting those officials to potential civil and criminal penalties for making false statements.[2]

EPIC now seeks to intervene to place itself in the government's shoes because it wishes the Stipulated Order were different.  It is well-settled law, however, that government settlements of enforcement actions are accorded deference and may not be disrupted merely because a third party dislikes the settlement terms.  Because EPIC's motion to intervene is legally and procedurally infirm, and would serve only to delay implementation of important protections for American consumers, this Court should deny it.  Moreover, should the Court grant EPIC leave to file an *amicus* brief, the Court need not delay entry of the Stipulated Order with a prolonged briefing schedule or hearing.

## ARGUMENT

EPIC's intervention is improper under either Fed. R. Civ. P. 24(a) or 24(b). EPIC cannot satisfy Rule 24(a)'s threshold requirements to intervene as of right because it does not have Article III standing and cannot meet Rule 24(a)'s other requirements. EPIC also cannot satisfy the factors for permissive intervention under Rule 24(b), and

---

[2] The FTC order also requires, among other things, new obligations requiring: heightened oversight of third-party developers; affirmative express consent for any new uses of facial-recognition technology that materially exceed prior disclosures; prohibitions on using phone numbers obtained for security purposes for advertising; a comprehensive data-security program; and specific data-security obligations related to authentication, encryption, and access controls.

granting such intervention would harm the public by delaying implementation of the

Stipulated Order's important consumer protections.  In addition, while the United States

takes no position on EPIC's request to file an *amicus* brief, there is no need to hold a

hearing on the parties' motion to enter the Stipulated Order.

## I.   EPIC Cannot Satisfy the Rule 24(a) Requirements to Intervene as of Right

A person seeking to intervene as of right under Fed. R. Civ. P. 24(a) must prove

that it has Article III standing and then demonstrate four additional requirements:

"(1) that the application to intervene is timely; (2) the party has a legally protected

interest in the action; (3) the action threatens to impair that interest; and (4) no party to

the action can adequately represent that interest."  *Deutsche Bank Nat'l Tr. Co. v. FDIC*,

717 F.3d 189, 192-93 (D.C. Cir. 2013); *Cigar Ass'n of Am. v. U.S. FDA*, 323 F.R.D. 54,

59 (D.D.C. 2017) (collecting cases).  Here, EPIC does not have Article III standing and

cannot satisfy the Rule 24(a) factors.

### A.  EPIC Lacks Article III Standing

As a threshold matter, EPIC lacks Article III standing to intervene.  The three

elements necessary to establish Article III standing are (1) actual or threatened injury-in-

fact (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S.

___, 136 S. Ct. 1540, 1547 (2016).  EPIC cannot meet these elements.

#### 1.  EPIC Has No Injury-in-Fact

To show injury-in-fact, the proposed intervenor must show the "invasion of a

legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992).  If standing is premised on future injury, the party "must demonstrate a realistic

danger of sustaining a direct injury." *Arpaio v. Obama,* 797 F.3d 11, 21 (D.C. Cir. 2015).

Moreover, as it must establish organizational standing,[3] EPIC also must show that the

resolution of this case will "perceptibly impair[]" its ability to provide services or will

inhibit its daily operations.  *Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905, 919

(D.C. Cir. 2015).

EPIC incorrectly asserts that it will suffer an injury-in-fact from the proposed

settlement because the settlement will resolve complaints EPIC submitted to the FTC

about Facebook, presumably on terms that EPIC dislikes.  EPIC Motion at 1, 11; EPIC

Motion Exhibits 2-3, 6-11.  Such a concern is precisely the type of abstract interest that

falls far short of establishing standing.  *See, e.g.*, *EPIC v. FAA*, 892 F.3d 1249 (D.C. Cir.

2018) (dismissing EPIC's petition for review of FAA drone regulations for lack of

standing because, among other reasons, "[i]mpediments to 'pure issue-advocacy' cannot

establish standing").

*First*, as made clear by the regulation under which EPIC submitted its complaints

to the FTC, EPIC's submissions do not give EPIC a legally protected interest in the

FTC's enforcement decisions.  *See* EPIC Motion at 11.  Specifically, 16 C.F.R. § 2.2

---

[3] EPIC does not identify whether it believes it has organizational or associational
standing, but, because the elements of associational standing do not exist here and EPIC
does not assert any of them, EPIC's motion is presumably based on organizational
standing.  Associational standing exists where the organization seeks to intervene on
behalf of its members, at least one of which must have standing in its own right. *Cigar
Ass'n*, 323 F.R.D. at 64 (organization must also show that the interests it seeks to protect
are germane to its purposes and neither the claim asserted nor the relief requested
requires an individual member to participate in the lawsuit) (citing *NRDC v. EPA*, 489
F.3d 1364, 1370 (D.C. Cir. 2007); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S.
333, 343 (1977)).

allows anyone to file any type of concern with the FTC—either via the FTC's website, a toll-free telephone number, or a signed statement—and makes clear that "[n]o forms or formal procedures are required."  16 C.F.R. § 2.2(a).  The regulation also expressly states that "[t]he person making the complaint or request *is not regarded as a party to any proceeding that might result from the investigation*" that the FTC may conduct following review of the complaint or request.  *Id*. § 2.2(b) (emphasis added).  Thus, the regulation's explicit language does not afford a complainant any legal interest in the outcome of an enforcement action that may relate to its complaint.  Even in cases involving statutes that explicitly give the public a right to sue, *unlike* the FTC Act, courts have held that filing an administrative complaint does not establish the complainants' Article III standing to sue in court.  *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 799 F. Supp. 2d 78, 85 (D.D.C. 2011) (citing *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Cir. 1997)).

 *Second*, even assuming that EPIC had a legally protected interest in having its complaints considered by the FTC, the proposed settlement would not invade such an interest.  The FTC carefully considered and evaluated the complaints submitted by EPIC and others in the course of its investigation and compliance-monitoring work.  *See* Commissioner Statements, *In re Facebook, Inc.*, (July 24, 2019), at 7-8, n.11, *available at* https://www.ftc.gov/system/files/documents/public_statements/1536946/092_3184_faceb ook_majority_statement_7-24-19.pdf.  The FTC, in conjunction with the Department of Justice, then weighed information uncovered by the investigation, along with litigation risks and the benefits of exercising its "broad and legitimate discretion," to enforce the law against Facebook via the proposed settlement.  *Heckler v. Chaney*, 470 U.S. 821,

831-32 (1985); *see also Citizens for Responsibility & Ethics in Wash. v. FEC,* 892 F.3d

434, 438 (D.C. Cir. 2018).   Thus, contrary to EPIC's assertions, the proposed settlement

reflects a consideration of its complaints, so that the United States' discretionary—and

generally not reviewable, *see id.*—decision to settle is no injury to EPIC.

       *Third*, EPIC does not allege—nor could it—that its organizational activities

would be "perceptibly impaired" or that its "daily operations" would be "inhibited" if it is

not permitted to intervene.  *Food & Water Watch*, 808 F.3d at 919.  EPIC does not claim,

for example, that the settlement in this case would inhibit its ability to advocate for

consumers before the FTC, or would force it to incur additional costs to advance its

mission.  EPIC's interest in Facebook-related data-privacy issues and its desire to explain

its generalized views on the settlement to the Court are "abstract concern[s];" they simply

are not a particularized injury sufficient to support Article III standing.  *Nat'l Treasury*

*Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) ("[f]rustration of an

organization's objectives 'is the type of abstract concern that does not impart standing'")

(quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir.

1995)).  EPIC therefore cannot show an injury-in-fact. This alone means it cannot

intervene as of right.[4]

---

[4] EPIC supports its standing argument by citing *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015).  Unlike this case, *Crossroads* specifically implicated the proposed intervenor.  There, the Federal Election Commission ruled in Crossroads' favor, and Public Citizen challenged that ruling.  The D.C. Circuit allowed Crossroads to intervene as a defendant, because Crossroads would be directly affected by the ruling:  if the ruling was upheld, Crossroads would benefit legally, while if it were overturned, Crossroads would be subject to enforcement proceedings.  The potential "loss of beneficial agency action" constituted a concrete injury to Crossroads.  *Id.*

### 2. EPIC's Purported Injury Is Not Redressable

Even had EPIC identified some injury-in-fact, it could not show that such an injury would be redressed by a favorable decision by this Court.  Contending that "[t]he proposed settlement fails to safeguard the interests of Facebook users," EPIC Motion at 1, EPIC presumably wants the Court to reject the proposed settlement in favor of some other penalty against Facebook that would—in EPIC's opinion—safeguard Facebook users' interests.  But it is pure conjecture that rejecting the proposed settlement would lead to a different or better outcome that would "safeguard the interests of Facebook users" in the manner EPIC's prefers.  Indeed, rejecting the settlement could yield multiple other outcomes in litigation or later settlement far worse for consumers.  Not only does EPIC not address these uncertainties, it does not and cannot explain how rejecting the settlement will actually remedy the concerns it expresses or give it the relief it desires.  This is exactly the type of "speculation" and "conjecture" that does not support Article III standing.  *West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017) ("When conjecture is necessary, redressability is lacking.").

\*       \*       \*

EPIC exercised its ability to file complaints with the FTC about Facebook's conduct, as anyone else could do.  The Stipulated Order will have no legal or financial consequences for EPIC.  EPIC is free to continue advocating to the public and the FTC its opinions about the Facebook settlement and any other issues it wishes to raise.  What

EPIC cannot do is become a party to this case.  EPIC lacks standing to intervene, and its motion for intervention as of right should be denied on that basis.[5]

### B.  EPIC Cannot Satisfy Other Rule 24(a) Requirements

Even assuming that EPIC had Article III standing, it has not established Rule 24(a)'s other requirements for intervention.

For one thing, EPIC's Motion does not adequately set forth an "application to intervene" under the first element of Rule 24(a), *Deutsche Bank*, 717 F.3d at 192, because it fails to comply with Rule 24(c) and Local Civil Rule 7(j) by submitting the required "pleading that sets out the claim or defense for which intervention is sought."  The Court and parties are thus left to guess exactly what EPIC wants to assert and how it wants to assert it.  *See United States v. Microsoft Corp.*, No. CIV.A. 98-1232 (CKK), 2003 WL 1191451, at *4 (D.D.C. Feb. 7, 2003) (noting failure to provide Fed. R. Civ. P. 24(c) pleading among reasons for denying intervention).

EPIC's articulated basis for intervention—its complaints to the FTC about Facebook—also does not create a legally protected interest as required under Rule 24(a).  *See Deutsche Bank*, 717 F.3d at 192-93 (describing second and third factors for intervention as of right as "(2) the party has a legally protected interest in the action; [and] (3) the action threatens to impair that interest").  As described above, EPIC's complaints do not accord it any legal rights under the FTC Act—which EPIC cannot enforce, *see Action on Safety & Health v. FTC*, 498 F.2d 757, 765 (D.C. Cir. 1974) (FTC

---

[5] EPIC's lack of Article III standing does not necessarily doom its request for permissive intervention.  *See Defs. of Wildlife & Sierra Club v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013); *but see Deutsche Bank*, 717 F.3d at 194 (Silberman, J., concurring) (stating that a permissive intervenor must establish standing).  As discussed below, other grounds support denying EPIC's request for permissive intervention.

Act contains no private right of action)—and the Stipulated Order does not impair any of its activities or its consumer advocacy before the FTC. The proposed resolution of this case thus does not implicate any of EPIC's legally protected interests.

In addition, EPIC cannot meet Rule 24(a)'s fourth element: showing that the government would not adequately represent the interests of EPIC and its members. When "a government entity is a party and the case concerns a matter of sovereign interest . . . the government is presumed adequately to represent the interests of the public." *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999); *FTC v. Johnson*, 800 F.3d 448, 450 (8th Cir. 2015) (quoting *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997) (when "an existing party to the suit is charged with the responsibility of representing the intervenor's interests, a presumption of adequate representation arises")). Here, as Congress intended, the FTC and the Department of Justice are acting in the public interest to "protect[] consumers" by enforcing the FTC Act and the FTC's administrative orders. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243 (1972); *see also* 15 U.S.C. § 45(a), (*l*).

EPIC cannot rebut this presumption. To do so would require a "strong showing of inadequate representation," such as by demonstrating that "the interest of the would-be intervenor cannot be subsumed within the public interest represented by the government entity." *Curry*, 167 F.3d at 423; *see also Chiglo*, 104 F.3d at 188 (where the "intervenor's only interest in the suit is shared in common with the public," the intervenor must show a "clear dereliction of duty" on the part of the government agency). No such showing is made here: to the contrary, the United States brought this case under the FTC Act's

statutory mandate to protect consumers, and is proposing a historic settlement with

unprecedented civil penalty and privacy-related injunctive relief.

EPIC contends that the United States does not adequately represent its interests

because, by settling this case, the United States is foregoing separate action based on its

complaints about Facebook. *See* EPIC Motion at 5. But "[r]epresentation is not

inadequate simply because . . . the applicant and the existing party have different views

on the facts, the applicable law, or the likelihood of success of a particular litigation

strategy." *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999). EPIC's

"difference of opinion" about the government's litigation strategy and terms of settlement

therefore "does not overcome the presumption of adequate representation." *Jenkins v.*

*Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996).

Indeed, the United States "deserves special consideration and deference as . . . an

adequate representative of the interests of would-be intervenors." *FTC v. First Capital*

*Consumer Mbrshp. Servs., Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001). Because it is

acting on behalf of consumers nationwide—including EPIC and its members—the

presumption that the United States adequately protects EPIC is particularly salient.

*Jenkins*, 78 F.3d at 1275 ("There is a presumption of adequate representation when the

persons attempting to intervene are members of a class already involved in the litigation

or are intervening only to protect the interests of class members."); *see also Johnson*, 800

F.3d at 452 (holding that interests of consumers seeking intervention were "subsumed

within the public interest because the FTC, on behalf of consumers, seeks relief for the

same deceptive and unconscionable business practices alleged by the consumers," and

hence consumers failed to make "necessary strong showing of inadequate

representation").  EPIC's Rule 24(a) motion accordingly must fail.

## II.  The Court Should Deny EPIC Permissive Intervention Under Rule 24(b)

EPIC fares no better with permissive intervention than it does with intervention as

of right, and this Court should exercise its discretion to deny EPIC's motion for

permissive intervention.  Fed. R. Civ. P. 24(b).  In considering a motion for permissive

intervention where, as here, a federal statute does not confer a conditional right to

intervene, this Court considers whether the proposed intervenor "(1) has an independent

ground for subject-matter jurisdiction, (2) has made a timely motion, and (3) has a claim

or defense that has a question of law or fact in common with the main action."  *Nat'l*

*Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C.

2007).

Although guided by these factors, permissive intervention is at base an

"inherently discretionary enterprise," and this Court may deny the motion even if the

movant has an independent jurisdictional basis to bring its own suit.  *EEOC v. Nat'l*

*Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  The Court's exercise of

discretion under Rule 24(b) also requires it to consider "whether the intervention will

unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P.

24(b)(3).

Here, EPIC incorrectly argues that it has an independent ground for subject matter

jurisdiction—the federal question statute, 28 U.S.C. § 1331—and that its claims have a

common question of law or fact with this case.  EPIC Motion at 17.  Because there is no

private right of action under the FTC Act, however, EPIC could not invoke 28 U.S.C.

§ 1331 federal question jurisdiction to bring a case under the FTC Act. *See Action on*

*Safety & Health*, 498 F.2d at 765; *Hardaway v. Syneron, Inc.*, 928 F. Supp. 2d 217, 218

(D.D.C. 2013) (plaintiffs could not invoke the FTC Act to establish federal question

subject matter jurisdiction). Nor does EPIC have any right to enforce the FTC's 2012

administrative order against Facebook. *See SEC v. Prudential Sec.*, 136 F.3d 153, 158-59

(D.C. Cir. 1998) (collecting cases and holding that only parties to a government consent

decree may seek enforcement of it absent a stipulation otherwise). Thus, any FTC Act

claim that EPIC might try to bring—whether in this or another case—would be dismissed

for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1); *Hardaway*, 928 F. Supp.

2d at 218. For similar reasons, EPIC has no "claims" or "defenses" in common with this

case.

EPIC's participation in this case also is not essential for the "just and equitable

adjudication of the legal question[s] presented." *Sierra Club v. McCarthy*, 308 F.R.D. 9,

12 (D.D.C. 2015). The FTC and the Department of Justice have substantial, exclusive

experience and expertise not only in enforcing the FTC's administrative orders, but also

in litigating and settling such cases to benefit consumers and the public at large.

Furthermore, allowing EPIC to intervene in this case would "unduly delay or

prejudice the adjudication of the original parties' rights." *See* Fed. R. Civ. P. 24(b)(3).

The 200 million-plus members of the American public with Facebook accounts are

waiting for this settlement to be finalized so that Facebook will implement measures to

protect their data. It would be inefficient and highly disruptive to allow any interested

private party to intervene and hijack this matter merely because it disagrees with the

result. *See, e.g.*, *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 70 (D.D.C. 2004) ("The

policy of favoring consent decrees "has particular force where … a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement").  Indeed, EPIC's request for a separate briefing and hearing schedule to air its ideas signals the disruption that will ensue should this Court permit EPIC to become a party and attempt to commandeer this case to pursue its own organizational agenda.  The United States asks that the Court deny EPIC's motion for permissive intervention.

### III.  If the Court Grants EPIC Leave to File an *Amicus Curiae* Brief, the Filing Should Be As Soon As Possible

The United States takes no position on EPIC's alternative request to share its views in an *amicus* brief, but it respectfully asks that any brief allowed be required as soon as possible.  This request is grounded in a concern that a lengthy briefing schedule will delay the relief sought for consumers in the proposed settlement.

On the merits of EPIC's *amicus* request, this Court's impending decision on the parties' motion to enter the Stipulated Order is governed by a highly deferential standard of review.  *See In re Idaho Conserv. League*, 811 F.3d 502, 515 (D.C. Cir. 2016) (holding that, in approving a settlement, the Court "need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy").  EPIC's motion does not meaningfully confront this standard, so the United States does not know whether the proposed *amicus* brief will be helpful or not.[6]  One topic that EPIC apparently wants to discuss is the 26,000 complaints against Facebook that EPIC claims

---

[6] EPIC's filing failed to comply with Local Civil Rules 7(m) and 7(o).  EPIC neither consulted with the parties about their position on its interest in filing an amicus brief, nor briefed the specific reasons it wishes to appear as an *amicus*.

the FTC did not adequately address—but the United States is doubtful that such a

discussion will be particularly relevant.[7]  *See* EPIC Motion at 21-22; *see also WildEarth*

*Guardians v. Zinke*, 368 F. Supp. 3d 41, 59 (D.D.C. 2019) (denying motion to file amicus

that "does not have 'unique information or perspective that can help the [Court]'").

## IV. The Court Need Not Hold a Hearing

Regardless of how the Court rules on EPIC's motion to intervene or to file an

*amicus* brief, it need not hold a hearing before entering the proposed settlement.  *United*

*States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992) ("It is within

the sound discretion of the trial court to decide whether an evidentiary hearing is

necessary before ruling on a proposed consent decree."); *United States v. Cannons Eng'g*

*Corp.*, 899 F.2d 79, 94 (1st Cir. 1990) (affirming district court decision not to hold

hearing on confirmation of consent decree and stating "[w]e start with the proposition

that motions do not usually culminate in evidentiary hearings").

The United States need only show that the proposed settlement is "within the

reaches" of the public interest for this Court to approve the settlement.  *United States v.*

*W. Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990) (the district court's function in deciding

whether to approve a consent decree "is not to determine whether the resulting array of

rights and liabilities is the one that will best serve society, but only to confirm that the

resulting settlement is within the *reaches* of the public interest." (emphasis in original)).

---

[7] EPIC's suggestion that these 26,000 individual consumer complaints demonstrate the
"full range of public interest in this matter" and are "directly relevant" to the Court's
consideration of the proposed Consent Decree, EPIC Motion at 17, is inaccurate. A
review of the complaints suggests that a substantial majority have nothing to do with
Facebook's privacy practices and instead involve consumer-specific issues such as
consumers having trouble logging into their accounts.

As discussed above and in the parties' Consent Motion to enter the Stipulated Order (ECF No. 4), the proposed settlement here readily clears that low bar.  In securing a massive civil penalty and strong, enforceable data-privacy relief for Facebook users and users of Facebook-owned companies for the next two decades, the proposed settlement does more for the public interest than any prior data-privacy settlement in the history of the United States.  Thus, while EPIC's brief demonstrates that it may have a difference of opinion about the *best* way to settle allegations against Facebook, there is no disagreement—and no hearing is necessary to prove—that the proposed settlement at least is "within the reaches" of the public interest.  *See W. Elec. Co.*, 900 F.2d at 309; *see U.S. SEC v. Citigroup Glob. Mkts.*, 673 F.3d 158, 164 (2d Cir. 2012) ("[T]he scope of a court's authority to second-guess an agency's discretionary and policy-based decision to settle is at best minimal.").

EPIC's request for a hearing also appears improperly borrowed from the class-action context, in which fairness hearings consider the arguments of objecting class members.  That context is inapposite here.  *See U.S. SEC v. Citigroup Glob. Mkts.*, 752 F.3d 285, 294 (2d Cir. 2014) (review applied to class action settlements "inapt" in the context of government consent decree).  This case implicates only an executive branch agency's discretion about how to enforce the law that Congress assigned it to enforce— and not the proposed settlement's effect on private rights.  A hearing to consider the settlement's effect on private rights and private citizens' complaints to the FTC is therefore unnecessary.

## CONCLUSION

The United States opposes EPIC's motion to intervene under Rules 24(a) or 24(b)

and respectfully requests that the Court deny it, as well as EPIC's request for a hearing.

The United States takes no position on EPIC's request to file a brief as *amicus curiae,* but

asks that, if the Court grants the request, it order such brief to be filed as soon as possible.


DATED:  August 5, 2019


**FOR THE UNITED STATES:**

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

DAVID M. MORRELL
Deputy Assistant Attorney General

GUSTAV W. EYLER (997162)
Director
Consumer Protection Branch

ANDREW E. CLARK
Assistant Director

*/s/ Lisa K. Hsiao*_____
LISA K. HSIAO (444890)
Senior Litigation Counsel
PATRICK R. RUNKLE
JASON LEE
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
Telephone:  (202) 616-0219
Fax: (202) 514-8742
Lisa.K.Hsiao@usdoj.gov
Patrick.R.Runkle@usdoj.gov
Jason.Lee3@usdoj.gov

*Of Counsel:*

JAMES A. KOHM (426342)
Associate Director for Enforcement

LAURA KOSS (441848)
Assistant Director for Enforcement

ROBIN L. MOORE (987108)
REENAH L. KIM (478611)
LINDA HOLLERAN KOPP (472355)
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, NW,
Mail Stop CC-9528
Washington, DC 20580