**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FACEBOOK INC.,<br><br>    Defendant. | Civ. Action No. 1:19-cv-02184 |

**REPLY OF THE ELECTRONIC PRIVACY INFORMATION CENTER TO
RESPONSES OF UNITED STATES AND FACEBOOK TO MOTION TO INTERVENE**

Neither the Government nor Facebook oppose EPIC's motion to participate in this case

as *amici*, or EPIC's motion that the Court allow other interested parties the opportunity to

participate in this case.   The Government and Facebook also do not contest that the Court must

closely scrutinize the proposed settlement. The only issues in dispute are (1) whether the Court

should grant EPIC's motion to join as an intervenor under FRCP 24[1] and (2) whether the Court

should review the proposed Stipulated Order ("FTC-Facebook Consent Decree") under the

fairness and public interest standard established by the D.C. Circuit in *Citizens for a Better*

*Environment v. Gorsuch*, 718 F.2d 1117, 1125–26 (D.C. Cir. 1983), *see also In re Idaho*

*Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016) (citing *Citizens for a Better*

*Environment*, 718 F.2d at 1125–26), and hold a hearing on that issue.

District courts have "wide latitude" to grant intervention, especially permissive

intervention under Rule 24(b). *In re Endangered Species Act Sec. 4 Deadline Litigation-MDL*

---

[1] Neither party opposes EPIC's alternative request to participate as *amicus*. The Court should accordingly grant that relief and set a briefing schedule for amicus filings if it denies EPIC's motion to intervene.

*No. 2165*, 704 F.3d 972, 980 (D.C. Cir. 2013) (quoting *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042 (D.C. Cir. 1998)). The Government incorrectly asserts that an "independent ground for subject-matter jurisdiction" is required. United States Opp'n 12. That is not the case, *In re Endangered Species Act*, 704 F.3d at 980, and, even if it were, EPIC does have Article III standing to challenge the Federal Trade Commission's final agency action closing more than 26,000 open complaints (including EPIC's complaints) against Facebook in an arbitrary, capricious, and unlawful manner. 5 U.S.C. § 706(2)(A). The Commission's unprecedented decision to offer the largest social media company in the world immunity for all violations of the FTC Act and the prior Consent Order committed over a seven-year period raises significant fairness and arbitrariness concerns that justify EPIC's intervention and the Court's close scrutiny. The Court should accordingly grant EPIC's motion for leave, set a briefing schedule for EPIC and other interested parties to address the fairness and adequacy of the Consent Decree, and hold a hearing to address those issues.

I.     **The Court must evaluate the fairness, adequacy, and public interest of the proposed consent decree, and a hearing with full participation by interested parties would facilitate that evaluation.**

The Government fails in its opposition to address the requirement that courts "assess whether [a proposed consent decree] fairly and reasonably resolves the controversy in a manner consistent with the public interest." *United States v. District of Columbia*, 933 F. Supp. 42, 46 (D.D.C. 1996) (citing *Citizens for a Better Environment*, 718 F.2d at 1126). While it is true that a court does not "substitute its judgment for that of the parties to the decree," the Court must "assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *Id*. (citation omitted). The consent decree must be (1) "both procedurally and substantively fair;" (2) "adequate, reasonable, and appropriate" "from an objective point of view," focusing "on the extent to which the decree is confined to the dispute

between the parties and whether the decree adequately accomplishes its purported goal;" and (3) "consistent with the public interest." *Appalachian Voices v. McCarthy*, 38 F. Supp. 3d 52, 55–57 (D.D.C. 2014).

EPIC has raised concerns about the fairness, adequacy, and public interest in the proposed FTC-Facebook Consent Decree. In opposition, the Government focuses only on the public interest prong, asserting that there is no disagreement about the public interest in the proposed consent decree. But EPIC *does* disagree that the proposed consent decree is in the public interest. And the Government's reliance on *United States v. Western Electric Company*, 900 F.2d 283 (D.C. Cir. 1990), is misplaced because they have quoted the decision out of context. The operative test in the D.C. Circuit for a court reviewing a proposed consent decree is the fairness and public interest test outlined in *Citizens for a Better Environment*, 718 F.2d at 1125–26. The court in *Western Electric* did not call this standard into question. Indeed, the court was not reviewing a new agency consent decree at all, but instead was considering whether to modify an earlier consent decree under the terms *established by a judge* in the original antitrust case against AT&T. *Western Electric,* 900 F.2d at 289. The phrase "within the reaches of the public interest" refers to the more relaxed standard that the court found could be applied to certain types of modifications to antitrust consent decrees. *Id*. at 302. That test is simply not applicable here.

The Government also claims that EPIC's request for a hearing should be disallowed because it calls for judicial review similar to that in the class action context. But courts are routinely required to assess the fairness, adequacy, and public interest of agency consent decrees, and routinely hold hearings to assist in that assessment, outside of class action. *See, e.g., Citizens for a Better Environment,* 718 F.2d at 1120; *City of Colton v. Am. Promotional Events, Inc.*, 281

F. Supp. 3d 1099, 1010 (C.D. Cal. 2017); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liab. Litig.*, MDL No. 2672, 2017 WL 2214655 (N.D. Cal. May 17, 2017); *United States v. Google Inc.,* No. 12-04177, 2012 WL 5833994 (N.D. Cal. Nov. 16, 2012); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 834 F. Supp. 2d 1004, 1004 (D. Haw. 2011); *Northeast Iowa Citizens for Clean Water v. AgriProcessors, Inc.*, 469 F. Supp. 2d 666, 671 (N.D. Iowa 2006); *Envtl. Tech. Council v. Browner*, Nos. 94-2119, 94-2346, 1995 WL 238328, *1 (D.D.C. Mar. 8, 1995). A hearing would aid the Court and interested persons in understanding the implications of the settlement. For instance, the effect of the settlement on complaints brought under certain statutory provisions, such as COPPA, is currently unclear.

## II.    EPIC satisfies all requirements to intervene as of right under FRCP 24(a).

### A.    EPIC has a legally protected interest that would be invaded by approval of the Stipulated Order.

Contrary to the Government and Facebook's assertions, EPIC does not claim a right to enforce the FTC Act or the 2012 Consent Order. EPIC does, however, have a right to challenge agency action under the Administrative Procedures Act ("APA"). Under the APA, courts have an obligation to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). EPIC's legal interest here is twofold: (1) the FTC's decision to grant Facebook immunity for unlawful business practices that EPIC identified in complaints to the agency without addressing those practices in the Consent Decree, or even acknowledging them in the complaint, is arbitrary and capricious and harms both EPIC as an organization and the privacy interests of its members; and (2) the FTC's decision to characterize the Stipulated Order as an amendment to the 2012 Consent Order, and not as a new consent agreement requiring the

Commission to seek public comment, 16 CFR § 2.34(c) ("Public comment: Promptly after its acceptance of the consent agreement, the Commission will place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify, for the receipt of comments or views from any interested person. At the same time, the Commission will place on the public record an explanation of the provisions of the order and the relief to be obtained thereby and any other information that it believes may help interested persons understand the order. The Commission also will publish the explanation in the Federal Register.") is an unlawful agency action that deprives EPIC and others of the opportunity to comment on the proposed Consent Decree.

> 1. **The Stipulated Order is arbitrary and capricious because the Commission seeks to grant Facebook immunity from any unlawful practices in prior consumer complaints, without addressing or even identifying the prior complaints.**

The FTC's decision to grant a broad liability release to Facebook, after having received thousands of complaints alleging that the company engaged in unfair and deceptive business practices, is a final agency action subject to judicial review. This is not a "decision not to initiate an enforcement action" exempt from judicial review under *Heckler v. Chaney*, 470 U.S. 821 (1985). The proposed Consent Decree, if adopted, would fundamentally alter the legal rights and responsibilities of Facebook and of EPIC and other complainants who previously identified business practices that violated the FTC Act and the 2012 Consent Agreement. The Consent Decree, like a refusal to initiate rulemaking, is "less frequent, more apt to involve legal as opposed to factual analysis, and subject to special formalities, including a public explanation." *Mass. v. EPA*, 549 U.S. 497, 527 (2007). Like the petition denial in *Mass. v. EPA*, the proposed Consent Decree also arises out of complaints that EPIC and others "had an undoubted procedural

right to file in the first instance." *Id.*; *see* 16 C.F.R. § 2.2. The FTC's decision to issue the stipulated Consent Decree is therefore subject to judicial review, and the agency must establish that it had a "reasoned explanation" for its actions. *Mass. v. EPA*, 549 U.S. at 534.

A "fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action" and warrants reversal. *Amerijet Intern., Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal quotation omitted); accord *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4–5 (D.C. Cir. 1987). When denying a petition, an agency must give "[p]rompt notice . . . accompanied by a brief statement of the grounds for denial." 5 U.S.C. § 555(e) (2012). This Court has recently reaffirmed that a Section 555(e) statement must include, at minimum, an explanation of why the agency "chose to do what it did." *Amerijet*, 753 F.3d at 1350 (internal quotation omitted). The Court must ensure that an agency "has adequately explained the facts and policy concerns it relied on" in the order, and the Court must be satisfied "that those facts have some basis in the record." *Defs. of Wildlife v. Gutierrez*, 532 F.3d 913, 919 (D.C. Cir. 2008).

The Stipulated Order contains a blanket release of liability for business practices that are not addressed, or even discussed, in the Complaint. This liability waiver is a substantial departure from past practice, *see* Dissenting Statement of Commissioner Rebecca Slaughter, *In re Facebook, Inc.*, Commission File No. 1823109 at 14 (July 24, 2019)[2], and is "arbitrary and capricious" with regard to the thousands of consumer privacy complaints currently pending before the Commission. *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1047 (D.C. Cir. 2002) ("although the [National Television Station Ownership] Rule is not unconstitutional, the Commission's decision to retain it was arbitrary and capricious and contrary to law because the

---

[2] https://www.ftc.gov/public-statements/2019/07/dissenting-statement-commissioner-rebecca-kelly-slaughter-regarding-matter.

Commission failed to give an adequate reason for its decision, . . .") *opinion modified on reh'g on other grounds*, 293 F.3d 537 (D.C. Cir. 2002); *see also Hermes Consol., LLC v. EPA*, 787 F.3d 568, 576 (D.C. Cir. 2015) ("An agency must 'provide reasoned explanation for its action,' which normally requires 'that it display awareness that it is changing position.'"). The FTC has not provided any reasoned explanation for rejecting the complaints that EPIC and other consumer groups submitted, nor has the Commission offered any reasoned explanation for granting a broad immunity to Facebook for past violations. It is arbitrary and capricious for the Commission to indemnify Facebook for violations, currently pending before the Commission, that the Commission has failed to acknowledge.

In her dissent to the proposed settlement, Commissioner Slaughter noted that "in every recent major federal settlement, if there was a liability release, it was cabined to the offenses described in the complaint." Dissenting Statement of Commissioner Rebecca Slaughter, *In re Facebook, Inc.*, Commission File No. 1823109 at 14 (July 24, 2019). Commissioner Slaughter cited to six prior consent decrees that limit the scope of liability release to the conduct described in the complaint. Consent Decree ¶¶ 61, 64, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico* on April 20, 2010, No. 2:10-md-02179-CJB-SS (E.D. La. filed Oct. 5, 2015);[3] Stipulation and Order of Settlement and Dismissal with Prejudice at 3, *United States v. Wells Fargo Bank*, No. 1:12-cv-07527-JMF (S.D.N.Y. filed Apr. 8, 2016)[4]; Stipulation and Order of Settlement and Dismissal at 3, ¶¶ 6, 10, *United States ex rel. Hunt v. Citigroup*, No. 1:11-cv-05473-VM (S.D.N.Y. filed Feb. 15, 2012)[5]; Settlement Agreement at 2–5, 8–11, *United States ex rel. Thorpe v. GlaxoSmithKline*, No. 11-10398-RWZ (D. Mass. filed July 2, 2012)[6];

---

[3] https://www.epa.gov/sites/production/files/2016-02/documents/deepwaterhorizon-cd.pdf
[4] https://www.justice.gov/opa/file/839796/download.
[5] https://www.justice.gov/archive/usao/nys/pressreleases/February12/citi/citimortgageincsettlementagreement.pdf
[6] https://www.justice.gov/sites/default/files/opa/legacy/2012/07/02/avandia-agreement.pdf.

Consent Judgment at Ex. E ¶ B, *CFPB v. Ocwen Fin.*, No. 1:13-cv-02025-RMC (D.D.C. filed Feb. 26, 2014)[7]; Consent Decree ¶¶ 203–204, 211, United States v. Chevron U.S.A., No. 3:03-cv-04650-CRB (N.D. Cal. filed June 29, 2005).[8]

The statement from Chairman Simons, Commissioner Phillips, and Commissioner Wilson attempt to respond to this argument with the assertion that "Releases are a practical reality of settlements and are used as bargaining chips during negotiations to extract the desired relief from a defendant." Statement of Statement of Chairman Joe Simons and Commissioners Noah Joshua Phillips and Christine S. Wilson, *In re Facebook, Inc.*, Commission File No. 1823109 at 7 (July 24, 2019).[9] This statement alone is insufficient to support such a broad release. Reasoned decisionmaking requires more than a simple statement of an agency's determination. "[C]onclusory statements will not do; an agency's statement must be one of reasoning." *Amerijet*, 753 F.3d at 1350 (internal quotation omitted). Sparse, conclusory statements are "insufficient to assure a reviewing court that the agency's refusal to act was the product of reasoned decisionmaking." *Am. Horse*, 812 F.2d at 6. In addition, an agency's "reasons for action or inaction must conform to the authorizing statute." *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007).

Neither of the prior releases referenced in the majority statement are as broad as the Facebook release. The release in *Barclays Capital* was limited to conduct alleged in the complaint and similar conduct related to other residential mortgage-backed securities deals. Agreement for Compromise Settlement and Release, *United States v. Barclays Capital, Inc.*, No. 16-CV-7057(KAM/JO) (E.D.N.Y. Apr. 24, 2018), ECF No. 137. Similarly, the release in *Wells*

---

[7] https://files.consumerfinance.gov/f/201403_cfpb_entered-judgment-with-exhibits_ocwen.pdf
[8] https://www.epa.gov/sites/production/files/documents/chevron-cd.pdf.
[9] https://www.ftc.gov/public-statements/2019/07/statement-chairman-joe-simons-commissioners-noah-joshua-phillips-christine.

*Fargo* was limited to conduct alleged in the complaint and similar conduct relating to single-family residential FHA loans. *United States v. Wells Fargo Bank, N.A.*, No. 12CIV7527JMFJCF (S.D.N.Y. Apr. 8, 2016), ECF No. 320. Indeed, Commissioner Slaughter cited the *Wells Fargo* case in dissent because the Commission in that case did limit the scope of conduct released. Dissenting Statement of Commissioner Rebecca Slaughter, *In re Facebook, Inc.*, Commission File No. 1823109 at 14 note 36 (July 24, 2019). [10]

If the commission were to follow the precedent of the two cases cited, it would cabin the release to certain allegations or conduct, such as violations related to facial recognition, explicitly described in the Stipulated Order. But instead, the stipulated order resolves all claims that Facebook violated the 2012 Consent Order and all consumer-protection claims that Facebook violated Section 5 of the FTC Act known by the FTC prior to June 12, 2019. Stipulated Order, ECF No. 2-1, regardless of whether the agency actually investigated the claims it had received.

The unjustifiably broad release grants Facebook immunity for behavior described in the EPIC complaints without addressing the behavior in the Complaint or Stipulated Order. For example, the FTC did not address EPIC's complaint concerning Facebook's manipulation of users' News Feeds for psychological research. Complaint, *In re Facebook, Inc.* (July 3, 2014). [11] The FTC also did not address EPIC's complaints concerning WhatsApp. Complaint, *In re WhatsApp, Inc.* (Mar. 6, 2014). [12] Complaint, *In re WhatsApp, Inc.* (Aug 29, 2016). [13] The Commission's arbitrary and capricious release of Facebook's liability for the business practices

---

[10] https://www.ftc.gov/public-statements/2019/07/dissenting-statement-commissioner-rebecca-kelly-slaughter-regarding-matter.
[11] https://epic.org/privacy/internet/ftc/facebook/psycho/Facebook-Study-Complaint.pdf.
[12] https://epic.org/privacy/ftc/whatsapp/WhatsApp-Complaint.pdf.
[13] https://epic.org/privacy/ftc/whatsapp/EPIC-CDD-FTC-WhatsApp-Complaint-2016.pdf.

identified in EPIC's complaints is an invasion of EPIC's legally protected interests under the APA.

     2.     **The Stipulated Order is unlawful because it contains a new consent agreement that does not adhere to APA comment and review process**

The FTC's own regulations require the Commission to place consent agreements on the public record for a thirty-day comment period. 16 C.F.R. § 2.34(c) ("Public Comment"). The proposed Stipulated Order in this case is both monetary penalty for violations of the 2012 Consent Order and a new consent agreement (described as a "modification"). The FTC in its Complaint alleges new violations of Section 5 by Facebook—e.g. Count 6 of the Complaint alleges that Facebook engaged in deceptive practices regarding use of covered information provided for account security. The FTC cannot simply sidestep the public comment process by routing its consent order through a settlement agreement.

EPIC routinely comments on FTC consent agreements, making recommendations on changes to the agreement that would improve user privacy. EPIC submitted comments to urge the FTC to strengthen the original Facebook order. EPIC, Comments In re Facebook, Inc., FTC File No. 092 3184 (2011).[14] Specifically, EPIC's recommended that the FTC require Facebook to (1) allow users to access all of the data that Facebook keeps about them; (2) cease creating facial recognition profiles without users' affirmative consent; (3) make Facebook's privacy audits publicly available to the greatest extent possible; and (4) cease secret post-log out tracking of users across websites. But the FTC adopted the order without any modifications to the order. However, the FTC has modified other orders concerning privacy in response to public

---

[14] https://epic.org/privacy/facebook/Facebook-FTC-Settlement-Comments-FINAL.pdf

comments. *In the Matter of Uber Technologies, Inc.* Decision and Order, Docket No. C-4662 (Oct. 25, 2018).[15]

The FTC's attempt to circumvent the public comment process is unlawful and denies EPIC and others the opportunity to submit comments on the consent agreement.

### B.     EPIC has Article III standing to intervene as of right.

Because EPIC has demonstrated a legally protected interest under Rule 24(a), EPIC also has Article III standing. *See, e.g., Wildearth Guardians v. Salazar,* 272 F.R.D. 4, 13 n. 5 (D.D.C. 2010) ("[W]hen a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa."*). EPIC can also meet the requirements of Article III standing because it will (1) suffer an injury in fact, (2) that is fairly traceable to entrance of the Stipulate Order, and (3) that is likely to be redressed by a favorable decision by this Court. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As an organization, EPIC "can assert standing on its own behalf, on behalf of its members or both." *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015). Here, EPIC, as an organization, will suffer two injuries if the Stipulated Order is entered: (1) EPIC will be prevented from seeking redress through the administrative complaint process for Facebook's violations of Section 5 of the FTC Act contained in the proposed settlement's broad liability release; and (2) EPIC will be deprived of the opportunity to submit comments on the proposed settlement, as required by the FTC's regulations.

As a preliminary matter, the Government's assertion that the decision to settle with Facebook is "generally not reviewable" and thus cannot result in injury to EPIC does not comport with Circuit precedent on judicial approval of agency consent decrees, as discussed in

---

[15] https://www.ftc.gov/system/files/documents/cases/152_3054_c-4662_uber_technologies_revised_decision_and_order.pdf

Section I above. This Court is required to review proposed consent decrees for fairness, adequacy, and consistency with the public interest. *Citizens for a Better Env't*, 718 F. 2d at 1126 (citing *United States v. Trucking Employers, Inc.,* 561 F.2d 313, 317 (D.C. Cir. 1977). While "the function of the reviewing court is not to substitute its judgment for that of the parties to the decree," *United States v. District of Columbia*, 933 F. Supp. at 46-47, the Court "must eschew any rubber stamp approval in favor of an independent evaluation." *Id.* at 47 (quoting *United States v. Hooker Chemicals and Plastics Corporation,* 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd,* 749 F.2d 968 (2d Cir. 1984)). Under this standard, this Court must assure itself that the proposed settlement is consistent with the APA, as it is difficult to see how a settlement that violates the APA could be fair, adequate, or consistent with the public interest. Thus, the standard of review does not deprive EPIC of a legal interest in this case.

Adoption of the Stipulated Order will cause EPIC, as an organization, to suffer a "concrete and demonstrable injury to [its] activities," that goes beyond "a mere setback to [EPIC's] abstract social interests." *PETA*, 797 F.3d at 1093. The FTC's proposed Consent Decree grants Facebook broad immunity for past violations of the FTC Act and the 2012 Consent Order without addressing the claims that provide the basis for the release of liability. If the release goes into force, then EPIC will be unable to file future complaints concerning Facebook's unlawful business practices during the period of 2012 to 2019. The FTC's proposed Consent Decree also bypasses the APA's comment and review process, injure EPIC's interests, and cause EPIC to "use[] its resources to counteract that harm." *Id*.

First, the overly broad liability release impedes EPIC's ability to prevent invasions of privacy through the administrative complaint process. EPIC's mission is to "protect privacy,

freedom of expression, and democratic values in the information age." EPIC, *About* (2019).[16]
EPIC routinely submits complaints to the FTC concerning the privacy-violating behavior of
Facebook and other businesses, and the FTC often acts upon these complaints in enforcement
actions. The grant of immunity here means that the FTC has foreclosed, *forever*, any
enforcement action on the matters detailed in EPIC's previously-submitted complaints, as well as
those contained in 26,000 other consumer complaints. The release also immunizes Facebook
from any new complaints that EPIC might seek to file regarding unlawful past conduct. As a
result of the FTC's release, EPIC, as an organization, would suffer an injury similar to the one in
*PETA,* where this Circuit found that PETA had organizational standing because the USDA's
refusal to apply the Animal Welfare Act to birds "precluded PETA from preventing cruelty to
and inhumane treatment of these animals through its normal process of submitting USDA
complaints." *Id*. at 1094.

      EPIC will also be denied "a means by which to seek redress" for any of Facebook's
Section 5 violations detailed in the previous complaints, and will no longer have a means of
bringing these "violations to the attention of the agency charged with preventing" them. *Id*. at
1095. EPIC instead will be forced to redirect resources to researching and pursuing other means
of redressing Facebook's privacy-invading behavior and to mitigating the harm, such as public
education on the behavior and how to avoid harm, pressure campaigns to directly force Facebook
to stop the behavior, state-level enforcement of consumer privacy laws, and legislative action to
create alternative means to enforce the law against Facebook. These expenditures will thus be
undertaken "in response to, and to counteract, the effects" of the broad liability waiver "rather

---

[16] https://epic.org/epic/about.html.

than in anticipation of litigation." *Equal Rights Ctr. v. Post Properties, Inc.*, 633 F. 3d 1136, 1140 (D.C. Cir. 2011).

EPIC's injury is fairly traceable to the proposed settlement because it is through the settlement that the FTC waives its authority to enforce Section 5 against Facebook for behavior contained in complaints submitted prior to June 12, 2019. EPIC would not have to expend resources pursuing alternative means of enforcement or mitigation of harm if the FTC did not waive its right to regulate Facebook's relevant behavior. This Court can also redress EPIC's injury by not approving the Stipulated Order with a broad liability release, as EPIC will continue to be able to bring Facebook's relevant Section 5 violations to the attention of the Commission.

The grant of immunity here is different than a refusal to take enforcement action. In the latter situation, the FTC could respond to a new complaint or new evidence, or simply exercise its discretionary authority to act. With a grant of immunity, no new complaint from EPIC will re-establish the FTC's authority to act upon even the most obvious and egregious of violations. This case is thus distinguishable from cases where an agency has chosen not to enforce. *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("An agency's decision not to prosecute or enforce … is a decision generally committed to an agency's absolute discretion.") It is also distinguishable from *EPIC v. FAA*, 829 F.3d 1249 (D.C. Cir. 2018), as EPIC's inability to file complaints is not an "abstract social interest" because EPIC not only alleges "impediments to 'pure issue-advocacy,'" but prevention from pursuing a key programmatic activity: seeking FTC redress for Facebook Section 5 violations within the broad liability release through the administrative complaint process. *Id*. at 1255 (citations omitted).

EPIC, as an organization, is also be harmed because it is deprived of an opportunity to comment on the settlement agreement through the FTC's comment and review process. As

described above, the FTC is required to "place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify, for the receipt of comments or views from any interested person." 16 C.F.R. § 2.34(c). EPIC has a long history of commenting on proposed FTC settlements. *See, e.g.,* Comments of EPIC, In the Matter of Uber Technologies, Inc., Fed. Trade Comm'n, FTC File No. 153-3054 (May 14, 2018);[17] Comments of EPIC, In the matter of PayPal, Inc., Fed. Trade Comm'n, FTC File No. 162-3102 (Mar. 29, 2018);[18] Comments of EPIC, In the Matter of Uber Technologies, Fed. Trade Comm'n, FTC File No. 152-3054 (Sep. 15, 2017);[19] Comments of EPIC, In the Matter of Snapchat, Inc., Fed. Trade Comm'n, FTC File No. 132-3078 (June 9, 2014);[20] Comments of EPIC, On Rent-to-Own Computer Spying Proposed Settlements, Fed. Trade Comm'n, Docket No. FTC File No. 112-3151 (October 25, 2012);[21] Comments of EPIC, In the Matter of Facebook, Inc., Fed. Trade Comm'n, FTC File No. 092-3184 (Dec. 27, 2011);[22] Comments of EPIC, In the Matter of Reed Elsevier, Inc. and Seisint, Inc. Consent Order; In the Matter of The TJX Companies, Inc. Consent Order, Fed. Trade Comm'n, Docket No. 052-3094; 072-3055 (April 28, 2008);[23] Comments of EPIC, In the Matter of Microsoft Consent Order, Fed. Trade Comm'n, FTC File No. 012-3240, M03 (September 9, 2002).[24] EPIC would comment on the proposed settlement here if it were submitted through the process required by law. Submitting these comments is an important aspect of EPIC's program to advocate for consumer privacy interests before the FTC.

---

[17] https://epic.org/privacy/internet/ftc/uber/EPIC-FTC-Revised-Uber-Settlement.pdf.
[18] https://epic.org/apa/comments/EPIC-FTC-PayPal-ConsentOrder.pdf.
[19] https://epic.org/apa/comments/EPIC-FTC-Uber-Settlement.pdf.
[20] https://epic.org/privacy/ftc/FTC-Snapchat-Cmts.pdf.
[21] https://epic.org/privacy/ftc/EPIC-Designerware-Cmts.pdf.
[22] https://epic.org/privacy/facebook/Facebook-FTC-Settlement-Comments-FINAL.pdf.
[23] https://epic.org/apa/comments/042808_ftc.pdf.
[24] https://epic.org/privacy/consumer/microsoft/ordercomments.html.

Because the FTC can modify or withdraw the agreement in response to comments received, 16 C.F.R. § 2.34(e), the Commission's decision not to follow its own regulation deprives EPIC of an opportunity to influence the FTC's decision making on the proposed settlement. In response to this deprivation, EPIC has had to pursue alternative means to be heard, including this motion to intervene, which would not have been necessary had the FTC opened the settlement to public comment. An order by this Court directing the FTC to submit the proposed settlement for public comment would clearly remedy EPIC's injury as EPIC would have the opportunity to submit comments.

### C.      EPIC satisfies the other requirements of FCRA 24(a).

EPIC also satisfies the other requirements for intervention as of right, namely, EPIC's motion is timely and the FTC would not adequately represent EPIC's interests. Neither the Government nor Facebook challenge the timeliness of EPIC's motion under FCRA 24(a). The Government argues that it adequately represents EPIC's interests because there is a presumption that the government adequately represents the interests of the public under the circumstances here. But surely the Government cannot adequately represent EPIC in its claims that the *Government* has acted contrary to the law in releasing Facebook from liability for behavior not addressed in the Complaint or Consent Decree, or for violating its own regulations in not seeking public comment on the settlement.

### D.      EPIC also meets the requirements of permissive intervention.

EPIC satisfies the requirements for permissive intervention because EPIC has (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action.

EPIC does not claim federal question jurisdiction to bring a case under the FTC Act, but under the APA. EPIC's claims under the APA have questions of law and fact in common with

the inquiry this Court must consider in determining whether to enter the Consent Decree, namely, the settlement's "overall fairness to beneficiaries and consistency with the public interest," *Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1126 (D.C.Cir.1983), and whether the consent decree "conform[s] to applicable laws." *United States v. State of Oregon*, 913 F.2d 576, 580–81 (9th Cir. 1990) (citations omitted). A party need not be essential to be granted permissive intervention. *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015).

It is also unclear how EPIC's motion—filed mere days after the government filed this action—could "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Government and Facebook merely assert, without explaining, that EPIC's participation would be disruptive. This Court must assure itself that the consent decree is fair, reasonable, and in the public interest—which it has yet to do. As argued above, EPIC's participation would aid the Court in making this assessment, not hinder it. Facebook's claim that granting EPIC's motion would require the Court to grant every member of the public with an opposing view the opportunity to intervene is hyperbolic. Rather, EPIC's status as the filer of complaints that will be extinguished by the settlement, and EPIC's technical expertise in privacy and Facebook's behavior, put EPIC in a unique position to assert claims in this proceeding.

## CONCLUSION

For the above stated reasons, the Court should grant EPIC's motion to intervene, establish a briefing schedule for intervenors and interested parties, and schedule a hearing to review the fairness and adequacy of the parties' proposed consent decree.

Respectfully Submitted,
MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

/s/ Alan Butler
ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel

MEGAN IORIO, D.C. Bar #1618365
EPIC Appellate Advocacy Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiff EPIC*[25]

Dated: Aug. 12, 2019

---

[25] EPIC Consumer Protection Counsel Christine Bannan, a member of the Massachusetts Bar whose admission is pending in the District of Columbia, contributed to this brief.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FACEBOOK INC.,<br><br>    Defendant.<br><br>ELECTRONIC PRIVACY INFORMATION CENTER<br>1519 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br><br>    Intervenor-Plaintiff,<br><br>    v.<br><br>FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br><br>    Intervenor-Defendant. | Civ. Action No. 1:19-cv-02184<br><br><br><br><br><br><br><br><br><br><br>Civ. Action No. ___19-2184___ |

**COMPLAINT IN INTERVENTION**

Intervenor-Plaintiff Electronic Privacy Information Center ("EPIC"), by way of this

Complaint in Intervention against the Intervenor-Defendant Federal Trade Commission ("FTC")

states and alleges as follows:

**Parties**

1.      Intervenor-Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C.,

established in 1994 to focus public attention on emerging privacy and civil liberties issues.

Central to EPIC's mission is advocacy to protect consumer privacy. EPIC is a membership

organization. The Members of EPIC's Advisory Board include distinguished experts in law, technology, and public policy.

2.      An important aspect of EPIC's consumer protection program is submission of complaints to the FTC. EPIC filed the original complaints that led to the FTC's 2012 Consent Order with Facebook. Since the adoption of the 2012 Consent Order, EPIC has submitted numerous complaints to the FTC alleging that Facebook violated Section 5 of the FTC Act and the 2012 Consent Order.[1] EPIC also routinely comments on proposed FTC settlements implicating privacy.[2]

---

[1] *See* Complaint, In re Facebook, Inc. and Facial Recognition (Apr. 6, 2018), https://epic.org/privacy/facebook/FTC-Facebook-FR-Complaint-04062018.pdf; Letter from EPIC et al. to Maureen Ohlhausen, Acting Chairman, FTC, and Terrell McSweeney, Commissioner, FTC (Mar. 20, 2018), https://epic.org/privacy/facebook/EPIC-et-al-ltr-FTC-Cambridge-FB-03-20-18.pdf; Complaint, *In re WhatsApp, Inc.* (Aug 29, 2016), https://epic.org/privacy/ftc/whatsapp/EPIC-CDD-FTC-WhatsApp-Complaint-2016.pdf; Complaint, *In re Facebook, Inc.* (July 3, 2014), https://epic.org/privacy/internet/ftc/facebook/psycho/Facebook-Study-Complaint.pdf; Complaint, *In re WhatsApp, Inc.* (Mar. 6, 2014), https://epic.org/privacy/ftc/whatsapp/WhatsApp-Complaint.pdf.

[2] *See, e.g.,* Comments of EPIC, In the Matter of Uber Technologies, Inc., Fed. Trade Comm'n, FTC File No. 153-3054 (May 14, 2018), https://epic.org/privacy/internet/ftc/uber/EPIC-FTC-Revised-Uber-Settlement.pdf; Comments of EPIC, In the Matter of PayPal, Inc., Fed. Trade Comm'n, FTC File No. 162-3102 (Mar. 29, 2018), https://epic.org/apa/comments/EPIC-FTC-PayPal-ConsentOrder.pdf; Comments of EPIC, In the Matter of Uber Technologies, Fed. Trade Comm'n, FTC File No. 152-3054 (Sep. 15, 2017), https://epic.org/apa/comments/EPIC-FTC-Uber-Settlement.pdf; Comments of EPIC, In the Matter of Snapchat, Inc., Fed. Trade Comm'n, FTC File No. 132-3078 (June 9, 2014), https://epic.org/privacy/ftc/FTC-Snapchat-Cmts.pdf; Comments of EPIC, On Rent-to-Own Computer Spying Proposed Settlements, Fed. Trade Comm'n, Docket No. FTC File No. 112-3151 (October 25, 2012), https://epic.org/privacy/ftc/EPIC-Designerware-Cmts.pdf; Comments of EPIC, In the Matter of Facebook, Inc., Fed. Trade Comm'n, FTC File No. 092-3184 (Dec. 27, 2011), https://epic.org/privacy/facebook/Facebook-FTC-Settlement-Comments-FINAL.pdf; Comments of EPIC, In the Matter of Reed Elsevier, Inc. and Seisint, Inc. Consent Order; In the Matter of The TJX Companies, Inc. Consent Order, Fed. Trade Comm'n, Docket No. 052-3094; 072-3055 (April 28, 2008), https://epic.org/apa/comments/042808_ftc.pdf; Comments of EPIC, In the Matter of Microsoft Consent Order, Fed. Trade Comm'n, FTC File No. 012-3240, M03 (September 9, 2002), https://epic.org/privacy/consumer/microsoft/ordercomments.html.

3.      Intervenor-Defendant FTC is an agency within the meaning of 5 U.S.C. §§ 701 and 551
and is the plaintiff in this action sub nom United States of America.

### Jurisdiction and Venue

4.      This is an action in intervention in the above-captioned suit as filed by Plaintiff United
States of America (on behalf of the FTC). That action arises under the FTC Act, 15 U.S.C. §§
45(a) and (l), and the Commission seeks monetary and injunctive relief for Facebook's alleged
unfair and deceptive trade practices and violation of the 2012 Consent Order.

5.      This Court had and has subject matter jurisdiction over the FTC's Complaint under 28
U.S.C. §§ 1331, 1337(a), 1345, and 1355; and 15 U.S.C. §§ 45(a) and (l), and 56(a)(1).

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2), (c)(2), and 1395(a); and 15
U.S.C. § 53(b).

7.      This Complaint in Intervention will be submitted only pursuant to order of this Court, if
the Court grants the Motion for Intervention under Fed. R. Civ. P. 24 filed by EPIC in this suit.

8.      This Complaint in Intervention comprises an action arising under the Administrative
Procedure Act ("APA"), 5 U.S.C. §§ 551–706 and the Declaratory Judgment Act, 28 U.S.C. §
2201(a) for injunctive and other appropriate relief to challenge entry of the proposed Consent
Decree between the FTC and Facebook, Inc. ("Facebook"). Specifically EPIC challenges (a)
Intervenor-Defendant's arbitrary and capricious decision to grant Facebook a liability waiver for
all complaints filed with the Commission prior to June 12, 2019, without reasoned explanation,
in violation of 5 U.S.C. § 706(2)(A); and (b) Intervenor-Defendants' failure to "place the order
contained in the consent agreement, the complaint, and the consent agreement on the public
record for a period of 30 days, or such other period as the Commission may specify for the
receipt of comments or views from any interested person," as required by 16 C.F.R. § 2.34(c).

9.      The Court has subject matter jurisdiction over EPIC's Complaint in Intervention under 28 U.S.C. § 1331, 5 U.S.C. § 702, and 5 U.S.C. § 704. This Court has personal jurisdiction over the Intervenor-Defendant.

10.     EPIC has standing to bring this Claim in Intervention because it has been, and continues to be, adversely affected by the proposed FTC-Facebook Consent Decree.

## Facts

11.     This Complaint incorporates the Complaint of the United States to the extent any of the allegations there are relevant to Intervenor-Plaintiff EPIC and do not conflict with the allegations below. EPIC adopts such allegations as its own.

### The History of EPIC's 2009 Complaint & the FTC'S 2012 Consent Order Against Facebook

12.     In 2009, EPIC and others filed a complaint with the FTC that alleged that Facebook had changed the privacy settings available to users in a way that made personal information, such as their friends lists, publicly available.[3] EPIC further alleged that Facebook made personal information available to application developers without users' knowledge or consent; that Facebook Connect decreased users' control over disclosure of personal information; that Facebook's iPhone syncing secretly disclosed personal information; that Facebook's social plugins revealed user information without user consent; and that Facebook allowed developers to retain user data indefinitely.[4]

13.     Following the submission of its complaint, EPIC received a letter from the Commission on January 14, 2010, stating that "[y]our most recent complaint raises issues of particular interest

---

[3] Complaint, Request for Investigation, Injunction, and Other Relief of EPIC et al., In re: Facebook, Inc. (2009), https://epic.org/privacy/inrefacebook/EPIC-FacebookComplaint.pdf.
[4] *Id*.

for us at this time."[5] On January 14, 2010, EPIC and others supplemented the original complaint

and described Facebook's practices for access to users' passwords, representations regarding

Facebook Connect, and representations regarding iPhone syncing were unfair and deceptive.[6] On

May 5, 2010, EPIC filed a second complaint with the Commission concerning Facebook's

disclosure of users' previously-restricted personal information to Facebook's business partners

and the general public.[7] The information disclosed by Facebook included employment history,

education, location, hometown, film preferences, music preferences, and reading preferences.[8]

14.    On November 29, 2011, the FTC announced a proposed settlement agreement with

Facebook over the company's unfair and deceptive business practices.[9]  The FTC identified eight

specific counts, including changes to users' privacy settings, application access to user data,

advertiser access to use data, photo and video deletion, and violations of the Safe Harbor

Framework.[10] According to the FTC, "under the proposed settlement, Facebook is:

- barred from making misrepresentations about the privacy or security of
  consumers' personal information;

- required to obtain consumers' affirmative express consent before enacting
  changes that override their privacy preferences;

---

[5] Letter from Director, FTC Bureau of Consumer Protection, to Marc Rotenberg, Director, EPIC (Jan. 14, 2010), https://epic.org/privacy/inrefacebook/Facebook_Vladeck_Letter.pdf.
[6] Supplemental Materials Submitted by EPIC et al. in Support of Pending Complaint and Request for Injunction, Request for Investigation and for Other Relief, In re Facebook, Inc. (Jan. 14, 2010), https://epic.org/privacy/inrefacebook/EPIC_Facebook_Supp.pdf.
[7] Complaint, Request for Investigation, Injunction, and Other Relief, *In re Facebook, Inc.* (May 5, 2010), https://epic.org/privacy/facebook/EPIC_FTC_FB_Complaint.pdf.
[8] *Id.*
[9] *In re Facebook, Inc.,* FTC File No. 092 3184 (2011) (Agreement Containing Consent Order), http://www.ftc.gov/os/caselist/0923184/111129facebookagree.pdf.
[10] *Id.*

- required to prevent anyone from accessing a user's material more than 30 days after the user has deleted his or her account;

- required to establish and maintain a comprehensive privacy program designed to address privacy risks associated with the development and management of new and existing products and services, and to protect the privacy and confidentiality of consumers' information; and

- required, within 180 days, and every two years after that for the next 20 years, to obtain independent, third-party audits certifying that it has a privacy program in place that meets or exceeds the requirements of the FTC order, and to ensure that the privacy of consumers' information is protected."[11]

15.     The Chairman of the Federal Trade Commission at the time, John Liebowitz, stated "Facebook is obligated to keep the promises about privacy that it makes to its hundreds of millions of users. Facebook's innovation does not have to come at the expense of consumer privacy. The FTC action will ensure it will not."[12]

16.     The Commission made clear EPIC's role in the establishment of the Consent Order, which is the legal basis of the proposed Consent Decree now before this Court. In announcing the proposed Consent Order, the Commission stated that "Facebook's privacy practices were the subject of complaints filed with the FTC by the Electronic Privacy Information Center and a coalition of consumer groups."[13]

---

[11] Press Release, Fed. Trade Comm'n, *Facebook Settles FTC Charges that It Deceived Consumers by Failing to Keep Privacy Promises* (Nov. 29, 2011), http://www.ftc.gov/opa/2011/11/privacysettlement.shtm.
[12] *Id.*
[13] *Id.*

The Subsequent History of EPIC's Complaints Filed With the FTC Against Facebook After the 2012 Consent Order

17.     Since 2012, EPIC has filed five detailed complaints with the Commission regarding Facebook's business practices, alleging violations of the Consent Order. All of these complaints, as well as many similar complaints brought to the Commission by consumer and privacy organizations representing the interests of Facebook users, would be extinguished by the proposed consent decree that the FTC and Facebook have submitted.

18.     In 2014, EPIC submitted a complaint to the FTC concerning Facebook's manipulation of users' News Feeds for psychological research.[14] EPIC argued that Facebook had "altered the News Feeds of Facebook users to elicit positive and negative emotional responses."[15] EPIC further alleged that the researchers "failed to follow standard ethical protocols for human subject research" and that Facebook violated Section 5 of the FTC Act when it did not get users' permission to conduct this study or notify users that their data would be disclosed to researchers.[16] These allegations have not been addressed by the FTC.

19.     Also in 2014, Facebook acquired the private messaging application WhatsApp and EPIC, along with the Center for Digital Democracy, filed a complaint urging the Commission to block the acquisition.[17] In 2016, after the merger had been approved, WhatsApp announced its plans to transfer users' personal information to Facebook, including their phone numbers, for Facebook to use for targeted advertising.[18] EPIC and CDD filed a complaint with the FTC opposing the

---

[14] Complaint, *In re Facebook, Inc.* (July 3, 2014) [hereinafter EPIC 2014 Facebook Complaint], https://epic.org/privacy/internet/ftc/facebook/psycho/Facebook-Study-Complaint.pdf.
[15] *Id.* at 1.
[16] *Id.*
[17] Complaint, *In re WhatsApp, Inc.* (Mar. 6, 2014) [hereinafter EPIC 2014 WhatsApp Complaint], https://epic.org/privacy/ftc/whatsapp/WhatsApp-Complaint.pdf.
[18] *Looking Ahead for WhatsApp*, WhatsApp Blog (Aug. 25, 2016), https://blog.whatsapp.com/10000627/Looking-ahead-for-WhatsApp.

transfer of WhatsApp use data to Facebook and arguing that the proposed policy changes violated Section 5 of the FTC Act.[19] These allegations have not been addressed by the FTC.

20.     In 2018, EPIC and a coalition of consumer privacy organizations filed a complaint with the Federal Trade Commission charging that Facebook's facial recognition practice lacked privacy safeguards and violated the 2012 Consent Order with the Commission.[20] As EPIC explained in its complaint, in early 2018, Facebook began routinely scanning photos, posted by users, for biometric facial matches without the consent of either the image subject or the person who uploaded the photo.[21] EPIC and consumer groups requested that "the Commission investigate Facebook, enjoin the deployment of additional facial recognition techniques as a violation of the 2012 Consent Order, and require Facebook to modify its biometric data practices to protect the privacy of Facebook users and non-users."[22] These allegations have not been addressed.

21.     Perhaps most significantly in 2018, EPIC along with sixteen consumer organizations wrote the FTC a letter urging the Commission to investigate the unprecedented disclosure of personal data uncovered in the Facebook Cambridge Analytica scandal. The organizations wrote: "On behalf of leading consumer privacy organizations in the United States, we urge you to immediately investigate whether Facebook's alleged disclosure of the personal data of 50 million Americans to the data mining firm Cambridge Analytica violated the FTC Consent Order with

---

[19] Complaint, *In re WhatsApp, Inc.* (Aug 29, 2016) [hereinafter EPIC 2016 WhatsApp Complaint], https://epic.org/privacy/ftc/whatsapp/EPIC-CDD-FTC-WhatsApp-Complaint-2016.pdf.
[20] Complaint, *In re Facebook, Inc. and Facial Recognition* (Apr. 6, 2018) [hereinafter EPIC 2018 Facebook Complaint], https://epic.org/privacy/facebook/FTC-Facebook-FR-Complaint-04062018.pdf.
[21] *Id.*
[22] *Id*. at 38.

Facebook we helped obtain."[23] One week later, the FTC announced it would reopen the investigation of Facebook.[24]

22.     These actions and complaints pursued by EPIC and others on behalf of Facebook users are directly relevant to the Court's consideration of the FTC's proposed Consent Decree with Facebook.

23.     Even the actions of EPIC and the associated organizations do not describe the full range of public interest in this matter. More than 26,000 consumer complaints about Facebook are currently pending at the Commission, and the number of complaints against the company has been doubling annually.[25] In 2018 alone, the FTC received 8,391 consumer complaints about Facebook, nearly twice the number received in 2016 (4,612), and more than four times the number received in 2014 (1,860).[26]

The FTC's Proposed Consent Decree with Facebook

24.     The FTC's proposed Consent Decree with Facebook is both the most significant and most controversial decree in the history of the Commission. The proposed Consent Decree

---

[23] Letter from EPIC et al. to Maureen Ohlhausen, Acting Chairman, FTC, and Terrell McSweeney, Commissioner, FTC (Mar. 20, 2018), https://epic.org/privacy/facebook/EPIC-et-al-ltr-FTC-Cambridge-FB-03-20-18.pdf. The organizations that signed the March 20, 2018 to the Commission were: the Electronic Privacy Information Center, Access Now, Campaign for Commercial Free Childhood, Center for Digital Democracy, Constitutional Alliance, Consumer Action, Consumer Federation of America, Consumer Watchdog, Cyber Privacy Project, Defending Rights & Dissent, Government Accountability Project, Patient Privacy Rights, Privacy Rights  Clearinghouse, Privacy Times, Public Citizen, U.S. PIRG, and the World Privacy Forum.
[24] Press Release, Fed. Trade Comm'n, *Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns About Facebook Privacy Practices* (Mar. 26, 2018), https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumer-protection.
[25] FOIA Request from EPIC to FTC (Mar. 13, 2019) [hereinafter EPIC 2019 FOIA Request], https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190313-Request.pdf.
[26] FTC Response to EPIC FOIA Request (Apr. 2, 2019), https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190402-Complaint-Number-Breakdown.pdf.

concerns the business practices of the world's largest social media company, the privacy interests of hundreds of millions of Americans, and more than 2.3 billion people around the globe. The decree also directly impacts the interests of EPIC and other groups, who have worked diligently to safeguard the interests of Facebook uses and who have submitted comprehensive complaints to the FTC concerning violations of the 2012 Consent Order.

25.    The proposed decree states that "[t]he parties have consented to entry of this Stipulated Order to resolve any and all claims that Defendant, its officers, and directors, prior to June 12, 2019, violated the Commission's Decision and Order in *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012). Furthermore, this Consent Decree resolves all consumer-protection claims known by the FTC prior to June 12, 2019, that Defendant, its officers, and directors violated Section 5 of the FTC Act."[27]

26.    Commissioner Rohit Chopra and Commissioner Rebecca Slaughter both dissented from the FTC's approval of the Consent Decree, highlighting that the decree immunizes the firm for undisclosed violations. Commissioner Chopra said: "This shield represents a major win for Facebook, but leaves the public in the dark as to how the company violated the law, and what violations if any are going unaddressed."[28] Commissioner Slaughter said: "I am concerned that a release of this scope is unjustified by our investigation and unsupported by either precedent or

---

[27] Stipulated Order for Civil Penalty, Monetary Judgement, and Injunctive Relief, *United States v. Facebook*, No. 19-cv-2184 at 1–2 (D.D.C. July 24, 2019), ECF No. 2-1.
[28] Dissenting Statement of Commissioner Rohit Chopra, *In re Facebook, Inc.*, Commission File No. 1823109 at 17 (July 24, 2019),
https://www.ftc.gov/system/files/documents/public_statements/1536911/chopra_dissenting_statement_on_facebook_7-24-19.pdf.

sound public policy. To the contrary, in every recent major federal settlement, if there was a liability release, it was cabined to the offenses described in the complaint."[29]

27.     Members of Congress have been outspoken in their opposition to the settlement. Senator Markey (D-MA) said: "With its settlement with Facebook, the FTC not only fell short, it fell on its face. Facebook is getting away with some of the most egregious corporate bad behavior in the age of the internet."[30] Senator Hawley (D-MO) said: "This is very disappointing. This settlement does nothing to change Facebook's creepy surveillance of its own users & the misuse of user data. It does nothing to hold executives accountable. It utterly fails to penalize Facebook in any effective way."[31] The New York Times Editorial Board also spoke out against the settlement.[32]

28.     The FTC did not "place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify, for the receipt of comments or views from any interested person," as required by 16 C.F.R. § 2.34(c).

Effect of Liability Waiver on EPIC

29.     The liability waiver contained in the Stipulated Order resolves all complaints submitted prior to June 12, 2019, alleging that Facebook, its officers, and its directors violated Section 5 of

---

[29] Dissenting Statement of Commissioner Rebecca Slaughter, *In re Facebook, Inc.*, Commission File No. 1823109 at 14 (July 24, 2019), https://www.ftc.gov/system/files/documents/public_statements/1536918/182_3109_slaughter_statement_on_facebook_7-24-19.pdf.
[30] Ed Markey, *Senator Markey Blasts FTC Facebook Privacy Settlement* (July 24, 2019), https://www.markey.senate.gov/news/press-releases/senator-markey-blasts-ftc-facebook-privacy-settlement.
[31] Josh Hawley (@HawleyMO), Twitter (July 24, 2019, 10:36 AM), https://twitter.com/HawleyMO/status/1154037744290557952.
[32] Editorial Board, *A $5 Billion Fine for Facebook Won't Fix Privacy,* N.Y. Times (July 25, 2019), https://www.nytimes.com/2019/07/25/opinion/facebook-fine-5-billion.html.

the FTC Act, including the five complaints EPIC submitted to the FTC concerning Facebook between 2014-2018, and thus prevents the FTC from pursuing these claims in the future.

30.    The FTC's proposed settlement with Facebook does not address all of the claims contained in the complaints filed prior to June 12, 2019, including much of the claims alleged in EPIC's five complaints.

31.    The liability waiver would prevent EPIC from seeking relief from the FTC through the administrative complaint process for the violations detailed in the prior complaints.

32.    Because EPIC would be prevented from seeking relief through the FTC, EPIC will have to redirect resources toward researching and pursuing alternative means of addressing Facebook's privacy violations, including researching state consumer protection laws and pursuing complaints at the state level.

33.    If the FTC did not grant Facebook an overly broad liability waiver, EPIC would not have to pursue alternative means to hold Facebook accountable for privacy violations contained in complaints prior to June 12, 2019.

Effect of Failure to Submit Settlement for Public Comment on EPIC

34.    EPIC routinely submits comments to the FTC on proposed settlements.

35.    Because the FTC can modify or withdraw the agreement in response to comments received, 16 C.F.R. § 2.34(e), the Commission's decision not to accept comments on the proposed agreement deprives EPIC of an opportunity to influence the FTC's decision making on the proposed settlement.

36.    In response to this deprivation, EPIC has pursued this motion to intervene as an alternative avenue to be heard on the proposed settlement, which would not have been necessary had the FTC solicited public comment on the settlement under 16 C.F.R. § 2.34(c).

37.     An order directing the FTC to open the proposed settlement to public comment would redress EPIC's injury by providing an opportunity to comment.

### Count I

#### Violation of the APA: Unlawful Agency Action

38.     Intervenor-Plaintiff asserts and incorporates by reference paragraphs 1–37.

39.     Intervenor-Defendants' failure to address all claims that form the basis of the liability waiver constitutes conduct that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

40.     Intervenor-Defendant's conduct constitutes final agency action subject to judicial review under 5 U.S.C. § 704.

41.     Intervenor-Plaintiff is adversely affected, aggrieved, and injured in fact by Intervenor-Defendants' violation of 5 U.S.C. § 706(2)(A). By granting Facebook immunity for all complaints filed with the Commission between 2012 and 2019, the FTC deprives EPIC of the ability to seek redress for such claims through any future administrative complaint. In response, EPIC must expend resources to research and pursue alternative means of enforcement.

42.     Intervenor-Plaintiff has exhausted all applicable administrative remedies.

### Count II

#### Violation of the APA: Unlawful Agency Action

43.     Intervenor-Plaintiff asserts and incorporates by reference paragraphs 1–37.

44.     Intervenor-Defendant failed to "place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify, for the receipt of comments or views from any interested person," in violation of 16 C.F.R. § 2.34(c).

45.     By failing to accept public comments on the proposed settlement, Intervenor-Defendant

has engaged in conduct that is arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law under 5 U.S.C. § 706(2)(A) and without observance of procedure required

by law under 5 U.S.C. § 706(2)(D).

46.     Intervenor-Defendants' conduct constitutes final agency action under 5 U.S.C. § 704.

47.     Intervenor-Plaintiff is adversely affected, aggrieved, and injured in fact by Intervenor-

Defendants' actions. By failing to accept public comment on the proposed settlement, the FTC

deprives EPIC of an opportunity to comment. In response, EPIC has expended resources to

pursue alternative means of voicing its concerns about the settlement, including this Action.

48.     Intervenor-Plaintiff has exhausted all applicable administrative remedies.


## Count III

### Claim for Declaratory Relief Under 28 U.S.C. § 2201(a)

49.     Intervenor-Plaintiff asserts and incorporates by reference paragraphs 1–37.

50.     Intervenor-Plaintiff is entitled under 28 U.S.C. § 2201(a) to a declaration of the rights and

other legal relations of the parties with respect to the claims set forth in Counts I–II.


### Requested Relief

WHEREFORE, Intervenor-Plaintiff requests that this Court:

A.  Not to enter the Stipulated Order;

B.  Enjoin Intervenor-Defendant from entering into a consent decree with Facebook that
    includes a liability waiver for claims not addressed in the complaint or the agreement
    absent a reasoned explanation for each claim;

C.  Order Intervenor-Defendant to place the order contained in the consent agreement, the
    complaint, and the consent agreement on the public record for a period of 30 days, or

such other period as the Commission may specify, for the receipt of comments or views from any interested person;

D.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

E.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

/s/ Alan Butler
ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel

MEGAN IORIO, D.C. Bar #1618365
EPIC Appellate Advocacy Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Intervenor-Plaintiff EPIC*

Dated: August 12, 2019