**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>FACEBOOK INC.,<br><br>   Defendant.<br><br>―――――――――――――――――――<br><br>ELECTRONIC PRIVACY INFORMATION CENTER<br>1519 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br><br>   Intervenor-Plaintiff,<br><br>   v.<br><br>FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br><br>   Intervenor-Defendant. | Civ. Action No. 1:19-cv-02184<br><br><br><br><br><br><br><br><br><br>Civ. Action No.   19-2184   |

**COMPLAINT IN INTERVENTION**

Intervenor-Plaintiff Electronic Privacy Information Center ("EPIC"), by way of this Complaint in Intervention against the Intervenor-Defendant Federal Trade Commission ("FTC") states and alleges as follows:

**Parties**

1.   Intervenor-Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C., established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is advocacy to protect consumer privacy. EPIC is a membership

organization. The Members of EPIC's Advisory Board include distinguished experts in law, technology, and public policy.

2. An important aspect of EPIC's consumer protection program is submission of complaints to the FTC. EPIC filed the original complaints that led to the FTC's 2012 Consent Order with Facebook. Since the adoption of the 2012 Consent Order, EPIC has submitted numerous complaints to the FTC alleging that Facebook violated Section 5 of the FTC Act and the 2012 Consent Order.[1] EPIC also routinely comments on proposed FTC settlements implicating privacy.[2]

---

[1] *See* Complaint, In re Facebook, Inc. and Facial Recognition (Apr. 6, 2018), https://epic.org/privacy/facebook/FTC-Facebook-FR-Complaint-04062018.pdf; Letter from EPIC et al. to Maureen Ohlhausen, Acting Chairman, FTC, and Terrell McSweeney, Commissioner, FTC (Mar. 20, 2018), https://epic.org/privacy/facebook/EPIC-et-al-ltr-FTC-Cambridge-FB-03-20-18.pdf; Complaint, *In re WhatsApp, Inc.* (Aug 29, 2016), https://epic.org/privacy/ftc/whatsapp/EPIC-CDD-FTC-WhatsApp-Complaint-2016.pdf; Complaint, *In re Facebook, Inc.* (July 3, 2014), https://epic.org/privacy/internet/ftc/facebook/psycho/Facebook-Study-Complaint.pdf; Complaint, *In re WhatsApp, Inc.* (Mar. 6, 2014), https://epic.org/privacy/ftc/whatsapp/WhatsApp-Complaint.pdf.

[2] *See, e.g.,* Comments of EPIC, In the Matter of Uber Technologies, Inc., Fed. Trade Comm'n, FTC File No. 153-3054 (May 14, 2018), https://epic.org/privacy/internet/ftc/uber/EPIC-FTC-Revised-Uber-Settlement.pdf; Comments of EPIC, In the Matter of PayPal, Inc., Fed. Trade Comm'n, FTC File No. 162-3102 (Mar. 29, 2018), https://epic.org/apa/comments/EPIC-FTC-PayPal-ConsentOrder.pdf; Comments of EPIC, In the Matter of Uber Technologies, Fed. Trade Comm'n, FTC File No. 152-3054 (Sep. 15, 2017), https://epic.org/apa/comments/EPIC-FTC-Uber-Settlement.pdf; Comments of EPIC, In the Matter of Snapchat, Inc., Fed. Trade Comm'n, FTC File No. 132-3078 (June 9, 2014), https://epic.org/privacy/ftc/FTC-Snapchat-Cmts.pdf; Comments of EPIC, On Rent-to-Own Computer Spying Proposed Settlements, Fed. Trade Comm'n, Docket No. FTC File No. 112-3151 (October 25, 2012), https://epic.org/privacy/ftc/EPIC-Designerware-Cmts.pdf; Comments of EPIC, In the Matter of Facebook, Inc., Fed. Trade Comm'n, FTC File No. 092-3184 (Dec. 27, 2011), https://epic.org/privacy/facebook/Facebook-FTC-Settlement-Comments-FINAL.pdf; Comments of EPIC, In the Matter of Reed Elsevier, Inc. and Seisint, Inc. Consent Order; In the Matter of The TJX Companies, Inc. Consent Order, Fed. Trade Comm'n, Docket No. 052-3094; 072-3055 (April 28, 2008), https://epic.org/apa/comments/042808_ftc.pdf; Comments of EPIC, In the Matter of Microsoft Consent Order, Fed. Trade Comm'n, FTC File No. 012-3240, M03 (September 9, 2002), https://epic.org/privacy/consumer/microsoft/ordercomments.html.

3. Intervenor-Defendant FTC is an agency within the meaning of 5 U.S.C. §§ 701 and 551 and is the plaintiff in this action sub nom United States of America.

## Jurisdiction and Venue

4. This is an action in intervention in the above-captioned suit as filed by Plaintiff United States of America (on behalf of the FTC). That action arises under the FTC Act, 15 U.S.C. §§ 45(a) and (l), and the Commission seeks monetary and injunctive relief for Facebook's alleged unfair and deceptive trade practices and violation of the 2012 Consent Order.

5. This Court had and has subject matter jurisdiction over the FTC's Complaint under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355; and 15 U.S.C. §§ 45(a) and (l), and 56(a)(1).

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2), (c)(2), and 1395(a); and 15 U.S.C. § 53(b).

7. This Complaint in Intervention will be submitted only pursuant to order of this Court, if the Court grants the Motion for Intervention under Fed. R. Civ. P. 24 filed by EPIC in this suit.

8. This Complaint in Intervention comprises an action arising under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706 and the Declaratory Judgment Act, 28 U.S.C. § 2201(a) for injunctive and other appropriate relief to challenge entry of the proposed Consent Decree between the FTC and Facebook, Inc. ("Facebook"). Specifically EPIC challenges (a) Intervenor-Defendant's arbitrary and capricious decision to grant Facebook a liability waiver for all complaints filed with the Commission prior to June 12, 2019, without reasoned explanation, in violation of 5 U.S.C. § 706(2)(A); and (b) Intervenor-Defendants' failure to "place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify for the receipt of comments or views from any interested person," as required by 16 C.F.R. § 2.34(c).

9. The Court has subject matter jurisdiction over EPIC's Complaint in Intervention under 28 U.S.C. § 1331, 5 U.S.C. § 702, and 5 U.S.C. § 704. This Court has personal jurisdiction over the Intervenor-Defendant.

10. EPIC has standing to bring this Claim in Intervention because it has been, and continues to be, adversely affected by the proposed FTC-Facebook Consent Decree.

## Facts

11. This Complaint incorporates the Complaint of the United States to the extent any of the allegations there are relevant to Intervenor-Plaintiff EPIC and do not conflict with the allegations below. EPIC adopts such allegations as its own.

The History of EPIC's 2009 Complaint & the FTC'S 2012 Consent Order Against Facebook

12. In 2009, EPIC and others filed a complaint with the FTC that alleged that Facebook had changed the privacy settings available to users in a way that made personal information, such as their friends lists, publicly available.[3] EPIC further alleged that Facebook made personal information available to application developers without users' knowledge or consent; that Facebook Connect decreased users' control over disclosure of personal information; that Facebook's iPhone syncing secretly disclosed personal information; that Facebook's social plugins revealed user information without user consent; and that Facebook allowed developers to retain user data indefinitely.[4]

13. Following the submission of its complaint, EPIC received a letter from the Commission on January 14, 2010, stating that "[y]our most recent complaint raises issues of particular interest

---

[3] Complaint, Request for Investigation, Injunction, and Other Relief of EPIC et al., In re: Facebook, Inc. (2009), https://epic.org/privacy/inrefacebook/EPIC-FacebookComplaint.pdf.
[4] *Id*.

for us at this time."[5] On January 14, 2010, EPIC and others supplemented the original complaint and described Facebook's practices for access to users' passwords, representations regarding Facebook Connect, and representations regarding iPhone syncing were unfair and deceptive.[6] On May 5, 2010, EPIC filed a second complaint with the Commission concerning Facebook's disclosure of users' previously-restricted personal information to Facebook's business partners and the general public.[7] The information disclosed by Facebook included employment history, education, location, hometown, film preferences, music preferences, and reading preferences.[8]

14.     On November 29, 2011, the FTC announced a proposed settlement agreement with Facebook over the company's unfair and deceptive business practices.[9]  The FTC identified eight specific counts, including changes to users' privacy settings, application access to user data, advertiser access to use data, photo and video deletion, and violations of the Safe Harbor Framework.[10] According to the FTC, "under the proposed settlement, Facebook is:

- barred from making misrepresentations about the privacy or security of consumers' personal information;

- required to obtain consumers' affirmative express consent before enacting changes that override their privacy preferences;

---

[5] Letter from Director, FTC Bureau of Consumer Protection, to Marc Rotenberg, Director, EPIC (Jan. 14, 2010), https://epic.org/privacy/inrefacebook/Facebook_Vladeck_Letter.pdf.
[6] Supplemental Materials Submitted by EPIC et al. in Support of Pending Complaint and Request for Injunction, Request for Investigation and for Other Relief, In re Facebook, Inc. (Jan. 14, 2010), https://epic.org/privacy/inrefacebook/EPIC_Facebook_Supp.pdf.
[7] Complaint, Request for Investigation, Injunction, and Other Relief, *In re Facebook, Inc.* (May 5, 2010), https://epic.org/privacy/facebook/EPIC_FTC_FB_Complaint.pdf.
[8] *Id*.
[9] *In re Facebook, Inc.,* FTC File No. 092 3184 (2011) (Agreement Containing Consent Order), http://www.ftc.gov/os/caselist/0923184/111129facebookagree.pdf.
[10] *Id.*

5

- required to prevent anyone from accessing a user's material more than 30 days after the user has deleted his or her account;

- required to establish and maintain a comprehensive privacy program designed to address privacy risks associated with the development and management of new and existing products and services, and to protect the privacy and confidentiality of consumers' information; and

- required, within 180 days, and every two years after that for the next 20 years, to obtain independent, third-party audits certifying that it has a privacy program in place that meets or exceeds the requirements of the FTC order, and to ensure that the privacy of consumers' information is protected."[11]

15. The Chairman of the Federal Trade Commission at the time, John Liebowitz, stated "Facebook is obligated to keep the promises about privacy that it makes to its hundreds of millions of users. Facebook's innovation does not have to come at the expense of consumer privacy. The FTC action will ensure it will not."[12]

16. The Commission made clear EPIC's role in the establishment of the Consent Order, which is the legal basis of the proposed Consent Decree now before this Court. In announcing the proposed Consent Order, the Commission stated that "Facebook's privacy practices were the subject of complaints filed with the FTC by the Electronic Privacy Information Center and a coalition of consumer groups."[13]

---

[11] Press Release, Fed. Trade Comm'n, *Facebook Settles FTC Charges that It Deceived Consumers by Failing to Keep Privacy Promises* (Nov. 29, 2011), http://www.ftc.gov/opa/2011/11/privacysettlement.shtm.
[12] *Id.*
[13] *Id.*

The Subsequent History of EPIC's Complaints Filed With the FTC Against Facebook After the 2012 Consent Order

17.     Since 2012, EPIC has filed five detailed complaints with the Commission regarding Facebook's business practices, alleging violations of the Consent Order. All of these complaints, as well as many similar complaints brought to the Commission by consumer and privacy organizations representing the interests of Facebook users, would be extinguished by the proposed consent decree that the FTC and Facebook have submitted.

18.     In 2014, EPIC submitted a complaint to the FTC concerning Facebook's manipulation of users' News Feeds for psychological research.[14] EPIC argued that Facebook had "altered the News Feeds of Facebook users to elicit positive and negative emotional responses."[15] EPIC further alleged that the researchers "failed to follow standard ethical protocols for human subject research" and that Facebook violated Section 5 of the FTC Act when it did not get users' permission to conduct this study or notify users that their data would be disclosed to researchers.[16] These allegations have not been addressed by the FTC.

19.     Also in 2014, Facebook acquired the private messaging application WhatsApp and EPIC, along with the Center for Digital Democracy, filed a complaint urging the Commission to block the acquisition.[17] In 2016, after the merger had been approved, WhatsApp announced its plans to transfer users' personal information to Facebook, including their phone numbers, for Facebook to use for targeted advertising.[18] EPIC and CDD filed a complaint with the FTC opposing the

---

[14] Complaint, *In re Facebook, Inc.* (July 3, 2014) [hereinafter EPIC 2014 Facebook Complaint], https://epic.org/privacy/internet/ftc/facebook/psycho/Facebook-Study-Complaint.pdf.
[15] *Id.* at 1.
[16] *Id.*
[17] Complaint, *In re WhatsApp, Inc.* (Mar. 6, 2014) [hereinafter EPIC 2014 WhatsApp Complaint], https://epic.org/privacy/ftc/whatsapp/WhatsApp-Complaint.pdf.
[18] *Looking Ahead for WhatsApp*, WhatsApp Blog (Aug. 25, 2016), https://blog.whatsapp.com/10000627/Looking-ahead-for-WhatsApp.

transfer of WhatsApp use data to Facebook and arguing that the proposed policy changes violated Section 5 of the FTC Act.[19] These allegations have not been addressed by the FTC.

20.     In 2018, EPIC and a coalition of consumer privacy organizations filed a complaint with the Federal Trade Commission charging that Facebook's facial recognition practice lacked privacy safeguards and violated the 2012 Consent Order with the Commission.[20] As EPIC explained in its complaint, in early 2018, Facebook began routinely scanning photos, posted by users, for biometric facial matches without the consent of either the image subject or the person who uploaded the photo.[21] EPIC and consumer groups requested that "the Commission investigate Facebook, enjoin the deployment of additional facial recognition techniques as a violation of the 2012 Consent Order, and require Facebook to modify its biometric data practices to protect the privacy of Facebook users and non-users."[22] These allegations have not been addressed.

21.     Perhaps most significantly in 2018, EPIC along with sixteen consumer organizations wrote the FTC a letter urging the Commission to investigate the unprecedented disclosure of personal data uncovered in the Facebook Cambridge Analytica scandal. The organizations wrote: "On behalf of leading consumer privacy organizations in the United States, we urge you to immediately investigate whether Facebook's alleged disclosure of the personal data of 50 million Americans to the data mining firm Cambridge Analytica violated the FTC Consent Order with

---

[19] Complaint, *In re WhatsApp, Inc.* (Aug 29, 2016) [hereinafter EPIC 2016 WhatsApp Complaint], https://epic.org/privacy/ftc/whatsapp/EPIC-CDD-FTC-WhatsApp-Complaint-2016.pdf.
[20] Complaint, *In re Facebook, Inc. and Facial Recognition* (Apr. 6, 2018) [hereinafter EPIC 2018 Facebook Complaint], https://epic.org/privacy/facebook/FTC-Facebook-FR-Complaint-04062018.pdf.
[21] *Id.*
[22] *Id.* at 38.

Facebook we helped obtain."[23] One week later, the FTC announced it would reopen the investigation of Facebook.[24]

22.    These actions and complaints pursued by EPIC and others on behalf of Facebook users are directly relevant to the Court's consideration of the FTC's proposed Consent Decree with Facebook.

23.    Even the actions of EPIC and the associated organizations do not describe the full range of public interest in this matter. More than 26,000 consumer complaints about Facebook are currently pending at the Commission, and the number of complaints against the company has been doubling annually.[25] In 2018 alone, the FTC received 8,391 consumer complaints about Facebook, nearly twice the number received in 2016 (4,612), and more than four times the number received in 2014 (1,860).[26]

The FTC's Proposed Consent Decree with Facebook

24.    The FTC's proposed Consent Decree with Facebook is both the most significant and most controversial decree in the history of the Commission. The proposed Consent Decree

---

[23] Letter from EPIC et al. to Maureen Ohlhausen, Acting Chairman, FTC, and Terrell McSweeney, Commissioner, FTC (Mar. 20, 2018), https://epic.org/privacy/facebook/EPIC-et-al-ltr-FTC-Cambridge-FB-03-20-18.pdf. The organizations that signed the March 20, 2018 to the Commission were: the Electronic Privacy Information Center, Access Now, Campaign for Commercial Free Childhood, Center for Digital Democracy, Constitutional Alliance, Consumer Action, Consumer Federation of America, Consumer Watchdog, Cyber Privacy Project, Defending Rights & Dissent, Government Accountability Project, Patient Privacy Rights, Privacy Rights Clearinghouse, Privacy Times, Public Citizen, U.S. PIRG, and the World Privacy Forum.
[24] Press Release, Fed. Trade Comm'n, *Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns About Facebook Privacy Practices* (Mar. 26, 2018), https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumer-protection.
[25] FOIA Request from EPIC to FTC (Mar. 13, 2019) [hereinafter EPIC 2019 FOIA Request], https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190313-Request.pdf.
[26] FTC Response to EPIC FOIA Request (Apr. 2, 2019), https://epic.org/foia/ftc/facebook/EPIC-19-03-13-FTC-FOIA-20190402-Complaint-Number-Breakdown.pdf.

9

concerns the business practices of the world's largest social media company, the privacy interests of hundreds of millions of Americans, and more than 2.3 billion people around the globe. The decree also directly impacts the interests of EPIC and other groups, who have worked diligently to safeguard the interests of Facebook uses and who have submitted comprehensive complaints to the FTC concerning violations of the 2012 Consent Order.

25. The proposed decree states that "[t]he parties have consented to entry of this Stipulated Order to resolve any and all claims that Defendant, its officers, and directors, prior to June 12, 2019, violated the Commission's Decision and Order in *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012). Furthermore, this Consent Decree resolves all consumer-protection claims known by the FTC prior to June 12, 2019, that Defendant, its officers, and directors violated Section 5 of the FTC Act."[27]

26. Commissioner Rohit Chopra and Commissioner Rebecca Slaughter both dissented from the FTC's approval of the Consent Decree, highlighting that the decree immunizes the firm for undisclosed violations. Commissioner Chopra said: "This shield represents a major win for Facebook, but leaves the public in the dark as to how the company violated the law, and what violations if any are going unaddressed."[28] Commissioner Slaughter said: "I am concerned that a release of this scope is unjustified by our investigation and unsupported by either precedent or

---

[27] Stipulated Order for Civil Penalty, Monetary Judgement, and Injunctive Relief, *United States v. Facebook*, No. 19-cv-2184 at 1–2 (D.D.C. July 24, 2019), ECF No. 2-1.
[28] Dissenting Statement of Commissioner Rohit Chopra, *In re Facebook, Inc.*, Commission File No. 1823109 at 17 (July 24, 2019), https://www.ftc.gov/system/files/documents/public_statements/1536911/chopra_dissenting_statement_on_facebook_7-24-19.pdf.

sound public policy. To the contrary, in every recent major federal settlement, if there was a liability release, it was cabined to the offenses described in the complaint."[29]

27.     Members of Congress have been outspoken in their opposition to the settlement. Senator Markey (D-MA) said: "With its settlement with Facebook, the FTC not only fell short, it fell on its face. Facebook is getting away with some of the most egregious corporate bad behavior in the age of the internet."[30] Senator Hawley (D-MO) said: "This is very disappointing. This settlement does nothing to change Facebook's creepy surveillance of its own users & the misuse of user data. It does nothing to hold executives accountable. It utterly fails to penalize Facebook in any effective way."[31] The New York Times Editorial Board also spoke out against the settlement.[32]

28.     The FTC did not "place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify, for the receipt of comments or views from any interested person," as required by 16 C.F.R. § 2.34(c).

Effect of Liability Waiver on EPIC

29.     The liability waiver contained in the Stipulated Order resolves all complaints submitted prior to June 12, 2019, alleging that Facebook, its officers, and its directors violated Section 5 of

---

[29] Dissenting Statement of Commissioner Rebecca Slaughter, *In re Facebook, Inc.*, Commission File No. 1823109 at 14 (July 24, 2019), https://www.ftc.gov/system/files/documents/public_statements/1536918/182_3109_slaughter_statement_on_facebook_7-24-19.pdf.
[30] Ed Markey, *Senator Markey Blasts FTC Facebook Privacy Settlement* (July 24, 2019), https://www.markey.senate.gov/news/press-releases/senator-markey-blasts-ftc-facebook-privacy-settlement.
[31] Josh Hawley (@HawleyMO), Twitter (July 24, 2019, 10:36 AM), https://twitter.com/HawleyMO/status/1154037744290557952.
[32] Editorial Board, *A $5 Billion Fine for Facebook Won't Fix Privacy,* N.Y. Times (July 25, 2019), https://www.nytimes.com/2019/07/25/opinion/facebook-fine-5-billion.html.

the FTC Act, including the five complaints EPIC submitted to the FTC concerning Facebook between 2014-2018, and thus prevents the FTC from pursuing these claims in the future.

30.     The FTC's proposed settlement with Facebook does not address all of the claims contained in the complaints filed prior to June 12, 2019, including much of the claims alleged in EPIC's five complaints.

31.     The liability waiver would prevent EPIC from seeking relief from the FTC through the administrative complaint process for the violations detailed in the prior complaints.

32.     Because EPIC would be prevented from seeking relief through the FTC, EPIC will have to redirect resources toward researching and pursuing alternative means of addressing Facebook's privacy violations, including researching state consumer protection laws and pursuing complaints at the state level.

33.     If the FTC did not grant Facebook an overly broad liability waiver, EPIC would not have to pursue alternative means to hold Facebook accountable for privacy violations contained in complaints prior to June 12, 2019.

Effect of Failure to Submit Settlement for Public Comment on EPIC

34.     EPIC routinely submits comments to the FTC on proposed settlements.

35.     Because the FTC can modify or withdraw the agreement in response to comments received, 16 C.F.R. § 2.34(e), the Commission's decision not to accept comments on the proposed agreement deprives EPIC of an opportunity to influence the FTC's decision making on the proposed settlement.

36.     In response to this deprivation, EPIC has pursued this motion to intervene as an alternative avenue to be heard on the proposed settlement, which would not have been necessary had the FTC solicited public comment on the settlement under 16 C.F.R. § 2.34(c).

37. An order directing the FTC to open the proposed settlement to public comment would redress EPIC's injury by providing an opportunity to comment.

## Count I

### Violation of the APA: Unlawful Agency Action

38. Intervenor-Plaintiff asserts and incorporates by reference paragraphs 1–37.

39. Intervenor-Defendants' failure to address all claims that form the basis of the liability waiver constitutes conduct that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

40. Intervenor-Defendant's conduct constitutes final agency action subject to judicial review under 5 U.S.C. § 704.

41. Intervenor-Plaintiff is adversely affected, aggrieved, and injured in fact by Intervenor-Defendants' violation of 5 U.S.C. § 706(2)(A). By granting Facebook immunity for all complaints filed with the Commission between 2012 and 2019, the FTC deprives EPIC of the ability to seek redress for such claims through any future administrative complaint. In response, EPIC must expend resources to research and pursue alternative means of enforcement.

42. Intervenor-Plaintiff has exhausted all applicable administrative remedies.

## Count II

### Violation of the APA: Unlawful Agency Action

43. Intervenor-Plaintiff asserts and incorporates by reference paragraphs 1–37.

44. Intervenor-Defendant failed to "place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or such other period as the Commission may specify, for the receipt of comments or views from any interested person," in violation of 16 C.F.R. § 2.34(c).

45. By failing to accept public comments on the proposed settlement, Intervenor-Defendant has engaged in conduct that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A) and without observance of procedure required by law under 5 U.S.C. § 706(2)(D).

46. Intervenor-Defendants' conduct constitutes final agency action under 5 U.S.C. § 704.

47. Intervenor-Plaintiff is adversely affected, aggrieved, and injured in fact by Intervenor-Defendants' actions. By failing to accept public comment on the proposed settlement, the FTC deprives EPIC of an opportunity to comment. In response, EPIC has expended resources to pursue alternative means of voicing its concerns about the settlement, including this Action.

48. Intervenor-Plaintiff has exhausted all applicable administrative remedies.

## Count III

### Claim for Declaratory Relief Under 28 U.S.C. § 2201(a)

49. Intervenor-Plaintiff asserts and incorporates by reference paragraphs 1–37.

50. Intervenor-Plaintiff is entitled under 28 U.S.C. § 2201(a) to a declaration of the rights and other legal relations of the parties with respect to the claims set forth in Counts I–II.

### Requested Relief

WHEREFORE, Intervenor-Plaintiff requests that this Court:

A. Not to enter the Stipulated Order;

B. Enjoin Intervenor-Defendant from entering into a consent decree with Facebook that includes a liability waiver for claims not addressed in the complaint or the agreement absent a reasoned explanation for each claim;

C. Order Intervenor-Defendant to place the order contained in the consent agreement, the complaint, and the consent agreement on the public record for a period of 30 days, or

such other period as the Commission may specify, for the receipt of comments or views from any interested person;

D. Award EPIC costs and reasonable attorney's fees incurred in this action; and

E. Grant such other relief as the Court may deem just and proper.

        Respectfully Submitted,

        MARC ROTENBERG, D.C. Bar #422825
        EPIC President and Executive Director

        /s/ Alan Butler
        ALAN BUTLER, D.C. Bar #1012128
        EPIC Senior Counsel

        MEGAN IORIO, D.C. Bar #1618365
        EPIC Appellate Advocacy Counsel

        ELECTRONIC PRIVACY
        INFORMATION CENTER
        1519 New Hampshire Avenue, N.W.
        Washington, D.C. 20036
        (202) 483-1140 (telephone)
        (202) 483-1248 (facsimile)

        *Attorneys for Intervenor-Plaintiff EPIC*

Dated: August 12, 2019