# IN THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.<br><br>Defendant | Case 1:19-cv-02184 -TJK |
| --- | --- |

# MOTION OF LEONID GOLDSTEIN FOR LEAVE TO INTERVENE AGAINST THE PROPOSED SETTLEMENT

RECEIVED
Mail Room
SEP - 6 2019
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

# Table of Content

MOTION OF LEONID GOLDSTEIN FOR LEAVE TO INTERVENE AGAINST THE PROPOSED SETTLEMENT .............1
**Intervenor's Interest in the Case** .............2
**Intervenor Defends His and Public Interest in the Case** .............7
Children Health & Privacy Violations .............7
Facebook in Skolkovo .............8
Why Simple Data Deletion Will Not Work .............10
Other Deficiencies of the Proposed Settlement .............11
**CONCLUSION** .............13

Leonid Goldstein ("Intervenor") hereby moves to intervene against the proposed settlement between the United States of America and Facebook, Inc. under FRCP Rule 24(a) or, failing that, Rule 24(b). In support of this motion, Intervenor states as follows.

1. This Motion is timely. Intervenor filed it as soon as he learned the details of the proposed settlement between the United States of America and Facebook, Inc. ("the Proposed Settlement"), and within two months of the filing of the original "complaint" and the proposed orders.

## Intervenor's Interest in the Case

2. Intervenor is a party in interest in the proceeding. Intervenor has a pending lawsuit against Facebook in the US District Court for the Eastern District of Texas,

(6:19-cv-00389, Goldstein v. Facebook, Inc.) The lawsuit alleges that Facebook is liable for AIDING AND ABETTING ACTS OF INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a), COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S. Code § 501 FOR VIOLATION OF § 106, 504, and 505, and CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATION OF 42 U.S.C § 1985 (3).

3. In May 2018, Facebook created and a Registry of Political Speech in the US[1] and published it worldwide to empower foreign actors to retaliate against Americans whose speech they don't like. Within the Registry, Facebook included Intervenor's promoted post, negatively mentioning Obama administration and designating foreign terrorist organization Hezbollah. This post was placed in the Registry next to Intervenor's sensitive personal and financial information. Facebook disabled Intervenor's account soon after that but continued to display the Intervenor's post in the Registry. Later, it developed and provided foreign governments and terrorist organizations with an API for more convenient access to this Registry.

4. On information and belief, Facebook currently stores substantially all the data that it is able to access, from or about its users, down to their mouse movements[2].

[1] https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US

[2] Questions & Answers before the US Senate Committee on Commerce, Science, and Transportation, May 2018 https://www.commerce.senate.gov/public/_cache/files/9d8e069d-2670-4530-bcdc-d3a63a8831c4/7C8DE61421D13E86FC6855CC2EA7AEA7.senate-commerce-committee-combined-qfrs-06.11.2018.pdf

*"Mark Zuckerberg is sitting on more data about what people want to do online than anyone else in the world,"* said Alex Stamos, former Facebook security chief[3].

5. The Proposed Settlement would order, encourage, and/or allow Facebook to erase or spoliate discoverable evidence in its possession, necessary for the Intervenor's lawsuit. It would also allow Facebook to claim undue hardship in production and/or plausibly deny possession of this evidence. Facebook might also delete or hide information necessary for law enforcement to investigate the case and to protect Intervenor, when they have the resources to do that.

6. The information that Facebook might delete or hide under the Proposed Settlement includes Intervenor's Facebook account and pages, and accounts and other activities associated with foreign terrorist organizations.

7. Facebook disabled Intervenor's account, allegedly illegally. The Intervenor have sued Facebook to have his account restored. The Proposed Settlement requires Facebook to erase the data from Intervenor's account, which would make its restoration impossible.

8. The following are specific examples of language in the Proposed Settlement that not only allows Facebook to bypass putative restrictions, but also empowers it

[3] https://www.cnbc.com/2019/03/27/facebook-former-security-chief-alex-stamos-on-zuckerberg-privacy.html

to destroy and/or spoliate evidence, beyond that which it can practically do now (*Decision and Order in the Matters of Facebook,* Section III, p. 6, emphasis is added):

a) *"IT IS FURTHER ORDERED that Respondent and its Representatives, in connection with any product or service, must ensure that Covered Information cannot be accessed by any Covered Third Party from servers under Respondent's control after a reasonable period of time, not to exceed thirty (30) days, from the time that the User has deleted such information or deleted or terminated his or her account,* ***except*** *as required by law or* ***where necessary to protect the Facebook website or its Users from fraud or illegal activity."***

Since Facebook has more than 2 Billion users, in more than one hundred countries, this language gives Facebook license to decide what information to delete, what information to keep, and how to keep it.

b) *"Additionally, Respondent and its Representatives* ***shall further implement procedures designed to ensure*** *that Covered Information entered by the User (such as User-generated content) is deleted from servers under Respondent's control,* ***or is de-identified*** *such that it is no longer associated with the User's account or device, within a reasonable period of time (not to exceed 120 days) from the time that the User has deleted such information, or his or her account,* ***except*** *(1) as required by law; (2)* ***where necessary for the safety and security***

***of Respondent's products, services, and Users, including to prevent fraud or other malicious activity; (3) where stored solely for backup or disaster recovery purposes*** *(subject to a retention period necessary to provide a reliable service); or (4)* ***where technically infeasible given Respondent's existing systems."***

Here, Facebook's obligations are only to *"further implement procedures designed to ensure"* (the fourth derivative of erasing the private information), and the long list of loopholes includes *"infeasible given Respondent's existing systems"*. This makes the rest of the text redundant, and gives Facebook an opportunity to delete or spoliate evidence in a way that would allow Facebook plausible deniability in the future legal actions.

9. Intervenor considers other legal actions against Facebook, which would require evidence, which Facebook now possesses, but which Facebook could delete, spoliate, claim hardship in production, and/or deny its existence, if the Proposed Settlement is ordered.

## Intervenor Defends His and Public Interest in the Case

### Children Health & Privacy Violations

10. Facebook has committed egregious violations of children' privacy. One example comes from an internal document, as quoted in Breitbart on August 8, 2018[4]:

> *"Our team obsessed with finding ways to get individual high schools to adopt a product simultaneously ... Our first breakthrough was that we discovered that teen Instagram users would frequently list their high school in their bios (e.g. "Sophomore at RHS"). We would simply crawl the school's place page and then follow all the accounts that contained the school's name ... We eventually identified a psychological trick ... This notified all students at the same time ... and they subsequently visited our profile, looked at our App Store page, and tried the app."*

Instagram is owned by Facebook. This text has been written by an employee from a company acquired by Facebook, referring to actions taken before the acquisition. Thus, Facebook rewarded them for this activity. Based on the following quote from the same document and belief, Facebook conducted similar activities:

---

[4] https://www.breitbart.com/tech/2018/08/10/internal-facebook-notes-shows-psychological-trick-to-target-teenagers/

*"The purpose of sharing these tactics is to provide guidance for developing products at Facebook ..."*

11. Intervenor is aware of medical research showing that Facebook causes serious damage to adolescents' mental health[5], and engages in extensive coverup[6] of such actions.

12. There are multiple other legal and national security matters, for which Facebook retains evidence in the normal course of business, although preservation of this evidence is not explicitly required by law. The Proposed Settlement would order or allow Facebook to spoliate this evidence, or to plausibly deny its existence.

**Facebook in Skolkovo**

13. In a period including 2014-2016, Facebook participated in the Skolkovo project, which had been earlier identified[7] as an espionage vehicle of the Russian

[5] https://wattsupwiththat.com/2018/11/25/social-media-severely-damages-adolescents-health-1-2/

[6] https://wattsupwiththat.com/2018/11/25/suppression-of-information-and-research-on-social-media-damage-to-adolescents-health-2-2/

[7] *"But the U.S. Army Foreign Military Studies Program warned in 2013: 'Skolkovo is arguably an overt alternative to clandestine industrial espionage.'"* - https://www.nationalreview.com/2018/03/clinton-russia-collusion-evidence/

Federation[8]. Facebook funded and otherwise aided the Russian Federation in the development of facial recognition and computer vision systems having military and intelligence applications.

14. One of the Russian companies that Facebook sponsored in Skolkovo is VisionLabs (https://visionlabs.ai). "*We are already well-known and we are familiar with the research units of Google, Facebook, Twitter and other large-scale IT-companies,*" said Alexander Khanin, its general director. "*Working with these major U.S. companies - Google and Facebook - is an excellent form of recommendation for VisionLabs, one of Skolkovo's most promising companies,*" said Albert Yefimov, head of Skolkovo's Robocentre[9]. The same article also reports that Facebook tested these systems on its users, possibly including American citizens.

15. Mr. Khanin of VisionLabs also said that "*Google and Facebook financed our work, but I would like to reiterate that this is absolutely not a commercial project for us ...*" Mr. Efimov added that VisionLabs' product is "*an important step towards*

---

[8] From the Skolkovo website *sk.ru*:

***"The innovative development of nuclear technologies is an essential condition for consolidating (and in some areas, achieving) a position of global technological leadership and maintaining Russia's defense capability."*** https://sk.ru/foundation/nuclear/p/goals.aspx

***"Developing the space sector ... boosting living standards while helping to ensure national security ..."*** https://sk.ru/foundation/space/p/goals.aspx

[9] https://sk.ru/news/b/news/archive/2016/06/06/skolkovo-resident-visionlabs-joins-forces-with-facebook-and-google-to-teach-machines-to-see.aspx

*stimulating the creation of new technologies and products in strategic fields such as robotics and artificial intelligence."* Robotics and AI developments, sponsored by the government of the Russian Federation, and not for commercial purposes – these are matters of national security!

**Why Simple Data Deletion Will Not Work**

16. Once information has been collected and used in Facebook's operations; it cannot be truly erased. There are backups, duplicates, partial duplicates, private copies, derivatives, cached database query results etc. Even if the data is truly erased from the Facebook operational database, it is likely to remain in backups, data dumps, and in the hands of third parties, including employees and/or contractors of Facebook.

17. The wording of the Proposed Settlement allows Facebook to decide what information to erase, what to retain, and how much to disclose to others. To make matters worse, Facebook has already shared much of its information with third parties, including foreign persons, either voluntarily (sold it) or involuntarily (lost it[10]). Those third parties shared it with others, and so on. It is likely that Facebook employees and/or contractors also copied some information for their own purposes.

[10] An example of a relatively small data loss by Facebook: https://in.pcmag.com/social-networking/129925/facebook-unintentionally-uploaded-contacts-of-15-million-users

18. Thus, the only effect of the Section III of the Proposed Order would be to grant enormous power to Facebook, its employees, contractors, and prior data recipients. Anybody would be able to make any allegations about the "deleted" information, and only Facebook, its employees, contractors, and third-party data recipients will be in position to confirm, deny, ignore, and/or take other stances toward these allegations. If the allegations are defamatory or prejudicial to the interests of other persons, they would have no practical recourse.

19. Thus, the data collected by Facebook data cannot simply be erased. The closest action would be to quarantine it: to make an encrypted copy of the data, store the encrypted copy with a trusted government agency, give the encryption key to another party for safekeeping, and then erase the original data.

**Other Deficiencies of the Proposed Settlement**

20. Facebook intends to commit another large-scale violation of users' privacy by sharing their private data with politicized entities, such as Social Science One LLC[11]. The language of the order seems to allow for this egregious misconduct. Facebook seems to be waiting for approval of the Proposed Settlement to commit this misconduct.

[11] https://www.buzzfeednews.com/article/craigsilverman/slow-facebook

21. Facebook has achieved market value exceeding $500 Billion, in large part by violating the privacy rights and expectations of its users. The imposed fine of $5B is trivial in comparison and it is obviously insufficient.

22. On the other hand, Section XI of the Proposed Settlement is an attempt to regulate Facebook without proper authority.

23. The Proposed Settlement is sometimes hailed because of its significantly higher proposed fines compared with other FTC settlements, such as the $500M+ settlement between FTC and Equifax, announced on or around on July 22, 2019. What is missing from this comparison is that Facebook, without authorization, possesses and has disclosed thousands (or millions) of times more information per user than Equifax, and much of that information is more sensitive than that possessed by Equifax.

24. The FTC has investigated only a tiny fraction of Facebook's privacy-related misconduct but offers it a comprehensive release not only for privacy violations, but also for much broader misconduct. The Proposed Settlement is therefore inadequate and unable to stop Facebook's misconduct in the future.

**CONCLUSION**

Thus, Intervenor is a party in interest in the proceeding entitled to intervene as of right in this matter, and therefore respectfully requests that this Court grants this motion for leave to intervene. Alternatively, the Court should reject the Proposed Settlement, and order Facebook to pay a fine of $5 Billion to Treasury monthly, until the issues between USA and Facebook are resolved.

**State of Texas**
**County of Travis**
**This instrument was acknowledged before me on** September 5 **, 20** 19
**by** Leonid Goldstein

Nancy Claire Richards

NANCY CLAIRE RICHARDS
Notary Public, State of Texas
Comm. Expires 03-08-2021
Notary ID 126221337

Respectfully submitted,

Leonid Goldstein

*pro se*

(408) 921-1110

Leo5533@att.net

*mailing address*:

3824 Cedar Springs Rd

#801-1774

Dallas, TX 75219

September 5, 2019

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 4, 2019, I contacted attorneys of all parties to request consent to this motion. Facebook and the government object to it. EPIC has not replied. Thus, the motion is opposed.

Leonid Goldstein
*pro se*

September 5, 2019

State of Texas
County of Travis
This instrument was acknowledged before me on September 5, 2019 by Leonid Goldstein

Nancy Claire Richards

NANCY CLAIRE RICHARDS
Notary Public, State of Texas
Comm. Expires 03-08-2021
Notary ID 126221337

CERTIFICATE OF SERVICE

I hereby certify that all parties to the proceeding are registered in ECF and are to receive the foregoing documents when it is entered in ECF.

Leonid Goldstein
*pro se*

September 5, 2019

**State of Texas**
**County of Travis**
**This instrument was acknowledged before me on** September 5, **20**19
**by** Leonid Goldstein

Nancy Claire Richards

NANCY CLAIRE RICHARDS
Notary Public, State of Texas
Comm. Expires 03-08-2021
Notary ID 126221337

**Urgent**

This envelope is for use with the following services: **UPS Next Day Air® UPS Worldwide Express® UPS 2nd Day Air®**

›r call **1-800-PICK-UPS®** (1-800-742-5877)
ckup or find a drop off location near you.

**Insert shipping docun**
**under window from tl**

lter rate, UPS Express Envelopes m
ent documents, and/or electronic
UPS Express Envelopes containing
ning more than 8 oz. will be billec

**nts**

elope may be used only for docu
ries consider electronic media as
ort to verify if your shipment is cl

ter rate, the UPS Express Envelope
es weighing more than 8 oz. will l

es are not recommended for ship
ersonal information or breakable

0.4 LBS LTR 1 OF 1
SHP WT: LTR
DATE: 05 SEP 2019
(408) 921-1110
THE UPS STORE #0393
STE 250
12407 N MO PAC EXPY
AUSTIN TX 78758-2491
SHIP TO: US DISTRICT COURT FOR DC
333 CONSTITUTION AVE NW
WASHINGTON DC 20001
MD 201 9-58
UPS NEXT DAY AIR EARLY 1+
TRACKING #: 1Z 628 V32 15 6367 3549
BILLING: P/P
ISH 13.00H ZZP 450 15.5V 07/2019
is envelope for:
lect®
de Expedited®

**Envelope**

with shipping documents printed from a laser
n plain paper.

Serving you for more than 100 years
United Parcel Service.

Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

0101951033 4/14 PAC United Parc