UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff<br><br>  v.<br><br>FACEBOOK, Inc.,<br>a corporation,<br>  Defendant. | Case No. 19-cv-2184-TJK |

**PLAINTIFF'S SURREPLY TO EPIC'S REPLY
REGARDING ARTICLE III STANDING AND RULE 24(a)**

Plaintiff, the United States of America, respectfully files this surreply in opposition to the Electronic Privacy Information Center's ("EPIC") reply in support of its motion to intervene (ECF No. 13) ("EPIC Reply"). The Court's December 10, 2019 order directed the parties to address EPIC's arguments that the Administrative Procedure Act ("APA") claims in its Proposed Complaint (ECF No. 13-1) give it Article III standing and the legally protected interest required for Fed. R. Civ. P. 24(a) intervention as of right.

EPIC's effort to use the APA to manufacture standing and a legally protected interest in this litigation must fail. No matter how EPIC characterizes or recharacterizes its arguments and claims, its sole goal here is to seek veto power over the FTC's valid exercise of its enforcement discretion to settle this case. This it may not do: courts have repeatedly rejected EPIC's efforts to force federal agencies to apply its ideas of how the executive branch should enforce federal law. *EPIC v. FAA*, 892 F.3d 1249 (D.C. Cir.

2018); *EPIC v. FTC*, 844 F. Supp. 2d 98 (D.D.C. 2012), ), *aff'd per curiam,* No. 12-5054, 2012 WL 1155661 (D.C. Cir. Mar. 5, 2012).  For this reason and those set forth below, nothing in this case warrants a different outcome.

## **BACKGROUND**

Before turning to the merits of EPIC's motion to intervene, a brief procedural history is in order.  On July 25, 2019, the United States of America, acting upon the FTC's notification and authorization to the Attorney General, filed its Complaint for Civil Penalties, Injunction, and Other Relief against Facebook (ECF No. 3).  The United States also filed a consent motion asking the Court to approve the settlement between the parties.  ECF No. 4.  That settlement, reflected in the proposed Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief ("Stipulated Order") attached to the motion (ECF No. 4-1), requires Facebook to pay a $5 billion civil penalty and imposes significant injunctive relief, to be achieved primarily by amending the 2012 FTC Order against Facebook ("Amended Order") (ECF No. 4-1, Attachment A).  The Stipulated Order contains release provisions that resolve certain claims between the government and Facebook:

> The parties have consented to entry of this Stipulated Order to resolve any and all claims that Defendant, its officers, and directors, prior to June 12, 2019, violated the Commission's Decision and Order in *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012). Furthermore, this Stipulated Order resolves all consumer-protection claims known by the FTC prior to June 12, 2019, that Defendant, its officers, and directors violated Section 5 of the FTC Act. The FTC and the United States specifically reserve all other claims.

*Id.* at 1.

On July 26, 2019, EPIC moved to intervene under Rule 24 or alternatively to file an *amicus* brief (ECF No. 5-1) ("EPIC Motion"), claiming that the proposed settlement

fails to safeguard the interests of Facebook users and would injure EPIC by resolving complaints that EPIC submitted to the FTC "without EPIC having a voice in the decision." EPIC Motion at 12. The United States took no position on EPIC's request to appear as an *amicus* (ECF No. 11) ("Opposition Brief"), but opposed EPIC's intervention for lack of standing and failure to meet basic Rule 24 requirements—such as filing the proposed complaint required by Fed. R. Civ. P. 24(c) and Local Rule 7(j). On August 12, 2019, EPIC tried to cure these deficiencies by attaching to its reply brief a proposed third-party complaint against the FTC, asserting two claims under the APA (ECF No. 13-1) ("EPIC Proposed Complaint").

Count I challenges the Stipulated Order's release provisions as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Count II claims that the FTC failed to conduct notice-and-comment on the Amended Order, as allegedly required by FTC regulation 16 C.F.R. § 2.34(c). Count III seeks declaratory relief under 28 U.S.C. § 2201(a). EPIC Complaint at 13-14. The Court's December 10, 2019 Order directed the parties to file by January 24, 2020 surreplies to EPIC's reply brief and proposed complaint, and responses to the briefs filed by all *amici*. On December 12, 2019, EPIC filed its *amicus* brief without opposition from the United States. ECF Nos. 24, 26. The United States is responding to the brief filed by EPIC and the other *amici* in a separate filing today.

## ARGUMENT

In its Opposition Brief, the United States set forth why EPIC should not be permitted to intervene, either by right or permissively, in order to challenge the settlement between the United States and Facebook. The proposed complaint that EPIC

subsequently filed with EPIC's reply brief only reinforces that conclusion. EPIC tries to use the APA to manufacture standing and a legally protected interest, but reliance on the APA cannot salvage its motion to intervene. Invoking the APA does not absolve EPIC from the burden of demonstrating Article III standing for intervention as of right—a burden it cannot carry here.[1] *See Twin Rivers Paper Company LLC v. SEC*, 934 F.3d 607, 617 (D.C. Cir. 2019) (industry groups seeking judicial review of agency regulations by alleging APA violations still required to prove Article III standing). The alleged "injuries" on which EPIC would base standing simply do not exist. The proposed settlement's release provisions do not prevent EPIC from filing complaints with the FTC about Facebook, nor do they preclude the FTC from investigating such complaints. Moreover, the FTC is not required to seek public comment before modifying an existing consent order. For similar reasons, EPIC also lacks the legally protected interests necessary to support Rule 24(a) intervention as of right.

Even if EPIC could establish standing and the requisite legally protected interests, the claims it asserts under the APA would necessarily fail, as they are not subject to judicial review under the APA, are patently meritless, or both. The overarching deficiency with EPIC's proposed complaint is that the agency actions it seeks to challenge—the release provisions of the Stipulated Order and the FTC's determination to modify its 2012 Order—embody the government's exercise of its enforcement discretion

---

[1] EPIC incorrectly states that Article III standing is not required for intervention, citing *In re Endangered Species Act Section 4 Deadline Litigation* MDL NO. 2165, 704 F.3d 972, 980 (D.C. Cir. 2013). EPIC Reply at 1-2. That case made clear, however, that Article III standing is required for Rule 24(a) intervention as of right, *In re Endangered Species Act Section 4 Deadline Litigation*, 704 F.3d at 976 (citing cases), though it remains "an open question" whether standing is required for permissive intervention. *Id.* at 980.

and are not subject to review under the APA.  Under *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) and its progeny, the FTC's decisions to allege certain claims, release others, and modify its prior order represent quintessential enforcement decisions that are reserved to the agency's discretion under the APA, 5 U.S.C. § 701(a)(2).  For these reasons, even if EPIC had standing and a legally protected interest, the Court should still deny its motion to intervene because EPIC's proposed complaint fails to state a claim.

## I.  **EPIC Has Neither Standing Nor A Legally Protected Interest Warranting Intervention**

### A.  EPIC Lacks Standing to Bring Its APA Claims

**1.** EPIC has no standing to bring Count I because it cannot identify a legally cognizable injury that a favorable decision would redress.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992).  The elements of standing are (1) a threatened injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins,* 578 U.S. __, 136 S. Ct. 1540, 1547 (2016).  The requisite injury-in-fact must be "an invasion of a judicially cognizable interest."  *Bennett v. Spear,* 520 U.S. 154, 162 (1997) (citing *Defenders of Wildlife*, 504 U.S. at 560-61).

In Count I of its proposed complaint, EPIC challenges the release provisions in the Stipulated Order.  But the release provisions, which merely reflect the general claim preclusion principles that would apply to this settlement, do not injure EPIC within the meaning of Article III.  The Stipulated Order releases only claims against Facebook that belong to the government—namely, prior violations of the 2012 Order and certain claims under Section 5 of the FTC Act.  As the FTC Act does not include a private right of action, *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 997-98 (D.C. Cir. 1973), both

types of claims are enforceable solely by the government. *See* 15 U.S.C. §§ 45(a) and (*l*) and 56(a)(1). As such, their release pursuant to a settlement agreement does not inflict a legally cognizable injury on private parties like EPIC, who have no right to bring (much less resolve) such claims in the first place.

Perhaps recognizing this reality, EPIC tries to identify an injury by invoking its ability (one shared with the general public) to submit complaints to the FTC. In particular, FTC regulations allow anyone to submit "[a] complaint or request for Commission action" through various means, including through the FTC's website or by telephone. 16 C.F.R. § 2.2(a). Underscoring the informal nature of the process contemplated, the regulation specifies that "[n]o forms or formal procedures are required. . . ." *Id.* And, more importantly, the regulation clarifies that filing a complaint confers no special rights on the complainant, stating that "[t]he person making the complaint or request *is not regarded as a party to any proceeding that might result from the investigation*" that the FTC may conduct following review of the complaint or request. *Id.* at § 2.2(b) (emphasis added). Complainants like EPIC thus have no right under either the FTC Act or Section 2.2 to compel the FTC to pursue the violations alleged in their complaints.

EPIC's reliance on Section 2.2 to claim injury is misplaced: nothing in it confers on EPIC a legally cognizable interest that would be impaired by the government's decision to release certain claims under the FTC Act. Moreover, nothing in the Stipulated Order affects EPIC's ability under Section 2.2 to submit complaints or request action by the FTC, or prevents the FTC from investigating such complaints. Indeed, nothing in the Stipulated Order even mentions Section 2.2, much less precludes EPIC (or

anyone else) from invoking it.  Nor does anything in the Stipulated Order purport to affect the rights of individual consumers or advocacy groups to bring whatever claims *they* might possess under law.  Section 2.2, in short, cannot supply EPIC a basis for claiming a legally cognizable injury here.

But even setting that aside, EPIC's invocation of Section 2.2 fails for another reason—namely, EPIC's alleged injury would not be redressed by a favorable decision here.  If the release language were stripped from the Stipulated Order, or if EPIC persuaded the Court to reject the settlement altogether, the government would still have no obligation to bring an enforcement action to address complaints submitted by EPIC under Section 2.2.  *EPIC v. FTC*, 844 F. Supp. 2d at 98; *see also Exhaustless Inc. v. FAA*, 931 F.3d 1209, 1213 (D.C. Cir. 2019) (plaintiff lacked standing because relief sought to vacate agency orders would not redress the claimed injury).  This failure of redressability also precludes a finding of standing here.

**2.** Count II of EPIC's proposed complaint – that the FTC did not seek public comment of the Amended Order – fares no better.   EPIC cannot state an injury because 16 C.F.R. § 2.34(c), which, according to EPIC, required a comment period, does not apply here.  And because no comment period is required for the FTC to modify its 2012 Order, EPIC cannot be injured by the absence of such a comment period.

The regulation cited by Count II, Section 2.34(c), requires the Commission to seek public comment for an agreement settling an administrative complaint.  *See* 16 C.F.R. § 2.31.  Here, however, there was no *administrative* complaint to settle; rather, the proposed settlement would resolve a complaint filed in *this Court* by the United States.  Although the settlement contemplates modifications to the FTC's 2012 administrative

order, those modifications would be governed not by Section 2.34(c), but by 16 C.F.R. § 3.72, which applies "[w]henever the Commission is of the opinion that changed conditions of fact or law or the public interest may require that a Commission [order] . . . should be altered, modified, or set aside in whole or in part. . . ." 16 C.F.R. § 3.72(b)(1). That provision contains no public-comment requirement, the absence of which is particularly noteworthy given the express notice-and-comment requirement in neighboring Section 2.34(c). *See United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 983 (9th Cir. 2008) ("Where an agency includes language in one section of the regulation and omits it in another, it is reasonable to presume that the agency acted intentionally in forgoing the language). For these reasons, EPIC cannot demonstrate any injury, which precludes its standing to bring Count II of its proposed complaint.

### B. EPIC's APA Claims Do Not Create Legally Protected Interests That Warrant Its Intervention Here

For many of the same reasons EPIC lacks standing to bring its APA claims, it cannot show that it has a legally protected interest in this suit, as required for Rule 24(a) intervention. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013) (in addition to standing, intervenor must show "(1) that the application to intervene is timely; (2) the party has a legally protected interest in the action; (3) the action threatens to impair that interest; and (4) no party to the action can adequately represent that interest"); *Cigar Ass'n of Am. v. U.S. FDA*, 323 F.R.D. 54, 59-60 (D.D.C. 2017) (collecting cases).

For example, on Count I, the fact that EPIC spends time and resources submitting complaints to the FTC does not give EPIC some special, legally protected interest in this

government enforcement action against Facebook. *See* 16 U.S.C. § 2.2(b) (filing an FTC complaint does not make one a party). As noted, EPIC has no private right of action under the FTC Act. And EPIC is not a party to this case, so it cannot seek judicial review of the FTC's 2012 Order. *Consumer Federation of America v. FTC*, 515 F.2d 367, 373 (D.C. Cir. 1975). Nor does EPIC cite to anything in the 2012 Order against Facebook that gives EPIC or other non-parties a right to enforce that order. *SEC v. Prudential Securities, Inc.*, 136 F.3d 153, 158 (D.C. Cir. 1998) ("third parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect"); *see also Rafferty v. NYNEX Corp.*, 60 F.3d 844, 849 (D.C. Cir. 1995). Finally, EPIC may not compel the government to pursue its complaints in this or any other case. *EPIC v. FTC*, 844 F. Supp. 2d at 98. And without a legally protected interest here, EPIC cannot intervene based on its Count I allegations.

EPIC also lacks a legally protected interest in pursuing the relief sought by Count II. As discussed above, the regulation EPIC cites for its argument—16 C.F.R. § 2.34(c)—does not apply when the FTC chooses to modify its prior orders, which means that EPIC does not have a legally protected interest at stake here. EPIC has no right to intervene in order to advance a claim that is dead on arrival. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 443 (2d Cir. 1987) ("[T]he court was not required to grant leave to intervene to file a clearly meritless complaint.").

## II. EPIC's APA Claims Are Not Subject to Judicial Review

In addition to EPIC's failure to establish Article III standing or to identify a legally cognizable interest here, EPIC's complaint, if filed, would have to be dismissed under Fed. R. Civ. P. 12(b)(6) because Counts I and II challenge enforcement decisions

entrusted to the government's discretion. *See Oryszak v. Sullivan*, 576 F.3d 522, 524-25 (D.C. Cir. 2009) (complaints challenging actions committed to agency discretion "should be dismissed not for want of subject matter jurisdiction but for failure to state a claim."). The APA explicitly exempts from judicial review "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Bennett*, 520 U.S. at 175. Decades ago in *Heckler*, 470 U.S. at 831-32, the Supreme Court held that enforcement decisions, including a determination not to enforce the law, were "generally committed to an agency's absolute discretion" and thus "presumptively immune from judicial review" under the APA. *Citizens for Responsibility and Ethics in Washington v. FEC,* 892 F.3d 434, 440 n.8 (D.C. Cir. 2018) (citing *Steenholdt v. FAA,* 314 F.3d 633, 638-39 (D.C. Cir. 2003); *see also Secretary of Labor v. Twentymile Coal Col.*, 456 F.3d 151, 160 (D.C. Cir. 2006)); *EPIC v. FTC*, 844 F. Supp. at 98.

       Courts in this circuit and elsewhere have steadfastly applied *Heckler* by rejecting third-party attempts to use the APA to challenge discretionary agency enforcement decisions, including the decision to settle or not to pursue an enforcement action at all. *See Citizens for Responsibility and Ethics in Washington,* 892 F.3d at 438 (agency decision not to initiate an enforcement decision not subject to judicial review for an abuse of discretion); *Sierra Club v. Jackson*, 648 F.3d 848, 855-56 (D.C. Cir. 2011) (agency decision not to take enforcement action not reviewable); *Association of Irritated Residents v. EPA*, 494 F.3d 1027, 1031-32 (D.C. Cir. 2007) (decision to enter consent agreement within agency's discretion and not reviewable); *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1258 (D.C. Cir. 2005) (decisions on deadline extensions committed to agency discretion); *Baltimore Gas and Electric Co. v. FERC*, 252 F.3d 456,

460-61 (D.C. Cir. 2001) (decision to settle case committed to agency discretion); *New York State Dep't. of Law v. FCC*, 984 F.2d 1209, 1214-17 (D.C. Cir. 1993) (decision to settle case and choice of remedy committed to agency discretion); *Cutler v. Hayes*, 818 F.2d 879, 893 (D.C. Cir. 1987) (FDA had no duty to bring enforcement actions); *Schering Corp. v. Heckler*, 779 F.2d 683, 686-87 (D.C. Cir. 1985) (FDA's decision not to enforce while it decides substantive issue is committed to its discretion); *Int'l Ctr. for Tech. Assessment v. Thompson*, 421 F. Supp.2d 1, 7 (D.D.C. 2006) ("FDA is simply exercising its discretion not to take enforcement actions" (quotation marks omitted)); *see also Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1558 (11th Cir. 1985) ("The FTC exercises its enforcement powers at its own discretion.").

EPIC offers nothing to suggest that the government's enforcement decisions here should be an exception to this rule. The presumption that agency enforcement decisions are non-reviewable may be overcome only by showing that "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *EPIC v. FTC,* 844 F. Supp. 2d at 103 (quoting *Heckler,* 470 U.S. at 833). Here, however, neither the FTC Act nor the 2012 Order establish any guidelines for how the government must enforce them, and EPIC does not suggest otherwise. This Court has previously found as much, observing that there is no "indication that Congress intended courts to monitor the FTC's enforcement of its own consent decrees; the statute is devoid of any 'law to apply' or 'guidelines' that would signal that judicial review may be undertaken or that set out the governing standards." *Id*.

EPIC undoubtedly knows of this precedent. In bringing *EPIC v. FTC*, EPIC alleged that the FTC's decision not to enforce its 2011 consent order against Google

violated the APA and sought an order requiring the FTC to initiate an enforcement action. This Court rejected EPIC's claims, holding that "the FTC's decision whether to take action with respect to a potential violation of [a] Consent Order is a quintessential enforcement decision that is committed to the agency's discretion and is not subject to judicial review." *Id.* at 106 (citing *Massachusetts v. EPA,* 549 U.S. 497, 527 (2007)). The Court explained:

> [A]n agency decision not to enforce involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.... The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*Id*. at 103. The same principles apply here—and, if anything, apply *a fortiori*, where rather than simply declining to pursue claims, the government has resolved various claims in exchange for considerable value to the government and the public.

EPIC seeks to avoid the same fate it suffered in *EPIC v. FTC* by attempting to recast the proposed settlement with Facebook as an administrative decision that resolves complaints by EPIC and others. EPIC thus demands a "reasoned explanation" for why the FTC used its enforcement authority to settle via the proposed Stipulated Order. EPIC Reply at 6 (citing *Massachusetts v. EPA,* 549 U.S. at 534). But this argument, if accepted, would create an exception to *Heckler* that would swallow the rule. *Any* discretionary agency enforcement decision could *always* be recast as agency action that requires "reasoned explanation" as to why the agency did not pursue some other course of action favored by a third party. But *Heckler* and its progeny teach that agency

decisions to enforce or not enforce are generally not reviewable.  *See* discussion *supra.*  Count I, if filed, would thus be subject to dismissal.

As for EPIC's allegations in Count II, which challenge the FTC's proposed modification of its 2012 Order, they are likewise exempt from judicial review under the APA.  For starters, the regulation on which Count II is premised does not even apply here, *see supra.*  Moreover, the regulation that does apply—16 C.F.R. § 3.72—plainly empowers the FTC to alter, modify, or set aside its orders when it "is of the opinion that changed conditions of fact or law or the public interest may require" such action.  16 C.F.R. § 3.72(b)(1)-(2).  Such powers are clearly discretionary.  *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (defining discretionary functions as acts that "involve[e] an element of judgment or choice"); *United States v. Varig Airlines,* 467 U.S. 797, 814 (1984) (discretionary functions include "administrative decisions grounded in social, economic, and political policy.").  As such, the FTC's decision to modify its 2012 Order here is an agency action "committed to agency discretion by law," 5 U.S.C. §701(a)(2), that is generally not subject to review under the APA by this Court.  Again, EPIC offers nothing to conclude otherwise.

Finally, while the Court need not delve into EPIC's factual assertions, it should reject EPIC's speculation that the FTC acted irresponsibly in negotiating the proposed settlement with Facebook.  The FTC has devoted substantial resources to monitoring and investigating consumers' complaints against Facebook, including complaints filed by EPIC.  *See* EPIC Reply at 2, 9-10.  This commitment to vigorous enforcement of the FTC Act and existing consent decrees is reflected in dozens of data-privacy cases brought by or on behalf of the FTC over the last decade, as well as by the historic $5 billion civil

penalty and strong injunctive measures that the proposed Stipulated Order and Amended Order, if entered, will impose on Facebook.

To deploy the agency's resources effectively, however, the FTC and its staff must take thoughtful and deliberate action to ascertain whether violations have occurred, to consider the full range of remedies available if violations are found, and to prioritize the myriad data-privacy threats faced by consumers.  Granting the relief that EPIC requests would not only violate *Heckler*, but would interfere with and be wholly inimical to the "public interest in the effective enforcement" of the laws that Congress has passed to protect the public and charged the FTC to enforce.  *See FTC v. H.J. Heinz Co.*, 246 F.3d 708, 726 (D.C. Cir. 2001).

## **CONCLUSION**

For these reasons and those set forth in the United States' Opposition Brief, EPIC's motion to intervene should be denied.

DATED:  January 24, 2020

**FOR THE UNITED STATES:**

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

DAVID M. MORRELL
Deputy Assistant Attorney General

GUSTAV W. EYLER (997162)
Director
Consumer Protection Branch

ANDREW E. CLARK
Assistant Director

*/s/ Patrick R. Runkle*
LISA K. HSIAO (444890)
Senior Litigation Counsel
PATRICK R. RUNKLE
JASON LEE
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
Telephone:  (202) 616-0219
Fax: (202) 514-8742
Lisa.K.Hsiao@usdoj.gov
Patrick.R.Runkle@usdoj.gov
Jason.Lee3@usdoj.gov

*Of Counsel:*

JAMES A. KOHM (426342)
Associate Director for Enforcement

LAURA KOSS (441848)
Assistant Director for Enforcement

ROBIN L. MOORE (987108)
REENAH L. KIM (478611)
LINDA HOLLERAN KOPP (472355)
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, NW,
Mail Stop CC-9528
Washington, DC 20580