## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>  *Defendant*. | Civil Action No. 19-2184 (TJK) |

## MEMORANDUM OPINION

In this action, the United States and Facebook request that the Court enter a stipulated order resolving allegations that Facebook violated both the Federal Trade Commission Act and an eight-year-old FTC administrative order governing Facebook's privacy practices.[1] Before the Court are motions to intervene filed by the Electronic Privacy Information Center and Leonid Goldstein, who is proceeding *pro se*. For the reasons discussed below, the Court will deny both motions.

**I.    Legal Standard**

Federal Rule of Civil Procedure 24 sets out several paths by which a nonparty may intervene in an action. A nonparty may intervene as of right under Rule 24(a)(2) if it satisfies "four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Such a nonparty

---

[1] The Court incorporates the factual background from its Memorandum Opinion addressing the merits of this case.

must also possess an independent basis for Article III standing. *Campaign Legal Ctr. v. FEC*, 334 F.R.D. 1, 4 (D.D.C. 2019). For that reason, a party seeking to intervene as of right must show an "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 40 (D.D.C. 2018) (internal quotation omitted).

Rule 24(b)(1)(B) allows the Court to permit intervention where a nonparty "has a claim or defense that shares with the main action a common question of law or fact." The nonparty "must present the Court with: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."[2] *United States v. Morten*, 730 F. Supp. 2d 11, 16 (D.D.C. 2010) (citation and internal quotation omitted). As its name reflects, "permissive intervention is an inherently discretionary enterprise." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Thus, district courts may deny permissive intervention even where a putative intervenor satisfies the requisite requirements. *Id.* at 1048 ("District courts have the discretion . . . to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action."). Before allowing a nonparty to permissively intervene, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[2] The D.C. Circuit has not determined whether a nonparty seeking to permissively intervene must possess an independent basis for standing. *In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013) ("It remains . . . an open question in this circuit whether Article III standing is required for permissive intervention.").

II.      Analysis

    A.      Intervention of Right

        1.      Electronic Privacy Information Center

The parties oppose the motion filed by the Electronic Privacy Information Center (EPIC) to intervene as of right on several grounds, including that EPIC lacks standing to bring any of its claims, ECF No. 11 at 4–9; ECF No. 29 at 3–6. The Court agrees that EPIC lacks standing and will deny its request to intervene as of right for that reason.

An organization may assert standing "on its own behalf, on behalf of its members or both." *People for the Ethical Treatment of Animals (PETA) v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (internal quotation omitted). Because EPIC asserts standing on its own behalf, ECF No. 13 ("EPIC Reply") at 11, it must allege that it suffered a "concrete and demonstratable injury to [its] activities—with [a] consequent drain on [its] resources—[that] constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Thus, EPIC must allege that the challenged conduct "perceptibly impair[s] [its] ability to provide services," and that it "used its resources to counteract [the alleged] harm." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).

Additionally, when a party alleges a procedural injury—such as is reflected in the second count of EPIC's proposed complaint in intervention—courts "relax the redressability and imminence requirements." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). A plaintiff asserting a procedural claim need not allege that an agency would have acted any differently. *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir 2014). Rather, it need only allege "a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest." *Iyengar v.*

*Barnhart*, 233 F. Supp. 2d 5, 12–13 (D.D.C. 2002) (quoting *Fla. Audubon Soc'y. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996)).

### a. Count I

EPIC first asserts that it would suffer an injury from the settlement's waiver of liability because that provision would deprive EPIC of a method of redress for Facebook's violations of law. ECF No. 13-1 ("EPIC Compl.") ¶¶ 31, 41. Specifically, EPIC alleges in its proposed complaint in intervention that the settlement reached between the United States and Facebook, ECF No. 4-1 ("Stipulated Order"), "would prevent [it] from seeking relief from the FTC through the administrative complaint process for the violations detailed in [its] prior complaints." *Id.* ¶ 31; *see also id.* ¶ 41. But at bottom, these allegations do not amount to a loss of an avenue of redress for EPIC.

Like any other organization or individual, EPIC may submit "[a] complaint or request for [Federal Trade Commission] action" through a web portal, by telephone, or with a signed statement. 16 C.F.R. § 2.2(a). But that is the end of the avenue of redress that EPIC, or anyone else, is entitled to; how those complaints are ultimately resolved is up to the Federal Trade Commission (FTC) or the Department of Justice. The Federal Trade Commission Act ("FTC Act") contains no private right of action, so EPIC must rely on the government to bring enforcement actions for violations of the law. *See United States v. Philip Morris Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003). And EPIC is explicitly "not regarded as a party to any proceeding that might result from the investigation." 16 C.F.R. § 2.2(b). Similarly, as for complaints EPIC may have filed alleging violations of the prior administrative order the FTC entered in 2012 ("2012 Order"), the D.C. Circuit "has opted for a bright line rule . . . that third parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect." *Prudential Sec*, 136 F.3d at 158. Because EPIC has *already*

availed itself of "the administrative complaint process for the violations detailed in [its] prior complaints," EPIC Compl. ¶ 31, it has not lost any channel for seeking relief for them. That the Department of Justice and the FTC have decided to settle these allegations through the Stipulated Order and the related amended FTC administrative order is simply the culmination of the redress process.[3]

EPIC appears to take a slightly different tack elsewhere in its proposed complaint when it suggests that the Stipulated Order would preclude it from filing *future* complaints reiterating the same claims against Facebook. *Id.* ¶ 41 (alleging that by "granting Facebook immunity for all complaints filed with the [FTC] between 2012 and 2019, the FTC deprives EPIC of the ability to seek redress for *such claims* through any future administrative complaint" (emphasis added)). But again, EPIC has not shown a loss of any means of redress. Nothing in the Stipulated Order prevents EPIC from filing whatever complaints it wishes to in the future. To be sure, the Stipulated Order grants Facebook immunity for "complaints filed with the [FTC] between 2012 and 2019" alleging violations of the FTC Act and the 2012 Order. *Id.*; *see also* Stipulated Order at 1–2. As result, the Department of Justice and the FTC would be precluded from taking any additional enforcement action related to any complaint that merely reasserted them. But again, this is hardly the loss of an avenue of redress that would confer standing on EPIC. EPIC and others have *already* raised "such claims" in administrative complaints between 2012 and 2019. EPIC Compl. ¶ 41. And the Department of Justice and the FTC have seen fit to resolve them as

---

[3] According to the FTC, the Stipulated Order addresses all complaints against Facebook concerning violations of the FTC Act or the 2012 Order. ECF No. 28 at 10–11, 11 n.4 (representing that no consumer complaints "known to the FTC raised a potential issue not covered by the proposed settlement").

they propose. EPIC is not entitled to any further method of redress, the loss of which would give it standing here.[4]

Whatever residual interest EPIC has in filing additional administrative complaints with the FTC that reiterate the same claims against Facebook might best be understood as part of its advocacy mission, which does not confer standing. *See* EPIC Compl. ¶¶ 1–2 ("Central to EPIC's mission is advocacy to protect consumer privacy. . . . An important aspect of EPIC's consumer protection program is submission of complaints to the FTC."). Thus, while the Stipulated Order may, as a practical matter, limit EPIC's ability to advocate for more enforcement action, EPIC does not suffer a cognizable injury if it must expend resources to counteract that alleged harm. *See Food & Water Watch*, 808 F.3d at 919 ("Our precedent makes clear that an organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury."); *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) ("This is true whether the advocacy takes place through litigation or administrative proceedings.").

---

[4] Although EPIC does not appear to assert that it has standing because the Stipulated Order prohibits it from seeking redress relating to claims against Facebook that were unknown at the time the settlement was agreed to, the Court notes that this argument would fail as well. The Stipulated Order does not release Facebook from unknown violations of Section 5 of the FTC Act, so EPIC's ability to file administrative complaints and seek relief for any such claim is entirely unaffected by the Stipulated Order. *See* ECF No. 28 at 11. And while EPIC may lose the ability to obtain relief for unknown violations of the 2012 Order, *see* Stipulated Order at 1–2, it has not explained how such a loss impairs its daily operations. *Food & Water Watch*, 808 F.3d at 919 (D.C. Cir. 2015) ("An organization's ability to provide services has been perceptibly impaired when the defendant's conduct causes an inhibition of the organization's daily operations." (cleaned up)). More fundamentally, standing cannot be based on such speculation; EPIC has not identified any past, newly discovered conduct of Facebook's that violates the 2012 Order—but not the FTC Act—about which it might seek to file an administrative complaint with the FTC. *See Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (noting that "the injury alleged cannot be conjectural or hypothetical, remote, speculative, or abstract" (citations and internal quotations omitted)).

In arguing otherwise, EPIC invokes *PETA*, 797 F.3d 1087.  See EPIC Reply at 12–13.  In *PETA*, the plaintiff-organization argued that it had suffered two injuries that flowed from the refusal of the Department of Agriculture (USDA) to apply its Animal Welfare Act regulations to birds.  *Id.* at 1094–95.  First, it could not file complaints with the USDA reporting abuse of birds.  *Id.*  And second, it could not benefit from investigative reports that the USDA would likely have produced in response to such complaints.  *Id.*  The Circuit agreed, holding that the two injuries together supported standing.  *Id.* at 1094–97.

*PETA* is distinguishable from this case in several important and closely related respects.  First, in *PETA*, the plaintiff-organization was completely deprived of an avenue of redress.  The USDA's policy had the effect of wholly "preclud[ing] PETA from preventing cruelty to and inhumane treatment of these animals through its normal process of submitting USDA complaints."  *Id.* at 1094.  That is not the case here.  The FTC has neither changed its complaint process nor adopted a policy categorically barring any type of complaints.  And EPIC has already availed itself of "the administrative complaint process for the violations detailed in [its] prior complaints," EPIC Compl. ¶ 31.  Thus, to the extent the Stipulated Order both settles those complaints and renders future complaints reiterating those claims a nullity, it does not deprive EPIC of an avenue of redress like the USDA's policy did in *PETA*.  The Stipulated Order is, in fact, the ultimate redress that the Department of Justice and the FTC have determined is appropriate for the claims filed by EPIC and others.

Second, in *PETA*, the plaintiff-organization's injury was grounded in the loss of a means of *seeking* redress, as opposed to dissatisfaction with the resulting redress itself.  Standing in *PETA* turned on the agency's failure to act on complaints filed by the plaintiff-organization by investigating and generating reports.  *PETA*, 797 F.3d at 1095.  In contrast, EPIC argues here

that it suffered an injury because it is dissatisfied with the Department of Justice and the FTC's ultimate decision, after a lengthy investigation, to settle claims related to administrative complaints which EPIC, and others, filed—or at least because EPIC did not have a say in that decision, *see* ECF No. 5 at 12. That is a far cry from the injury the Circuit found sufficient to confer standing in *PETA*. Here EPIC confuses its dissatisfaction with the FTC's chosen redress, *see generally* ECF No. 26, with being denied an avenue of redress in the first place. Indeed, the Court cannot order an agency to bring an enforcement action, settle claims differently, or consider the effects on organizations like EPIC, so it is unclear whether the Court could even redress EPIC's purported injury.[5] And "hinging judicial superintendence of Executive enforcement decisions on nothing more than a group's unadorned interest in the law's purposes, combined with just a dash of volitional counter-expenditures, would make the courts 'virtually continuing monitors of the wisdom and soundness of Executive action.'" *PETA*, 797 F.3d at 1103 (Millet, J., dubitante) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992)).

Third, *PETA* assessed "two injuries together"—both the agency's alleged failure to accept complaints and its failure to then turn around and investigate and generate reports that the plaintiff-organization had relied on in the past—and found that "the *combination* of the two . . . sufficed to constitute injury in fact." *Marino v. Nat'l Oceanic & Atmospheric Admin.*, No. 18-

---

[5] *See EPIC v. FTC*, 844 F. Supp. 2d 98, 106 (D.D.C. 2012) ("At bottom, the FTC's decision whether to take action with respect to a potential violation of the Consent Order is a quintessential enforcement decision that is committed to the agency's discretion and is not subject to judicial review."), *aff'd per curiam*, 2012 WL 1155661 (D.C. Cir. Mar. 5, 2012); *see also Baltimore Gas & Elec. Co. v. FERC*, 252 F.3d 456, 460 (D.C. Cir. 2001) ("FERC's decision to settle . . . and its consequent decision not to see its enforcement action through to fruition, is a paradigmatic instance of an agency exercising its presumptively nonreviewable enforcement discretion."); *cf. Action on Safety & Health v. FTC*, 498 F.2d 757, 762 (D.C. Cir. 1974) ("[T]he power to prescribe consent negotiation procedure is part of the general enforcement power of the [FTC], and such enforcement decisions are generally not subject to judicial review.").

CV-2750 (DLF), 2020 WL 1479515, at *5 (D.D.C. Mar. 26, 2020).  Here, by contrast, EPIC asserts no informational aspect to its purported injury that impacts it in the same way moving forward.

### b.     Count II

EPIC also alleges that the FTC violated the APA by wrongfully denying EPIC the opportunity to comment on the Stipulated Order and amended administrative order.  EPIC Compl. ¶¶ 44–45.  Specifically, EPIC argues that under 16 C.F.R. § 2.34(c), the FTC had to offer it and others a chance to comment on them.  *Id.* ¶ 44.  Section 2.34(c) specifies that the FTC must publish its proposed administrative consent orders in the *Federal Register* and offer interested persons 30 days to comment.  16 C.F.R. § 2.34(c).  But as the United States points out, that provision applies only when the FTC proposes to settle one of its own newly initiated administrative proceedings.  *See id.* § 2.31 (noting that the consent order procedures outlined in subsequent provisions apply when a proposed consent agreement is offered "in connection with a proposed complaint submitted by the Commission's staff").  But there is no new administrative complaint or proceeding at issue here.  Rather, the parties have agreed, in connection with resolving the Complaint in this case, ECF No. 3, to reopen the prior administrative proceeding.  *See* Stipulated Order at 4.[6]  And the regulations governing the reopening of prior proceedings do

---

[6] EPIC argues that the FTC cannot reopen the administrative proceeding at issue here because the United States has alleged, in its Complaint in this action, ECF No. 3, a new violation of the FTC Act, EPIC Reply at 10.  But it cites no legal support for that assertion.  Indeed, the FTC's regulations governing reopening administrative proceedings contain no such limitation, *see* 16 C.F.R. § 3.72.  Moreover, Section 3.72(b)(1) recognizes circumstances in which a private party may request that the FTC reopen an administrative proceeding.  *Id.* § 3.72(b)(1).  In those cases, the regulations require that public be afforded the opportunity to comment on the request, unless an "earlier disposition is necessary."  *Id.* § 2.51(c).  That the FTC's regulations contain no such requirement when the FTC, rather than a private party, proposes reopening a proceeding further undermines EPIC's argument that it has a right to comment under these circumstances.  *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 22 (D.D.C. 2017) ("It is well-settled that,

9

not afford the public the right to comment. *See* 16 C.F.R. § 3.72. Because EPIC has no right to comment, it cannot manufacture standing by alleging that the FTC wrongfully denied it the opportunity to do so.

In *In re Endangered Species Act Section 4 Deadline Litig.*, the D.C. Circuit held that a would-be intervenor's similarly baseless argument that it had suffered a procedural injury did not provide it standing. 704 F.3d 972, 979 (D.C. Cir. 2013). The putative intervenor there tried to intervene in a settlement between the Department of the Interior and two environmental organizations. *Id.* at 974. Among other injuries, the putative intervenor alleged that it had been wrongfully denied a chance to comment on the settlement. *Id.* at 979. The Circuit held that no cognizable injury had occurred because "neither the [statute] nor the implementing regulations require[d] the [government] to invite comment" in the first place. *Id.* Thus, the putative intervenor "failed to identify a violation of a procedural right afforded [to it] . . . that [was] designed to protect its interests" and therefore did not have standing to intervene. *Id.*; *see also Nat'l Ass'n of Home Builders v. U.S. Fish & Wildlife Serv.*, 786 F.3d 1050, 1052 (D.C. Cir. 2015); *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324 (D.C. Cir. 2013). So too here. The applicable regulation does not offer EPIC, another complainant, or any member of the general public a chance to comment under these circumstances. Therefore, EPIC has "failed to identify a violation of a procedural right afforded [it] . . . that is designed to protect its interests," *In re Endangered Species Act*, 704 F.3d at 979, so it lacks standing to intervene on this basis. *Cf.*

---

when a legal text 'includes particular language in one section, but omits it in another section,' courts may presume that the text's author 'acted intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up)); *see also Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9, 17–18 (D.D.C. 2006) (noting that frivolous legal interpretations do not support standing).

*EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) ("EPIC cannot ground organizational injury on a non-existent interest.").

Because EPIC has not suffered a cognizable injury related to either the first or second counts of its proposed complaint in intervention, it lacks standing to bring either.[7] For that reason, it cannot intervene.[8]

### 2. Goldstein

Goldstein also fails to show that he has standing to intervene in this case as of right. He predicts that the Stipulated Order would hinder his ongoing lawsuit by ordering or otherwise allowing Facebook to avoid producing discoverable information. ECF No. 15 ¶ 5. But the D.C. Circuit has explained that "[w]hen considering any chain of allegations for standing purposes, [a court] may reject as overly speculative those links which are predictions of future events." *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (internal quotation omitted). Where standing is "premised on future injury, [a plaintiff] must demonstrate a realistic danger of sustaining a

---

[7] Because the third count in EPIC's proposed complaint is one for declaratory relief based on its first two counts, ECF No. 13-1 ¶ 50, the Court need not consider it separately.

[8] Even if EPIC had standing, for many of the same reasons discussed above, it is unlikely that EPIC would satisfy Rule 24(a)(2)'s requirements. And contrary to EPIC's suggestion, *see* EPIC Reply at 11, just because EPIC has Article III standing does not necessarily mean that it has a legally protected interest under the Rule. EPIC cites several cases for the proposition that the two inquiries are the same. *See* ECF No. 5-1 at 15–16 (citing, among other cases, *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1018 (D.C. Cir. 2003) (citing, among other cases, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003)). But the D.C. Circuit has since suggested that there is a distinction between the two. In *Deutsche Bank Nat. Tr. Co. v. FDIC*, the Circuit held that, despite the language in these earlier cases, it would have denied the putative intervenors' motion for lack of prudential standing even if it had found they possessed Article III standing. 717 F.3d 189, 194–95 (D.C. Cir. 2013) (explaining that, as an example, the court would "be quite hesitant to suggest that a creditor's general economic interest in receivership funds, even if sufficient to support Article III standing, would necessarily be an interest relating to any action that threatens those funds").

direct injury." *Id.* (internal quotation omitted). Goldstein's allegations do not remotely suggest that he is in danger of being directly injured. As the United States notes, the Stipulated Order "does not override Facebook's pre-existing obligations to retain data for purposes of anticipated or pending litigation, or change any of Facebook's legal duties with regard to Mr. Goldstein, or, indeed, anyone else with a potential claim against Facebook." ECF No. 19 at 2. And as Facebook adds, "[t]he provision in the proposed settlement to which Mr. Goldstein points does not say anything about Facebook deleting data from users in Mr. Goldstein's situation, whose accounts have been disabled." ECF No. 20 at 5. Goldstein's allegations are far too threadbare and speculative to support any inference that he is likely to suffer injury in the future.[9]

### B.  Permissive Intervention

Both EPIC and Goldstein argue that the Court should permit them to intervene, even if it finds they lack the right to do so. The Court declines their invitation. "Courts have 'wide latitude' in exercising their discretion to allow or deny permissive intervention." *D.C. v. Potomac Elec. Power Co. (PEPCO)*, 826 F. Supp. 2d 227, 236 (D.D.C. 2011) (internal quotation omitted); *see also Nat'l Children's Ctr.*, 146 F.3d at 1048 ("Reversal of a district court's denial of permissive intervention is a very rare bird indeed." (internal quotation omitted)). And, as discussed above, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Here,

---

[9] Even if Goldstein had standing, as with EPIC, he would likely not meet the requirements to intervene under Rule 24. And he failed to file a proposed complaint with his motion as required by the Federal Rules of Civil Procedure and this Court's local rules. Fed. R. Civ. P. 24(c); LCvR 7(j); *see also Friends of the Earth v. EPA*, No. 12-0363 (ABJ), 2012 WL 13054264, at *2, *2 n.4 (D.D.C. Apr. 11, 2012) ("Movant has not filed such a pleading, and the Court could deny the motion [to intervene] based on that failure to comply with the federal rules alone."). Goldstein's *pro se* status does not relieve him of this obligation. *See Hedrick v. Fed. Bureau of Investigation*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (noting that "even a pro se plaintiff must comply with the Federal Rules of Civil Procedure and this Court's local rules").

intervention would both unduly delay and prejudice the main proceeding. "Indeed, the instant motion[s] for intervention and the extensive briefing surrounding [them] ha[ve] already delayed the Court's consideration of the revised consent decree." *PEPCO*, 826 F. Supp. 2d at 236. The Court has permitted parties such as EPIC to file amicus briefs setting out their views on the settlement. And critically, allowing intervention to derail the proceedings any further "would undermine part of the benefit of entering into a consent decree for the settling parties—namely, minimizing litigation and focusing on getting the [FTC's amended administrative order in place] expeditiously." *Id.* at 236–37.

### III.   Conclusion

For all these reasons, the Court will deny EPIC and Goldstein's Motions to Intervene, ECF Nos. 5, 15. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 23, 2020