# Exhibit P

# OFFICE OF THE SECRETARY

## Procedures Manual

## March 2021 Edition

This book summarizes the procedures the Office of the Secretary follows to execute its responsibilities for the Commission decision making process.   If you have any questions, please feel free to call any of the following numbers at any time:

April J. Tabor
**Acting Secretary**

Joel Christie
**Attorney**

Daniel Freer
**Attorney**

Pablo Zylberglait
**Attorney**

Gail Kingsland
**Chief of Staff**

(b)(6)

Brittany Cooper
Dominique Daniels
George Chewning
Carolyn Robinson
**Legal Support Specialists**

Peter Rindfuss
**Paralegal**

Roland Kalepe
**Office Assistant**

Byron Howard
**(Details\*\*\*)**

(b)(6)

## TABLE   OF   CONTENTS

**SUBJECT**                                                                 **PAGE**

**Part I. The Office of the Secretary** ...........................................................................................1

    **A.**    **Summary of Functions** .........................................................................1
    **B.**    **Office Organization** ............................................................................2

**Part II.**    **Summary of the Decisionmaking Process** ..................................4

    **A.**    **Basic Types of Commission Matters** ...............................................4
    **B.**    **Chronology of the Process**..................................................................7
    **C.**    **Mechanics of the Process**...................................................................9

    **Illustrations**
        **Event Chart**
        **Document Coding Form**
        **Assignment Form**
        **Circulation Forms:**
            **Agenda Circulation (Yellow)**
            **Non-agenda Circulation (Green)**
            **Walk-Around Circulation (Pink)**
            **Adjudicative Circulation (Blue)**
            **Sunshine Motion (Closed Meeting) (Yellow)**
            **Sunshine Motion (Adjudicative Meeting) (Blue)**
            **Sunshine Motion (Open Meeting) (White)**

**Part III.**    **Office of the Secretary Reports and Records**...................................13

    **A.**    **Nonpublic and Nonadjudicative Online Reports** ............................13
    **B.**    **The Workload Report:   Paper Version** .........................................14
    **C.**    **Commission Minutes and Electronic Voting Records**....................15

**SUBJECT**                                                                                                           **PAGE**

**Part IV.**   **Assignments, Compulsory Process,
                and Interlocutory Motions** .................................................................16

    **A.**   The Assignment Process ..................................................................16
    **B.**   Compulsory Process Documents ....................................................19
        **1.**   Issuance.................................................................................19
        **2.**   Petitions to Quash ..............................................................20
    **C.**   Interlocutory Motions in Adjudicative Matters............................21

**Part V.**   **Motions, Circulations, and Voting Procedures** ................................22

    **A.**   Overview ..........................................................................................22
    **B.**   Agenda Matters, Motions, and Voting Procedures.........................23
    **C.**   Matters Resolved by Notational Voting .........................................27
        **1.**   Voting Mechanics................................................................28
        **2.**   Voting Deadlines .................................................................29
        **3.**   Non-Agenda Nonadjudicative Motions...............................30
        **4.**   Walk-Around Nonadjudicative Motions .............................31
        **5.**   Adjudicative Motions..........................................................31
        **6.**   Topping Motions .................................................................33
        **7.**   The One Month Rule ...........................................................34
    **D.**   Public Record Votes ........................................................................34
    **E.**   For Information Circulations ..........................................................35
    **F.**   Secretary Motions and Circulations, and
            Negative Option Procedures ...................................................36

**Part VI.**   **Office of the Secretary Glossary** ....................................................37

**APPENDICES**

**Appendix A:**   **Protocol for Coordinating the Issuance of Press Releases and Official
                Documents**

**Appendix B:**   **Types of Commission Documents**

## I.  THE OFFICE OF THE SECRETARY

### A.  <u>Summary of Functions</u>

The Office of the Secretary performs the following functions, among others:

1.  Forwards all recommendations for Commission action from the agency staff to the Commission.

2.  Assigns each such matter to a Commissioner.

3.  Assists with scheduling Commission oral arguments and Commission meetings.

4.  Implements the Commission's voting and other decisionmaking procedures.

5.  Provides immediate computerized access to Commission voting records -- through the OSCAR/MMS2 computer system -- and to a variety of Commission documents, through the Documentum document management system (DocSmart).

6.  Creates official minutes of all Commission meetings and decisions.

7.  Conducts substantive and procedural historical research.

8.  Reviews, validates, and issues all formal Commission documents -- in both paper and electronic form -- and forwards electronic copies of all public Commission documents to the Commission Web Team, for placement on the Commission Website.

9.  Receives and distributes all filings directed to the Commission, including formal filings by parties to administrative proceedings, in cooperation with the Records and Information Management Office (RIM).

10.  Serves all official documents issued by the Commission and Administrative Law Judges, in cooperation with RIM.

11.  Coordinates the preparation of and signs responses to constituent correspondence from Members of Congress, in cooperation with the Office of Congressional Relations.

12.  Serves as official custodian of all Commission records, in cooperation with RIM, and certifies their accuracy and validity.

## B. <u>Office Organization</u>

The Commission Rules of Practice provide that the Secretary is responsible for the minutes of Commission meetings; is the legal custodian of the Commission's seal, property, papers, and records, including legal and public records; and signs Commission orders and official correspondence.[1]   More particularly, the ●ffice supports the Commission decisionmaking process by implementing and advising the Commission and its staff on Commission voting and other decisionmaking procedures, assigning staff recommendations and requests for action to the Commission, processing all Commission circulations and votes, and notifying the Commission and its staff of voting and other decisionmaking deadlines.   The ●ffice also maintains the Commission's electronic assignment and circulation system, and ensures that copies of all Commission assignment packages and circulations can be accessed through the Intranet.   In addition, the Office creates official records of all Commission deliberations and actions taken, whether at Commission meetings or through the written notational voting process.   The Office also reviews, and the Secretary signs or otherwise validates, all official documents approved or authorized by the Commission and its delegates, including consent agreements and reports.   In addition, the Office forwards all Commission Notices to the Federal Register, after signature by the Secretary or the General Counsel, and manages the contract covering Federal Register publication expenditures.   The ●ffice also creates and forwards electronic copies of most of these documents (with appropriate captions) for publication on www.ftc.gov at the same time as the relevant news releases, and thereafter places electronic copies in DocSmart, the Commission's internal document management system. In addition, in cooperation with the ●ffice of Congressional Relations, the Office prepares and forwards responses to most Congressional and White House correspondence raising constituent issues.   The Office also creates and preserves electronic copies of all relevant actions and documents in DocSmart.   The Secretary is also the legal custodian of Commission legal and public records, and is responsible for publishing the FTC Decisions Volumes, including more than 100 volumes covering the period from 1915 to 2015 which have been placed on the Commission Website, at www.ftc.gov.

The Office of the Secretary consists of three components:

1.     The **Front Office,** including the Secretary, an Attorney Advisor and two Attorneys, and the Administrative Assistant, provides overall management throughout the ●ffice of the Secretary; reviews and validates official Commission documents and correspondence (including Commission complaints, consent agreement documents, and orders; Federal Register rulemaking and other notices; and Commission and Congressional correspondence); provides guidance to the Commission, Commission staff, and outside parties on procedural issues; administers the data and document entry and retrieval functions of the OSCAR/MMS2 decisionmaking records system and the DocSmart document storage and retrieval system; develops and administers records development, maintenance, and disposition policies; maintains and as warranted amends the Commission ●perating Manual; and ensures placement of public official Commission documents and correspondence in DocSmart and on the public Commission Website.   The

---

[1] 16 C.F.R. § 0.12.

Front Office also maintains – for use by the Commissioners and the Office of General Counsel – an electronic folder containing all public and nonpublic filings effected and Opinions and Orders issued in all Part 3 administrative proceedings, and works with the Document Processing Section to ensure that all such public documents are placed on the public Commission Website.   In addition, the Front Office prepares, and the Secretary signs, certifications of Commission records required in federal court actions, in other proceedings, and in response to Freedom of Information Act requests.

2.   The **Minutes Section** is responsible for implementing the circulation, voting, and other procedures by which the Commission makes all official decisions; in particular, the Section assigns and delivers staff recommendations and requests for action to the Commission; places assignment, voting, and other decisionmaking data in the OSCAR/MMS2 system; and notifies the Commissioners of voting and other decisionmaking deadlines.   The Section is also responsible for creating official minutes describing all Commission deliberations and decisions, including minutes of Commission meetings, and for providing historical research and analysis to the Commission and to the staff.   In addition, the Section reviews and forwards to the Front Office all action documents approved or authorized by the Commission.   The Section also processes and forwards to a Commissioner for signature all subpoenas and civil investigative demands (CIDs) in Part 2 investigations; scans and places a copy of each such subpoena or civil investigative demand in DocSmart after it has been signed; and then forwards each such subpoena or CID to the Document Processing Section of RIM for service.

3.   The **Congressional Correspondence Section** receives all communications from Congress and, in consultation with the Office of Congressional Relations, coordinates the formulation of responses to constituent correspondence.   In particular, the Section routes certain Congressional inquiries to appropriate Bureau or General Counsel staff for the preparation of draft responses.   The Section also prepares, for signature by the Secretary or the Attorney Advisor, final responses to most Congressional inquiries concerning consumer protection issues – including in particular financial practices and marketing practices issues – and referrals to appropriate federal agencies.   In addition, the Section monitors the performance of the Congressional Correspondence computer system, and develops and distributes reports as warranted.   The Section also creates and places in DocSmart electronic copies of all incoming and outgoing Congressional correspondence, and maintains hard copy files of such correspondence for short periods of time.

4.   Office of the Secretary staff also work closely with the **Records and Information Management Office (RIM)** (in the Office of the Executive Director) to carry out the following functions:

a.   The **Document Processing Section** in RIM performs functions analogous to those of the clerk of a court, by receiving, processing, and distributing filings effected by parties, and documents issued by the Commission and the Administrative Law Judge, in formal and informal proceedings before the agency.   In particular, the Section serves all official documents issued by the Commission and the

3

Administrative Law Judge – in both adjudicative and nonadjudicative matters – including but not limited to Commission complaints and consent agreement documents, Commission and ALJ orders, and Part 2 subpoenas and CIDs.   The Section also enters and maintains computer records of cases, rulemaking proceedings, and other data in the OSCAR and MMS2 computer systems.   In addition, the Section creates and places in DocSmart electronic copies of documents filed in adjudicative and nonadjudicative matters, and works with the Web Team to effect the placement of documents such as public comments in Commission proceedings on the public Commission Website.

b.      The **Records and Information Management Section** in RIM is responsible for the coordination, management and support of court reporting services agency-wide, including scheduling hearings for the Commission and staff, processing and filing transcripts and exhibits, placing text versions of transcripts in DocSmart, and reviewing and approving the payment of court reporting bills.   The Section also maintains and controls all Commission records and physical exhibits during the life cycle of each Commission matter, including implementing contracts for off-site storage and retrieval of Commission records and other documentary material with the National Archives and Records Administration ("NARA") and with Iron Mountain, a private contractor.   As a part of this function, the Section provides authorized personnel with access to public and non-public records, and coordinates the retrieval of files from NARA, Iron Mountain, and other record storage facilities.   In addition, the Section maintains liaison with NARA to execute the disposition of Commission records; assists the Regional Offices with the management and disposition of records; and acts as a liaison to the Bureaus for the review and proper disposition of staff files.   The Section also enters and maintains computer records of cases, case histories, investigations, rulemaking proceedings, and other proceedings in the OSCAR and MMS computer systems.

## II.   SUMMARY OF THE DECISIONMAKING PROCESS

### A.   <u>Basic Types of Commission Matters</u>

The Commission makes most of its decisions in response to staff recommendations, motions, petitions, letters, and other formal requests for action from either the staff or outside parties.   Staff recommendations that the Commission take some particular action are filed with and forwarded to the Commission – in the form of electronic assignment packages – by the Minutes Section in the Office of the Secretary.   All filings by outside parties – including filings in formal adjudicative and rulemaking proceedings – are received, processed, and distributed by the Document Processing Section in RIM.   The chart at the end of this Part depicts the progress of documents through the Commission decisionmaking process.   The other forms described in this Part are also included.

The Commission's law enforcement work product is generally divided into four categories – rulemaking, guidemaking, and a number of other more specialized functions (Part 1 of the

Commission Rules of Practice); non-public investigations (Part 2 of the Rules of Practice); formal adjudications (Part 3 of the Rules of Practice); and federal court litigation.   The Commission also approves – or authorizes the Commission staff to produce and publish – documents such as testimony before Congressional Committees and Subcommittees, economic reports, and competition advocacy filings.   Appendix B to this manual lists the types of Commission documents produced for each of these categories, based on the Rules of Practice.

Any matter in which the Commission has issued a pending administrative complaint is an **"adjudicative" matter,**[2] **and therefore governed by Part 3 of the Rules of Practice until the matter is resolved.**[3]   Milestones in administrative adjudication include the issuance of the complaint; Commission opinions and orders ruling on dispositive motions, such as motions to dismiss filed before the evidentiary hearing, motions to strike, and motions for summary decision; interlocutory orders issued by the presiding Administrative Law Judge (ALJ) or by the Commission; the issuance of an Initial Decision by the ALJ; the filing of an appeal from that decision by either or both parties; the filing of briefs and the presentation of oral argument before the Commission; and the issuance of an Opinion and Final Order by the Commission.   It is important to emphasize that immediately after the Commission issues an administrative complaint, certain *ex parte* communications between (1) persons not employed by the Commission – or a person employed by or an agent of the Commission "who performs investigative or prosecuting functions in adjudicative proceedings" – and (2) members of the Commission and their staffs; the ALJ and his staff; or any other employee "who is or who reasonably may be expected to be involved in the decisional process in the proceeding," are prohibited.[4]   These prohibitions also apply (1) after an order to show cause is issued pursuant to Rule 3.72(b); (2) "from the time an order by a U.S. court of appeals remanding a Commission decision and order for further proceedings becomes effective . . . ;" (3) when "a petition for reconsideration of a Commission decision is filed pursuant to § 3.55 . . . ;" and (4) "with respect to communications concerning an application for stay filed with the Commission pursuant to § 3.56. . ."[5]

Any activity of the Commission that, by contrast, does not relate to the formal administrative trial (pursuant to Part 3 of the Rules of Practice) of an individual or a company alleged to have violated laws administered by the Commission is a **"nonadjudicative" matter.** Documents relating to or arising from nonadjudicative matters – accompanied or followed by staff recommendations – are forwarded to the Commission in electronic form as assignment packages by the Minutes Section of the Office of the Secretary, and may include, for example:

1.   Proposed resolutions authorizing the use of compulsory process; subpoenas and civil investigative demands; orders to file special reports or answers in writing to specific questions under Section 6(b) of the FTC Act; and petitions to quash or limit all forms of compulsory process;[6]

---

2   16 C.F.R. § 3.11(a); *see also* 16 C.F.R. § 3.13.
3   *See generally* 16 C.F.R. §§ 3.1 *et seq.*
4   16 C.F.R. § 4.7(a),(b),(e).
5   16 C.F.R. §§ 3.72(b), 4.7(e).
6   *See generally* 16 C.F.R. §§ 2.7-2.10.   Of course, not all investigations require the use of compulsory process.

2.      Proposed administrative complaints,[7] often accompanied or followed by proposed consent agreements;[8]

3.      Proposed federal court civil penalty complaints, often accompanied or followed by proposed consent decrees;[9]

4.      Proposed federal court complaints for preliminary and/or permanent injunctive and ancillary equitable relief, often accompanied or followed by proposed consent decrees;[10]

5.      Proposed Commission testimony before Congressional Committees or Subcommittees, and proposed comments on legislation solicited by Congressional Committees or Subcommittees, the Office of Management and Budget, or other executive or legislative branch entities;

6.      Proposed Commission responses to requests for advisory opinions;[11]

7.      Proposals for the issuance, modification, or repeal of Commission Rules of Practice and Procedure;[12] Trade Regulation Rules (Part 1, Subpart B Rules);[13] Special Statute Rules (Part 1, Subpart C Rules);[14] Guides and Trade Practice Rules;[15] and other Rules, Regulations, and Statements of General Policy or Interpretation.[16]

8.      Recommendations to approve Commission comments or authorize Commission Staff comments before federal, state, local, and foreign legislative and administrative bodies;

9.      Petitions or proceedings to reopen and modify outstanding Commission cease and desist orders, and recommendations as to their disposition;[17] and

10.     Applications for Commission approval of divestitures, acquisitions, or similar transactions, pursuant to outstanding Commission cease and desist orders, and recommendations as to their disposition.[18]

---

7  *See generally* 16 C.F.R. § 3.11.
8  *See generally* 16 C.F.R. §§ 2.31-2.34, 3.25.
9  *See generally* 15 U.S.C. §§ 18a, 45(l),(m), 56.
10  *See generally* 15 U.S.C. § 13(a),(b).
11  *See generally* 16 C.F.R. §§ 1.1-1.4.
12  *See generally* 16 C.F.R. Part 0- Part 16.
13  *See generally* 16 C.F.R. §§ 1.7-1.20 and 16 C.F.R. Part 408 - Part 460.
14  *See generally* 16 C.F.R. §§ 1.21-1.26 and 16 C.F.R. Part 300 - Part 322.
15  *See generally* 16 C.F.R. §§ 1.5-1.6 and 16 C.F.R. Part 17 - Part 260.
16  *See generally* 16 C.F.R. Parts 0-16, 500-698, 700-703, 801-803, and 901.
17  *See generally* 16 C.F.R. §§ 2.51, 3.71, 3.72.
18  *See generally* 16 C.F.R. § 2.41(f).

## B.   Chronology of the Process

1.     The Bureaus and ●ffices prepare recommendations to the Commission concerning a particular matter.

2.     Each set of recommendations is sent by the Bureau or ●ffice involved to OS in the form of an assignment package with a **document coding form**.

3.     OS assigns the set of recommendations to a Commissioner.   Each assignment package is then emailed by the Minutes Section to the assigned Commissioner, with an **assignment sheet** attached, and with copies to all the other Commissioners; each such message also contains a hyperlink to the complete assignment package in DocSmart.

4.     The assigned Commissioner circulates written motions or schedules a meeting to dispose of the staff recommendations.

5.     The Commission may take action "only with the affirmative concurrence of a majority of the participating Commissioners, except where a greater majority is required by statute or rule or where the action is taken pursuant to a valid delegation of authority."[19]   Written motions are voted on by notation, through the exchange of email messages among the Commissioners; oral motions are voted on by voice vote at scheduled Commission meetings.[20]

6.     OS verifies, validates, and issues official administrative documents, if any, disposing of each matter; and works with the Web Team to post each public document approved or authorized by the Commission – whether in administrative or federal court proceedings – on the public Commission Website.

7.     If the Commission issues an **Administrative Complaint**:

   a.     The ban on *ex parte* communications begins.[21]

   b.     The Chief Administrative Law Judge assigns the case to an ALJ (now always himself) for trial.

   c.     The ALJ issues an initial decision.[22]

   d.     Either or both parties may file a notice of appeal and appeal briefs.[23]

---

19 16 C.F.R. § 4.14(c).
20 16 C.F.R. § 4.14(a).
21 16 C.F.R. § 4.7.
22 16 C.F.R. § 3.51.
23 16 C.F.R. § 3.52.

7

e.     OS works with the Commission to schedule an oral argument, which must ordinarily be held within a prescribed period after the final appellate briefs have been filed.[24]

f.     OS assigns the case to a Commissioner to prepare a Final Order and Opinion of the Commission.

g.     Oral argument is held; the Commissioners discuss the matter in executive session immediately thereafter; and the advisor to the assigned Commissioner takes minutes.

h.     The Chair reassigns the case after oral argument if the executive session discussion indicates that the assigned Commissioner is not in the majority.

i.     The assigned Commissioner prepares a Final ●rder and an Opinion of the Commission, which the Commission then approves and issues.

     (1)     For Part 3 proceedings with respect to which the Commission has sought preliminary relief in federal court under 15 U.S.C. 53(b), the Commission has determined that it will "issue its final decision pursuant to § 3.54 within 45 days after oral argument."[25]

     (2)     In all other Part 3 proceedings, "[t]he Commission will issue its final decision pursuant to § 3.54 within 100 days after oral argument."[26]

### C.  <u>Mechanics of the Process</u>

### CIRCULATION FORMS

1.     Each such form is created electronically and transmitted by email, either by a Commissioner or by the Secretary acting pursuant to delegated authority.   Examples are included at the end of this Part.

2.     Types of circulations include **"Motions," "For Information" Circulations, and "For Information Pending Motion" Circulations**.

3.     **The Document Title** field explains why documents are being sent from one part of the Commission to another.   It should always start with:   **Motion To** or **For Information Circulation of** or **For Information Pending Motion Circulation of**

---

24  16 C.F.R. § <u>3.52(a),(b)</u>.
25  16 C.F.R. § <u>3.52(a)</u>.
26  16 C.F.R. § <u>3.52(b)</u>.

## AGENDA MOTIONS AND (YELLOW FORM) CIRCULATIONS

1.   Matters in which an administrative or federal district court complaint is not accompanied by a consent agreement or decree may be discussed at Commission meetings. Memoranda concerning such matters are circulated with yellow circulation forms.

2.   A matter discussed at a Commission meeting may be resolved by voice motion and vote at the meeting; by voice motion and vote at a subsequent meeting; or pursuant to a later written motion using notational voting by means of the email system.

3.   A Sunshine Act motion should accompany every initial circulation of a matter as an agenda item for **a closed nonadjudicative Commission meeting, a closed adjudicative Commission meeting, or an open Commission meeting**.

4.   The General Counsel must certify on the Sunshine Act motion, before it is circulated, that one or more Sunshine Act exemptions permit the Commission meeting to be closed to the public.

5.   There are two distinct Sunshine Act forms, respectively for **a closed meeting and for an open meeting**.   The Office of the General Counsel can provide assistance in choosing and completing the requisite forms.

## NON-AGENDA NONADJUDICATIVE (GREEN FORM) MOTIONS

1.   The assigned Commissioner circulates a Motion by means of an email message, which should include (a) within the body of the message (1) a complete version of the Motion, and (2) a hyperlink to the original assignment package, as stored in DocSmart; and (b) as attachments to the email message, (1) an Adobe PDF copy of the complete motion, (2) the final Word version of any Commission action document that differs from the version forwarded to the Commission as part of the assignment package, and, if possible, (3) a comparewrite showing how that document differs from the version forwarded to the Commission;

2.   After a majority forms for or against the motion, the remaining votes must be recorded by 11:59 p.m. on the fourteenth calendar day thereafter;

3.   The other Commissioners register their votes on the Motion by exchanging email messages with the ●ffice of the assigned Commissioner; and

4.   Once all the votes have been registered by email, the Office of the assigned Commissioner registers the votes on the printed Minutes Section and Secretary copies of the Motion; attaches to each of these Motion copies a set of the revised Word documents and comparewrites attached to the email version of the Motion; and brings these two Motion documents to the OS Front Office.

## WALK-AROUND NONADJUDICATIVE (PINK FORM) MOTIONS

1. The assigned Commissioner circulates a Motion by means of an email message, which should include (a) within the body of the message (1) a complete version of the Motion, and (2) a hyperlink to the original assignment package, as stored in DocSmart; and (b) as attachments to the email message, (1) an Adobe PDF copy of the complete motion, (2) the final Word version of any Commission action document that differs from the version forwarded to the Commission as part of the assignment package, and, if possible, (3) a comparewrite showing how that document differs from the version forwarded to the Commission;

2. After a majority forms for or against the motion, **and the original of the motion is brought to the Minutes Section by 5:00 p.m.,** the remaining votes must be recorded (1) by 11:59 p.m. the following business day, or (2) by 11:59 p.m. on the fourth business day following the date of the motion, whichever is later;

3. The other Commissioners register their votes on the Motion by exchanging email messages with the Office of the assigned Commissioner; and

4. Once all the votes have been registered by email, the Office of the assigned Commissioner registers the votes on the printed Minutes Section and Secretary copies of the Motion; attaches to each of these Motion copies a set of the revised Word documents and comparewrites attached to the email version of the Motion; and brings these two Motion documents to the OS Front Office.

## ADJUDICATIVE (BLUE FORM) MOTIONS

Adjudicative Motions may also be made and circulated through the exchange of email messages.   A Motion to approve the issuance of a Final Order and Opinion of the Commission -- whether circulated on a non-agenda or a walk-around basis -- is always subject to a 30-calendar-day deadline after a majority forms for or against the Motion.   No one other than the Commissioners, the Office of the General Counsel, and the Office of the Secretary should be given copies of such motions.[27]

## TOPPING (AMENDING) MOTIONS

1. A notational voting topping motion may be circulated on either a walk-around basis or a non-agenda basis, in the same way as any other non-agenda or walk-around motion, and should refer explicitly to the underlying notational voting motion that it is intended to amend.

2. A topping motion becomes valid when (a) it receives a second vote, and (b) the paper original of the motion is brought to the Minutes Section so that the votes can be recorded,

---

27 *See* Commission Minutes, Volume 123, at 278 (October 13, 1971).

and deadlines and voting on the underlying motion can be tolled.   A valid topping motion (c) tolls any voting deadline then in effect for the underlying motion, and (d) suspends voting on all underlying motions.   In all other respects, topping motions are handled like other motions.

## THE ONE MONTH RULE

If no votes on a pending motion are registered (1) within one month after the registration of the most recent vote, <u>and</u> (2) within two weeks after the Commissioners are so notified by the Minutes Section, the motion will be recorded as having failed "for lack of a majority [or lack of a second], pursuant to the one month rule."[28]

## III.   OFFICE OF THE SECRETARY REPORTS AND RECORDS



(b)(2); (b)(7)(E)

---

28  Commission Minutes, Volume 153, at 202 (April 7, 1994).

(b)(2); (b)(7)(E)

## B.   The Workload Report

(b)(2); (b)(7)(E)

## C.   Commission Minutes and Electronic Voting Records

Printed volumes of Commission minutes dating back to July 1969 are available in the Minutes Section.   In addition, electronic copies of these volumes have been stored in DocSmart, and as a consequence, it is now possible to conduct full text searches of these minutes volumes.[29] Each Commission minute includes, *inter alia*, any Commission votes that may have been taken in connection with the matter described.   In addition, the votes taken by the Commissioners on every motion made from 1983 until now can be reviewed in two separate reports accessible at the bottom of the OS Intranet Page.   The static Report entitled Commission Voting Records (1983 -2013) shows all votes taken by all the Commissioners on all motions made during the 1983-2013 period, while the Report entitled Commission Voting Records (2014 – Present) (NEW) – which is updated on a daily basis – shows all votes taken by all the Commissioners from 2014 until the present.

## IV.   ASSIGNMENTS, COMPULSORY PROCESS, AND INTERLOCUTORY MOTIONS

### A.   The Assignment Process

All matters requiring Commission action – whether in the form of staff recommendations, motions, petitions, letters, or other formal requests for Commission action – are forwarded to the Commission through the Office of the Secretary.[30]   Recommendations from the Commission staff

---

(b)(4)

are accompanied by a document coding form.[31]   Upon receipt of a document requiring Commission attention, the Minutes Section assigns the matter to one of the Commissioners, and through the OSCAR computer system generates an assignment sheet containing the following information relating to the assigned document:

1.   The matter name, as recorded in the Management Information System for the matter number of the matter at issue;

2.   The matter number, which may be a seven digit number, a consent (C) number, a docket (D) number, a guide (G) number, a project (P) number, a rule (R) number, or a competition advocacy (V) number;

3.   The document title;

4.   The computer-generated document number, which is registered on ensuing circulation forms in the "related document number" box;

5.   The Commission staff contact.   In the case of documents filed by outside parties (such as petitions to reopen and modify existing Commission orders), the Secretary is listed as the staff contact;

6.   The target circulation date, if any; that is, the date by which the assignment package should be circulated on a "motion," "for information," or "for information pending motion" basis; and

7.   The target motion date (if any); that is, the date by which -- for seven digit and rulemaking matters -- the assigned Commissioner theoretically should make a motion relating to the matter.[32]

The Minutes Section then emails a complete copy of the assignment package – containing the assignment sheet, showing the assigned Commissioner, and a copy of the Commission Staff recommendations – to all the Commissioners.   The Minutes Section also scans or otherwise captures and places a complete copy of the assignment package in DocSmart, and attaches a copy to the ●SCAR/MMS2 entry for that assignment, so that it appears on the nonpublic OS Intranet Assignments and Circulations report.   In addition, the email message to the Commissioners includes a link providing read-only access to the DocSmart file containing the complete assignment package.

The assignments are made on a rotational basis.[33]   The system is designed to allot a roughly equal number of Bureau of Competition assignments and a roughly equal number of

---

31 The Bureaus' document titles should always begin with one of two phrases:   **"Recommendation That . . ."** or **"Memorandum Presenting . . ."**   This and other information from the document coding form is entered into the Office of the Secretary Control and Reporting System (OSCAR) to create an assignment form.
32 *See* Commission Minutes, Volume 153, at 201 (April 7, 1994).

Bureau of Consumer Protection assignments to each Commissioner.   No judgment is made about the relative complexity of the issues presented by assignments.   ●nce a matter is before the Commission, subsequent assignments while the matter remains pending in the same status will be forwarded to the Commissioner who received the first assignment.

(b)(2); (b)(4); (b)(7)(E)

Any Commissioner may request that the Secretary pass over him or her in taking new assignments.[34]   The Chair, in consultation with the other Commissioners, reassigns both matters from a Commissioner who finds it necessary to give them up and matters pending in the office of a departed Commissioner.[35]

Once a matter is assigned to a Commissioner, OS emails to all the Commissioners any documents arising from that matter which require disposition, along with an assignment sheet once again identifying the assigned Commissioner.   With respect to

(1) nonadjudicative seven-digit investigation and rulemaking assignments in which a Bureau recommends that the Commission approve a course of action,[36] and (2) adjudicative motions to withdraw from adjudication matters pending before the Commission

– the assigned Commissioner theoretically should make a Sunshine Act or other motion relating to the matter within 30 calendar days after the date of assignment.[37]

---

33  Commission Minutes, Volume 140, at 196 (September 15, 1983).

34  *Id*.

35  *Id*.

36  Part 2 subpoenas and civil investigative demands are not covered by this procedure, because while each such document must be signed by a Commissioner before it can be issued, its issuance does not require the approval of the entire Commission, once the Commission has authorized the use of compulsory process in the matter at issue.

37  *See* Commission Minutes, Volume 153, at 201 (April 7, 1994).   While technically, the Commission expressed a desire in 1994 to set a 45 day voting deadline, at the request of Chairman Simons in October 2019, the Office of the Secretary has informally established a 30-day voting deadline.

The Minutes Section should be notified if a Commissioner will not participate in a matter because he or she is recused.   The ●ffice of a Commissioner who does not participate in a matter – whether by reason of recusal or otherwise – nevertheless will receive copies of all assignments and circulations pertaining to that matter.

The Office of the Secretary and its Minutes Section are charged with the responsibility of maintaining records of assignments and balancing the distribution of assignments among Commissioners, and the Commission Staff should forward all formal recommendations through the Minutes Section.[38]   Thus, while the electronic transmission of draft documents to the Offices of the Commissioners is perfectly appropriate and is extremely efficient, final sets of staff recommendations for Commission action should be forwarded to OS, because the Minutes Section must accurately record staff recommendations and associated Commission decisions in the official records of the Commission.

## B.   <u>Compulsory Process Documents</u>

1.   <u>Issuance</u> -- The staff must obtain Commission approval – in the form of a resolution authorizing the use of compulsory process – before subpoenas or civil investigative demands (CIDs) can be used to gather information in an investigation.   As with other types of assignments, the Minutes Section emails the request for such a resolution to all the Commissioners – with the assigned Commissioner shown on the assignment sheet – and the assigned Commissioner then makes a motion relating to the recommendation.

After the Commission has approved a particular compulsory process resolution, the Commission staff handling the matter to which the resolution applies may prepare subpoenas or CIDs, as appropriate.   The Federal Trade Commission Improvements Act of 1980 provides that all forms of compulsory process in investigations – including subpoenas, CIDs, and Section 6(b) Orders – must be signed by a Commissioner.[39]   Each Bureau recommendation to issue one or more such documents is therefore forwarded to the assigned Commissioner for signature.   As with all other types of assignments, Commissioners are asked not to accept compulsory process documents directly from the staff; they should be forwarded through the Minutes Section so that accurate records of the Commission's use of compulsory process can be maintained.[40]   The Minutes Section emails compulsory process documents to the assigned Commissioner's office with an assignment sheet.   If the assigned Commissioner is not available to sign the compulsory process documents, his or her office should notify the Minutes Section and return the documents, so that they can be forwarded to the most senior Commissioner available.

---

38  As noted above, this does not prevent the Commission Staff from informally forwarding memoranda requested by and directed to individual Commissioners, as well as advance copies of staff memoranda that will later be forwarded formally through OS.
39  16 C.F.R. § <u>2.7(a)</u>.
40  Thus, for example, if a package of compulsory process documents is received without an assignment sheet, the Minutes Section should be notified.

After a Commissioner has signed a particular compulsory process document, his or her office should retain one copy; the original and the remaining copies should be returned to the Minutes Section. The service of compulsory process documents is accomplished by the Document Processing Section in RIM.

Although the usual procedure is to request that the Commission approve a resolution authorizing the use of compulsory process before any subpoena or CID is prepared, occasionally the subpoenas or CIDs will be forwarded to the Commission simultaneously with the proposed resolution. The resolution <u>must</u> be approved by the Commission <u>before</u> the assigned Commissioner signs the subpoenas or CIDs.

**2.** **Petitions to Quash** -- A recipient of compulsory process may file a petition to quash or limit a subpoena, CID, or Section 6(b) order, and such petitions, like all formal filings before the Commission, are filed with the Document Processing Section.[41] The timely filing of such a petition "shall stay the remaining amount of time permitted for compliance as to the portion or portions of the challenged specifications or provisions."[42] A petition to quash or limit for which confidential treatment (in full or in part) is requested will be rejected by the Secretary – and will "not stay compliance with any applicable obligation imposed by the Commission or the Commission staff" – unless the filer simultaneously files an explicit request for confidential treatment and "[a] redacted public version of the document that is clearly labeled "Public"".[43] One Commissioner (currently Commissioner Wilson) is designated as the Compulsory Process Commissioner, and is delegated the responsibility for making a motion for the Commission to approve a Commission Order ruling on each such petition to quash or limit -- and establishing a new response date, if appropriate -- within 40 days after the petition is filed with the Secretary.[44] The Commission Order may be served on the petitioner via email, facsimile, or any other method reasonably calculated to provide notice to the petitioner of the Order. A copy is simultaneously delivered to the Commission staff, and as soon as possible thereafter, the Commission Order (with confidential material redacted) will be placed on the <u>Petitions To Quash</u> page of the public Commission Website.[45]

---

41 16 C.F.R. § <u>2.10</u>. A petition to quash or limit must be filed within twenty calendar days after service of the subpoena or CID at issue, or prior to its return or compliance date, whichever comes first. *Id.* § <u>2.10(a)(1)</u>. Bureau Directors, Deputy Directors, Regional Directors, Associate Directors in the Bureau of Consumer Protection, and Assistant Directors in the Bureau of Competition and the Bureau of Economics, are authorized to extend the time within which such petitions must be filed. *Id.* § <u>2.10(a)(5)</u>.

42 *Id.* § <u>2.10(b)</u>.

43 *Id.* § <u>4.2(d)(4)</u>. If a petitioner specifically requests confidential treatment for all or part of a petition and related documents, the General Counsel, in consultation with the Bureau staff involved, must determine whether to grant or deny the request.

44 *Id.* § <u>2.10(c)</u>.

45 *Id.* § <u>2.10(d)</u>.

### C.  Interlocutory Motions in Adjudicative Matters

All motions in Part 3 adjudicative proceedings are filed with the Document Processing Section, typically in electronic form, although paper filings are still permitted.   Motions to dismiss filed before the evidentiary hearing (other than motions to dismiss filed pursuant to Rule 3.26(d)), motions to strike, and motions for summary decision should be directly referred to the Commission and will be ruled on by the Commission, unless the Commission in its discretion determines to refer a given such motion to the Administrative Law Judge.[46]   In addition, motions filed under Rule 3.26 or Rule 4.17 should be directly referred to and will be ruled on by the Commission.[47]   During the time an administrative proceeding is pending before the ALJ – who conducts administrative trials under Part 3 of the Rules of Practice – all other motions should be addressed to and decided by the ALJ, except that the ALJ must certify to the Commission (1) all motions on which he or she has no authority to rule, and (2) motions to disqualify him or her that the ALJ fails to grant within ten days.[48]   The Rules of Practice also specify circumstances in which the parties may appeal an ALJ's ruling to the Commission without the approval of the ALJ.[49]

Counsel for the complaint and for the respondents in a particular adjudicative matter may file a joint motion to withdraw the matter from adjudication, in whole or in part, so that the Commission may consider a proposed consent agreement settling the allegations in the complaint. The Commission has delegated to the Secretary -- while an adjudicative matter is still pending before the ALJ, and upon receipt of such a motion from the parties -- the authority to issue an order removing the matter from adjudication, and hence from the *ex parte* communication proscriptions imposed by the Rules of Practice.[50]   If counsel for the complaint decline to join a motion by the respondents to withdraw the matter from adjudication for the consideration of a consent agreement, then the ALJ may certify the motion and agreement to the Commission itself for determination.[51]   In addition, once an adjudicative matter is pending before the Commission, any motion to withdraw it from adjudication must be approved by the Commission.[52]

---

46 *Id.* § 3.22(a).
47 *Id.* § 3.22(a).
48 *Id.*   §§ 3.22(a), 3.23(b).
49 *Id.* § 3.23(a).
50 *Id.* § 3.25(c).   Although the motion and the order withdrawing the matter from adjudication are placed on the public record immediately, the consent agreement is not placed on the public record unless and until the Commission accepts it for public comment.
51 *Id.* § 3.25(c).
52 *Id.* § 3.25(d).

## V.  MOTIONS, CIRCULATIONS, AND
## VOTING PROCEDURES

### A.  Overview

Rule 4.14 of the Commission Rules of Practice prescribes the procedures by which the Commission makes decisions.   By its terms,

> [m]atters before the Commission for consideration may be resolved either at a meeting under § 4.15 or by written circulation.[53]

The decisionmaking vehicle is the motion, and a Commissioner may at any time propose a course of action in that form.   The Commissioners vote on motions either at a Commission meeting or on a written notational voting basis, by means of email circulations.

Rule 4.14(c) provides that "any Commission action, either at a meeting or by written circulation, may be taken only with the affirmative concurrence of a majority of the participating Commissioners . . ."[54]   Rule 4.14(b) provides that "[a] majority of the members of the Commission in office and not recused from participating in a matter (by virtue of 18 U.S.C. 208 or otherwise) constitutes a quorum for the transaction of business in that matter."[55]   Thus, when the Commission has four or five members (none of whom is recused from participating in a given matter), at least three Commissioners must participate in the decision on any given motion, by voting "yes," "no," or "abstain."   The motion is approved only if a majority of the participating Commissioners votes "yes;" otherwise, it fails "for lack of a majority" or "for lack of a second [vote]."

### B.  Agenda Matters, Motions, and Voting Procedures

Matters that warrant face-to-face discussion by the Commissioners are handled as "agenda matters" at open or closed Commission meetings.[56]   In practice, the Commission has ordinarily discussed at such meetings matters in which an administrative or federal district court complaint is not accompanied by a consent agreement or consent decree.   Under the Sunshine Act, a "meeting" is defined, with certain exceptions, as

> the deliberations of at least the number of individual agency members required to take action . . . where such deliberations determine or result in the joint conduct or disposition of official agency business. . .[57]

---

53  16 C.F.R. § 4.14(a).
54  16 C.F.R. § 4.14(c).   Exceptions include instances where a greater majority is required by statute or rule, or where the action involved is taken by a single Commissioner pursuant to a valid delegation of authority.   *Id.*
55  16 C.F.R. § 4.14(b).
56  Commission Minutes, Volume 123, at 277 (October 13, 1971).
57  5 U.S.C. § 552b(a)(2); 16 C.F.R. § 4.15(a)(1).   A quorum of Commissioners is required to take action at a Commission meeting.   However, a Commissioner who is not physically present may authorize a member of his or her staff to report the Commissioner's vote, and thereby count toward a quorum for the purpose of taking action.   16

The Rules of Practice provide that "Commission meetings shall be open to public observation unless the Commission determines that portions may be closed pursuant to 5 U.S.C. § 552b(c)."[58] The matters most frequently discussed at open meetings are trade regulation rules; guides and trade practice rules; and policy issues not implicating particular nonpublic enforcement efforts.[59] The Rules of Practice also provide that the Commissioner to whom a particular open meeting matter has been assigned

> shall have the authority to make available to the public, prior to consideration of the matter at an open meeting, material sufficient to inform the public of the issues likely to be discussed in connection with that matter.[60]

In practice, however, most Commission meetings are closed, because most Bureau assignment packages recommending particular courses of action which are forwarded to the Commission involve nonpublic investigations, and therefore satisfy one or more of the exemptions from the open meeting requirements of the Sunshine Act.[61]   The Commission's practice has been to make certain kinds of determinations only at or after a closed meeting.   In particular, the Commission may convene a closed meeting to consider a nonadjudicative matter in which the staff have recommended an administrative or federal district court complaint, and the prospective respondents or defendants have not signed an administrative consent agreement or federal court consent decree.   All Commission employees may attend nonadjudicative closed meetings.[62]   In addition, the Commission discusses adjudicative matters at one of two different types of closed adjudicative meetings.   In the first type, the general adjudicative meeting, attendance is limited to the Commissioners, their personal staffs, the General Counsel and his or her staff, and the Secretary and his or her staff.[63]   In the second type -- called an "executive session," and typically held after an oral argument -- the Commission has recently followed the practice of having only the Commissioners, their attorney advisors, and Office of General Counsel staff attend, with an attorney or economist advisor to the assigned Commissioner in attendance for the purpose of taking minutes.[64]

---

C.F.R. § 4.14(c).   Commissioners participating in a meeting by telephone of course also may be counted toward a quorum for the purpose of taking action.

58  16 C.F.R. § 4.15(b)(1).

59  Any person whose interest may be directly affected if a portion of a meeting is open may request, in writing, that the Commission close that portion for any of the reasons described in the exemptions portion of the Sunshine Act. The Commission "shall vote on such requests if at least one member desires to do so."   16 C.F.R. § 4.15(b)(2).

60  16 C.F.R. § 4.15(b)(3).

61  See 5 U.S.C. § 552b(c).

62  The Rules of Practice provide that "[a]ll Commission employees and consultants [and "[s]tenographers or court reporters"] may attend nonadjudicative portions of any closed meeting . . ."   16 C.F.R. § 4.15(c)(1).

63  See 16 C.F.R. § 4.15(c)(1).

64  After the minutes have been approved by the Commission -- pursuant to an adjudicative motion circulated by the assigned Commissioner only to the Commissioners themselves -- they are sealed in an envelope and stored in a locked cabinet in the Minutes Section.   Commission Minutes, Volume 133, at 372 (November 25, 1979).   Executive session minutes are not placed in the minutes books, and are accessible only to Commissioners and their staffs.   See 16 C.F.R. § 4.15(c)(3).

The Chair -- and in his or her absence the most senior Commissioner present -- acts as the presiding official at Commission meetings, and the Commissioner assigned to each matter at a particular meeting moderates the discussion of that matter.[65]   Any Commissioner may make a motion concerning such a matter at any time during the meeting.   If the motion is seconded, it is discussed, and the presiding official then secures the vote of each Commissioner on the motion.[66] After the motion has been seconded, any Commissioner may move to amend it.   If the motion to amend is seconded, it is discussed.   Thereafter, the presiding official first secures the vote of each Commissioner on the motion to amend, and then secures the vote of each Commissioner on the underlying motion, as (or as not) amended.

Documents for agenda matters are circulated on a **nonadjudicative** basis (using **yellow** circulation forms) or an **adjudicative** basis (using **blue** circulation forms).   A Sunshine Act motion must be made to schedule each such matter for discussion at an open or closed Commission meeting.   If possible, such a motion should be made and approved at least one week prior to the prospective meeting date, so that the meeting can be announced publicly at least one week in advance.[67]   Typically, the assigned Commissioner makes this motion, after the General Counsel certifies that the matter may be discussed at a closed (rather than open) meeting.   ●nce the motion has been approved, an announcement to that effect is placed in the ●ffice of Public Affairs Events Calendar.   *See, e.g.*, the announcement of the July 10, 2019 Closed Commission Meeting on the July Events Calendar.   ●S prepares and forwards to the Federal Register a separate notice describing each public Commission meeting, such as an oral argument; such notices are not required for closed Commission meetings.[68]   Because most closed meetings involve discussions of nonpublic law enforcement matters, the name of the matter generally is not disclosed in a given notice unless (1) it is an adjudicative matter to be discussed at an executive session immediately following oral argument; or (2) it relates to the Commission budget.   The description of the subject matter in each notice is taken directly from the "form of notice" block on the corresponding Sunshine Act motion.

If the time (but not the date) of the meeting must be changed, the correction can be noted on the original of the Sunshine Motion, and no further action is required.   If the date is changed as well, a new and recertified Sunshine Motion[69] that both deletes the matter from the first meeting date and adds it to the second meeting date may be needed.

---

65 The Rules of Practice provide that the "presiding officer shall be responsible for preserving order and decorum at meetings and shall have all powers necessary to that end."   16 C.F.R. § 4.15(d).

66 If the motion is not seconded, it is recorded in the minutes of the meeting as having failed for lack of a second.

67 5 U.S.C. § 552b; *see* 16 C.F.R. § 4.15(a)(2).   On occasion -- particularly in merger cases subject to Hart-Scott-Rodino deadlines -- it may not be possible to satisfy this timetable.   To accommodate that possibility, if a portion of a Commission meeting may be closed pursuant to 5 U.S.C. § 552b(c)(10), the Commission may "by vote recorded at the beginning of the meeting, or portion thereof, close the portion or portions of the meeting so exempt." 16 C.F.R. § 4.15(c)(2).

68 *See* 16 C.F.R. § 4.15(a)(5).

69 If the new date is less than sixty days after the old date, the General Counsel may determine that recertification is not required, by including the phrase "Previously Certified" in the approval block.

The Office of the Secretary will prepare and distribute the meeting agenda for each week by Friday of the preceding week.[70]   Thereafter, requests for changes in the agenda should be conveyed to the Secretary as soon as possible.

The assigned Commissioner forwards the originals of all the action documents needed to resolve a given matter to the Minutes Section as attachments to the original of the agenda circulation(s).   The date the Commission takes action -- the "date of issuance" -- is defined as the date on which voting on the motion at issue is completed.   Thereafter, the Minutes Section prepares a minute recording the Commission's decision; notifies the appropriate Commission staff of the Commission action by email; and forwards the action documents -- in both paper and electronic form -- to the Secretary for review, verification, signature, and as appropriate, posting on the Commission Website in conjunction with the applicable news release.[71]   Thereafter, the OS Front Office forwards the documents to the Document Processing Section for service, to appropriate members of the Commission staff for further processing, or to another federal agency, as warranted.[72]

## C.   Matters Resolved by Notational Voting[73]

The Commission makes most of its decisions by means of written notational voting, through the exchange of email messages, without conducting a Commission meeting.[74]   Each

---

70 Commission Minutes, Volume ___, at ___ (November 13, 1963).

71 The Chair or the Secretary signs Commission-approved letters to the President, letters to Congress, and letters to other federal agencies, with the phrase "By direction of the Commission."   The Secretary signs all other Commission-approved correspondence (such as letters approving or disapproving proposed order modifications, acquisitions, or divestitures) with the phrase "By direction of the Commission," and all Commission-approved orders with the phrase "By the Commission."

72 For example, after a civil penalty referral letter or a criminal contempt recommendation letter is signed by the Secretary, OS emails an encrypted file containing a copy of the referral letter, a copy of the federal court complaint, and – if there is also a federal court consent decree settling the case – a copy of the federal court consent decree and any attachments (such as the "Reasons for Settlement" document, if any) to the Department of Justice Civil Division.

73 On September 15, 1983, the Commission formally approved a number of rules governing the notational voting process.   *See* Commission Minutes, Volume 140, at 194-97 (hereinafter 1983 Minute).   In May 1984 the Commission informally approved a Protocol for Notation Voting (hereinafter 1984 Protocol) that reaffirmed, with some modifications, the 1983 procedures.   Although the Commission did not expressly vote on the 1984 Protocol, the May 21, 1984 transmittal memorandum from Secretary Emily H. Rock to Chairman Miller and Commissioners Pertschuk, Bailey, Douglas, and Calvani (hereinafter 1984 Transmittal Memorandum) indicates, at page 1, that "the Commissioners have adjusted the procedures originally voted on in order to assure that each Commissioner has a fair opportunity to record votes on written circulations."

On April 7, 1994, the Commission formally approved two additional sets of procedures, respectively entitled (1) "Modifications in Assignment and Voting Procedures," and (2) "Procedures to Govern the Preparation of Final Orders and Opinions in Adjudicative Proceedings."   Copies of the public documents embodying these two sets of procedures are attached as Appendix D, although most of the provisions of the second set of procedures have been superseded by recent changes in the rules governing the preparation of Commission Opinions and Final Orders.   *See* 16 C.F.R. §§ 3.51-3.56.

74 Thus, for example, if the Commission staff recommend that the Commission simultaneously approve both an administrative or federal district court complaint and an accompanying consent agreement or decree, motions relating to such a recommendation are typically made on a notational voting basis.

such motion is circulated on a **non-agenda nonadjudicative** basis (using a **green** circulation form); on a **walk-around nonadjudicative** basis (using a **pink** circulation form); or on an **adjudicative** basis (**non-agenda** or **walk-around**) (using a **blue** circulation form).    A Commissioner is free to formulate any motion on any matter at any time, using whatever language he or she prefers.    The act of making a written motion is separate and distinct from the act of voting on that motion.    Thus, for example, a Commissioner can make a motion on a notational voting basis and then vote "no" on that motion.    Similarly, the moving Commissioner can withdraw a motion at any time before voting on the motion has been completed.

When the voting on a particular motion is completed, all original documents (circulations, staff memoranda, and action documents) are assembled by the Minutes Section.    The date the Commission takes action -- the "date of issuance" -- is defined as the date on which voting on the motion at issue is completed.    Thereafter, the Minutes Section prepares a minute recording the Commission's decision; notifies the appropriate Commission staff of the Commission action by email; and forwards the action documents to the Secretary for review, verification, and signature.    Thereafter, the Front Office forwards the documents to the Document Processing Section for service, or to appropriate members of the Commission staff for further processing, or to another federal agency, as warranted.

1.    **Voting Mechanics** -- The votes on any given motion are registered through the exchange of email messages, and later transferred to a voting grid on the back of the paper original of the motion.    Both the date and the time each vote on such a motion is registered should be recorded on the voting grid.[75]

The language used in the motion determines the significance of the Commission action at issue.    If the motion is **to approve** the issuance of a given Commission document, that means that the Commission has reviewed and approved the text of the document.    By contrast, if the motion is **to authorize** the Commission staff to file a given Commission document, that means that the Commission has not necessarily reviewed and approved the text of the document, but has authorized the Commission staff to file it.    Thus, for example, the Commission **approved** the *Comment on the Food and Drug Administration's Revised Draft Guidance on Citizen Petitions, at* https://www.ftc.gov/system/files/documents/advocacy_documents/federal-trade-commission-co mment-food-drug-administrations-revised-draft-guidance-industry-entitled/p013510_ftc_comme nt_regarding_fdas_revised_draft_guidance_12-3-18.pdf (*see* note 1).    By contrast, the Commission **authorized** the Commission staff to file the *FTC Staff Comment Before the Department of Health and Human Services Regarding the 21st Century Cures Act, at* https://www.ftc.gov/system/files/documents/advocacy_documents/ftc-staff-comment-department -health-human-services-regarding-21st-century-cures-act-interoperability/v190002_hhs_onc_inf o_blocking_staff_comment_5-30-19.pdf.[76]

---

75 *See* 1984 Protocol at 5.

76 As a consequence, note 1 of the *FTC Staff Comment* states that "[t]hese comments reflect the views of FTC staff. They do not necessarily represent the views of the FTC or of any Commissioner; the Commission has, however, voted to authorize staff to submit these comments."    Similarly, each Bureau of Economics staff report indicates that it "has been prepared by staff members of the Bureau of Economics of the Federal Trade Commission.    The views expressed do not necessarily reflect the views of the Commission or any individual Commissioner."    *See* Commission Minutes,

Similarly, the language used in the motion determines the significance of an affirmative Commissioner vote for it, **except** to the extent that the vote is otherwise explained by the voting Commissioner.   If a motion includes more than one part, an affirmative vote constitutes an affirmative vote on each part, and a negative vote is assumed to be a negative vote on each part; it is not permissible to register different votes on different parts of a given motion.   Therefore, on any given motion, each Commissioner must register a vote of "Yes," "No," "Abstain," or "Not Participating" (by reason of recusal or otherwise).   A Commissioner can, however, explain his or her vote by means of (1) a nonpublic notation on the voting grid; (2) an internal memorandum; and/or (3) in matters of public record, a separate public statement and an explanation in the accompanying press release.   If a Commissioner intends to issue a separate statement, that fact should be noted on the voting grid, and the circulation of the separate statement itself should indicate whether the statement is to be placed on the public record.

**2.  Voting Deadlines** -- The formation of a majority either for or against a written motion sets a voting deadline by which the remaining Commissioners must vote.   The date stamped by the Minutes Section on the original voting sheet determines when a majority vote has formed for the purpose of establishing voting deadlines.[77]   Whenever such a deadline is established, the Minutes Section will send an email message to all the Commissioner ●ffices advising that a deadline date has been established and that all remaining votes must be registered by 11:59 p.m. on that date.[78]

(b)(2), (b)(4), (b)(7)(E)

The basis on which the motion is circulated -- that is, on a non-agenda or walk-around basis -- determines the length of time that nonvoting Commissioners will have to vote after the formation of a majority either for or against the motion.   If a Commissioner has not voted by **11:59 p.m.** on the last day of the deadline period, the Secretary is required to record his or her vote

Volume __ at ___ (September 14, 1992).

77 *See* 1984 Protocol at 5.   If the original motion, with the requisite majority of votes registered, is delivered to the Minutes Section by 5:00 p.m., the voting deadline is treated as having been set that day.   If the original motion is delivered after 5:00 p.m., the voting deadline is treated as having been set the following business day.   *Id.*

78 Specific employees in Commissioners' offices should be designated to receive telephone calls concerning voting deadlines.

79 Personnel in the Commissioners' offices, in the General Counsel's office, and in OS can also view this report on an on-line basis by accessing the OSCAR system through their personal computers.

as "Not Participating By Minutes [Section]."[80]   Any Commissioner, including one who has voted on the motion, may make a motion to extend the deadline for voting on the motion.[81]

A Commissioner may withdraw and change his or her vote on a given motion at any time before all votes have been registered.[82]   A Commissioner who withdraws or reinstates a vote should inform the other Commissioners of that action.   If the withdrawal or changing of one or more votes on the motion eliminates the majority, the voting deadline is tolled.[83]   The deadline is reinstated if and when the majority is reestablished, and the length of time remaining when the deadline was previously tolled is used as the amount of time remaining before the new deadline period expires.[84]   The Minutes Section will notify all the Commissioner Offices by email of the new voting deadline once one has been established.   After voting on the motion has been completed, a Commissioner's vote may not be changed unless the Commission by vote approves his or her request to do so.   In practice, such requests are always approved.

**3.   Non-Agenda Nonadjudicative Motions** -- Nonadjudicative motions relating to matters on which there are no urgent time constraints are made on a non-agenda basis.   The original of the motion is circulated to all the Commissioner Offices and to OS by email (using a green circulation form).   After a majority of participating Commissioners has voted for or against the motion, a voting deadline is created.   The Minutes Section will notify all the Commissioner Offices by email that the remaining votes must be registered by **11:59 p.m. on the fourteenth calendar day after the voting deadline is created.**[85]

**4.   Walk-Around Nonadjudicative Motions** – Most Commission motions are now made on a walk-around basis.   The original of the motion is circulated to all the Commissioner Offices and to OS by email (using a pink circulation form).[86]   After a majority of participating Commissioners

---

80 *See* 1983 Minute at 195; 1984 Protocol at 1-3, as modified to reflect the fact that motions may be made and votes may be registered electronically, via email, at any time of the day or night.   Thus, while the Rules of Practice provide that 5:00 p.m. is the end of the business day with respect to certain public Commission matters (16 C.F.R. § 0.3), it is no longer the end of the electronic business day.

81 1983 Minute at 195.   The deadline will be extended only if such a motion is approved before the expiration of the deadline period on the underlying motion.

82 A vote must be withdrawn by a dated (including time) written notation on the voting grid on the back of the original motion.   1984 Protocol at 5.

83 1983 Minute at 195; 1984 Protocol at 5.

84 *See* 1984 Transmittal Memorandum at 2-3.   These calculations are made using full days until the last day of the deadline period.   Thus, for example, if the deadline on a non-agenda nonadjudicative motion is tolled on the eleventh day of the deadline period, eleven days are counted as having elapsed, and if a majority vote is reinstated, three full additional calendar days will remain before the deadline.   On the last day of the deadline period, elapsed and remaining time periods are instead calculated in half days, which are treated as ending at 12:30 p.m. and 5:00 p.m. respectively.   Thus, for example, if the deadline on a non-agenda nonadjudicative motion is tolled at 4:50 p.m. on the fourteenth day of the deadline, thirteen and one-half days are treated as having elapsed.   As a result, if a majority vote is reinstated at 4:55 p.m., the new deadline will be 12:30 p.m. on the next business day.   *See id.*

85 1983 Minute at 195; 1984 Protocol at 1.   The same deadline procedures apply to the approval of agenda minutes, which are circulated by the Secretary on a non-agenda nonadjudicative basis.   Commission Minutes, Volume 141, at 606 (November 4, 1985).

86 Because Sunshine Act motions are walk-around motions unless otherwise noted, they are also governed by the walk-around voting deadline procedures.

has voted for or against the motion, a voting deadline is created.   The Minutes Section will notify all the Commissioner Offices by email that the remaining votes must be registered by **(1) 11:59 p.m. on the next business day, or (2) 11:59 p.m. on the fourth business day after the date of the motion, whichever is later.**[87]

**5.   Adjudicative Motions** -- Motions in a particular matter are made on an adjudicative basis whenever the matter is in adjudicative status, either because it is in litigation under Part 3 of the Rules of Practice, or because it is the subject of an ongoing order to show cause proceeding under Rule 3.72.   Adjudicative motions can be made on either a non-agenda or a walk-around basis.

> **(a)   Non-Agenda Adjudicative Motions** -- The original of the motion is circulated to all the Commissioner Offices and to OS by email (using a blue circulation form).   After a majority of participating Commissioners has voted for or against the motion, a voting deadline is created.   After a majority of participating Commissioners has voted for or against the motion, a voting deadline is created.

>> (1)      If the motion is to approve a Final Order and Opinion, the Minutes Section will notify all the Commissioner Offices that the remaining votes must be registered by **11:59 p.m. on the thirtieth calendar day after the voting deadline is created.**[88]

>> (2)      If the motion is made for any other reason -- such as to issue any notices that may be needed to resolve *in camera* issues arising from the prospective public issuance of the Final Order and Opinion -- the Minutes Section will notify all the Commissioner Offices that the remaining votes must be registered by **11:59 p.m. on the fourteenth calendar day after the voting deadline is created.**[89]

> **(b)   Walk-Around Adjudicative Motions** -- The original of the motion is circulated to all the Commissioner Offices and to OS by email (using a blue circulation form).   After a majority of participating Commissioners has voted for or against the motion, a voting deadline is created.

>> (1)      If the motion is to approve a Final Order and Opinion, the Minutes Section will notify all the Commissioner Offices that any remaining votes must be registered by **11:59 p.m. on the thirtieth calendar day after the voting deadline is created.**[90]

---

87 1983 Minute at 195, *as modified by* 1984 Protocol at 2.   The 1984 Transmittal Memorandum indicates that "each office agreed that it would be better to use the formula which is stated in the attached protocol; that is, the deadline on a walk-around is one day after the formation of a majority, but not less than 4 days after the date of the circulation" (emphasis in original).

88 1983 Minute at 195; 1984 Protocol at 3.

89 1983 Minute at 195, *as modified by* 1984 Protocol at 3.

90 1983 Minute at 195; 1984 Protocol at 3.

(2)     If the motion is made for any other reason -- such as to issue any notices that may be needed to resolve *in camera* issues arising from the prospective public issuance of the Final ●rder and ●pinion -- the Minutes Section will notify all the Commissioner Offices that the remaining votes must be registered by **(1) 11:59 p.m. on the next business day, or (2) 11:59 p.m. on the fourth business day after the date of the motion, whichever is later.**[91]

**6.     Topping Motions** -- Topping (or substitute) motions constitute a vehicle for amending or supplanting a pending non-agenda or walk-around motion.   A topping motion can be presented in any of the forms in which an original motion can be made, and its form need not be the same as that of the underlying motion.

A topping motion cannot become valid until it receives two affirmative votes.[92]   At that point, the original of the topping motion -- containing the voting grid -- should be brought to the Minutes Section so that the topping motion and the two votes can be recorded in the OSCAR system.   If the deadline on the underlying motion expires -- and the voting therefore closes -- before a second affirmative vote is obtained on the topping motion, the topping motion automatically fails for lack of a second.[93]

A valid topping motion (1) tolls any voting deadline then in effect for the underlying motion, and (2) suspends voting on all underlying motions.   Voting on a valid topping motion follows normal voting procedures; after voting is completed, voting on the underlying motion resumes (unless that motion has been mooted or otherwise superseded by approval of the topping motion).[94]   The Minutes Section will notify all the Commissioner Offices by email of the new voting deadline once one has been established.

A Commissioner who makes a motion may thereafter effect changes in the motion by means of a **For Information** circulation which (1) is circulated **prior** to the point at which voting on the motion closes; (2) indicates that the Commissioners who have **already voted for** the motion agree with the proposed changes; and (3) indicates, either expressly or implicitly, that **subsequent affirmative votes** will be treated as registered for the motion **as modified** (thereby satisfying the "affirmative concurrence" requirements of Rule 4.14(c)).[95]

---

91  1983 Minute at 195; 1984 Protocol at 3.

92  1983 Minute at 195, 196; 1984 Protocol at 4.

93  1984 Protocol at 4.

94  1983 Minute at 195; 1984 Protocol at 4.   At Commission meetings, by contrast, once the voting on a seconded amending motion is completed, voting on the underlying motion must be completed.

95  Such a circulation should state, for example, that "With the agreement of the Commissioners who have already voted for the pending motion, the attached version of the compulsory process resolution in this matter should be substituted for the version 1 circulated on [specify date]."

7.     **The One Month Rule** -- When a majority does not form for or against a motion **within one calendar month after the most recent vote cast**, the motion will be recorded as having failed "for lack of a majority [or lack of a second, if only one vote for the motion has been registered], pursuant to the one month rule."[96]   Two weeks before the one month period expires, the Minutes Section will inform all the Commissioner Offices of the date on which the motion will fail.[97]   At that point, the motion will also appear on the Voting Deadline report, under the "Expiring Circulations" heading.   If the motion fails in this fashion, the matter remains with the assigned Commissioner, and another motion to dispose of the matter should then be made.

### D.   Public Record Votes

All votes registered on any particular motion -- whether "yes," "no," "abstain," "not participating [no reason specified]," "not participating by reason of absence," "not participating by reason of recusal," or "not participating by minutes" -- are recorded (b)(2); (b)(4); (b)(7)(E)



(b)(2); (b)(4); (b)(7)(E)

The Commission Rules of Practice establish the standard for determining which of these votes should also be made public.   Rule 4.9(b)(ii) provides that "[t]he final votes of each member of the Commission in all matters of public record, including matters of public record decided by notational voting," are part of the public records of the Commission.[98]   To that end, all Commissioner votes are reported -- either directly or by implication -- on all Commission orders that are both (1) issued pursuant to a vote by the Commission, and (2) placed on the public record. If an order reads simply "By the Commission," that phrase means that all members of the Commission voted for the motion to issue the order.   In addition, all Commissioner votes are reported -- either directly or by implication -- on all Commission letters that are both (1) issued pursuant to a vote by the Commission, and (2) placed on the public record.[99]   The press release describing any particular action also reports the votes registered.   In addition, any public

---

96 Commission Minutes, Volume ___, at ___ (April 7, 1994), *amending* Commission Minutes, Volume 142, at 102-03 (March 24, 1986).

97 *Id.*   The withdrawal of a vote is not a "vote cast," and therefore does not toll a deadline so established.

98 16 C.F.R. § 4.9(b)(ii).   The Commission has categorized votes on a large number of different types of matters as public votes, rather than nonpublic minute record votes.   Commission Minutes, Volume 141, at 632 (December 2, 1985).   However, the votes on such a matter are not actually disclosed to the public until the decision itself becomes a matter of public record, usually through the issuance of a press release.   Thus, for example, the votes on a motion to refer a civil penalty complaint to the Department of Justice for filing are not made public until the complaint is actually filed, either by the Department or by the Commission.

99 Examples of Commission-approved letters include letters to Congressional Committees and Subcommittees; letters to the Department of Justice referring civil penalty complaints and consent decrees and criminal contempt recommendations; letters denying in all respects petitions to reopen and modify Commission orders; and letters ruling on applications for Commission approval of acquisitions, divestitures, and similar transactions.

statement that a Commissioner wishes to issue will be attached to the corresponding Commission document; summarized in the corresponding press release; and included with any Federal Register notice that may be published.

By contrast, when a Commission order or letter is issued pursuant to delegated authority, no votes are either registered or reported.   If a Commissioner wishes to have such an order or letter indicate that he or she is not participating in any aspect of the matter involved -- by reason of recusal or otherwise -- the Secretary should be so advised.

### E.   For Information Circulations

On occasion, the Minutes Section receives from the Commission staff submissions in which no action by the Commission is requested, such as a report on the status of a matter, or a memorandum forwarding a copy of a document showing action taken by the staff pursuant to Commission instruction.   The Minutes Section emails copies to each Commissioner and to the General Counsel, and places a copy in the nonpublic DocSmart document management system and in the OSCAR/MMS2 system.   The copies are marked "For Information Only," and such distribution by the Minutes Section relieves the Commissioners from the necessity of making any further circulation.   Any Commissioner may decide to make a motion based on the information received.

Each Commissioner may circulate documents -- whether of general interest or related to a particular matter – by email on a **For Information** basis.[100]   In addition, Commissioners often circulate by email background materials for the consideration of the Commission with the intention of making a motion at a later date.   In such instances, the circulation should be marked **For Information Pending Motion**.

### F.   Secretary Motions and Circulations, and Negative Option Procedures

The Commission has delegated to the Secretary the authority to make certain motions directly, rather than assigning the underlying matters to a Commissioner's office.   These include motions to approve the minutes of completed Commission actions, and motions to accord final approval to Decisions and Orders arising from consent agreements in cases in which no comments have been received during the comment period.

The Secretary also forwards to the Commission a number of types of negative option notifications, which respectively indicate that a Bureau Director (1) intends to close an investigation in which the Commission has authorized the use of compulsory process; (2) intends to publish a Bureau of Economics study; (3) intends to grant a request for exemptions from the Trade Regulation Rule relating to the care labeling of textile wearing apparel (*see* 16 C.F.R. Part

---

100 Examples of general interest documents include speeches, while examples of documents related to specific matters include separate statements -- whether for internal or external distribution -- and other circulations tied to specific motions.

423); (4) intends to file a civil contempt action arising in a federal court case initiated by the Commission; (5) intends to begin an investigation of a publisher; or (6) intends, through the Assistant Director for Compliance in the Bureau of Competition, to permit amendments to agreements underlying a particular administrative consent agreement without soliciting public comment and without securing the express approval of the Commission.   The purpose of these circulations is to notify the Commission of actions the Bureau Directors intend to take under delegated authority.   Each of these actions may be deferred by taking the appropriate following step:

1.      Any Commissioner may defer the closing of an investigation in which compulsory process has been authorized by circulating a motion relating to the investigation -- such as a motion to defer the closing, or a Sunshine Act motion to place the matter on the agenda for a Commission meeting   -- by **5:00 p.m. on the third business day after the date of the Secretary's notification.**[101]   A Commissioner may remove such a deferral by withdrawing the motion.   The Minutes Section will then notify the other Commissioner Offices that the investigation will close one business day later, unless another Commissioner circulates a motion relating to the investigation.

2.      Any Commissioner may defer the publication of a Bureau of Economics study by so notifying the Minutes Section by **5:00 p.m. on the thirtieth calendar day after the date of the Secretary's notification.**[102]

3.      Any Commissioner may defer the grant of a request for exemptions from the Trade Regulation Rule relating to the care labeling of textile wearing apparel by so notifying the Minutes Section by **5:00 p.m. on the fifth business day after the date of the Secretary's notification.**

4.      Any Commissioner may defer the filing of a civil contempt action by circulating a For Information circulation registering an objection to the filing prior to the expiration of the deadline set for registering such objections in the matter at issue.

5.      Any Commissioner may prevent the initiation of an investigation of a publisher by registering an objection prior to the expiration of the deadline set for registering such objections in the matter at issue.

6.      Any Commissioner may prevent the approval by the Assistant Director for Compliance of amendments to agreements underlying a particular administrative consent agreement -- without soliciting public comment and without securing the express approval of the Commission – by securing Commission approval of a motion to prevent that approval.[103]

---

101  1983 Minute at 196.
102  Commission Minutes, Volume 135 at 78 (November 9, 1978), *as modified*, Commission Minutes, Volume ___ at ___ (September 14, 1992).   Although the 1978 minute describes "ten calendar days" as the minimum period, the Bureau of Economics more recently determined -- in consultation with the Commission -- that henceforth it would not issue such a report until at least thirty calendar days after the Minutes Section forwards the report to the Commission.
103  *See* 16 C.F.R. § 2.41(f)(5)(ii).

## VI.   OFFICE OF THE SECRETARY GLOSSARY

**Action Date (Date of Issuance)** - The date on which the Commission vote on a motion is completed.

**Assignment** - A package of staff documents making a recommendation for or requiring consideration by the Commission.   The package is assigned to a Commissioner who presents it to the full Commission for review and disposition.

**Binder** - A green hard back book used for original documents stored in Records Management/Suitland.

**Circulation** - A document or package of documents emailed by a Commissioner to other Commissioners, on a "For Information," a "For Information Pending Motion," or a "Vote" basis.

**Docket/History Sheet** - For older cases, this sheet was actually an 8.5 x 11 card stock sheet containing the entire case history of a proceeding from inception to disposition.   Docketed cases were represented by white sheets and seven-digit investigations were represented by yellow sheets.   The ●SCAR/MMS2 and DocSmart systems now permit every event that occurs in a particular proceeding to be recorded electronically, and all docket/history sheets for recent cases are generated by the computer system on the basis of these data entries.

**DocSmart** - The Commission's internal document management system.

**Document Coding Form** - A form completed by an organization submitting documents to the Commission via the Minutes Section.

**Document Number** - A six-digit number, automatically generated by ●SCAR/MMS2 which serves as a unique identifier for a document being entered into the OSCAR/MMS2 system.   (Also see Related Document Number).

**Document Title** - A brief summary of why a document is being forwarded from one part of the Commission to another.

**Files Established** - These files are records placed under cover, identified and recorded on the appropriate history/docket sheet.

**Filing** - A document delivered to the RIM Document Processing Section to be made a part of the formal record of a proceeding.

**Matter** - Any type of action initiated by the Commission, including seven-digit investigations; administrative consent agreements; federal court actions; adjudicative proceedings; guidemaking proceedings; projects; and rulemaking proceedings.

**Matter Name** - The official title of a proceeding.   This name will not necessarily be the same as the name for the matter in the OSCAR/MMS2 system.

**Matter Number** - A unique number assigned to a matter at the Commission.   Matter numbers can be expressed as (a) a seven-digit nonpublic investigation;[104] (b) a D-number, for a matter in which the Commission has issued a formal adjudicative complaint without a corresponding consent order; (c) a C-number, denoting a matter in which the Commission has accorded final approval to an administrative complaint and consent order; (d) a G-number, denoting a guidemaking proceeding; (e) a P-number, denoting a bureau project or study; (f) an R-number, denoting a rulemaking proceeding; (g) a V-number, denoting a competition advocacy filing; or (h) an "X-number, denoting a federal court action.

**Minute** - A written summary describing the Commission's deliberations and action on any matter presented for the Commission's consideration, whether at a Commission meeting or by means of notational voting.   When approved by the Commission, it becomes the official record of the Commission action it describes.

**Minutes Section** - The organization within the Office of the Secretary which is responsible, *inter alia*, for preparing the minutes of Commission activity, making assignments to Commissioners, administering the notational voting process, and maintaining and entering data into the OSCAR/MMS2 system and the DocSmart system relating to those activities.

**Motion** - A formal proposal made by a Commissioner to the Commission to adopt a course of action.   The Secretary has been delegated the authority to make motions in certain limited instances.

**NARS** - The National Archives Record Center in Suitland.   When Commission cases have been closed for a period of five years, they are sent to NARS for storage.

**Nonadjudicative** - The status of any matter which is not the subject of quasi-judicial proceedings.

**Non-agenda** - A type of motion on which votes are collected in writing, and the relevant voting deadline period is fourteen calendar days after the formation of a majority.

**OSCAR** - The Office of the Secretary Control and Reporting System.   This is a nonpublic automated system which tracks assignments, the progress of votes, and other data associated with the Commission's decisionmaking process and actions.   Certain OSCAR data are available to anyone with access to the Intranet.

---

[104]  The first two digits of a seven-digit investigation number represent the fiscal year in which the investigation was opened, and the third digit denotes the Bureau ("1" for the Bureau of Competition and "2" for the Bureau of Consumer Protection) that opened it.

**Related Document Number** - A document number assigned by OSCAR/MMS2 to identify a document which is used as a reference number for all subsequent documents recorded in the system which relate to the Commission's consideration of the same issues in the same matter. (*See also* Document Number).

**Topping Motion** - A motion by a Commissioner which is intended to modify or completely supersede a prior motion on the same issue.

**Vote** - A written or oral registration of a Commissioner's view with respect to a particular motion.

**Walk-around** - A type of motion on which votes are collected in writing, and the relevant voting deadline period is the later of four business days after the date of the motion or one business day after the formation of a majority.

32

## APPENDIX A

### Protocol for Coordinating the Issuance
### of Press Releases and Official Documents

### I.   Documents Covered

This protocol describes the coordinated activities of the Office of Public Affairs and the Office of the Secretary in issuing press releases and official documents associated with the following Commission actions:

1.   The Commission issues a **Part 3 Administrative Complaint**;

2.   The Commission issues a **Final Order and Opinion** in an adjudicative matter;

3.   The Commission accepts an **Administrative Consent Agreement** for public comment;

4.   The Commission accords final approval to an **Administrative Complaint and Decision and Order**;

5.   The Commission authorizes the staff to refer to the Department of Justice a **Federal Court Complaint for Civil Penalties**, often accompanied or followed by a **Consent Decree** or **Consent Judgment** settling the allegations;

6.   The Commission authorizes the staff to file a **Federal Court Complaint for Injunctive and Ancillary Equitable Relief**, often accompanied or followed by a **Consent Decree or Consent Judgment** settling the allegations;

7.   The Commission issues an **Advance Notice of Proposed Rulemaking**, a **Notice of Proposed Rulemaking**, a **Final Rule**, or a **Guide**; responds to a **Petition for An Exemption From A Commission Rule** or a **Safe Harbor Application**; or takes some other public action in connection with rulemaking or guide promulgation proceedings;

8.   The Commission issues an **Order** or **Letter** resolving a petition or proceeding to reopen and modify an outstanding Commission cease and desist order;

9.   The Commission issues a **Letter** resolving an **Application for Commission Approval of a Proposed Divestiture, Acquisition, or Similar Transaction**, pursuant to an outstanding Commission cease and desist order;

10.  The Commission approves or authorizes an **Advocacy Filing**;

1

11.     The Commission takes some other action that is or will become a **Matter of Public Record,** such as a **Letter Closing An Investigation**;

12.     An Administrative Law Judge issues an **Initial Decision** in an adjudicative matter; or

13.     An outside party files a **Petition to Reopen and Modify** an existing Commission cease and desist order; or **Requests Commission Approval**, pursuant to such an order, for a divestiture, acquisition, or similar transaction.

## II.   Sequence of Events

The Office of the Secretary notifies the Office of Public Affairs by email as soon as possible after the Commission takes one of the actions described above, and also informs OPA of the Commission vote on that action (if applicable).   In administrative matters, and federal court matters requiring referral to the Department of Justice, the Minutes Section assembles all the relevant documents and forwards them to the Secretary for review, verification, and signature (if warranted at the stage involved).   At this point, OPA consults with both the Commission Bureau or Office involved (BC, BCP, OGC, or OPP), and then with OS, to determine when the press release can be issued and the package can be placed on the public record and served.[1]   As quickly thereafter as possible, the Secretary or his delegate validates and if warranted signs the relevant documents; adds the date of issuance and any other appropriate information; and scans a copy of the signed and dated documents into DocSmart.[2]   Thereafter, OS arranges for placement of electronic copies of the documents on the public Commission Website at the same time that the press release describing the documents is placed on the Commission Website.

Once the schedule for release with respect to a public Commission action has been determined by OPA and the Bureau or Office involved, and OS has been advised of that schedule, the following events occur:

---

[1]   In federal court matters, public release of the relevant documents must be deferred until each such action becomes a matter of public record.   In some types of rulemaking actions, public release of the relevant documents must be deferred until a prescribed number of days after appropriate Congressional Committees have been notified.

[2]   The date of issuance of an order or letter is the date on which the Commission's vote is complete, regardless of the date on which the package is actually sent to or received by the parties to the proceeding.

1.    At least two hours before the time at which the press release will be issued,[3] OS advises each party to the proceeding of the Commission action taken and when the relevant documents and the press release will be available.   Telephone calls are made -- and/or email messages are sent -- to each outside party or their counsel, and to the Commission attorney identified as the lead attorney for the matter.   Telephone calls and email messages can be effected as late or as early in the day as necessary.   With the exception of Commission Opinions and Final Orders and Initial Decisions in adjudicative matters, the relevant documents ordinarily are not released, FAXed, or read to the parties prior to issuance of the press release, unless the Secretary, the Bureau or Office involved, and OPA determine that such action is necessary.

2.    OPA issues the press release to the media on the day the documents are to be mailed to or otherwise made available to the parties.   At the same time, the Web Team places both the press release and the related documents on the public Commission Website.

3.    The Document Processing Section places official service copies of the documents and the press release in envelopes, for delivery via Federal Express, and for placement on the paper public record, and distributes paper copies of the documents within the Commission

## III.  Miscellaneous

A press release is issued when a petition to reopen and modify an outstanding Commission order is filed, and also when an application for Commission approval of a divestiture, acquisition, or similar transaction pursuant to an outstanding Commission order is filed.   Each such document -- with portions designated confidential redacted -- is automatically placed on the public record by OS when received, and a copy of the public version is immediately forwarded to OPA.   Because no telephone notification need be given to the parties, OPA may issue the press release describing the document filed without coordinating the release with OS.

When a consent agreement is placed on the public record for thirty days for the receipt of public comments -- or a petition to reopen and modify an existing order, or an application for approval of a divestiture, acquisition, or similar transaction is filed -- the thirty calendar day public comment period begins on the first business day after the date on which the press release is issued.[4] If the final day of that period is not a business day, the comment period extends through the next business day.[5]

---

[3]  OPA and OS may on occasion determine, particularly in merger cases, that circumstances require notifying the parties and issuing the news release immediately.

[4]  16 C.F.R. §§ 2.41(f), 2.51(c).

[5]  16 C.F.R. § 4.3(a).

If a press release is to be issued concerning a Commission action for which a press release is not usually issued, the Director of OPA will notify the Secretary, and the procedures described in Part II, above, will be initiated.

If expedited action is required in any instance, the office which first learns of it will notify the other office immediately.   Whenever the Commission takes action at a meeting rather than by notation voting, it is assumed that expedited action is required, and that service of the action documents and issuance of the press release should take place as soon as feasible.   Nevertheless, it is also crucial to coordinate this timetable with the Bureau or Office responsible for the matter at issue.

When the Office of the Secretary receives a telephone call from a representative of the media concerning any official action, the call will be referred to OPA.   If a party to an adjudicative proceeding calls OPA to determine the status of any decision, the call will be referred to the Secretary.

### D.  Contacts

| Office of the Secretary | | Office of Public Affairs | |
|---|---|---|---|
| Don Clark | 326- (b)(6) | Justin Cole | 326- (b)(6) |
| April Tabor | 326- | Peter Kaplan | 326- |
| Janice Frankle | 326- | Mitch Katz | 326- |
| LaJuan Jeter | 326- | Gail Kingsland | 326- |
| Julie Mack | 326- | Betsy Lordan | 326- |
| Bob Swenson | 326- | Frank Dorman | 326- |
| Carolyn Robinson | 326- | Jay Mayfield III | 326- |
| Robert Hilliard | 326- | Rich Custer | 326- |
| Emalea Helisek | 326- | Cheryl Warner | 326- |

Document Processing Section, Records and Filings Office, Office of the Executive Director

| | | | |
|---|---|---|---|
| Jeff Nakrin | 326- (b)(6) | Crystal McCoy-Hunter | 326- (b)(6) |
| Fenice Wade | 326- | Linda Hodge | 326- |

**APPENDIX B**

**Types of Commission Documents**

A.   **COMMISSION DOCUMENTS ISSUED PURSUANT TO PART 1 OF THE RULES OF PRACTICE**

1.   Guidance Documents (*See* 16 C.F.R. Part 1, Subpart A)

    a.   Advisory Opinions

    b.   Industry Guides

    c.   Merger Guidelines

    d.   Other Enforcement Guidelines and Policy Statements

2.   Section 18(a)(1)(B) Rulemaking Documents (*See* 16 C.F.R. Part 1, Subpart B)

    a.   Advance Notices of Proposed Rulemaking

    b.   Initial Notices of Proposed Rulemaking

    c.   Final Notices of Proposed Rulemaking

    d.   Rule Promulgation Documents

        (1)   Text of Rule
        (2)   Statement of Basis and Purpose
        (3)   Final Regulatory Analysis

    e.   Nonsubstantive Rule Amendments

    f.   Notices of Placement of *Ex Parte* Communications on the Public Record

3.   Subpart C Rulemaking Documents (*See* 16 C.F.R. Part 1, Subpart C)

    a.   General Notices of Proposed Rulemaking

    b.   Rule Promulgation Documents

        (1)   Appropriate Rule or Order

   (2)  Statement of Basis and Purpose

  c.  Determinations on Petitions for Exemption from Trade Regulation Rules

  d.  Notices of Placement of *Ex Parte* Communications on the Public Record

4.  Export Trade Association Documents (*See* 16 C.F.R. Part 1, <u>Subpart E</u>)

  a.  Recommendations to Export Trade Associations to Readjust Their Business

  b.  Letters Referring Findings and Recommendations to the Attorney General

5.  Statements Initiating A Trademark Cancellation Proceeding Before the Commissioner of Patents (*See* 16 C.F.R. Part 1, <u>Subpart F</u>)

6.  Interpretations of the Provisions of the Fair Credit Reporting Act, and Rescissions, Revocations, Modifications or Withdrawals Thereof (*See* 16 C.F.R. Part 1, <u>Subpart H</u>)

7.  Documents Arising From Procedures For Implementation of the National Environmental Policy Act of 1969 (*See* 16 C.F.R. Part 1, <u>Subpart I</u>)

8.  Economic Surveys, Investigations and Reports (*See* 16 C.F.R. Part 1, <u>Subpart J</u>)

9.  Appliance Labeling Rule Violation Documents (*See* 16 C.F.R. Part 1, <u>Subpart K</u>)

  a.  Notices of Proposed Penalties

  b.  Adjudicative Complaints

  c.  Assessments of Penalties

10.  Submissions Under the Small Business Regulatory Enforcement Fairness Act (*See* 16 C.F.R. Part 1, <u>Subpart M</u>)

11.  Tax Refund Offset Documents (*See* 16 C.F.R. Part 1, <u>Subpart Q</u>)

12.  Documents Arising From Policy With Regard To Indemnification of FTC Employees (*See* 16 C.F.R. Part 1, <u>Subpart R</u>)

2

13.   Other Orders Disposing of Matters Arising in Rulemaking Proceedings, including, *inter alia*, Orders Disposing of Motions to Disqualify Commissioners

**B.   COMMISSION DOCUMENTS ISSUED PURSUANT TO PART 2 OF THE RULES OF PRACTICE**

1.   Compulsory Process Documents (*See* 16 C.F.R. Part 2, Subpart A; 16 C.F.R. Part 800 *et seq.*)

   a.   Resolutions

   b.   Subpoenas

   c.   Civil Investigative Demands

   d.   Section 6(b) Special Reports

   e.   Orders Requiring Access to Files

   f.   Responses to Petitions to Quash

   g.   Responses to Petitions for Full Commission Review of Responses to Petitions to Quash

   h.   HSR Second Requests

2.   Letters Closing Investigations in Which Compulsory Process Has Been Authorized

3.   Consent Agreement Documents, When Agreement is Accepted for Public Comment (*See* 16 C.F.R. Part 2, Subpart C)

   a.   Consent Agreement

   b.   Draft Complaint

   c.   Analysis to Aid Public Comment

4.   Final Complaint and Decision and Order

5.   Compliance Documents (*See* 16 C.F.R. Part 2, Subpart D)

   a.   Letters Responding to Compliance Reports

3

     b.     Letters Advising Respondents Whether Proposed Courses of Action Constitute Compliance

     c.     Letters Rescinding or Revoking Approval of Compliance Reports, or Rescinding Advice

     d.     Letters Responding to Applications for Approval of Proposed Divestitures

     e.     Letters Responding to Applications for Approval of Proposed Acquisitions

     f.     Notices Placing Certain Communications Concerning Applications for Approval of Proposed Divestitures or Acquisitions on the Public Record

6.     Responses to Requests to Reopen and Modify Existing Commission Orders

     a.     Letters Rejecting Such Requests in Their Entirety

     b.     Orders Granting Such Requests in Part or in Their Entirety, by Reopening Proceedings and Modifying ●rders

## C.     COMMISSION DOCUMENTS ISSUED PURSUANT TO PART 3 OF THE RULES OF PRACTICE

1.     Administrative Complaints (*See* 16 C.F.R. § 3.11)

2.     Federal Register Notices for Adjudicative Hearings in Rulemaking Proceedings Under the Fair Packaging and Labeling Act (*See* 16 C.F.R. § 3.13)

3.     Interlocutory Orders (*See* 16 C.F.R. §§ 3.14, 3.15, 3.22, 3.23)

     a.     Orders Ruling on Requests for Leave to Intervene

     b.     Orders Ruling on (1) Motions Certified to the Commission by the Administrative Law Judge, Including, *inter alia*, Motions to Amend the Complaint or Notice and Motions to Disqualify the ALJ, and (2) Requests from the ALJ for an Extension of Time Within Which to File the Initial Decision

     c.     Orders Ruling on Interlocutory Appeals From ALJ Rulings, With or Without a Determination by the ALJ

4.      Orders Withdrawing Matters from Adjudication for the Consideration of Proposed Consent Agreements (*See* 16 C.F.R. § 3.25(c),(d))

5.      Consent Agreement Documents (*See* 16 C.F.R. § 3.25(f))

         a.      Consent Agreement

         b.      Analysis to Aid Public Comment

6.      Final Decision and Order

7.      Orders Returning Matters To Adjudication

8.      Notices Scheduling, Rescheduling, and Designating the Format of Oral Arguments

9.      Orders Ruling on Motions Filed With the Commission After the ALJ Files His or Her Initial Decision, Including, *inter alia*, Motions for Extensions of Time Within Which to File Briefs, Motions For Leave to Exceed Brief Page Limitations, Motions For Leave to File Briefs *Amicus Curiae*, and Motions to Correct Oral Argument Transcript

10.      Notices of Placement of *Ex Parte* Communications on the Public Record

11.      Final Orders and Opinions (Including Opinions of the Commission and of Individual Commissioners)

12.      Orders Disposing of Adjudicative Hearings Under the Fair Packaging and Labeling Act (*See* 16 C.F.R. § 3.54(d)

13.      Orders Disposing of Petitions for Reconsideration (*See* 16 C.F.R. § 3.55)

14.      Orders Reopening a Proceeding and Modifying the Order Issued Therein Prior to (1) the Expiration of Deadline for Filing a Petition for Review, or (2) the Filing of the Transcript of Record In A Court of Appeals (*See* 16 C.F.R. § 3.72(a))

15.      Orders to Show Cause Why a Final Order Should Not Be Modified or Set Aside In Whole or In Part

16.      Orders Disposing of Show Cause Proceedings

17.      Orders Disposing of Motions to Disqualify Commissioners

**D.    OTHER COMMISSION DOCUMENTS**

1.    Motions, For Information Circulations, and For Information Pending Motion Circulations

2.    Commission Agenda and Nonagenda Minutes

3.    Commission Approved Testimony

4.    Commission Authorized Testimony

5.    Commission Approved Letters to or Comments Before A Legislative, Administrative, or Foreign Governmental Body

6.    Commission Authorized Letters to or Comments Before A Legislative, Administrative, or Foreign Governmental Body

7.    Commissioner Speeches

8.    Federal Register Notices Soliciting Comment on or Modifying Commission Rules of Practice

9.    Letters Ruling on Requests for Confidentiality

10.   Letters Transmitting Federal District Court Civil Penalty Complaints and Consent Decrees to the Department of Justice

11.   Federal District Court Complaints and Consent Decrees Filed By the Commission

## APPENDIX C
## APRIL 7, 1994 PROCEDURES

B153762

## NOTICE OF FEDERAL TRADE COMMISSION APPROVAL
## OF PROCEDURES TO GOVERN THE PREPARATION OF
## FINAL ORDERS AND OPINIONS
## IN ADJUDICATIVE PROCEEDINGS

On April 7, 1994, the Federal Trade Commission -- by a vote of 5-0 -- approved the following procedures to govern the preparation of Final Orders and Opinions in adjudicative proceedings,[1] and determined to place these procedures on the public record:

1.      Commissioners should endeavor to express their conclusions on liability at the post oral argument executive session.   If no majority forms at the executive session, the commissioners will agree on a date approximately 14 days later on which to reconvene the executive session for further deliberation.   If no decision is reached, the commissioners will continue to set the matter for executive session every two weeks until a majority forms.

2.      A draft final order and opinion should be prepared within four months after formation of a majority and circulated for comment to the other commissioners and to the general counsel on an "adjudicative for information pending motion" basis.   In cases for which the assigned commissioner believes additional time will be needed to complete the draft, he or she -- at the executive session following the oral argument -- may move to revise the schedule created pursuant to paragraph 6 below.   If the Commission approves that motion, the schedule will be so revised.

3.      The other commissioners should submit comments on the draft final order and opinion to the assigned commissioner within one month after the circulation of the draft.   If any commissioner believes that further discussion is warranted, any commissioner may schedule an executive session to consider any remaining issues.

---

[1]   The Commission Rules of Practice provide that

[a]djudicative proceedings are those formal proceedings conducted under one or more of the statutes administered by the Commission which are required by statute to be determined on the record after opportunity for an agency hearing.

16 C.F.R. § 3.2.   When the Commission reviews an initial decision issued by an Administrative Law Judge in such a proceeding, an oral argument is held before the Commission (unless the Commission otherwise orders).   *Id.* § 3.52(i). Immediately following the oral argument, the Commission meets in closed executive session to discuss the proceeding.   Thereafter, the Commission issues a final order and opinion.

1

4.      The assigned commissioner should move that the Commission approve a final order and opinion -- and in addition move that the Commission issue any notice that may be required to notify appropriate persons of the impending disclosure of any information submitted for the record and ruled *in camera* pursuant to Section 3.45 of the Rules of Practice, 16 C.F.R. ' 3.45 (1994) -- within 45 days after receiving comments from the other commissioners.

5.      If one or more commissioners note on the voting sheet that they will have separate statements, the statements shall be circulated within twenty-one calendar days following the date the vote closes.   The final order and opinion shall be issued no later than 5:00 p.m. on the thirtieth calendar day following the date the vote closes, or as soon thereafter as practicable.

6.      One week prior to each oral argument, the secretary shall prepare and forward to the Commission a schedule for completing a final order and opinion in the matter at issue, based on the foregoing principles.   The secretary shall in addition attach a copy of the schedule -- as modified, if at all, at the executive session -- to the computer reports forwarded to each commissioner each week.

7.      Whenever the Chairman moves that a discussion of the budget be scheduled for a closed meeting of the Commission, the secretary shall move that each pending adjudicative proceeding be scheduled for an executive session -- to follow the same closed meeting -- provided that the general counsel certifies that the matter may properly be closed to the public under 5 U.S.C. ' 552b(c).   A "pending adjudicative proceeding" is any adjudicative proceeding -- as defined in section 3.2 of the Commission Rules of Practice, 16 C.F.R. ' 3.2 (1994) -- for which (1) an oral argument has been held, but (2) a final order and opinion, or a final order, has not been issued.

8.      One year after these procedures are approved, a Commission meeting will be scheduled by the Chairman to consider how they have worked in practice.

         By direction of the Commission.


                                        Donald S. Clark
                                        Secretary

ISSUED:   April 7, 1994

2

B153750

## NOTICE OF FEDERAL TRADE COMMISSION APPROVAL
## OF MODIFICATIONS IN
## ASSIGNMENT AND VOTING PROCEDURES

On April 7, 1994, the Federal Trade Commission -- by a vote of 5-0 -- approved the following modifications in its assignment and voting procedures, and determined to place these procedures on the public record:

1.      With respect to (1) nonadjudicative investigation (seven numeric digits) and rulemaking 7 plus six numeric digits) assignments in which a Bureau recommends that the Commission approve a course of action,[2] and (2) adjudicative motions to withdraw from adjudication matters pending before the Commission,

> the Secretary shall forward to each Commissioner a copy of each such matter, at the time the matter is assigned to a Commissioner.   If the assigned Commissioner does not make a Sunshine Act or other motion relating to the matter within 45 calendar days after the date of assignment, the Secretary shall reassign the matter to another Commissioner in the regular rotation.[3]   Another Commissioner may, at that time, request the reassignment.   The matter shall then be assigned to that Commissioner.   If more than one Commissioner requests reassignment, reassignment shall be made to the requesting Commissioner who would be the next in line to receive an assignment in the regular rotation.

2.      With respect to any unresolved agenda nonadjudicative matter, defined as any matter that has been the subject of a Commission meeting, but for which a motion other than a Sunshine Act motion has not been made,

---

[2]   Because they do not require the approval of the Commission, once compulsory process has been authorized, Part 2 subpoenas and civil investigative demands are not covered by this procedure.

[3]   Under current procedures, Commissioners have agreed to circulate assignments within one month of receipt from the Office of the Secretary, either with a motion or on a "for information" basis.   *Commission Minutes*, Volume 140, at 196 (September 15, 1983).

3

whenever a Commissioner moves that a matter be scheduled for a closed meeting of the Commission -- on a date not previously scheduled -- the Secretary shall move that each unresolved agenda nonadjudicative matter be scheduled for the same closed meeting, provided that the General Counsel certifies that the matter may properly be closed to the public under 5 U.S.C. ' 552b(c).[4]

3.      With respect to the three month rule -- which currently provides that when a motion has been circulated but does not achieve a majority within three calendar months of the most recent vote cast, it is recorded as having failed for lack of a second or lack of a majority[5] -- the phrase "three calendar months" shall be replaced with the phrase "one calendar month."

By direction of the Commission.

Donald S. Clark
Secretary

ISSUED:   April 7, 1994

---

[4]   Under current procedures, whenever the Commissioner assigned a particular matter believes that it should be discussed at a closed Commission meeting -- and the General Counsel certifies that the matter may be discussed at such a meeting -- the assigned Commissioner moves that the matter be scheduled for a closed meeting of the Commission, as permitted by the Sunshine Act.

[5]   *Commission Minutes,* Volume 142, at 102-03 (March 24, 1986).

4