# Exhibit Q

 **Federal Trade Commission**

---

**Section 5 Revisited:  Time for the FTC to Define the
Scope of Its Unfair Methods of Competition Authority**

**Remarks of Joshua D. Wright[*]
Commissioner, Federal Trade Commission**

**at the**

**Symposium on Section 5 of the Federal Trade Commission Act**

**The Willard InterContinental
Washington, D.C.**

**February 26, 2015**

Good afternoon.  Thank you for the kind introduction and warm welcome.  I am

delighted to be here today.  I would like to thank Baker Hostetler, and especially Carl

Hittinger, for organizing this terrific symposium and for the generous invitation to

share my views with you this afternoon.  Events such as this one are no small task to

organize and they serve an incredibly important role in the development of antitrust

and consumer protection law because they offer a vital platform for the honest

exchange of ideas among practitioners, consumer advocates, agency officials, members

---

[*]  The views stated here are my own and do not necessarily reflect the views of the Commission or any other Commissioner.  I am grateful to my attorney advisor, Jan M. Rybnicek, for his invaluable assistance in preparing this speech.

of the judiciary, and Congress.  Given the caliber of the panelists at today's event, I have no doubt that we will all walk away having learned something new about Section 5.

I have made no secret of the fact that I believe there is no more important challenge facing the Commission today than finally articulating the appropriate scope and role of the agency's "unfair methods of competition" authority under Section 5. The historical record reveals a remarkable and unfortunate gap between the theoretical promise of Section 5 as articulated by Congress over a century ago and its application in practice by the Commission.  Congress intended Section 5 to play a key role in the Commission's competition mission by allowing the agency to leverage its institutional advantages to develop evidenced-based competition policy.  However, the record suggests that the Commission's use of Section 5 has done very little to influence antitrust doctrine or to inform judicial thinking since the agency's inception.  In order to fulfill Section 5's promise, and finally provide meaning and purpose to the agency's signature competition statute, it is clear that the Commission must first provide a framework for how it intends to use its "unfair methods of competition" authority.

That is why, soon after joining the Commission, I publicly distributed a proposed policy statement outlining my views as to how the Commission should use its Section 5 authority.  My hope was that doing so would start—or at least restart—a conversation on the topic and help the Commission identify areas of consensus upon which we as an agency could build.  I view the release of my proposed policy statement as an

2

unequivocal success in this regard.  In the two years since issuing my policy statement, I have been pleased by the many thoughtful contributions to the marketplace of ideas discussing the scope and role of Section 5.   Academics and practitioners have responded to the Section 5 debate with dozens of articles and hundreds of pages of analysis.   Current and former Commissioners also have shared their views. Conferences have been held, replies have been written, criticisms leveled, blogs posted, and speeches made—there was even a Section 5 hashtag on Twitter for a few days.  The point is, a substantial record has been compiled.  These contributions have helped bring several key policy questions into focus and, in my view, positioned the agency to undertake the long overdue task of issuing a policy statement that both strengthens the Commission's ability to target anticompetitive conduct and provides meaningful guidance to the business community about the contours of Section 5.

I would like begin today by briefly taking stock of the Section 5 debate.  I would like to summarize the case for formal agency guidance defining the boundaries of Section 5 and dispel a couple of myths about the disadvantages to drawing some meaningful parameters around the Commission's "unfair methods of competition" authority.  Beyond taking stock of the current debate, I also would like to share with you what I think is the next logical step in rehabilitating Section 5 and making it a productive member of the competition community as the Commission embarks upon its second century of protecting competition and consumers.  Lastly, I would like to

discuss some of my concerns about what is likely to happen to the FTC's Section 5 authority if the Commission fails to provide guidance.  I intend to leave time for questions at the end of my remarks, so please do not be shy when that time comes.

Before I get too far along in my comments, however, I am obligated to provide a short disclaimer familiar to most of you, and that is that the views I express today are my own and not necessarily those of the Commission or any of the other Commissioners.  With that bit of business out of the way, let's jump right in.

I.      THE CASE FOR FORMAL GUIDANCE DEFINING THE SCOPE OF THE FTC'S "UNFAIR METHODS OF COMPETITION" AUTHORITY

I have shared my views on why the Commission should issue formal guidance defining the parameters of the agency's "unfair methods of competition" authority in countless forums since coming to the Commission.[1]  Rather than using my time today to restate each of those arguments in detail again, I would like to quickly touch upon what I view as the most salient points before moving on to what I propose the agency should do as a first step to rehabilitating Section 5 so that it can contribute effectively to the Commission's competition mission as Congress intended.

---

[1] *See, e.g.*, Joshua D. Wright, *Recalibrating Section 5: A Response to the CPI Symposium*, 11 CPI ANTITRUST CHRON., Nov. 2013, *available at* http://www.ftc.gov/sites/default/files/documents/public_statements/recalibrating-section-5-response-cpi-symposium/1311section5.pdf; Joshua D. Wright, Comm'r, Fed. Trade Comm'n, Section 5 Recast: Defining the Federal Trade Commission's Unfair Methods of Competition Authority, Remarks at the Executive Committee of the New York State Bar Association's Antitrust Section (June 19, 2013), http://www.ftc.gov/sites/default/files/documents/public_statements/section-5-recast-defining-federal-trade-commissions-unfair-methods-competition-authority/130619section5recast.pdf.

There are at least two principal reasons the Commission's "unfair methods of competition" authority has not lived up to its Congressional promise, both of which would be solved by formal guidance explaining how the agency intends to implement Section 5 as part of its competition mission.  The first reason arises from a combination of (1) the agency's administrative process advantages and (2) the vague and ambiguous nature of the agency's "unfair methods of competition" authority.  Together these two characteristics pose a unique barrier to the application of Section 5 in a manner that consistently benefits rather than harms consumers.

The vague and ambiguous nature of Section 5 is well known.   Proposed definitions for what constitutes an "unfair method of competition" have varied substantially over time and belief that the modern FTC has now somehow moved beyond this inherent product of its institutional design are no more than wishful thinking.  Indeed, for at least the past twenty years, commissioners from both parties have acknowledged that a principled standard for the application of Section 5 would be a welcome improvement.  The lack of institutional commitment to a stable definition of what constitutes an "unfair method of competition" leads to two sources of problematic variation in the agency's interpretation of Section 5.   One is that the agency's interpretation of the statute in different cases need not be consistent even when the individual Commissioners remain constant.   Another is that as the members of the Commission change over time, so does the agency's Section 5 enforcement policy,

leading to wide variations in how the Commission prosecutes "unfair methods of competition" over time.  In short, the scope of the Commission's Section 5 authority today is as broad or as narrow as a majority of commissioners believes it is.

This uncertainty surrounding the scope of Section 5 is exacerbated by the administrative procedures available to the Commission.  Consider the following empirical observation.  The FTC has voted out a number of complaints in administrative adjudication that have been tried by administrative law judges in the past nearly twenty years.  In each of those cases, after the administrative decision is appealed to the Commission, the Commission has ruled in favor of FTC staff and found liability.  In other words, in 100 percent of cases where the administrative law judge ruled in favor of the FTC staff, the Commission affirmed liability; and in 100 percent of the cases in which the administrative law judge ruled found no liability, the Commission reversed.[2]  This is a strong sign of an unhealthy and biased institutional process.  By way of contrast, when the antitrust decisions of federal district court judges are appealed to the federal courts of appeal, plaintiffs do not come anywhere close to a 100 percent success rate—indeed, the win rate is much closer to 50 percent.  Even bank robbery prosecutions have less predictable outcomes than administrative adjudication at the FTC.  One interpretation of these historical data is that the process at the FTC

---

[2]  *See, e.g.*, David Balto, *Can the FTC be a Fair Umpire?*, THE HILL (Aug. 14, 2013), http://thehill.com/blogs/congress-blog/economy-a-budget/316889-can-the-ftc-be-a-fair-umpire; Doug Melamed, Comments to Fed. Trade Comm'n Workshop Concerning Section 5 of the FTC Act (Oct. 14, 2008), *available at* http://ftc.gov/os/comments/section5workshop/537633-00004.pdf

stacks the deck against the parties.  Another is that the FTC has an uncanny knack for picking cases; a knack unseen heretofore within any legal institution.  I will allow discerning readers to choose the most likely of these interpretations—but suffice it to say the "case selection" theory requires one to also grapple with the fact that Commission decisions, when appealed, are reversed at a rate four times greater than antitrust opinions by generalist federal judges.[3]

Significantly, the combination of institutional and procedural advantages with the vague nature of the Commission's Section 5 authority gives the agency the ability, in some cases, to elicit a settlement even though the conduct in question very likely may not be anticompetitive. This is because firms typically will prefer to settle a Section 5 claim rather than to go through lengthy and costly litigation in which they are both shooting at a moving target and have the chips stacked against them.  Such settlements also perpetuate the uncertainty that exists as a result of the ambiguity associated with the agency's "unfair methods of competition" authority by encouraging a process by which the contours of Section 5 are drawn through settlements without any meaningful adversarial proceeding or substantive analysis of the Commission's authority.

The second principal reason Section 5 has failed to contribute effectively to the Commission's competition mission is because of the absence of even a minimal level of certainty for businesses.  A stable definition of what constitutes an "unfair method of

---

[3] *See* Joshua D. Wright & Angela M. Diveley, *Do Expert Agencies Outperform Generalist Judges? Some Preliminary Evidence from the Federal Trade Commission*, J. ANTITRUST ENFORCEMENT 1, 16 (2012).

competition" would provide businesses with important guidance about what conduct is lawful and what conduct is unlawful under Section 5. The benefit of added business certainty is less important than ensuring Section 5 enforcement actions—including consents—actually reach and deter anticompetitive conduct rather than chill procompetitive conduct. However, guidance to the business community surely is important. Indeed, the FTC has issued nearly 50 sets of guidelines on a variety of topics, many of them much less important than Section 5, to help businesses understand how the Commission applies the law and to allow practitioners to better advise their clients on how to comply with their legal obligations. Without a stable definition of what constitutes an "unfair method of competition," businesses must make difficult decisions about whether the conduct they wish to engage in will trigger an investigation or worse. Such uncertainty inevitably results in the chilling of some legitimate business conduct that would otherwise have enhanced consumer welfare but for the firm's fear that the Commission might intervene and the attendant consequences of that intervention. Those fears would be of little consequence if the agency's authority was defined and businesses could plan their affairs to steer clear of its boundaries.

Some commentators have asserted that formal agency guidance would too severely restrict the Commission's enforcement mission.[4] They warn that defining the

---

[4] *See, e.g.*, Sharis A. Pozen & Anne K. Six, *Section 5 Guidelines: Fixing a Problem that Doesn't Exist?*, 9 CPI ANTITRUST CHRON., Sept. 2013, *available at* https://www.competitionpolicyinternational.com/section-5-guidelines-fixing-a-problem-that-doesn-t-exist/; Edith Ramirez, Chairwoman, Fed. Trade Comm'n, Unfair Methods and the Competitive Process: Enforcement Principles for the Federal Trade Commission's Next

boundaries of the Commission's "unfair methods of competition" authority would achieve stability and clarity only at the expense of creating an enforcement regime that fails to adequately protection competition.  These commentators instead urge reliance upon the same case-by-case approach that has garnered success in the context of the traditional antitrust law.  Under this view, the scope of the Commission's authority to prosecute unfair methods of competition is best determined by reading the leading cases to identify which enforcement principles the Commission applies when determining whether to prosecute a particular business practice under Section 5.

Although the desire to strike the correct balance between flexibility and certainty is well intended, the so-called common law approach to defining Section 5 is a recipe for unprincipled and inconsistent enforcement and an invitation for an outside institution—the courts or Congress in particular—to define Section 5 for the FTC.  The approach of reading a stack of Section 5 consents elicited from parties bargaining in the shadow of the administrative process advantages for the FTC just discussed to decipher its meaning ultimately offers no certainty and results in a boundless standard under which the Commission may prosecute any conduct as an unfair method of competition.

As I have recently written, this is because reliance upon the common law method for developing "unfair methods of competition" law mistakenly assumes that the

Century, Keynote Address at the George Mason Law Review and Law & Economics Center Antitrust Symposium: The FTC: 100 Years of Antitrust and Competition Policy (Feb 13, 2014), *available at* http://www.ftc.gov/system/files/documents/public_statements/314631/140213section5.pdf.

common law virtues that have proved beneficial to the development of the traditional antitrust laws apply equally in the context of Section 5.[5]  They do not.  Fundamental differences between the inputs and outputs of traditional litigation and the inputs and outputs of Section 5 enforcement prevent the common law process from generating meaningful guidance for what constitutes an "unfair method of competition."  But you do not have to take my word for it.  Indeed, the Commission has employed the so-called case-by-case approach for a century and, to date, Section 5 has not meaningfully contributed to competition policy.  In addition to failing to produce any direct and positive influence on antitrust law during that time period, Section 5 cannot point to a single standalone "unfair methods of competition" victory affirmed by a federal appeals court in the modern antitrust era.  One hundred years is ample time for a robust natural experiment to evaluate the virtues of the Commissions' case-by-case approach to Section 5.  The results are in.  The common law method has proven incapable of generating meaningful guidance as to what constitutes an "unfair method of competition."  To expect better results from the same approach is unwise.

Moreover, as I have already mentioned, the Commission has provided guidance in a number of areas of competition and consumer protection law—many of them far less important than the scope of Section 5—without compromising its enforcement agenda.  Consider an obvious example in the arena of competition law, the Horizontal

---

[5]  *See generally* Jan M. Rybnicek & Joshua D. Wright, *Defining Section 5 of the FTC Act: The Failure of the Common Law Method and the Case for Formal Agency Guidelines*, 21 GEO. MASON L. REV. 1287 (2014).

Merger Guidelines, which explain how the antitrust agencies analyze the likely competitive effects of a merger.  Those guidelines have proven to be one of the most significant contributions to antitrust law and policy and have greatly benefited the antitrust agencies, the federal courts, and the business community.

Similarly, in response to Congressional criticism about how the FTC was implementing its consumer protection authority under Section 5, and amidst serious threats of shut down the agency, the Commission issued policy statements explaining how it analyzes whether conduct was unfair or deceptive.[6]  Today the Commission's deception and unfairness policy statements are widely regarded as a major success *and* serve as a key basis for the Commission to more confidently litigate disputes when its authority is challenged.  The FTC should be proud of the fact that it has not reflexively refused to place limits on its own discretion when appropriate.  Historically, even if at times under some pressure from Congress, the FTC has embraced limits on discretion both in the name of sound policy and to strengthen the foundation of questionable legal authority.   Guidance regarding what precisely constitutes an "unfair method of competition" under Section 5 would similarly improve significantly the FTC's competition mission and shore up an obvious weakness in its authority.

---

[6]  *See* FTC Policy Statement on Unfairness (1980), appended to Final Order, Int'l Harvester Co., 104 F.T.C. 949, 1070 (1984), *available at* http://ftc.gov/bcp/policystmt/ad-unfair.htm; FTC Policy Statement on Deception (1983), appended to Final Order, Cliffdale Assocs., Inc. 103 F.T.C. 110, 174 (1984), *available at* http://www.ftc.gov/bcp/policystmt/ad-decept.htm.

## II.   THE TIME IS RIPE FOR THE FTC TO VOTE ON THE SCOPE OF THE AGENCY'S "UNFAIR METHODS OF COMPETITION" AUTHORITY

Having summarized the case for formal "unfair methods of competition" guidance, let me turn now turn to the current state of play and what I believe the Commission should do next.  The last two years have witnessed what amounts to a healthy and fruitful public comment period on the appropriate scope and role of the Commission's "unfair methods of competition" authority.  During that time, members of the antitrust bar, academics, consumer advocates, and business stakeholders have together participated in dozens of panel discussions on Section 5 and penned countless articles debating various proposals.  Members of Congress, too, have sent letters to the Commission urging us to act and have even raised the scope of Section 5 as an issue during Congressional hearings.[7]  Commentators have had no shortage of opportunities to weigh in with their views on what the Commission should do with respect to Section 5, as well as to consider and respond to the views offered by others.  And this of course only represents the most recent round of commentary, which necessarily builds on decades of scholarship and debate—much of it offered by experts at today's symposium—as well as a formal workshop on the scope of Section 5 organized by Chairman Leibowitz in 2008.  I do not know of any topic in competition policy that has

---

[7] *See* Letter from Members of the House and Senate Judiciary Comms. to FTC Chairwoman Edith Ramirez (Oct. 23, 2013), *available at*
http://judiciary.house.gov/_files/news/2013/Signed%20Letter%20to%20FTC.pdf; *Hearing on "The FTC at 100: Where Do We Go From Here?", Before the Subcomm. on Commerce, Manufacturing, and Trade of the H. Comm. on Energy and Commerce*, 113th Cong. 1 (Dec. 3, 2013).

been deliberated more thoroughly before a policy decision has been made than the scope and role of the Commission's "unfair methods of competition" authority.

Significantly, each of my colleagues at the Commission has also voiced, to varying extents, her opinion about the appropriate scope and role of Section 5.[8]  This is a welcome addition to the conversation and one that I do not believe any previous Commission has enjoyed.  Importantly, the gap between each Commissioners' views, and indeed the views of an overwhelming majority of commentators generally, appears to be relatively narrow and essentially limited only to the question of how efficiencies should be treated when deciding whether to pursue an enforcement action under Section 5.  This is an important milestone and one that I think this Commission should seize upon. I am optimistic that this Commission can finally do what other Commissions have been unable to do: issue agency guidance defining what constitutes an "unfair method of competition" under Section 5.  Indeed, as I will elaborate upon in a moment, I believe any of the three primary definitions of an "unfair method of competition" that have been articulated by myself or my colleagues is better than the status quo.  As such, if there is consensus within the Commission on any of these three alternative definitions, the Commission ought to vote to adopt that definition for what

---

[8]  Interview with Commissioner Terrell McSweeny, MONOPOLY MATTERS (ABA Section of Antitrust Law, Unilateral Conduct Comm.), Fall 2014, at 3, 4; Maureen K. Ohlhausen, Comm'r, Fed. Trade Comm'n, Section 5: Principles of Navigation, Remarks before the U.S. Chamber of Commerce (July 25, 2013), *available at* http://www.ftc.gov/sites/default/files/documents/public_statements/section-5-principles-navigation/130725section5speech.pdf; Ramirez, *supra* note 4; Julie Brill, Comm'r, Fed. Trade Comm'n, Remarks at the Technology Policy Institute Aspen Forum (Aug. 20, 2013), *available at* http://youtu.be/9V_YEu1FIAE.

constitutes an "unfair methods of competition."  And, after 100 years without any meaningful guidance on Section 5 and with Congress watching, it ought to do so now.

With this in mind, next week I intend to put each of the three principal definitions for how to define an "unfair method of competition" up for a vote by the Commission.  The precise language of the three proposed definitions are attached as an appendix to this speech, which will be available on the Commission's website later today.  The three proposed definitions reflect the three definitions of an "unfair method of competition" contemplated by current Commissioners, including myself.  Each proposal includes at its core the element that an "unfair method of competition" under Section 5 requires evidence that the conduct in question "harms or is likely to harm competition significantly" as that term is understood under the traditional federal antitrust laws.  Harm to competition is a concept that is readily understandable and that has been deeply embedded into antitrust jurisprudence since the early part of the last century.  Each of my colleagues has acknowledged that Section 5 should only be used to prosecute conduct that actually is anticompetitive.  This is a significant and welcome area of consensus in light of past commissioners' efforts to use Section 5 to remedy a variety of social and environmental ills unrelated to competition.[9]  This element

---

[9]  *See* Michael Pertschuk, Chairman, Fed. Trade Comm'n, Remarks before the Annual Meeting of the Section of Antitrust and Economic Regulation, Association of American Law Schools (Dec. 27, 1977) (asserting that Section 5 can be used to remedy "social and environmental harms" such as "resource depletion, energy waste, environmental contamination, worker alienation, [and] the psychological and social consequences of producer-stimulated demands").

prevents the Commission from reverting to considering non-economic factors, such as whether the practice harms small business or whether it violates public morals, when deciding whether to prosecute conduct as an "unfair method of competition." Significantly, however, this element also allows the Commission to challenge conduct that, for one reason or another, might not fit within established Sherman Act or Clayton Act precedent, and thus might find resistance initially in the federal courts. In doing so, it allows the Commission to leverage its institutional advantages to develop evidenced-based competition policy that can then shape antitrust doctrine in the federal courts.

The second element of each definition that I will offer for a vote is that Section 5 cannot be used to challenge conduct where there is well-forged case law under the traditional federal antitrust laws. The federal judiciary has provided little lasting guidance on the appropriate scope of Section 5. But, as one court has explained, and many current and former commissioners have acknowledged, this requirement ensures that the Commission will not use Section 5 to shop for favorable law to attack conduct governed by the more rigorous requirements of Section 2 of the Sherman Act.[10] Prosecuting the same or similar conduct under disparate standards blurs the lines between lawful and unlawful commercial behavior and invites the Commission to evade advances in antitrust law designed to protect consumers from false positives and

---

[10] *Boise Cascade Corp. v. FTC*, 637 F.2d 573, 582 (9th Cir. 1980) (stating that where there is "well forged" case law governing the challenged conduct, the Commission cannot prosecute the conduct under Section 5 because doing so might "blur the distinction between guilty and innocent commercial behavior").

false negatives.  Whether well-forged case law exists in any particular case will of course remain within the Commission's discretion, but the requirement nevertheless adds an important measure of stability regarding the agency's "unfair methods of competition" authority.

The area in which each of the three proposed definitions differs is in how efficiencies are treated under Section 5.  This is the area in which my colleagues have expressed slightly different preferences.  My preferred approach is that Section 5 only be used where there are no cognizable efficiencies present.  In my view, where the parties can show cognizable efficiencies the agency is better off challenging the conduct under the traditional antitrust rules that are better designed for balancing.  I do not believe the Commission's track record in administrative adjudication—in terms of both substance and process—justifies the view that it has a comparative advantage in cases requiring balancing.  I will give my colleagues an opportunity to vote on this proposal, but I will not be surprised if a majority of them view this approach as too restrictive.

The second option incorporates into the definition of "unfair methods of competition" a test my colleague Commissioner Ohlhausen has thoughtfully advocated for as an element of her own policy statement, which requires that any antitrust harm be disproportionate to any cognizable efficiencies.[11]

---

[11] *See* Ohlhausen, *supra* note 8, at 10.

The third option requires the Commission to show that the harms are not outweighed by the cognizable efficiencies before bringing an "unfair methods of competition" claim under Section 5. This approach has been pointed to by Chairwoman Ramirez as the appropriate framework to apply for "unfair methods of competition" cases and essentially employs the modern day "rule of reason" when deciding whether conduct violates Section 5.[12] The basic view underlying this definition of an unfair method of competition is that the institutional differences between administrative adjudication and federal court do not require any adjustment to the rule of reason framework. While I do not believe a rule of reason approach is the best available choice, in my view, any of the three potential options I have discussed would be superior to the status quo. Each would create a stable definition for what constitutes and unfair method of competition and tether that definition to modern economics. Accordingly, to be clear, I intend to vote in support of each of these proposals in hopes that one gains the support of a majority of the Commission.

While I am truly hopeful at least one definition of "unfair methods of competition" attracts three votes, I am also acutely aware that optimism in light of a record of a century without guidelines is indulged at my own risk. So what happens next? There are a few possibilities. One possibility is that the Commission defines an

---

[12] *See* Ramirez, *supra* note 4, at 8 ("Our most recent Section 5 cases show that the Commission will condemn conduct only where, as with invitations to collude, the likely competitive harm outweighs the cognizable efficiencies.").

"unfair method of competition" next week.  Indeed, my hope is that my colleagues will recognize the important consensus that exists on the scope and role of Section 5 and take a modest step in articulating the agency's enforcement policy with respect to Section 5 by adopting one of these three proposed definitions.

A second possibility is that a majority of my colleagues choose to vote "no" on each of these proposals.  That possibility does not require much in the way of additional explanation.  While a "no" vote by the full Commission would be non-public, close observers of the agency will surely take note of the lack of any press release or announcement that the agency at long last has produced Section 5 guidelines.

A third possibility, worse still in my view, is that a majority of Commissioners simply may choose not to vote at all.  Under Commission rules, the full Commission need not vote unless and until a majority has formed.  Thus, it is possible that my motion finds itself languishing in agency procedural purgatory, because Commissioners are not required to vote.  I believe either of these last two possibilities would be a lost opportunity for the FTC and would send the wrong message about the Commission's desire for Section 5 to live up to its Congressional promise.

### III.   IF THE COMMISSION FAILS TO ARTICULATE THE SCOPE OF SECTION 5, CONGRESS MAY DEFINE IT FOR THE AGENCY

Not only is the question of what constitutes an "unfair method of competition" particularly ripe for agency action in light of the considerable thought that has been devoted to the issue in recent years, but I also believe that there exists a significant

risk—maybe now more so than at anytime in FTC history—that if the Commission fails to take action to define the scope of the Section 5 soon, Congress may choose to define the statute for the Commission.  Indeed, in recent years numerous members of Congress have grown interested in the scope of the Commission "unfair methods of competition" authority and have voiced concerns regarding the absence of any clear standard to which the business community can turn in order to better understand the agency's enforcement policy.  Members of both the Senate and House Judiciary Committees have sent Chairwoman Ramirez a letter urging the Commission to finally provide guidance that would make Section 5 enforcement transparent, fair, predictable, and reasonably stable over time.  Other members of Congress have raised questions about the vague and ambiguous nature of Section 5 during recent Congressional hearings.  I do not believe this interest should be taken lightly, and continued resistance on the part of the Commission to define the parameters of Section 5 could spur legislative action.

If Congress were to define Section 5, it without question would result in a more restrictive definition of what constitutes an "unfair method of competition" than anything the Commission would implement.  Indeed, the simplest and most obvious solution Congress might adopt, and one that would have the added benefit for many of harmonizing the powers of the FTC and the Department of Justice's Antitrust Division, would be to define an "unfair method of competition" under Section 5 as a violation of the Sherman Act or Clayton Act.  A slightly broader, and just as simple solution for

19

Congress would be to define an unfair method as either a violation of the Sherman Act or Clayton Act or an invitation to collude.  A third possibility, and one that attacks the Section 5 problem not from a standpoint of substance but rather of procedure, would be for Congress to remove the Commission's administrative advantages altogether and allow the federal courts to supervise the Commission's use of Section 5 and define the boundaries of what constitutes an "unfair method of competition" when necessary. Although at one point this might have seemed like an unlikely option, recent legislative proposals stripping the agency of its administrative powers in the context of merger challenges in order to align the preliminary injunction standards between the FTC and the Department of Justice suggest that this might not be so farfetched of a possibility.[13]

In short, if the FTC continues to refuse to define what constitutes an "unfair method of competition," it should not be surprised when and if Congress becomes intensely interested in introducing legislation to finally solve a problem created more than a century ago.  A solution to the Section 5 problem is inevitable.  It is my sincere hope that this Commission seizes the opportunity it has before it now to solve the Section 5 problem on its own terms rather than leaving the solution to Congress.

Thank you for your time.  I am happy to take any questions**.**

---

[13] *See* Brent Kendall, *A Challenge to the FTC Methods*, WALL STREET JOURNAL (Nov. 15, 2014), http://www.wsj.com/articles/a-challenge-to-ftc-methods-1416184116; *Hearing on the SMARTER Act of 2014 Before the Subcomm. on Regulatory Reform, Commercial and Antitrust Law of the H. Comm. on the Judiciary*, 113th Cong. 2 (Apr. 3, 2014); Joshua D. Wright, Comm'r, Fed. Trade Comm'n, Judging Antitrust, Remarks at the Global Antitrust Institute Invitational Moot Court Competition (Feb. 21, 2015), *available at* http://www.ftc.gov/system/files/documents/public_statements/626231/150221judgingantitrust-1.pdf (expressing support for the passage of the SMARTER Act).

**APPENDIX**

Option 1 – Efficiencies Screen

An "unfair method of competition" is an act or practice (1) that harms or is likely to harm competition significantly, (2) that lacks cognizable efficiencies, and (3) for which there is not well-forged case law under the traditional antitrust laws that might cause the distinction between lawful and unlawful commercial behavior to become blurred.


Option 2 – Disproportionality Test

An "unfair method of competition" is an act or practice (1) that harms or is likely to harm competition significantly, (2) where the harms are disproportionate to the cognizable efficiencies, and (3) for which there is not well-forged case law under the traditional antitrust laws that might cause the distinction between lawful and unlawful commercial behavior to become blurred.


Option 3 – Rule of Reason

An "unfair method of competition" is an act or practice (1) that harms or is likely to harm competition significantly, (2) where the harms are not outweighed by the cognizable efficiencies, and (3) for which there is not well-forged case law under the traditional antitrust laws that might cause the distinction between lawful and unlawful commercial behavior to become blurred.