# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                  Plaintiff,

         v.

FACEBOOK, INC.,
a corporation,

                  Defendant.

Case No.: 1:19-cv-02184-TJK

---

# THE UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE THE STIPULATED ORDER AND TO ENJOIN THE ADMINISTRATIVE REOPENING PROCEEDING OF THE FEDERAL TRADE COMMISSION

---

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ............................................................................................................2

    A.  Factual Background ................................................................................................2

    B.  Statutory Background ..............................................................................................6

III. ARGUMENT .................................................................................................................8

    A.  The Stipulated Order Does Not Prohibit the Commission from Exercising its Statutory
        Authority to Reopen and Modify the 2020 Administrative Order..................................8

        1.  The Stipulated Order was not intended to affect the Commission's authority to reopen
            and modify its administrative orders...........................................................................8

        2.  The 2020 Administrative Order expressly contemplates future modifications by the
            Commission without judicial intervention.................................................................12

        3.  Extrinsic evidence reinforces that the Commission retained its statutory authority to
            modify Meta's administrative order...........................................................................13

    B.  Meta's new constitutional and statutory challenges are improper.....................................15

        1.  Meta's new challenges should be rejected as procedurally barred by the Court's final
            Stipulated Order.........................................................................................................15

        2.  Meta has waived and is judicially estopped from raising challenges to the Federal Trade
            Commission's structure and modification authority..................................................16

        3.  The Court lacks jurisdiction to consider Meta's new constitutional and statutory
            challenges to the administrative proceedings ............................................................17

        4.  Meta's procedural and scope challenges are not ripe for review................................22

    C.  Meta's new constitutional and statutory challenges also fail on the merits........................24

        1.  The Commission may substantively modify its administrative orders........................24

        2.  The Commission's modification procedures comport with due process.....................26

        3.  The Constitution does not prohibit the Commission's dual prosecutorial and
            adjudicative roles .......................................................................................................28

        4.  Restrictions on the President's power to remove FTC commissioners do not offend the
            Constitution................................................................................................................33

5.   The Commission's authority to choose between administrative and judicial remedies does not violate the non-delegation doctrine ............................................................ 36

6.   The Commission does not unconstitutionally adjudicate private rights ..................... 40

D.   Meta is not entitled to a preliminary injunction ................................................................. 42

1.   Meta has not demonstrated irreparable harm absent an injunction ............................ 42

2.   Meta failed to demonstrate that the balance of the equities and the public interest favor an injunction ............................................................................................................. 43

IV. CONCLUSION ............................................................................................................................ 44

# TABLE OF AUTHORITIES

**Cases:**

*Alonso-Martinez v. Meissner*,
    697 F.2d 1160 (D.C. Cir. 1983) ................................................................... 38

\**Am. Petroleum Inst. v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012) ............................................................... 22-23

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
    501 U.S. 104 (1991) ................................................................................... 24

*AT&T Corp. v. FCC*,
    349 F.3d 692 (D.C. Cir. 2003) ................................................................... 24

*Atl. Ref. Co. v. FTC*,
    381 U.S. 357 (1965) ............................................................................. 18, 22

\**Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
    430 U.S. 442 (1977) ............................................................................. 40-42

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
    518 F.2d 990 (5th Cir. 1975) ..................................................................... 42

*Au Yi Lau v. INS*,
    555 F.2d 1036 (D.C. Cir. 1977) ................................................................. 29

\**Axon Enterprise, Inc. v. FTC*,
    143 S. Ct. 890 (2023) ................................................................ 17-22, 31, 42

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) ............................................................................... 26

*Blinder, Robinson & Co. v. SEC*,
    837 F.2d 1099 (D.C. Cir. 1988) ................................................................... 7

*Bosse v. Oklahoma*,
    137 S. Ct. 1 (2016) ..................................................................................... 35

*Bowles v. Russell*,
    551 U.S. 205 (2007) ................................................................................... 17

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ....................................................................................... 37

*Canady v. Erbe Elektromedizin GmbH,*
 307 F. Supp. 2d 2 (D.D.C. 2004) ....................................................................16

*Cause of Action Inst. v. DOJ,*
 999 F.3d 696 (D.C. Cir. 2021) ................................................................. 22-23

*Cinderella Career & Finishing Schs., Inc. v. FTC,*
 425 F.2d 583 (D.C. Cir. 1970) .....................................................................33

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
 526 U.S. 687 (1999) ....................................................................................39

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
 51 F.4th 616 (5th Cir. 2022) .......................................................................36

*CFTC v. Schor,*
 478 U.S. 833 (1986) .............................................................................. 41-42

*Codd v. Velger,*
 429 U.S. 624 (1977) ....................................................................................28

*Collins v. Yellen,*
 141 S. Ct. 1761 (2021) .......................................................................... 34-36

*Cronin v. FAA,*
 73 F.3d 1126 (D.C. Cir. 1996) .....................................................................24

*Crowell v. Benson,*
 285 U.S. 22 (1932) ............................................................................. 38-39, 42

*D. H. Overmyer Co. Inc., of Ohio v. Frick Co.,*
 405 U.S. 174 (1972) ............................................................................... 16-17

*Decker Coal Co. v. Pehringer,*
 8 F.4th 1123 (9th Cir. 2021). ......................................................................36

*Devia v. Nuclear Regul. Comm'n,*
 492 F.3d 421 (D.C. Cir. 2007) .....................................................................23

*Dingler v. Rockwall Cnty. Ct. #2,*
 No. 3:22-cv-1252, 2023 WL 3471692 (N.D. Tex. May 12, 2023) ...................15

*Dolcin Corp. v. FTC,*
 219 F.2d 742 (D.C. Cir. 1954) .....................................................................12

*DynaLantic Corp. v. DOD,*
    107 F.3d 922 (D.C. Cir. 1996) ................................................................. 15-16

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012) ................................................................................... 20-21

*\*Elmo Co. v. FTC,*
    389 F.2d 550 (D.C. Cir. 1967) ................................................... 11, 25-26, 44

*Elmo Div. of Drive-X Co. v. Dixon,*
    348 F.2d 342 (D.C. Cir. 1965) ........................................................................21

*Facebook, Inc. v. Duguid,*
    141 S. Ct. 1163 (2021) ...................................................................................25

*Fiallo v. Bell,*
    430 U.S. 787 (1977) .......................................................................................38

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
    561 U.S. 477 (2010) ................................................................................34, 43

*\*FTC v. Cement Inst.,*
    333 U.S. 683 (1948) ............................................................................. 29, 31-32

*FTC v. Endo Pharms. Inc.,*
    No. 16-cv-1440, 2017 WL 4583802 (E.D. Pa. Aug. 21, 2017) .....................13

*FTC v. Facebook, Inc.,*
    581 F. Supp. 3d 34 (D.D.C. 2022) .................................................................33

*FTC v. Neora LLC,*
    No. 3:20-cv-01979, 2022 WL 3213540 (N.D. Tex. Aug. 8, 2022) ...............41

*FTC v. Ruberoid Co.,*
    343 U.S. 470 (1952) .......................................................................................12

*FTC v. Surescripts, LLC,*
    No. 19-cv-1080, 2020 WL 2571627 (D.D.C. May 21, 2020)........................13

*FTC v. Standard Oil Co. of California,*
    449 U.S. 232 (1980) .......................................................................................22

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) .......................................................................................28

*Gundy v. United States*,
139 S. Ct. 2116 (2019) ..................................................................................40

\*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) ............................................................................... 33-35

*In re al-Nashiri*,
791 F.3d 71 (D.C. Cir. 2015) ......................................................................43

*In re IBM Corp.*,
618 F.2d 923 (2nd Cir. 1980) ......................................................................31

*In re Murchison*,
349 U.S. 133 (1955) ......................................................................................29

*In re Zdravkovich*,
634 F.3d 574 (D.C. Cir. 2011) ....................................................................28

*In the Matter of Kellogg Co.*,
No. C-4262, 2010 WL 2332719 (FTC June 2, 2010) .................................26

*Int'l Union of Mine, Mill & Smelter Workers, Locs. No. 15 v. Eagle-Picher Mining & Smelting*
*Co.*, 325 U.S. 335 (1945) ...................................................................... 24-25

\*Jarkesy v. SEC*,
803 F.3d 9 (D.C. Cir. 2015) ................................................................... 20-21

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ................................................................. 38-40

\*John Doe Co. v. CFPB*,
849 F.3d 1129 (D.C. Cir. 2017) ..................................................................43

*Lead Indus. Ass'n v. EPA*,
647 F.2d 1130 (D.C. Cir. 1980) ..................................................................31

*Loma Linda-Inland Consortium for Healthcare Education v. NLRB*,
No. 23-5096 (D.C. Cir. May 25, 2023) .......................................................20

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ......................................................................................28

*McClelland v. Andrus*,
606 F.2d 1278 (D.C. Cir. 1979) ..................................................................28

*McConnell v. FEC,*
    540 U.S. 93 (2003)..................................................................................37

*Mesa Air Grp., Inc. v. DOT,*
    87 F.3d 498 (D.C. Cir. 1996) ...................................................................8

*Mistretta v. United States,*
    488 U.S. 361 (1989)................................................................................37

*Mohr v. FTC,*
    272 F.2d 401 (9th Cir. 1959) ..................................................................26

*Morgan Drexen, Inc. v. CFPB,*
    785 F.3d 684 (D.C. Cir. 2015) ................................................................43

*Morrison v. Olson,*
    487 U.S. 654 (1988)................................................................................34

*Nat'l Ecological Found. v. Alexander,*
    496 F.3d 466 (6th Cir. 2007) ..................................................................16

*\*New Hampshire v. Maine,*
    532 U.S. 742 (2001)................................................................................17

*Oceanic Steam Navigation Co. v. Stranahan,*
    214 U.S. 320 (1909)................................................................................38

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    138 S. Ct. 1365 (2018)............................................................................40

*Phillips v. Jt. Legis. Comm. on Performance & Expenditure Review of State of Miss.,*
    637 F.2d 1014 (5th Cir. Unit A Feb. 1981) ............................................31

*\*Pigford v. Vilsack,*
    777 F.3d 509 (D.C. Cir. 2015) ............................................................8-10

*\*Professional Air Traffic Controllers Org. v. Fed. Labor Relations Auth.,*
    685 F.2d 547 (D.C. Cir. 1982) ..........................................................28, 31

*Ritz v. O'Donnell,*
    566 F.2d 731 (D.C. Cir. 1977) ................................................................27

*\*SEC v. Romeril,*
    15 F.4th 166 (2d Cir. 2021) ....................................................................16

*Segar v. Mukasey*,
    508 F.3d 16 (D.C. Cir. 2007) ...................................................................11

*\*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ................................................................... 34-35

*Sierra Club v. United States Army Corps of Engineers*,
    990 F. Supp. 2d 9 (D.D.C. 2013) ...........................................................43

*Simpson v. Office of Thrift Supervision*,
    29 F.3d 1418 (9th Cir. 1994) .................................................................41

*So. Pac. Commc'n Co. v AT&T Co.*,
    740 F.2d 980 (D.C. Cir. 1984) ...............................................................31

*Stern v. Marshall*,
    564 U.S. 462 (2011) ...............................................................................40

*Texas v. United States*,
    523 U.S. 296 (1998) ...............................................................................23

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ...............................................................................19

*Ticor Title Ins. v. FTC*,
    814 F.2d 731 (D.C. Cir. 1987) ...............................................................35

*TOTAL Gas & Power N. Am., Inc. v. FERC*,
    859 F.3d 325 (5th Cir. 2017), *as revised* (July 10, 2017) ........................... 23-24

*United States v. Batchelder*,
    442 U.S. 114 (1979) ........................................................................ 37-38

*United States v. Diggins*,
    36 F.4th 302 (1st Cir. 2022) ............................................................ 39-40

*United States v. ITT Cont'l Baking Co.*,
    420 U.S. 223 (1975) .........................................................................10, 12

*United States v. Louisiana-Pac. Corp.*,
    754 F.2d 1445 (9th Cir. 1985) ...............................................................7, 25

*\*United States v. Volvo Powertrain Corp.*,
    758 F.3d 330 (D.C. Cir. 2014) ...............................................................8, 14

*Washington Metro. Area Transit Auth. v. Mergentime Corp.*,
   626 F.2d 959 (D.C. Cir. 1980) ......................................................................8

*Weber v. Cigna*,
   No. 2:20-cv-12593, 2022 WL 2952460 (E.D. Mich. July 19, 2022) ...............15

*Wheeling-Pittsburgh Steel Corp. v. EPA*,
   129 F.3d 118 (4th Cir. 1997) .......................................................................11

*Whitman v. Am. Trucking Ass'ns, Inc.*,
   531 U.S. 457 (2001) ....................................................................................39

*Williams v. Pennsylvania*,
   579 U.S. 1 (2016) ........................................................................................30

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................43

*\*Withrow v. Larkin*,
   421 U.S. 35 (1975) ..................................................................................28-30

*Zhao v. Li*,
   No. 20-cv-3138, 2022 WL 6727338 (D.D.C. Oct. 11, 2022) ........................16

**Constitution, Statutes, and Regulations:**

U.S. Constitution
   Art I § 1 ....................................................................................................37
   Art. II § 3 ..................................................................................................37
   Art. III § 1 .................................................................................................40

Administrative Procedure Act
   5 U.S.C. § 554(d) .......................................................................................29

Federal Trade Commission Act
   15 U.S.C. § 41 ............................................................................................34
   15 U.S.C. § 45(a) .................................................................................2, 6, 43
   *15 U.S.C. § 45(b) ................................................................................. *passim*
   *15 U.S.C. § 45(c) ................................................................................. *passim*
   15 U.S.C. § 45(*l*) ...........................................................................3-4, 6, 13, 18
   15 U.S.C. § 49 ............................................................................................13
   15 U.S.C. § 53(b) .......................................................................................39
   15 U.S.C. § 57b-1 .......................................................................................13

Federal Trade Commission Rules of Practice

16 C.F.R. § 2.51(b) ..................................................................................7, 12
16 C.F.R. § 3.31 ...........................................................................................27
16 C.F.R. § 3.41 ...........................................................................................27
16 C.F.R. § 3.43 ...........................................................................................27
*16 C.F.R. § 3.72(b) ...................................................................4, 12, 20, 30
*16 C.F.R. § 3.72(b)(1) ..........................................................................7, 22
*16 C.F.R. § 3.72(b)(2) ....................................................................7, 22, 27
16 C.F.R. § 4.7(b) .........................................................................................30
16 C.F.R. § 4.7(e) .........................................................................................30

28 U.S.C. § 1331 ..........................................................................................18

**Other Authorities:**

Lina M. Kahn & David E. Pozen, *A Skeptical View of Information Fiduciaries*,
    133 Harv. L. Rev. 497 (2019) ................................................................. 32-33

Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing
    the Law or Rubber Stamp*, 12 J. Comp. L. & Econ. 623 (2016) .................................. 31-32

## I.     INTRODUCTION

The instant dispute arises out of a 2019 civil penalties referral to the U.S. Department of Justice by the Federal Trade Commission ("FTC" or "Commission") of a complaint against Meta Platforms, Inc. ("Meta").[1] The complaint alleged that Meta had violated a 2012 cease-and-desist order issued by the Commission concerning Meta's privacy practices ("2012 Administrative Order"). The United States filed the complaint in July 2019, along with a proposed Stipulated Order settling these allegations. In April 2020, this Court issued the Stipulated Order. Under its terms, Meta agreed to pay a $5 billion civil penalty, and it consented to the Commission modifying the 2012 Administrative Order to include additional safeguards to protect consumer privacy. After the Court issued the Stipulated Order, the Commission in turn reopened its administrative proceedings and modified the 2012 Administrative Order ("2020 Administrative Order").

Since the Stipulated Order was entered, the Commission has learned of additional conduct by Meta suggesting that it violated the 2020 Administrative Order and jeopardized consumers' privacy. The FTC Act authorizes the Commission to modify its administrative orders whenever changes in law or fact or the public interest require such a modification. *See* 15 U.S.C. § 45(b). Exercising that authority, in May 2023, the Commission initiated a process by which, after hearing from Meta, it will determine whether and to what extent the 2020 Administrative Order should be modified in light of these new allegations of misconduct.

Meta now seeks to enjoin that administrative proceeding based on a misguided premise. According to Meta, by settling allegations that it violated the FTC's 2012 Administrative Order, Meta also secured the right to bar the Commission from exercising its statutory authority to consider whether the 2020 Administrative Order remains sufficient to protect the public. But Meta

---

[1] Meta was incorporated as Facebook, Inc. when this lawsuit was filed. Meta has not argued this distinction is material to its motion, so this opposition simply refers to the entity as "Meta."

did not buy itself out of the FTC's statutory enforcement scheme. The Stipulated Order did not curtail the Commission's ability to exercise its statutory authority to protect the public from additional unfair and deceptive conduct by Meta. Nor did it require all future Commission proceedings relating to its 2020 Administrative Order to occur before this Court. Meta's contention to the contrary misinterprets the plain language of the Stipulated Order and ignores Meta's and the Commission's post-Stipulated Order conduct. The Court should reject Meta's attempt to rewrite history and the Stipulated Order so that it can insulate itself from scrutiny.

As a backstop, Meta also lodges a host of new challenges to the FTC's statutory and constitutional authority to modify its administrative orders, as well as the procedures it uses to do so. These belated arguments are improper. Filing a motion in a resolved civil penalty lawsuit is simply not a proper vehicle to attack the Commission's authority. Moreover, Meta has waived and is judicially estopped from challenging the Commission's jurisdictional authority to modify administrative orders, as it secured the Court's approval of the Stipulated Order by conceding this exact point. Furthermore, Meta's challenges to possible modifications are not yet ripe, as no modifications have been made; if they are ever made, Meta must first challenge them before the Commission and then seek review in the court of appeals. Finally, to the extent the Court reaches the merits of Meta's arguments, they all fail. The Commission's proceedings are consistent with the FTC Act and the Constitution. Accordingly, the Court should deny Meta's motion.

## II.    BACKGROUND

### A.    Factual Background

In 2012, the Commission issued an administrative complaint against Meta, alleging multiple violations of the FTC Act, 15 U.S.C. § 45(a). *See* 2012 Complaint, ECF No. 3-2.[2] Among

---

[2] Except where otherwise noted, in all quotations, emphases have been added, and internal alteration marks, citations, and footnotes have been omitted.

other things, that complaint alleged that Meta misleadingly promised users they could restrict the sharing of their non-public information to limited audiences, when in fact such limitations did not prevent Meta from sharing the users' information with third-party developers. *Id.* at 3-4. The complaint further alleged that Meta deceptively changed its website, making certain information public that users previously may have designated private, without warning those users or first obtaining their approval. *Id.* at 4-5. In addition, the complaint alleged that Meta continued to provide access to photos and videos after users deactivated or deleted their accounts, despite Meta's false or misleading claims that such content would become inaccessible. *Id.* at 9-10.

Meta agreed to settle this administrative complaint with an administrative cease-and-desist order. *See* 2012 Administrative Order, ECF No. 3-1. The 2012 Administrative Order barred Meta from misrepresenting the privacy or security of consumers' information and also required it to obtain users' affirmative, express consent before sharing their information with third parties in a manner that would materially exceed their privacy settings. *Id.* at 3. Moreover, Meta was required to prevent anyone from accessing a user's information more than 30 days after the user deleted their account. *Id.* at 4. Finally, Meta was ordered to establish and maintain a comprehensive privacy program and obtain independent third-party assessments of that program. *Id.* Meta never argued that the Commission or its order was unconstitutional. To the contrary, it "admit[ted] all the jurisdictional facts" and "waive[d] . . . all rights to seek judicial review or otherwise to challenge or contest the validity of the order[.]" Agreement Containing Consent Order, *In the Matter of Facebook, Inc.*, No. 92-3184, 2011 WL 6092532, at *1 (FTC Nov. 29, 2011).

In 2019, based on its belief that Meta had violated various provisions of the 2012 Administrative Order, the Commission referred to the U.S. Department of Justice a complaint seeking civil penalties and injunctive relief pursuant to Section 5(*l*) of the FTC Act, 15 U.S.C.

§ 45(*l*). The complaint alleged that Meta (1) misrepresented the extent to which users could control the privacy of their data and the steps required to implement those controls; (2) misrepresented the information Meta made accessible to third parties; and (3) failed to establish, implement, and maintain a privacy program reasonably designed to address privacy risks. *See* 2019 Complaint, ECF No. 3, at 43-48. Specifically, Meta maintained deceptive settings and made public statements suggesting it restricted the sharing of users' information, when in fact third-party developers still could access and collect their data. *Id.* Meta also failed to adequately address the privacy risks posed by third-party developers and misrepresented users' ability to control the use of facial-recognition technology. *Id.* In addition to alleging violations of the 2012 Administrative Order, the complaint alleged that Meta violated the FTC Act by collecting users' telephone numbers purportedly for security, but not disclosing that Meta used the numbers to help its advertisers. *Id.*

The United States accepted the Commission's referral of the 2019 complaint and agreed to a settlement with Meta to resolve the complaint's allegations. The terms of that settlement are set forth in the Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief, entered by this Court on April 23, 2020. *See* Stipulated Order, ECF No. 35. In the Stipulated Order, Meta agreed to pay a $5 billion civil penalty. *Id.* at 3. Meta also consented to the Commission reopening the administrative proceeding, modifying the 2012 Administrative Order, and replacing it with a new administrative order, the content of which was included as "Attachment A" to the Stipulated Order. *Id.* at 4. The relevant consent term is as follows:

## II.    MODIFICATION OF DECISION AND ORDER

IT IS FURTHER ORDERED that Defendant, and its successors and assigns, shall consent to: (i) reopening of the proceeding in FTC Docket No. C-4365; (ii) waiver of its rights under the show cause procedures set forth in Section 3.72(b) of the Commission's Rules of Practice, 16 C.F.R. § 3.72(b); and (iii) modifying the Decision and Order in *In re Facebook, Inc.*, C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012), with the Decision and Order set forth in Attachment A.

*Id.* Again, Meta never contended that the Commission or its order was unconstitutional. Instead, Meta "admit[ted] the facts necessary to establish jurisdiction" and "waive[d] all rights to appeal or otherwise challenge or contest the validity of [the] Stipulated Order." *Id.* at 2.

After this Court issued the Stipulated Order, the Commission conducted its own administrative process. On April 27, 2020, the Commission reopened its administrative proceedings against Meta and determined it was in the "public interest" to modify the 2012 Administrative Order. *See* Order Modifying Prior Decision and Order ("Modification Order"), Def. Ex. I at 2. Finding Meta had "consented to modifying the 2012 [Administrative Order] as set forth," the Commission modified the administrative order to reflect the contents of Attachment A to the Stipulated Order. *See* 2020 Administrative Order, Def. Ex. I at 3. Consistent with the terms of the Stipulated Order, Meta did not object to the Commission reopening its administrative proceedings or issuing the modified administrative order.

By its terms, the 2020 Administrative Order: (1) expanded the privacy program and assessment provisions, mandating that Meta conduct a "privacy review" of every new or modified product, service, or practice before implementation and document its risk mitigation determinations; (2) required Meta to exercise more rigorous oversight over third-party apps and to take appropriate enforcement action against third-party developers who violate Meta's terms and policies; (3) required Meta to implement greater data security protections for certain information, including user passwords; (4) imposed new restrictions on Meta's use of facial recognition technology and telephone numbers obtained to enable a security feature; and (5) required Meta to report incidents involving the data compromise of 500 or more users and document its efforts to address them. 2020 Administrative Order at 5-16. As required by the 2020 Administrative Order, Meta retained an independent assessor to review the mandated privacy program.

5

On July 1, 2021, the independent assessor provided an initial report for the period running from October 25, 2020, to April 22, 2021. Based in large part on the gaps and weaknesses identified by the assessor, FTC staff concluded that there were deficiencies presenting substantial risks to the public. On May 3, 2023, the Commission issued an order to show cause why it should not modify the 2020 Administrative Order to include additional safeguards. *See* Order to Show Cause, Def. Ex. B. In that order, the Commission explained it had good cause to believe that Meta: (1) failed to implement an effective privacy program as required by the 2020 Administrative Order; (2) misrepresented the extent to which third-party developers received non-public information; and (3) misrepresented privacy protections in connection with its messaging and video calling application specifically intended for users under the age of 13. *Id.* at 11-12. Instead of answering the allegations, Meta filed a motion in this Court to halt the Commission's proceedings.

### B.    Statutory Background

The FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce," and it directs the FTC to halt those unlawful acts and practices. 15 U.S.C. § 45(a). Congress gave the FTC several tools to fulfill this directive. As relevant here, where the Commission believes a corporation has been using an unfair or deceptive act or practice and that a proceeding would be in the public interest, it may serve an administrative complaint on the corporation stating its allegations. *Id.* § 45(b). After a hearing, the Commission may issue an administrative order commanding the "corporation to cease and desist from using . . . such act or practice." *Id.* § 45(b).

The FTC Act also established several judicial and administrative avenues by which the Commission may seek to deter and halt violations of its administrative orders. When the Commission has reason to believe a defendant violated an administrative order—as occurred in the instant case—it may seek civil penalties by referring a complaint to the Department of Justice to file in federal district court. *Id.* § 45(*l*). The Commission also has the option to "reopen and alter,

modify, or set aside, in whole or in part, any" administrative order whenever it is of the "opinion" that "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." *Id.* § 45(b). These enforcement tools, which require different showings, are not mutually exclusive. In some instances, the FTC has conducted both judicial and administrative proceedings in connection with the same administrative order. *See, e.g., United States v. Louisiana-Pac. Corp.*, 754 F.2d 1445, 1450 (9th Cir. 1985); *see also Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1107 (D.C. Cir. 1988) (holding it does not offend due process to seek both administrative and judicial relief). Moreover, defendants in Commission proceedings can also request to reopen and modify administrative orders—it is not only the Commission who can do so. *See* 15 U.S.C. § 45(b); 16 C.F.R. § 2.51(b).

Before modifying an administrative order, the Commission provides "notice and opportunity for hearing," 15 U.S.C. § 45(b), via "an order to show cause, stating the changes it proposes to make in the decision and the reasons they are deemed necessary," 16 C.F.R. § 3.72(b)(1). The defendant may file an answer. *Id.* "When the pleadings raise substantial factual issues, the Commission will direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an Administrative Law Judge" ("ALJ"). *Id.* § 3.72(b)(2). If a show cause order is unopposed, or if the pleadings "do not raise issues of fact to be resolved, the Commission, in its discretion, may decide the matter on the order to show cause and answer." *Id.*

Congress vested judicial review of the Commission's modifications to its administrative orders in the federal courts of appeals. *See* 15 U.S.C. § 45(b), (c). During review, the Commission's factual findings, "if supported by evidence, shall be conclusive." *Id.* § 45(c). The court of appeals may "enter a decree affirming, modifying, or setting aside the order." *Id.* It may also "order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such

manner and upon such terms and conditions as to the court may seem proper." *Id.*

## III.    ARGUMENT

### A.    The Stipulated Order Does Not Prohibit the Commission from Exercising its Statutory Authority to Reopen and Modify the 2020 Administrative Order

To persuade the Court to enjoin the Commission from exercising its statutory authority to modify the 2020 Administrative Order, Meta advocates a reading of the Stipulated Order that is inconsistent with the language of the order as a whole, the parties' intentions as reflected in the order, and the historical events that led the Commission to issue the 2020 Administrative Order. The Court should reject Meta's attempt to misread the Court's Stipulated Order in order to halt (or at least delay) the FTC's scrutiny of its conduct.

#### 1.    The Stipulated Order was not intended to affect the Commission's authority to reopen and modify its administrative orders

The Stipulated Order reflects the parties' bargain to resolve this lawsuit, and the Court should interpret the terms of that bargain using "general principles of contract law." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014). Thus, the terms of the Stipulated Order should be construed to "give effect to the mutual intentions of the parties," *Mesa Air Grp., Inc. v. DOT*, 87 F.3d 498, 503 (D.C. Cir. 1996), which are gleaned "from the language used by the parties to express their agreement," *Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980). The reviewing court's touchstone is "what a reasonable person in the position of the parties would have thought the language meant." *Volvo Powertrain*, 758 F.3d at 339. A party cannot escape the clear meaning of the Stipulated Order by later offering a different interpretation of its terms. *See Pigford v. Vilsack*, 777 F.3d 509, 517 (D.C. Cir. 2015).

Meta wrongly claims that the Court's Stipulated Order "directed" the FTC to enter the 2020 Administrative Order, thus giving the Court jurisdiction over the Commission's exercise of its power to reopen its administrative proceedings. Def. Mem. at 10. But Section II of the Stipulated

Order does not support this reading. Indeed, that section does not order the Commission to do anything. Rather, it states that *Meta* "shall consent" to reopening the Commission's administrative proceeding and to "waiver of its rights" to object to such proceeding and the modification of the 2012 Administrative Order. Stip. Order at 4. While the Commission did in fact determine that modifying the 2012 Administrative Order was in the public interest, it did so as an exercise of its statutory authority, not because the Court ordered it to do so. *See* Modification Order (modifying the 2012 Administrative Order after the Commission "determined that it is in the public interest to reopen the proceeding" and that Meta "consented to . . . modifying the 2012 order as set forth").

Nothing in the Stipulated Order limits the FTC's statutory authority to modify its own administrative orders. The absence of any language binding the FTC or ordering it to do anything with respect to the administrative order further indicates that the parties did not intend to preclude the Commission from reopening or modifying the 2020 Administrative Order. *See Pigford*, 777 F.3d at 514. If the parties had intended to do so, they would have expressly said so, just as they did with respect to FTC's other rights. *See, e.g.,* Stip. Order at 1-2 (providing the "Stipulated Order resolves all consumer-protection claims known by the FTC prior to June 12, 2019").[3]

Lacking any textual support for its argument, Meta leans heavily on the retention provision in the Stipulated Order: "this Court shall retain jurisdiction . . . for purposes of construction, modification, and enforcement of this *Stipulated Order*." Stip. Order. at 5. Meta claims that the Court must have assumed jurisdiction not only over the civil penalty litigation before it, but also the Commission's proceedings and any subsequent administrative proceeding commenced

---

[3] Notably, the Court did not read the Stipulated Order as including the terms in Attachment A when it entered the Stipulated Order. *See, e.g.,* Mem. Op., ECF No. 34 at 11 ("As important, the injunctive relief in the amended administrative order *to be entered by the FTC* contains new measures aimed at ensuring that [Meta] complies with its legal obligations going forward.").

pursuant to the FTC's statutory authority. *See* Def. Mem. at 15-18. But a retention provision does not provide the Court with "free-ranging 'ancillary' jurisdiction" as Meta suggests. *Pigford*, 777 F.3d at 514. Rather, jurisdiction "is limited by the explicit terms of the parties' agreement." *Id.*

The plain terms of the retention provision foreclose Meta's argument. The Court retained jurisdiction to modify its own *Stipulated Order*, but it did not purport to retain jurisdiction over future Commission proceedings to modify the *2020 Administrative Order*.[4] When read as a whole, the terms of the Stipulated Order make this clear. Section II of the Stipulated Order clearly indicates that the Commission's administrative proceeding is separate from the district court proceeding. Meta consented to "reopening" and "modifying" the Commission's 2012 Administrative Order, Stip. Order at 4—terms used in the FTC Act to refer to an administrative proceeding, not a judicial one, *see* 15 U.S.C. § 45(b); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 239 (1975) (holding that courts may consider "any technical meaning words used may have had to the parties" when interpreting a consent decree).[5]

Furthermore, Meta's contention that the 2020 Administrative Order was wholly incorporated as part of the Stipulated Order would inappropriately render other parts of the Stipulated Order superfluous. *See Pigford*, 777 F.3d at 515. For example, the provisions of the Stipulated Order in which the parties incorporate the 2020 Administrative Order for a limited

---

[4] Because courts do not exercise free-ranging ancillary jurisdiction, even if the Stipulated Order did somehow "direct" the FTC to make a one-time modification to the 2012 Administrative Order, this one-time direction would not preclude the Commission from later exercising its authority to modify the 2020 Administrative Order. Absent a provision expressly barring this exercise of statutory authority, there is no basis to infer such a limitation from a one-time direction.

[5] Meta's Procedural History suggests that a revised administrative order would "impose conflicting requirements" with the Stipulated Order, including "dueling" assessments by the FTC and Department of Justice. Def. Mem. at 13. This is incorrect. The Stipulated Order merely affords the Department certain "rights" that the FTC would have under the 2020 Administrative Order, including receiving "copies" of assessments submitted to the FTC. Stip. Order at 4

purpose would be redundant. *See, e.g.,* Stip. Order at 2 ("Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in the Decision and Order set forth in Attachment A."). Similarly, Meta's "waiver of its rights under . . . [the FTC's] Rules of Practice," *id.* at 4, would be entirely subsumed by Meta's waiver of "all rights to appeal or otherwise challenge or contest the validity of this Stipulated Order," *id.* at 2. More fundamentally, if the 2020 Administrative Order was subsumed within the Stipulated Order, it is unclear why the parties would have bothered to specify those terms within an "Attachment" at all.

Finally, Meta's interpretation of the Stipulated Order is "inconsistent with the stipulated purpose of the consent decree" to resolve all claims before June 12, 2019. *Segar v. Mukasey*, 508 F.3d 16, 24 (D.C. Cir. 2007). The Stipulated Order expressly "resolve[d] any and all claims that [Meta] . . . *prior to June 12, 2019*, violated the Commission's [2012 Administrative] Order" and "all consumer-protection claims known by the FTC prior to *June 12, 2019*, that [Meta] . . . violated Section 5 of the FTC Act." Stip. Order. at 1-2. At the same time, the "FTC and the United States *specifically reserve[d]* all other claims." *Id.* at 2. Meta's arguments would eliminate this reservation of claims by preventing the Commission from ever exercising its statutory authority to modify the 2020 Administrative Order to address conduct occurring after June 12, 2019. *See Elmo Co. v. FTC*, 389 F.2d 550, 552 (D.C. Cir. 1967) (holding the Commission may "re-open a prior order if it shows reasonable grounds to believe that the public interest *at the present time* would be served by the re-opening"); *see also Wheeling-Pittsburgh Steel Corp. v. EPA*, 129 F.3d 118 (4th Cir. 1997) (unpublished) (holding a consent decree did not bar a future administrative order where it "explicitly reserve[d] the [agency's] authority" to "require additional corrective action").

Meta's proffered interpretation belies the plain language of the Stipulated Order and the clear intent of the parties when they negotiated and asked this Court to enter the order. Therefore,

the Court should reject Meta's untenable reading.

>    **2.      The 2020 Administrative Order expressly contemplates future modifications by the Commission without judicial intervention**

Failing to identify any support in the text or purpose of the Stipulated Order itself, Meta attempts to manufacture ambiguity through the 2020 Administrative Order. As a general matter, Meta cannot contort the 2020 Administrative Order—which was attached for limited purposes identified in the Stipulated Order, *see supra*—to bootstrap interpretations "precluded by the words of the order itself." *ITT Cont'l Baking Co.*, 420 U.S. at 238 n. 12.

Moreover, the express terms of the 2020 Administrative Order show that the parties contemplated that future administrative modifications would not involve the Court. The FTC Act and related regulations give the Commission authority to reopen and modify its own administrative orders, *see* 15 U.S.C. § 45(b); 16 C.F.R. §§ 2.51(b), 3.72(b), while Parts II and III of the 2020 Administrative Order provide that Meta "may seek modification of this Part pursuant to 15 U.S.C. § 45(b) and 16 C.F.R. § 2.51(b) to address relevant developments that affect compliance." 2020 Administrative Order at 6. These provisions do not even reference the district court, much less require that such modifications be pursued only by leave of this Court.[6]

Meta seeks to bolster its interpretation by pointing to two provisions of the 2020 Administrative Order. Neither provision strips the Commission of its statutory authority over its own administrative proceedings and orders. To the contrary, both reflect the parties' shared expectation that there might be future administrative proceedings.

First, Meta points to the 2020 Administrative Order's authorization of discovery under

---

[6] The FTC Order need not specify every instance in which it could be modified under the FTC Act, as statutory provisions "are necessarily implicit in every order issued under the authority of the [FTC] Act, just as if the order set them out in extenso." *FTC v. Ruberoid Co.*, 343 U.S. 470, 476 (1952); *see Dolcin Corp. v. FTC*, 219 F.2d 742, 750 (D.C. Cir. 1954). Still, these terms are clear evidence the parties contemplated future modifications through administrative proceedings.

"procedures prescribed by the Federal Rules of Civil Procedure." *Id.* at 20; *see* Def. Mem. at 19. Such discovery is expressly contemplated to occur without any additional judicial intervention (or "further leave of court"). 2020 Administrative Order at 20. Moreover, the 2020 Administrative Order reserves the agency's "lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1." *Id.* In other words, as authorized by the FTC Act itself, the 2020 Administrative Order confirms the Commission's right to protect the public using both judicial and administrative procedures. *See* 15 U.S.C. § 45(b), (*l*).

Second, Meta seizes on Paragraph 1 of the 2020 Administrative Order Findings, which states that "*This* Court has jurisdiction over this matter." 2020 Administrative Order at 1; *see* Def. Mem. at 19. Again, context matters. The phrase "this Court" clearly refers to the Commission, the decisionmaking body authoring those words.[7] The 2020 Amended Order is captioned "*In the Matter of Facebook, Inc.*," with the forum identified as "United States of America Federal Trade Commission." *Id.* Immediately preceding the Commission's "Findings" is the sentence: "After due consideration, the *Commission* issues its Complaint, makes the following Findings, and issues the following Order[.]" *Id.* The first Finding is "This Court has jurisdiction over this matter." *Id.* Thus, the text of the 2020 Administrative Order and the Stipulated Order, read in context, make clear that "this Court" refers to the administrative tribunal—not the Court in this judicial proceeding.

### 3.   Extrinsic evidence reinforces that the Commission retained its statutory authority to modify Meta's administrative order

Finally, to support its argument, Meta apparently relies on actions taken by the Commission after the Stipulated Order was entered. *See* Def. Mem. at 9-11. Post-decree actions are extrinsic evidence, and "a court may not look to extrinsic evidence of the parties' subjective intent unless

---

[7] The Commission is referred to as an administrative court when it adjudicates. *See, e.g., FTC v. Surescripts, LLC*, No. 19-CV-1080, 2020 WL 2571627, at *5 (D.D.C. May 21, 2020); *FTC v. Endo Pharms. Inc.*, No. 16-CV-1440, 2017 WL 4583802, at *3 (E.D. Pa. Aug. 21, 2017).

the document itself is ambiguous." *Volvo Powertrain Corp.*, 758 F.3d at 340. As set forth above, there is nothing in the Stipulated Order that arguably bars the FTC from modifying its 2020 Administrative Order, *see supra*, so the Court need not consider extrinsic evidence here.

Even so, the parties' post-decree actions show that they understood that the Commission retained its authority to decide whether to modify an administrative order. As set forth above, at the time the Commission entered the 2020 Administrative Order, it independently considered the case and determined it was "in the public interest to reopen the proceeding . . . and to issue a new order." *See* Modification Order. Meta did not object to the Commission's action.

Meta's efforts to rely on quotes from FTC's post-decree press statements must also fail, as those statements reinforce the fact that the Commission acted independently by issuing the 2020 Administrative Order. The April 2020 press release selectively excerpted by Meta is in fact titled "*FTC* Gives *Final Approval* to Modify *FTC's* 2012 Privacy Order with [Meta] with Provisions from 2019 Settlement." Def. Ex. J at 2. This shows that the Commission not only recognized that it had authority to approve or disapprove any modification, but also that it exercised this authority.[8] And while that release recognized that the FTC waited "until the federal court entered its order" to make a modification, Def. Mem. at 10, this timing makes sense. As the Commission recognized, Meta consented to the reopening of the administrative proceeding through the final Stipulated Order. *See supra*. Logically, the modification would follow Meta's consent to modify.

\* \* \*

The FTC Act expressly contemplates that the Commission may modify its orders when necessary to protect the public. *See* 15 U.S.C. § 45(b). Meta was undisputedly aware of this: both

---

[8] Similarly, the statement of the FTC commissioners supporting the settlement noted that the settlement included "the first *FTC Order*" with certain privacy protections. Def. Ex. A at 2.

the Stipulated Order and the 2020 Administrative Order reference possible modifications and specifically cite authorities governing such procedures. The Court should reject Meta's attempt to bar the Commission from using its statutory authority to protect consumers from Meta's alleged privacy failures and thereby evade scrutiny.

**B.      Meta's new constitutional and statutory challenges are improper**

**1.      Meta's new challenges should be rejected as procedurally barred by the Court's final Stipulated Order**

The Stipulated Order was intended to resolve certain allegations that Meta, "prior to June 12, 2019," violated the 2012 Administrative Order. Stip. Order at 1. In exchange, Meta paid a civil penalty and waived its rights to appeal or otherwise contest the validity of the Stipulated Order. *Id.* at 2. Now, seeking to halt a *new* FTC proceeding based on *new* conduct related to the 2020 Administrative Order, Meta improperly lodges a host of new challenges unrelated to the resolution of this matter through the Stipulated Order. *Compare* Def. Mem. at 15-26 (seeking to enforce the Stipulated Order) *with id.* at 26-43 (challenging FTC's authority more generally). Meta even seeks a preliminary injunction based on its perceived "likelihood of success on the merits." *Id.* at 14.

The Court should reject Meta's new challenges as procedurally improper and meritless. Simply put, Meta cannot demonstrate a likelihood of success on the "merits," because the claims at issue in this case were resolved when the Court entered the final Stipulated Order. Meta does not dispute that the parties satisfied the terms of the Stipulated Order in 2020, and it waived its right to challenge that settlement. Meta's new challenges should therefore be rejected. *See Weber v. Cigna*, No. 2:20-cv-12593, 2022 WL 2952460, at *1 (E.D. Mich. July 19, 2022) (holding a preliminary injunction cannot "be granted . . . [if] the case is not open"), *aff'd*, No. 22-1639, 2023 WL 355110 (6th Cir. Jan. 18, 2023); *Dingler v. Rockwall Cnty. Ct. #2*, No. 3:22-cv-1252, 2023 WL 3471692, at *2 (N.D. Tex. May 12, 2023) (similar); *see also DynaLantic Corp. v. DOD*, 107

F.3d 922 (D.C. Cir. 1996) (unpublished) (similar).[9]

> **2.** **Meta has waived and is judicially estopped from raising challenges to the Federal Trade Commission's structure and modification authority**

In multiple instances, Meta has admitted that the FTC may lawfully enter and modify administrative orders. First, when agreeing to the 2012 Administrative Order, Meta "admit[ted] all the jurisdictional facts" and "waive[d] . . . all rights to seek judicial review or otherwise to challenge or contest the validity of the order[.]" *See* Agreement Containing Consent Order, *In the Matter of Facebook, Inc.*, No. 92-3184, 2011 WL 6092532, at *1 (FTC Nov. 29, 2011). Meta made similar admissions in the Stipulated Order that was filed with this Court, as well as in the 2020 Administrative Order. *See* Stip. Order at 2; 2020 Administrative Order at 1-2. Moreover, Meta also admitted in the Stipulated Order that the complaint against it "state[d] a claim upon which relief may be granted" for civil penalties, which includes the fact that Meta allegedly violated an administrative order that the FTC had legally valid authority to enter. *See* Stip. Order at 2. Finally, Meta "consent[ed] to" the 2020 Administrative Order, *id.* at 4, which expressly recognized that the Commission may further modify the administrative order, *see supra*.

Despite each of these concessions, Meta now argues that the FTC's structure and modification procedures were unconstitutional all along. But Meta waived these challenges and is judicially estopped from changing its position at this late stage. As to waiver, a party to a consent decree can waive constitutional challenges in order to resolve an enforcement action. *See SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021); *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 478 (6th Cir. 2007); *see also D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 183-87

---

[9] For the same reasons, the Court may also strike these new challenges as an exercise of its "inherent authority to protect its integrity and prevent abuses of the judicial process." *Zhao v. Li*, No. 20-cv-3138, 2022 WL 6727338, at *2 (D.D.C. Oct. 11, 2022) (Kelly, J.); *see Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 11 (D.D.C. 2004) (striking for a "failure to follow a normal chain of briefing").

(1972). Meta could have contended in 2012 or 2019 that the Commission is unconstitutionally structured and lacks authority to enter or modify the administrative order pertaining to Meta. Instead, Meta knowingly and voluntarily abandoned those challenges, admitting the Commission has jurisdiction to enter administrative orders. By repeatedly intentionally relinquishing its rights, Meta waived its challenges to the FTC's authority. *See D. H. Overmyer*, 405 U.S. at 186.

Meta is also judicially estopped from challenging the FTC's structure and authority to modify the 2020 Administrative Order. It is axiomatic that, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [it] may not thereafter, simply because [its] interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Now that Meta has "succeeded in persuading" the Court to enter the Stipulated Order, it is judicially estopped from embracing a "clearly inconsistent" position by claiming that the administrative proceedings were unlawful in the first place. *See id.* at 751. Meta's new position would effectively require this Court to hold that the Stipulated Order and $5 billion civil penalty award were unlawful because the Commission proceedings at issue—and the agency itself—were unconstitutional. This Court should reject Meta's attempt to use "intentional self-contradiction" to gain "unfair advantage" in this litigation. *Id.*

### 3. The Court lacks jurisdiction to consider Meta's new constitutional and statutory challenges to the administrative proceedings

So long as it operates "[w]ithin constitutional bounds," Congress decides "when, and under what conditions, federal courts can hear" claims. *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007). The FTC Act expressly placed "review of a *final* Commission decision in a court of appeals, rather than a district court." *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890, 898 (2023). This includes an appeal of the Commission's final decision to modify an administrative order. *See* 15 U.S.C. § 45(b), (c). By choosing this review scheme, Congress divested district courts of their ordinary

federal question jurisdiction, *see* 28 U.S.C. § 1331, so long as the claim is "of the type Congress intended to be reviewed within the statutory structure." *Axon*, 143 S. Ct. at 900.

Meta's cannot use *Axon* as a means to evade the FTC Act's framework for judicial review of administrative actions. In *Axon,* the Supreme Court concluded that district courts retain federal question jurisdiction under the FTC Act to hear a limited subset of claims challenging "the structure or very existence of an agency." *Id.* at 902. The Court was emphatic that it was not expressing "newfound enthusiasm" for immediate judicial review. *Id.* at 904. Yet, hoping to expand *Axon* beyond its limits, Meta now seeks to raise a host of challenges, not just to the FTC's structure or existence ("structural claims"), *see* Def. Mem. at 35-46, but also regarding whether the "circumstances" surrounding the show cause hearing can justify the "scope of the changes" proposed by the Commission ("scope claims"), *id.* at 26, and the supposed "meager procedural safeguards" the Commission might apply when imposing "drastic new remedies" ("procedural claims"), *id.* at 32. *Axon* provides no basis for this Court to consider any such claims, which are premature and depend on the facts of a proceeding that has yet to occur.[10]

As a preliminary matter, the Court should reject all of Meta's challenges—structural, scope, and procedural claims alike—because Meta has not even invoked the Court's federal question jurisdiction. In this lawsuit, the United States sued Meta, acting upon a referral by the FTC to obtain civil penalties and injunctive relief under Section 5(*l*) of the FTC Act for Meta's violations of the Commission's 2012 Administrative Order. The controversy presented by this case involved Meta's conduct; the FTC's conduct and actions were not at issue. Meta's alleged "here-

---

[10] Although Meta argues that the scope of the potential modifications *generally* exceeds the FTC's authority, it does not challenge the Commission's authority to implement any *particular* modification. With good reason. Review of particular modifications should not occur until after the FTC has fully developed the record and finally determined whether a particular modification is warranted. *See Atl. Ref. Co. v. FTC*, 381 U.S. 357, 377 (1965).

and-now" injury has nothing to do with the merits of this case, which were resolved three years ago. That disconnect is underscored by the fact that the entity from whom Meta seeks relief (the FTC) is not even named in this suit.

Even setting aside this fundamental defect, the Court otherwise lacks subject matter jurisdiction to consider Meta's procedural and scope challenges. Despite its efforts to capitalize on *Axon*, close scrutiny reveals that Meta's procedural and scope claims are different in kind. In *Axon*, the Supreme Court applied a longstanding framework, asking three questions to discern whether Congress intended to preclude district court jurisdiction: (1) Is the claim "wholly collateral" to the statute's review scheme? (2) Is the claim "outside the agency's expertise?" and (3) Will precluding district court jurisdiction "foreclose all meaningful judicial review of the claim?" *Axon*, 143 S. Ct. at 900-01; *see Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208, 212-13 (1994) (similar). Applying these factors here mandates a conclusion that Meta's procedural and scope challenges should be raised in a court of appeals after a final Commission decision, and this Court lacks jurisdiction to decide them.

First, Meta does not and cannot seriously suggest that the Commission's procedures for considering a modification to an administrative order are wholly collateral to Congress's review provisions. The FTC Act provides for "notice and opportunity for hearing" in the administrative proceeding before the Commission modifies an administrative order. 15 U.S.C. § 45(b). On review of any administrative order, the court of appeals can order "additional evidence to be taken . . . in such manner and upon such terms and conditions as the court may seem proper." *Id.* § 45(c). Congress clearly contemplated that the procedures for taking evidence would be reviewed by the court of appeals in connection with a final decision. *See Axon*, 143 S. Ct. at 904 (recognizing courts favor review "of procedural or evidentiary matters an agency often resolves on its way to a merits

19

decision" alongside the agency's final order).

Meta cannot evade Congress's review scheme by characterizing its challenge as facial or structural and therefore collateral. As Meta concedes, *see* Def. Mem. at 31, how the FTC's modification procedures are applied in a particular case turns on a variety of case-specific factors, including the nature of the allegations, any answer in opposition, and issues of fact. *See* 16 C.F.R. § 3.72(b). In fact, Meta itself relies on case-specific factors to argue for more procedural protections. *See, e.g.,* Def. Mem. at 32 (complaining more "safeguards" are needed in light of "drastic new remedies" proposed). Thus, Meta's procedural challenge is "inextricably intertwined" with the proceeding itself. *Jarkesy v. SEC*, 803 F.3d 9, 23 (D.C. Cir. 2015) ("*Jarkesy 2015*"); *see* Order Denying Emergency Motion Pending Appeal and to Expedite Appeal, *Loma Linda-Inland Consortium for Healthcare Education v. NLRB*, No. 23-5096 (D.C. Cir. May 25, 2023) (unpublished) ("Nothing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding, especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review.").

Second, Meta's procedural challenge necessarily implicates the Commission's unique experience and expertise in conducting its own administrative proceedings and interpreting the FTC Act, as permitted by statute and regulation. Having spent more than a century enforcing the FTC Act, the FTC "knows a good deal about" consumer protection policy, including the types of issues that are material when deciding whether to modify an FTC Order. *Axon*, 143 S. Ct. at 905. Furthermore, having held numerous administrative hearings under its Rules of Practice, the Commission has plenty of "familiarity in issues that regularly arise in the course of its proceedings" and can also "shed light" on what procedural protections its rules require. *Jarkesy 2015*, 803 F.3d at 28-29; *see Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (similar). Meta

offers no reason why the Commission cannot apply its expertise in deciding how to conduct its proceedings.

Third, allowing the Commission to reach a final decision will not preclude meaningful judicial review. A court of appeals can review whether the Commission committed procedural errors that "prejudice the reliability of the Commission's fact findings," and if the court discerns an error, it can order a new hearing. *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 347 (D.C. Cir. 1965). This is sufficient to dispel concerns that Meta will be subjected to a final decision based on constitutionally deficient procedures. *See Jarkesy 2015*, 803 F.3d at 21-22; *accord Axon*, 143 S. Ct. at 903 (finding meaningful review if a court "could have revoked" an unlawful decision).

For essentially the same reasons, Meta cannot end run around the Commission's proceedings to immediately challenge the scope of modifications in this Court. Meta's challenge to the proposed modifications to the 2020 Administrative Order is not wholly collateral to the administrative proceeding; rather, it is a judicial "vehicle" aimed at obtaining the "same relief [Meta] could seek in the agency proceeding," *i.e.*, a ruling that the Commission may not modify its own order under the circumstances. *Jarkesy 2015*, 803 F.3d at 23; *see Elgin*, 567 U.S. at 21-22. Second, the Commission's expertise is highly probative, not only because of its experience in interpreting the FTC Act, *supra*, but also because the Commission could address "threshold questions" that "obviate the need" for judicial intervention at all. *Jarkesy 2015*, 803 F.3d at 29; *see Elgin*, 567 U.S. at 22-23. For example, in response to Meta's answer, the Commission might conclude that the facts do not warrant the proposed modifications. Finally, waiting will not foreclose judicial review because, again, the court of appeals can simply issue an order to "set aside" the modification. 15 U.S.C. § 45(b), (c); *accord Axon*, 143 S. Ct. at 903.

Rather than explain why these factors permit it to circumvent statutory review in the court

of appeals, Meta simply asserts that this Court has jurisdiction because it will suffer a "here-and-now injury" under *Axon*. Def. Mem. at 35. But Meta's alleged harms are not the type which occur "irrespective of" the Commission's decisions within the administrative proceeding. *Axon*, 143 S. Ct. at 904. True, Meta must participate in that process and respond to the show cause order before it can obtain the relief it seeks. But the "expense and disruption" of "protracted adjudicatory proceedings" cannot "justify immediate review." *Axon*, 143 S. Ct. at 904; *see FTC v. Standard Oil Co. of California*, 449 U.S. 232, 241 (1980). Therefore, this Court should uphold Congress's statutory review scheme and deny Meta's motion. Meta will have the opportunity to assert these and other claims in the court of appeals following any potential adverse final Commission decision.

### 4.   Meta's procedural and scope challenges are not ripe for review

Meta's procedural and scope claims are also not ripe for review. Up to this point, the Commission has simply issued an order to show cause, which is "a threshold determination that further inquiry is warranted." *Standard Oil*, 449 U.S. at 241; *see* 16 C.F.R. § 3.72(b)(1). Meta has not responded to the show cause order, so the Commission has not had the chance to determine if the circumstances support a modification. *See* 15 U.S.C. § 45(c). Nor has the Commission been able to decide "in the first instance" what modifications, if any, are justified. *Atl. Ref. Co.*, 381 U.S. at 377. Indeed, the Commission has not even had cause to determine what procedures it will use for its hearing. *See* 16 C.F.R. § 3.72(b)(2).

Courts assess ripeness by weighing "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Cause of Action Inst. v. DOJ*, 999 F.3d 696, 704 (D.C. Cir. 2021). As to fitness, courts consider whether an issue is "purely legal" and "sufficiently final," or whether it "would benefit from a more concrete setting." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). Fitness ensures the agency has a "full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding." *Id.*

It also ensures that federal courts do not "spend their scarce resources on what amounts to shadow boxing." *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424-25 (D.C. Cir. 2007).

Meta's scope and procedural challenges to the proposed modification of the 2020 Administrative Order are not fit for review, as they would require the Court to address a litany of hypotheticals. As to scope, Meta concedes the FTC Act authorizes some modifications based on changes in fact. *See, e.g.,* Def Mem. at 29 (arguing "there are no changed circumstances"). Nevertheless, Meta asks the Court to halt the proceeding before the FTC conducts its process, including factfinding. As to the procedures, the administrative process has barely begun; Meta has not yet answered the order to show cause, and thus the Commission has not yet had the opportunity to determine if there are issues of fact requiring an evidentiary hearing. Instead of raising its procedural concerns with the expert agency, Meta instead asks the Court to immediately insert itself based on Meta's shaky interpretation of agency procedures. *See infra.* Addressing Meta's challenges would require the Court to use its "powers of imagination" to consider every possible contingency. *Cause of Action Inst.*, 999 F.3d at 704; *see Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). The Court should decline to waste its resources on such a speculative task.

Nor has Meta identified any hardship that requires immediate judicial intervention. Where "institutional interests [favor] the deferral of review, any hardship caused by that deferral must be immediate and significant." *Am. Petroleum*, 683 F.3d at 389. *Id.* As to the scope, no final modification order will be issued until the administrative proceedings conclude. The additional cost of participating in an administrative proceeding is not the type of hardship that surmounts clear ripeness concerns. *See TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 338 (5th

23

Cir. 2017), *as revised* (July 10, 2017); *AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003).

On the procedural front, Meta speculates that, at some point in the future, it will not have adequate

due process. A "future injury" that "may result" in inadequate "procedural due process" does not

warrant immediate judicial review. *Cronin v. FAA*, 73 F.3d 1126, 1133 (D.C. Cir. 1996).

In sum, Meta is not suffering any hardship to justify immediate review of its premature

challenges. The Court should reject Meta's procedural and scope claims as unripe.

### C.     Meta's new constitutional and statutory challenges also fail on the merits

Meta's motion is not a proper vehicle to enjoin the Commission's administrative process,

but even if the court reached the merits of Meta's claims, they would all fail.

### 1.     The Commission may substantively modify its administrative orders

Even if Meta's motion had raised a valid facial challenge to the Commission's authority to

modify its administrative orders, Meta's arguments are foreclosed by the plain text of the FTC Act

and binding appellate authority.

Meta makes essentially three statutory arguments to cabin the FTC's power to modify the

2020 Administrative Order. To start, Meta seeks to import finality principles from other areas of

law. *See, e.g.,* Def. Mem. at 19, 27. Meta's effort is misplaced. Such finality principles do not

apply to agency action "when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. &

Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). The FTC Act provides that the Commission

"may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside,

in whole or in part," its orders "whenever in the opinion of the Commission conditions of fact or

of law have so changed as to require such action or if the public interest shall so require." 15 U.S.C.

§ 45(b). In other words, Congress clearly did not intend to import general finality principles,

because the FTC Act "specifically allows the Commission to modify its order after it has become

final." *Int'l Union of Mine, Mill & Smelter Workers, Locs. No. 15 v. Eagle-Picher Mining &*

*Smelting Co.*, 325 U.S. 335, 342 (1945); *see Louisiana-Pac. Corp.,* 754 F.2d at 1447 n.1 (similar).

Meta next maintains that the Commission cannot rely on the "public interest" to make a modification unless Meta "consented to the FTC's proposed modification." Def. Mem. at 29. This unsupported assertion is belied by the statutory text, which authorizes modification whenever, "in the *opinion of the Commission* . . . the public interest shall so require." 15 U.S.C. § 45(b). Nothing in the statute suggests that Meta may overrule the public interest by withholding its consent. The D.C. Circuit reached substantially the same conclusion over half a century ago. In *Elmo v. FTC*, a company contested the reopening and modification of an administrative order, arguing that, to modify an order, the agency had to demonstrate a "greater" public interest "than [was] necessary to bring a complaint" under the FTC Act. 389 F.2d at 552. Rejecting that argument, the Court held that the Commission "makes a sufficient showing to re-open a prior order if it shows reasonable grounds to believe that the public interest at the present time would be served by the re-opening." *Id.* The standard applied by the D.C. Circuit does not require the defendant's consent for reopening.

Finally, focusing on the terms "modify" and "alter," Meta claims that the FTC's reopening authority is limited to "only slight amendments." Def. Mem. at 27. But the provision must be read in full: the FTC Act empowers the Commission to "alter, modify, or set aside, *in whole or in part*, any" administrative order. 15 U.S.C. § 45(b). Under ordinary rules of grammar, when a list of verbs is followed by a modifying clause, the modifier "normally applies to the entire series." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021). Moreover, the fact that the modifier is "separated from antecedents by a comma is evidence that [it] is supposed to apply to all the antecedents instead of only to the immediately preceding one." *Id.* at 1170. Lastly, the only statutory limitation on this modification power is that the Commission must find that "conditions of fact or law have so changed as to require such action or [that] the public interest shall so require."

15 U.S.C. § 45(b); *cf. Biden v. Nebraska*, 143 S. Ct. 2355, 2369 (2023) (adopting a narrower reading of "modify" under a statute specifying only a "few particular exigent circumstances" allowing for modification). Thus, the FTC Act allows the Commission to modify an administrative order "in whole," so long as the modification is factually and legally supported.

This construction is also consistent with the D.C. Circuit's interpretation of the statute. Extensively quoting a similar Ninth Circuit case, the *Elmo* Court recognized that, regardless of whether the FTC initiates a new complaint or reopens an administrative order, its "function . . . is essentially the same." 389 F.2d at 552. In both cases, "the Commission is not a private party, but a body charged with the protection of the public interest." *Id.* Thus, the Commission can use its "[e]xperience under [a] cease and desist order" to determine that the current terms are "not enough to stop the deception." *Id.* In other words, the Commission is "entitled to change its mind . . . as to the kind of a cease and desist order which [is] necessary to protect the public interest." *Id.*; *see Mohr v. FTC*, 272 F.2d 401 (9th Cir. 1959). Meta's substantive challenges to the Commission's authority to modify its administrative orders must fail.[11]

### 2.   The Commission's modification procedures comport with due process

Likewise, any facial due process challenge to the FTC's reopening procedures fails. With little more than passing references, Meta suggests that the Commission will purportedly: (1) shift the burden of proof onto Meta and require it to disprove the need for a modification, Def. Mem. at 33; (2) deprive it of a right to a fair hearing, *id.* at 32-33; and (3) refuse to allow discovery, *id.* at

---

[11] As a historical matter, Meta is incorrect in suggesting the Commission only makes minor edits to its orders. *See* Def. Mem. at 26-27. As demonstrated by *Elmo* and *Mohr*, the Commission has modified orders where it found that changes are needed to protect the public interest. *See also, e.g., In the Matter of Kellogg Co.*, No. C-4262, 2010 WL 2332719, at *1 (FTC June 2, 2010).

32. Meta's complaints are inaccurate, overblown, and (again) premature.[12]

At the outset, Meta's facial challenges rely on the idea that the Commission *categorically* refuses to apply its adjudicative procedures to reopening proceedings, as they are not "formal administrative trial[s]." Def. Mem at 33. This is incorrect. The FTC's Rules of Practice state that, where an order to show cause and an answer thereto "raise substantial factual issues, the Commission will direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an Administrative Law Judge." 16 C.F.R. § 3.72(b)(2). And, unless the Commission provides otherwise, hearings "shall be conducted" in accordance with the FTC's Rules of Practice for adjudicative proceedings, *id.*, including: placing the burden of proof on FTC Staff, *id.* § 3.43; allowing for a hearing, *id.* §§ 3.41, 3.43; and affording relevant discovery, *id.* § 3.31. Consistent with these rules, the Commission's order to show cause expressly states that it will "determine what process is appropriate to resolve any issues" after Meta "files an answer." *See* Order to Show Cause at 1.

Meta's claims that the Commission is straying from its ordinary practice are also belied by the record. First, Meta failed to identify any evidence that the Commission has shifted the burden of proof onto it. Its single supporting citation, a 2020 FAQ webpage speaking in layman's terms, says nothing even remotely to that effect. *See* Def. Ex. O at 1. To the contrary, the Commission stated that, if Meta chooses not to file an answer, it "may be deemed to have consented to the proposed order modifications." *See* Order to Show Cause at 1. Construing a failure to respond as a waiver does not offend due process. *See Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C. Cir. 1977).

---

[12] Hoping to amplify these procedural challenges, Meta asserts it waived certain procedural rights because it believed its current reading of the Stipulated Order would govern. *See* Def. Mem. at 34. As explained above, Meta's interpretation is flatly contradicted by the plain terms of the Stipulated Order, and it cannot escape these terms by now offering an inconsistent interpretation.

Nor does it offend due process to determine the precise reopening procedures based on how Meta answers the show cause order. In fact, courts frequently recognize that due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Indeed, the due process requirements for a fair hearing turn on whether there are factual issues in dispute. *See, e.g., Codd v. Velger*, 429 U.S. 624, 627 (1977); *Goldberg v. Kelly*, 397 U.S. 254, 268 n. 15 (1970). Also, the need for discovery turns on the particular disputes between the parties. *See McClelland v. Andrus*, 606 F.2d 1278, 1286 (D.C. Cir. 1979).

At this early stage, the Commission's proceedings have fully comported with the FTC's Rules of Practice, and with due process. The Court should reject Meta's procedural challenge.

> ### 3.    The Constitution does not prohibit the Commission's dual prosecutorial and adjudicative roles

The FTC Act authorizes the Commission both to reopen its administrative enforcement proceeding and to adjudicate the matter. Meta's allegations of bias are misplaced: the law presumes the Commission's good faith under long-standing precedent. "Courts have long recognized a presumption of honesty and integrity in those serving as adjudicators." *Professional Air Traffic Controllers Org. v. Fed. Labor Relations Auth.*, 685 F.2d 547, 573 (D.C. Cir. 1982). Given this presumption, "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Withrow v. Larkin*, 421 U.S. 35, 58 (1975); *see also In re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011) (recognizing that the Supreme Court found no due process violation in *Withrow* where the same agency made probable cause determination and final adjudication).

The Commission's power to investigate, initiate proceedings, and then adjudicate is key to fulfilling Congress's purpose in giving enforcement authority to an agency with the necessary

expertise. *See FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948). Recognizing Congress's intent that certain specialized matters be handled consistently by a single agency, the Supreme Court held in *Cement Institute* that the Commission did not violate due process when it adjudicated a matter against a particular respondent after opining in reports and congressional testimony that the conduct at issue constituted an unfair practice. *Id.* at 702-03. The Court observed that the Commission's expression of those views did not mean that the commissioners' minds were "irrevocably closed." *Id.* at 701. The Supreme Court has extended this reasoning to situations in which an agency performs both investigative and adjudicative roles: "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act ["APA"], and it does not violate due process of law." *Withrow*, 421 U.S. at 56.[13]

Indeed, the APA permits the same agency to investigate and adjudicate a matter so long as it adopts measures to "separat[e] . . . prosecutorial and adjudicative functions within the administrative process." *Au Yi Lau v. INS*, 555 F.2d 1036, 1042 (D.C. Cir. 1977) (citing 5 U.S.C. § 554(d)). The FTC's Rules of Practice carefully implement this requirement by imposing a strict wall forbidding the staff members responsible for prosecuting the case from *ex parte* contact with

---

[13] The Supreme Court reaffirmed *Cement Institute* in *Withrow*, 421 U.S. at 47-48, contrary to Meta's suggestion that it was overturned or undermined by *In re Murchison*, 349 U.S. 133 (1955). In *Murchison*, the Court found a due process violation where a state judge sat as a "one-man grand jury" and then also tried and convicted the criminal defendants. The *Withrow* Court explained that *Murchison* "has not been understood to stand for the broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications. The Court did not purport to question the *Cement Institute* case . . . ." *Withrow*, 421 U.S. at 53-54. Citing the substantial body of law approving the combination of prosecutorial and adjudicative functions, the *Withrow* Court found that a state medical board was not constitutionally precluded from adjudicating a license suspension on the basis of charges arising from the board's own investigation. *Id.* at 57-58.

the ALJ, the commissioners, or others involved in the decisional process. 16 C.F.R. § 4.7(b); *see also id.* § 4.7(e) (providing that the "prohibitions of this section shall apply in an adjudicative proceeding from the time the Commission votes . . . to issue an order to show cause pursuant to §3.72(b)"). Meta is therefore wrong to assert that the commissioners "will now act as both prosecutor and adjudicator in the reopened enforcement proceeding." Def. Mem. at 36.

In an attempt to sidestep the Supreme Court's determination that the Commission's administrative process is constitutional, Meta suggests that the Commission's authority to reopen a prior proceeding—based on its finding that there is "good cause to believe" that Meta has violated the 2020 Administrative Order—is substantively different from its authority to initiate an administrative proceeding in the first instance, for which it must have "reason to believe" the proceeding is warranted. 15 U.S.C. § 45(b). It strains credulity that determining there is "good cause to believe" a proceeding should be reopened or an order should be modified would be considered a prosecutorial act, while having "reason to believe" that a proceeding to address allegedly unfair or deceptive acts should be initiated and a complaint issued, is not.

The cases relied on by *Meta* are distinguishable. Def. Mem. at 35-36. *Williams v. Pennsylvania*, 579 U.S. 1 (2016), does not disturb the general principle recognized in *Withrow* that a federal agency can constitutionally perform both prosecutorial and adjudicative functions. In *Williams*, the Court found a due process violation where a state judge, who was formerly the district attorney who had approved seeking the death penalty in a particular case, participated in adjudicating a petition to overturn that death sentence. *Id.* at 5-6. The *Williams* Court relied on *Withrow* to reach this decision. *Id.* at 4, 9, 14. The obvious conflict in *Williams* is not present here. Moreover, as explained above, the FTC's rules separate prosecutorial and adjudicative functions within the agency so that, unlike in *Williams*, the same officer will not perform both roles.

To overcome the presumption of the commissioners' good faith and Supreme Court precedent approving the Commission's procedure, Meta must make a "strong showing to the contrary." *Professional Air Traffic Controllers*, 685 F.2d at 573 (citing *Cement Inst.*, 333 U.S. at 700-03; *Lead Indus. Ass'n v. EPA*, 647 F.2d 1130, 1178 (D.C. Cir. 1980)). In addition, under *Axon*, Meta must show that the current Commission, because of its inherent bias, is structurally incapable of constitutionally fulfilling its FTC Act power to both reopen a proceeding and decide it.  Absent such a showing, the injury Meta asserts is not the type of "here-and-now injury" that potentially could give this Court jurisdiction to hear its claim.  *Axon*, 143 S. Ct. at 903 (describing harm in "being subjected" to "unconstitutional agency authority" as a "here-and-now injury").

Meta argues that the Commission is biased both generally and against it specifically. Regarding general bias, Meta points to the FTC's historical enforcement record over the past twenty-five years. Def. Mem. at 37. This assertion is not specific to current members of the Commission, the longest tenured of whom, Commissioner Slaughter, has been a commissioner only since 2018. Since Meta does not tie its claim to any particular Commission, then its claim seems to be that the Commission suffers from inherent, structural bias. But the Commission's enforcement history is insufficient alone to prove such structural bias, overcome the presumption of good faith, and upend Congress's intent in passing the FTC Act. The alleged "statistical one-sidedness" of rulings "simply cannot be used to support an inference of judicial bias." *So. Pac. Commc'n Co. v AT&T Co.*, 740 F.2d 980, 995 (D.C. Cir. 1984); *see Phillips v. Jt. Legis. Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1020 (5th Cir. Unit A Feb. 1981) (similar); *In re IBM Corp.*, 618 F.2d 923, 930 (2nd Cir. 1980) (similar). In any event, the most comprehensive analysis of the Commission's decisionmaking, prepared by former Commissioner Maureen Ohlhausen and published in a peer-reviewed economics journal, found no

31

evidence of systemic bias. *See Maureen K. Ohlhausen*, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp*, 12 J. Comp. L. & Econ. 623, 651 (2016).

For the same reason the *Cement Institute* Court refused to disqualify the Commission from adjudicating matters about which its members had made public statements, *see* 333 U.S. at 700-01, this Court should reject Meta's claim. Granting that claim would "to a large extent defeat the congressional purposes which prompted passage of the Trade Commission Act." *Id.* at 701. "Had the entire membership of the Commission [been] disqualified in the proceedings against [the] respondents, this complaint could not have been acted upon by the Commission or by any other government agency." *Id.*

Meta attempts to support its bias claim by noting that the commissioners who authorized the show cause order already have proposed the remedy via a proposed revised administrative order. This is not bias, but an unremarkable part of the enforcement process, *i.e.,* to describe a particular remedy appropriate to the alleged misconduct, and to provide a putative defendant with transparency about the potential remedies that the Commission may seek.

Meta's allegations of specific bias also lack credibility. Meta trumpets the Commission's "defiance" of this Court's order and the FTC's Rules of Practice, but this argument relies on the incorrect assertion that the Commission's administrative proceeding is unlawful, as addressed above. Meta's claim that the Commission's Chair "pre-judged information collection issues implicated by" the order to show cause, Def. Mem. at 37, likewise has no merit.  Meta refers to a footnote in a 2019 law review article co-authored by Chair Lina Khan while she was an academic law fellow, claiming that the footnote suggests she had "pre-judged information-collection issues implicated by" the show cause order.  Def. Mem. at 37.  But the footnote states that Meta "happens to offer a particularly stark case study in the inadequacies of *the information-fiduciary framework*."

Lina M. Kahn & David E. Pozen, *A Skeptical View of Information Fiduciaries*, 133 Harv. L. Rev. 497, 501 n. 14 (2019). Meta's claim that the footnote referred to inadequacies in Meta's specific data-collection practices, Def. Mem. at 37, is flatly wrong.

Further, Meta does not explain how the comment in the footnote, taken out of context and made well before Khan became Chair in 2021, shows prejudgment of the specific facts leading to the Commission's show cause order. Many of those facts only became known to the FTC after the assessor's July 2021 report, *see* Order to Show Cause at 4; Khan could not have known of them at the time of the article.

Moreover, to prevail on a claim that a specific adjudicator has a disqualifying level of bias, Meta must show that "a disinterested observer may conclude that [the adjudicator] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Cinderella Career & Finishing Schs., Inc. v. FTC*, 425 F.2d 583, 591 (D.C. Cir. 1970). Meta has not shown that this standard is met here (nor could it)—especially considering the Commission has merely initiated a process by which it will determine whether and how to modify its order. This Court recently rejected similar bias arguments by Meta in another FTC case, cautioning that courts must "tread carefully" before "disqualify[ing] every administrator who has opinions on the correct course of his agency's future action." *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 62 (D.D.C. 2022).

### 4.     Restrictions on the President's power to remove FTC commissioners do not offend the Constitution

Meta's challenges to the FTC Act's restrictions on the President's removal power over FTC commissioners are foreclosed by Supreme Court precedent. The Court upheld those precise restrictions in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Presented with opportunities to reconsider that precedent, the Court has declined to do so. Then, as now, the

President could remove FTC commissioners for only "inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. The Court "found it 'plain' that the Constitution did not give the President 'illimitable power of removal' over the officers of independent agencies," and held that the "'coercive influence' of the removal power would 'threaten the independence of the commission.'" *Morrison v. Olson*, 487 U.S. 654, 687-88 (1988) (quoting *Humphrey's Executor*, 295 U.S. at 630) (cleaned up).

Since the Court's 1935 *Humphrey's Executor* decision, "removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission, . . . , the Interstate Commerce Commission, . . . , and the Consumer Product Safety Commission[.]" *Morrison*, 487 U.S. at 724-25 (Scalia, J., dissenting). The agencies that have failed to survive constitutional challenges had features not present with the Commission. In fact, the remedies discussed in those cases were to re-structure those agencies to be more like the FTC, implicitly reaffirming the FTC's constitutionality under *Humphrey's Executor*. *See*, *e.g.*, *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 496 (2010) (invalidating "novel" and "rigorous" removal restrictions for certain inferior officers who could be removed by only the SEC commissioners and noting that constitutional defect could be remedied by making the inferior officers removable at will by the commissioners but leaving the SEC commissioners removable for inefficiency, neglect of duty or malfeasance in office, the same protection applicable to FTC commissioners); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020) (confirming *Humphrey's Executor* permits removal restrictions for multi-member regulatory agencies and holding that because CFPB has a single director, the Constitution required that the President be able to remove the CFPB director at will); *see also Collins v. Yellen*, 141 S. Ct. 1761 (2021) (invalidating removal restrictions for the single Director of the Federal Housing

34

Finance Agency). These cases do not apply to the Commission, which has existed for more than a century without incident. *See Seila Law*, 140 S. Ct. at 2201 (noting that the CFPB, a new agency, presented "a new situation").

Meta invites this Court to ignore *Humphrey's Executor* on the grounds that since that 1935 decision, the Commission's executive enforcement powers have expanded.[14] Def. Mem. at 39. But in *Seila Law* the Court decided to leave *Humphrey's Executor* in place, even after acknowledging that the reasoning behind *Humphrey's Executor*—that the Commission exercised quasi-legislative or quasi-judicial power and not executive power—"has not withstood the test of time." *Seila Law*, 140 S. Ct. at 2198 n. 2. And, although the Court ultimately chose to remedy the CFPB Director's unconstitutional removal protections by severing them from the statute and making the Director removable at will by the President, the Court noted that Congress was not foreclosed "from pursuing alternative responses to the problem—for example, converting the CFPB into a multimember agency," *id.* at 2211, in other words, into an agency more like the FTC.

The Supreme Court's decision in *Humphrey's Executor* "remain[s] binding precedent until [the Court] see[s] fit to reconsider [it], regardless of whether subsequent cases have raised doubts about [its] continuing vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam); *see In re Aiken County*, 645 F.3d 428, 446 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("*Humphrey's Executor* is an entrenched Supreme Court precedent, protected by stare decisis."); *Ticor Title Ins. v. FTC*, 814 F.2d 731, 741 (D.C. Cir. 1987) (applying *Humphrey's Executor* even though it was "at least arguable that the Supreme Court might be persuaded to alter its current position").

Finally, even if the commissioners' removal protections were unconstitutional, which they

---

[14] Meta argues that the FTC's authority to modify its orders, gained after *Humphrey's Executor*, tips the constitutional balance, but fails to explain why this justifies defying longstanding Supreme Court precedent.  Def. Mem. at 39.

are not, Meta still could not obtain the injunctive relief it seeks because the FTC's removal policies have no effect on the administrative proceedings from which Meta seeks relief. Meta has not suggested that the commissioners were not properly nominated for and appointed to their positions, nor has Meta shown that the challenged removal provision "cause[d] harm" by prejudicing the President's control of the administrative proceeding. *Collins*, 141 S. Ct. at 1789; *see Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021). Meta has not shown, for instance, that the President has sought to remove the current commissioners or that the President disagrees with the Commission's proposal to modify the 2020 Administrative Order. *See Collins*, 141 S. Ct. at 1789. Meta's failure to make such a showing is dispositive, as the party alleging a removal violation is entitled to relief "only when the President's inability to fire an agency head *affected the complained-of decision.*" *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (rejecting removal claim where plaintiff failed to establish "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor") (citing *Collins*, 141 S. Ct. at 1801). Accordingly, Meta's Article II argument fails.

### 5. The Commission's authority to choose between administrative and judicial remedies does not violate the non-delegation doctrine

Congress sought to protect the public from unfair and deceptive practices by passing the FTC Act, and it delegated enforcement authority to the Commission. Among other enforcement tools, the Commission may issue administrative orders after conducting proceedings; and the Commission may also opt to file in federal court a suit seeking injunctive relief, civil penalties, or other monetary relief. The FTC Act empowers the Commission to decide whether and how to

exercise its authority. Exercising that discretion is inherent to the Commission's enforcement authority and is a classic form of executive power, not an exercise of legislative power.

Article I of the Constitution vests the federal government's legislative powers in Congress, and Congress may not delegate those powers to an executive agency absent an intelligible principle to guide the exercise of discretion. U.S. Const. art. I, § 1; *see, e.g., Mistretta v. United States*, 488 U.S. 361, 372 (1989). The Supreme Court has distinguished between legislative power and executive power. "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them." *Buckley v. Valeo*, 424 U.S. 1, 139 (1976), *superseded by statute on other grounds as recognized in McConnell v. FEC*, 540 U.S. 93 (2003). Enforcement power is "exemplified by . . . discretionary power to seek judicial relief" and "is authority that cannot possibly be regarded as merely in aid of the legislative function of Congress." *Buckley*, 424 U.S. at 138. It has long been established that enforcement of the law is an exercise of executive authority: "A lawsuit is the ultimate remedy for a breach of the law, and it is to the president, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* (quoting U.S. Const. art. II, § 3).

In authorizing the Commission to choose between administrative and judicial enforcement mechanisms, Congress did not unconstitutionally delegate its legislative powers. The Commission does not "make law" when it chooses between administrative and judicial remedies, any more than an Executive Branch agency makes law by choosing to bring a criminal prosecution rather than a civil suit, or by choosing whether to pursue civil penalties or equitable relief. These types of decisions about what violations to assert, what penalties to seek, and in what forum to proceed are quintessentially executive actions that are the very definition of enforcing the laws. *See United States v. Batchelder*, 442 U.S. 114, 125-26 (1979) (finding no violation of nondelegation doctrine

in authorizing prosecutor to choose among statutes that impose different penalties for essentially the same conduct).

For its argument to the contrary, Meta claims that the Supreme Court has held that the power to decide a matter administratively is a "peculiarly" legislative function. Def. Mem. at 39. To support its contentions, Meta relies on *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909), mischaracterizing dicta as the Court's holding and misunderstanding the subject of the Court's analysis. The *Oceanic* Court described the subjects of tariffs, taxation, and immigration to be "peculiarly" within Congress's authority, not the decision to decide a matter administratively. *Oceanic*, 214 U.S. at 339; *see also Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (interpreting the "subject" at issue in *Oceanic* to be "the admission of aliens"); *Alonso-Martinez v. Meissner*, 697 F.2d 1160, 1161 n. 5 (D.C. Cir. 1983) (same). *Oceanic* ultimately held that Congress could delegate to administrative officers its authority to adjudicate admission into the United States and to impose fines without requiring judicial intervention. Nothing in *Oceanic* supports Meta's contention that deciding a matter administratively, or choosing whether to pursue judicial or administrative enforcement, are non-delegable legislative functions.

Meta's reliance on the Fifth Circuit's recent decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ("*Jarkesy 2022*"), *cert. granted*, 2023 WL 4278448 (U.S. June 30, 2023) (No. 22-859), is likewise unavailing.  As an initial matter, *Jarkesy* was wrongly decided.  The court's analysis rested on a misinterpretation of the Supreme Court's decision in *Crowell v. Benson*, 285 U.S. 22, 50 (1932). *Crowell* examined whether the Constitution permitted Congress to delegate certain authority to an agency, rather than require determination by an Article III court. *Id.* at 49-50. The Supreme Court found Congress had discretion to establish "legislative courts" with respect to public rights, and that "'the mode of determining matters of this class [of public rights] is

completely within congressional control."' *Id.* at 50. Specifically, Congress has the power to "reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals." *Id.* The Fifth Circuit misinterpreted this holding to conclude that the act of choosing between administrative and judicial relief is the type of exclusively legislative act that Congress, and Congress alone, must perform. The dissenting opinion in *Jarkesy* exposed the error of this reasoning: *Crowell* did not bar Congress from "authoriz[ing] that a case involving public rights may be determined in either of two ways." *Jarkesy 2022*, 34 F.4th at 473 (Davis, J., dissenting). When Congress expressly authorized the SEC to bring enforcement actions "in Article III courts or in administrative proceedings," it "fulfilled its duty of controlling the mode of determining public rights cases . . . ." *Id.* The same is true here.

Jarkesy is also distinguishable because it turned on the fact that the Congress gave the SEC "the ability to determine which subjects of its enforcement actions are entitled to Article III proceedings *with a jury trial*, and which are not." *See id.* at 461. That is not the case here: Meta would have had no right to a jury trial had the Commission sought injunctive relief in court rather than in an administrative proceeding. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).

Even if the choice between administrative and judicial enforcement were a legislative act (it is not), the Commission's authority still passes constitutional muster because Congress limited the Commission's discretion to make that choice with an intelligible principle—that the discretion be exercised in "the interest of the public." 15 U.S.C. §§ 45(b), 53(b). The Supreme Court has repeatedly "found an 'intelligible principle' in various statutes authorizing regulation in the 'public interest.'" *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 474 (2001); *see also United States v. Diggins*, 36 F.4th 302, 319 n. 19 (1st Cir. 2022) (explaining "direction that prosecutions under

§ 249(b)(1)(D) be in the public interest and necessary to secure substantial justice indisputably satisfies the lax intelligible principle standard"). The "intelligible principle" standard is not a demanding one, *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019), and the FTC Act meets it. In *Jarkesy*, by contrast, Congress had said "nothing at all" about how the SEC should exercise its discretion to bring enforcement actions within the agency or in an Article III court. 34 F.4th at 462.

### 6. The Commission does not unconstitutionally adjudicate private rights

Meta is also wrong that the Commission's administrative proceedings impermissibly involve an exercise of the judicial power to adjudicate private rights because the matter at issue involves public rights.  Article III vests the "judicial Power" in the federal courts. U.S. Const. art. III, § 1. "Congress cannot confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372-73 (2018). To determine whether an adjudication involves an exercise of judicial power, the Supreme Court has distinguished between "public rights" and "private rights" and has "given Congress significant latitude to assign adjudication of public rights to entities other than Article III courts." *Id.* at 1373. Public rights are those "arising between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Stern v. Marshall*, 564 U.S. 462, 489 (2011). The Court has observed of its public rights doctrine precedent that "Congress has often created new statutory obligations, provided for civil penalties for their violation, and committed exclusively to an administrative agency the function of deciding whether a violation has in fact occurred" and "[t]hese statutory schemes have been sustained by this Court." *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 (1977). In *Atlas Roofing*, for example, the Court upheld the Occupational Safety and Health Act's creation of a new statutory duty for employers to avoid

unsafe or unhealthy working conditions, remedies for those violations, and mechanisms for speedy enforcement and adjudication of cases by expert administrative agencies. *Id.* at 461.

Here, similar to the Occupational Safety and Health Act, the FTC Act created a federal prohibition against unfair and deceptive acts and practices and provided for various remedies for their violation.[15] The Act entrusted to the Commission the task of investigating and adjudicating violations. When modifying an administrative order, the Commission is enforcing the public rights created by the FTC Act. *See FTC v. Neora LLC*, No. 3:20-cv-01979, 2022 WL 3213540, at * 3 (N.D. Tex. Aug. 8, 2022) (explaining that, in seeking injunctive relief, "the FTC is operating in a sovereign capacity for the protection and furtherance of public rights and interests, namely to protect the public from 'unfair or deceptive acts or practices,' as authorized by the FTC Act."); *cf. Simpson v. Office of Thrift Supervision*, 29 F.3d 1418, 1423 (9th Cir. 1994) (holding that, in instituting cease-and-desist proceedings, the Office of Thrift Supervision "served a public purpose of the sort Congress envisioned in providing for administrative adjudication").

Meta attempts to cast this matter as one involving private rights, claiming it implicates Meta's "private rights in its property." Def. Mem. at 42. The possibility that a case might affect a private party's property rights does not dictate that it may be adjudicated only by an Article III court. Decades of Supreme Court precedent have upheld agency adjudications imposing liability on and correcting misconduct of companies and individuals, necessarily implicating their private property rights. *Atlas Roofing*, for example, involved agency adjudication of two OSHA citations against companies that were required to pay civil penalties and to change their business practices to abate safety hazards. *See also CFTC v. Schor*, 478 U.S. 833, 853 (1986) (allowing CFTC to

---

[15] The FTC does not have the authority to order civil penalties, but nothing in *Atlas Roofing* suggests that the type of remedy is dispositive as to whether a right is private or public.

adjudicate debit balance claims between commodity futures brokers and customers, which involved "private rights" "assumed to be at the 'core' of matters normally reserved to Article III courts"); *Crowell*, 285 U.S. at 51-53 (replacing longshore workers' traditional negligence cause of action against employers with a statutory workers' compensation system).

Like the Department of Labor when it enforces OSHA, the FTC, when it enforces the FTC Act, acts "in its sovereign capacity under an otherwise valid statute creating enforceable public rights." *Atlas Roofing*, 430 U.S. at 458. Such cases are distinguishable from "[w]holly private tort, contract, and property cases," which implicate the Seventh Amendment's right to a jury trial. *Id.* Indeed, the Fifth Circuit in *Atlas Roofing*—whose decision was affirmed by the Supreme Court— specifically identified the FTC's proceedings when holding that they could be conducted without a jury trial because they involved public rights. *See Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 518 F.2d 990, 1008 n.43 (5th Cir. 1975).  For these reasons, if this Court reaches the merits of Meta's argument, the argument should be rejected.

**D.     Meta is not entitled to a preliminary injunction**

Meta's request for a preliminary injunction—or any injunction—should fail because its claims are improper and fail on the merits. *See supra*. Moreover, considering the other preliminary injunction factors, Meta fails to make a clear showing of irreparable harm and that the balance of equities and public interest weigh in favor of an injunction.

**1.     Meta has not demonstrated irreparable harm absent an injunction**

As the basis of irreparable harm, Meta again invokes *Axon* and claims it will suffer a "here- and-now injury" from "being subjected to" the Commission's administrative proceeding. Def. Mem. at 44. Yet again, Meta stretches *Axon* far beyond its holding. *Axon* held that a district court has jurisdiction to hear a structural challenge to the FTC in limited circumstances. The Court did not decide whether the mere allegation of structural injury is sufficient to warrant a preliminary

injunction. *See Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 694 (D.C. Cir. 2015) (similarly holding that, in *Free Enterprise Fund,* 561 U.S. 477, "the Supreme Court resolved its jurisdiction to hear a constitutional challenge to a new federal agency but had no occasion to address a federal court's exercise of equitable discretion to deny injunctive or declaratory relief").

The D.C. Circuit has rejected the claim that "any alleged separation-of-powers injury is by its very nature irreparable" for preliminary injunction purposes. *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017). Instead, in addition to raising an "abstract concern with the separation of powers," Meta must also identify an "immediate or ongoing harm from the . . . alleged constitutional defects." *In re al-Nashiri*, 791 F.3d 71, 79-80 (D.C. Cir. 2015). The "expense and disruption of defending oneself in protracted adjudicatory proceedings" is insufficient to show such harm. *John Doe Co.*, 849 F.3d at 1135. Meta has failed to identify any additional interim harm that would result from its structural challenges, *see* Def. Mem. at 43-44, so the Court should adhere to D.C. Circuit precedent and reject its claim of irreparable harm.

### 2.    Meta failed to demonstrate that the balance of the equities and the public interest favor an injunction

Finally, Meta has failed to show that the balance of the equities and public interest favor a preliminary injunction. Even if Meta could show irreparable harm from the reopening proceedings (which it cannot), harm will also flow from halting the Commission's proceedings, and the public will "benefit most from permitting it to continue." *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (explaining "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction").

Congress "directed [the FTC] to prevent" corporations from engaging in "unfair or deceptive acts or practices," 15 U.S.C. § 45(a), and empowered the Commission to protect

consumers by modifying its prior orders where the public interest so requires, *id.* § 45(b). Congress clearly understood that the Commission's administrative order might ultimately prove insufficient to "stop the deception." *Elmo*, 389 F.2d at 552. Rather than requiring "the public interest . . . to suffer as a result of inadvertence or mistake," *id.*, Congress instead authorized the Commission to modify administrative orders to protect the public, *see* 15 U.S.C. § 45(b), (c).

The Commission's show cause order reflects the expert agency's concerns that the 2020 Administrative Order is insufficient to protect the public from Meta's unfair and deceptive conduct. As the show cause order explained, the Commission has good cause to believe Meta's privacy practices are putting consumers' privacy at risk. *See* Order to Show Cause. Despite ongoing risks to the public from its conduct, Meta seeks to halt all Commission proceedings while it litigates the grab bag of claims it raises in its motion—including claims that contradict positions it previously took before this Court. The Court should reject Meta's effort to stop the ongoing administrative proceedings which are intended to protect consumers.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to deny Meta's Motion to Enforce the Stipulated Order and to Enjoin the Administrative Reopening Proceeding of the Federal Trade Commission.

Dated: August 16, 2023

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

BRIAN M. BOYNTON (6971565)
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM (7248310)
Director
Consumer Protection Branch

LISA K. HSIAO (444890)
Assistant Director
Consumer Protection Branch

 */s/ Zachary L. Cowan*
ZACHARY L. COWAN (7579039)
KATHERINE M. HO (220345)
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Washington, D.C. 20530
Tel: 202-353-7728 (Cowan)
Tel: 202-353-7835 (Ho)
Fax: 202-514-8742
Zachary.L.Cowan@usdoj.gov
Katherine.Ho@usdoj.gov