# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

FACEBOOK, INC.,
a corporation,

        Defendant.

Case 1:19-cv-02184-TJK

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO ENFORCE THE STIPULATED ORDER AND TO ENJOIN THE ADMINISTRATIVE REOPENING PROCEEDING OF THE FEDERAL TRADE COMMISSION**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant Meta Platforms Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

I.      THE FTC PROCEEDING DEFIES THE COURT'S EXCLUSIVE JURISDICTION ......3

        A.  The Court's Retained Jurisdiction Includes Attachment A to the Stipulated Order........... 3

        B.  *Both* Parties Represented to the Court That the Stipulated Order Includes Attachment A  8

        C.  Stripping Attachment A from the Stipulated Order Would Violate Rule 65(d)(1) .......... 11

        D.  The Court's Retained Jurisdiction Is Exclusive ................................................................ 12

II.     THE FTC CANNOT UNILATERALLY MODIFY A FINAL JUDGMENT .................12

III.    THE STRUCTURE OF THE FTC'S ADMINISTRATIVE PROCEEDING IS
        UNCONSTITUTIONAL ..............................................................................................15

        A.  Meta Did Not Waive—and This Court Can Adjudicate—
            Meta's Constitutional and Statutory Challenges............................................................ 15

        B.  The Commission's Dual Role as Prosecutor and Judge Violates Due Process ............... 18

        C.  The Commission's Protections Against Removal Violate Article II .............................. 20

        D.  Congress Unconstitutionally Delegated the Commission
            Unfettered Authority to Assign Disputes to Administrative Adjudication...................... 21

        E.  The Commission Cannot Constitutionally Adjudicate Private Rights ............................ 23

IV.     META IS ENTITLED TO INJUNCTIVE RELIEF ........................................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Alpine Secs. Corp. v. FINRA*,
    2023 WL 4703307 (D.C. Cir. July 5, 2023) .................................................. 25

*Archer v. Warner*,
    538 U.S. 314 (2003) ...................................................................................... 15

*Astoria Fed. Svs. & Loan Ass'n v. Solimino*,
    501 U.S. 104 (1991) ...................................................................................... 13

* *Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023) ........................................................................... 16, 21, 25

*Axon Enter., Inc. v. FTC*,
    986 F.3d 1173 (9th Cir. 2021), *rev'd and remanded*, 598 U.S. 175 (2023) ........................................ 19

*Basic Research, LLC v. FTC*,
    807 F. Supp. 2d 1078 (D. Utah 2011) .......................................................... 10

*Bernstein v. Bankert*,
    733 F.3d 190 (7th Cir. 2013) ........................................................................ 15

*Bremer v. Johnson*,
    834 F.3d 925 (8th Cir. 2016) ........................................................................ 12

*Brill v. Wing*,
    937 F. Supp. 170 (N.D.N.Y. 1996) ................................................................ 4

*Buckley v. Valeo*,
    424 U.S. 1 (1976) .......................................................................................... 22

*In re Cendant Corp. Sec. Litig.*,
    569 F. Supp. 2d 440 (D.N.J. 2008) ............................................................. 5, 6

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023), *and cert. denied*, 143 S. Ct. 981 (2023) ........................................................................................................ 21

*Cnty. of San Miguel v. Kempthorne*,
    587 F. Supp. 2d 64 (D.D.C. 2008) ................................................................. 8

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ...................................................................................... 17

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) .................................................................................. 21

*Crowell v. Benson*,

285 U.S. 22 (1932) ................................................................................................ 22

*Ctr. for Biological Diversity v. Zinke,*
260 F. Supp. 3d 11 (D.D.C. 2017) ...................................................................... 14

*Decker Coal Co. v. Pehringer,*
8 F.4th 1123 (9th Cir. 2021) ................................................................................ 21

*DeNardo v. Murphy,*
781 F.2d 1345 (9th Cir. 1986) ............................................................................ 15

*Dolcin Corp. v. FTC,*
219 F.2d 742 (D.C. Cir. 1954) ............................................................................ 14

*Drs. Nursing & Rehab Ctr. v. Sebelius,*
613 F.3d 672 (7th Cir. 2010) .............................................................................. 24

*Elmo Co. v. FTC,*
389 F.2d 550 (D.C. Cir. 1967) ............................................................................ 16

*Elmo Div. of Drive-X Co. v. Dixon,*
348 F.2d 342 (D.C. Cir. 1965) ............................................................................ 15

* *FDIC v. Bank of New York,*
479 F. Supp. 2d 1 (D.D.C. 2007) *aff'd*, 508 F.3d 1 (D.C. Cir. 2007) ............................................ 1, 24

*Facebook, Inc. v. Brandtotal Ltd.,*
2021 WL 2354751 (N.D. Cal. June 9, 2021) ...................................................... 7

*FTC v. Cement Inst.,*
333 U.S. 683 (1948) .................................................................................. 4, 19, 21

*FTC v. Owens-Corning Fiberglas Corp.,*
853 F.2d 458 (6th Cir. 1988) ................................................................................ 9

*FTC v. Ruberoid Co.,*
343 U.S. 470 (1952) ............................................................................................ 14

*Horowitz v. Fed. Kemper Life Assur. Co.,*
57 F.3d 300 (3d Cir. 1995) .................................................................................... 4

*Humphrey's Ex'r v. United States,*
295 U.S. 602 (1935) ............................................................................................ 20

*Hunter-Boykin v. George Washington Univ.,*
132 F.3d 77 (D.C. Cir. 1998) ................................................................................ 4

*In re IBM Corp.,*
618 F.2d 923 (2d Cir. 1980) ................................................................................ 20

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ................................................................................ 22

*In re Justs. of Sup. Ct. of Puerto Rico,*

695 F.2d 17 (1st Cir. 1982) ................................................................................................. 19

*Leon v. IDX Systems Corp.*,
464 F.3d 951 (9th Cir. 2006) ............................................................................................... 12

*Levelle, Inc. v. Scottsdale Ins. Co.*,
539 F. Supp. 2d 373 (D.D.C. 2008) ...................................................................................... 4

*Mohr v. FTC*,
272 F.2d 401 (9th Cir. 1959) ............................................................................................... 16

*Morris v. Travisono*,
509 F.2d 1358 (1st Cir. 1975) .............................................................................................. 14

*In re Murchison*,
349 U.S. 133 (1955) .............................................................................................................. 19

*Nat'l Ass'n of Realtors v. United States*,
2023 WL 387572 (D.D.C. Jan. 25, 2023) ............................................................................. 13

*NBC v. United States*,
319 U.S. 190 (1943) .............................................................................................................. 23

*Nehmer v. U.S. Dep't of Veterans Affairs*,
494 F.3d 846 (9th Cir. 2007) ............................................................................................... 13

*Network Project v. Corp. for Pub. Broad.*,
561 F.2d 963 (D.C. Cir. 1977) ............................................................................................. 16

*New York Cent. Sec. Corp. v. United States*,
287 U.S. 12 (1932) ................................................................................................................ 23

*Oceanic Steam Nav. Co. v. Stranahan*,
214 U.S. 320 (1909) .............................................................................................................. 22

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
138 S. Ct. 1365 (2018) .......................................................................................................... 22

*Otero v. Johnson*,
2016 WL 6476292 (D. Ariz. Nov. 2, 2016) .......................................................................... 24

*Owens v. Republic of Sudan*,
531 F.3d 884 (D.C. Cir. 2008) ............................................................................................. 23

*Peacock v. Thomas*,
516 U.S. 349 (1996) .............................................................................................................. 24

*Pigford v. Vilsack*,
777 F.3d 509 (D.C. Cir. 2015) ............................................................................................... 9

*Proriver, Inc. v. Red River Grill, LLC*,
83 F. Supp. 2d 42 (D.D.C. 1999) .......................................................................................... 5

*Richardson v. Edwards*,

127 F.3d 97 (D.C. Cir. 1997) ............................................................................................ 9

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    800 F. Supp. 2d 182 (D.D.C. 2011) ............................................................................. 13

*Segar v. Mukasey*,
    508 F.3d 16 (D.C. Cir. 2007) ........................................................................................ 11

*Seila L. LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ............................................................................................ 20, 21

*Stern v. Marshall*,
    564 U.S. 462 (2011) ...................................................................................................... 24

* *Syngenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002) ........................................................................................................ 24

*S.C. Coastal Conservation League v. Ross*,
    2019 WL 259116 (D.S.C. Jan. 18, 2019) ..................................................................... 25

*S. Pac. Commc'ns Co. v AT&T Co.*,
    740 F.2d 980 (D.C. Cir. 1984) ..................................................................................... 20

*Territory of Guam v. United States*,
    141 S. Ct. 1608 (2021) .................................................................................................. 15

*U.S. ex rel. Schweizer v. Oce N.V.*,
    677 F.3d 1228 (D.C. Cir. 2012) ................................................................................... 15

*United States v. Batchelder*,
    442 U.S. 114 (1979) ...................................................................................................... 22

*United States v. Nordean*,
    2022 WL 17583799 (D.D.C. Dec. 11, 2022) ................................................................. 5

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ................................................................................................ 22, 23

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016) .......................................................................................................... 19

*Winter v. NRDC*,
    555 U.S. 7 (2008) .......................................................................................................... 25

*Withrow v. Larkin*,
    421 U.S. 35 (1975) ........................................................................................................ 19

*Wright v. Eugene & Agnes E. Meyer Found.*,
    68 F.4th 612 (D.C. Cir. 2023) ...................................................................................... 14

*In re Zdravkovich*,
    634 F.3d 574 (D.C. Cir. 2011) ..................................................................................... 19

### ADMINISTRATIVE ORDERS

*In re Kellogg,*
    2010 WL 2332719 (FTC June 2, 2010) ............................................................. 16

*In re Kogan,*
    2019 WL 3451723 (FTC July 24, 2019) ............................................................. 5

*In re Nix,*
    2019 WL 3451725 (FTC July 24, 2019) ............................................................. 5

### STATUTES & RULES

U.S. Const. art. II ............................................................................................................. 20

15 U.S.C. § 45(b) ........................................................................................................ 19, 23

15 U.S.C. § 45(l) ............................................................................................................... 9

15 U.S.C. § 53(b) ......................................................................................................... 9, 23

16 C.F.R. § 2.32(c) .......................................................................................................... 14

16 C.F.R. § 2.51 .............................................................................................................. 14

16 C.F.R. § 3.11(a) .......................................................................................................... 18

16 C.F.R. § 3.11 (b)(2)–(3) ............................................................................................. 18

16 C.F.R. § 3.54(a) .......................................................................................................... 19

16 C.F.R. § 3.72(b)(1) .................................................................................................. 6, 18

28 U.S.C. § 1331 ............................................................................................................. 16

Fed. R. Civ. P. 1 ............................................................................................................. 16

Fed. R. Civ. P. 60(b) .............................................................................................. 12, 13, 15

Fed. R. Civ. P. 65(d)(1) ................................................................................................... 11

### OTHER AUTHORITIES

11 *Williston on Contracts* § 30:25 (4th ed.) .................................................................... 4

13 Wright & Miller, *Fed. Prac. & Proc.* § 3523.2 (3d ed.) .............................................. 12

Black's Law Dictionary 675 (6th ed. 1990) ..................................................................... 6

Brief of Defendant-Appellee United States, *Trudeau v. United States,*
    2006 WL 422417 (Fed. Cir. Jan. 31, 2006)................................................................. 12

Cecilia Kang, *Chair Faces Criticism in Congressional Hearing*, N.Y. TIMES (July 13, 2023) ............... 20

Restatement (Second) of Contracts § 132 (1981) ............................................................. 4

## PRELIMINARY STATEMENT[1]

The FTC's unlawful administrative proceeding and attempted usurpation of this Court's jurisdiction should be enjoined under well-settled law—none of which was addressed in the government's Opposition.  The government invoked this Court's jurisdiction by filing a civil complaint; the government availed itself of that jurisdiction by obtaining relief that only this Court is authorized to award; and this Court exercised its jurisdiction and entered the parties' Stipulated Order in final judgment of the government's complaint, binding Meta and the FTC alike.  No one—including a federal agency—can take a final district court judgment obtained as a litigant and unilaterally rewrite it.  It is for that reason that the "[b]asic power to protect the preclusive effects of a federal judgment by injunction may well inhere in the very existence of federal courts."[2]  The FTC's proceeding should be enjoined.

But if there were any doubt of the parties' intentions, they agreed—unambiguously—that "this Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of this Stipulated Order," reiterating in the Stipulated Order's Attachment A, which contains the principal injunctive terms, that "[t]his Court has jurisdiction over this matter."[3]  The government, devoting just six pages to the issue, does not and cannot contest that such jurisdiction is exclusive, or that any proceedings that threaten the Court's jurisdiction must be enjoined.

Instead, the government attempts to defend the FTC's unprecedented and unlawful proceeding by arguing that the "Stipulated Order" does not include its Attachment A, that "this

---

[1] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted, and defined terms have the meaning ascribed in Meta's moving brief (Dkt. No. 38-1) ("Br.").  "Opp." refers to the Government's opposition brief (Dkt. No. 49).

[2] *FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 18 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007).

[3] *See* Dkt. No. 35 (Stip. Order) at 5; *id.* (Stip. Order, Attach. A) at 1.

Court" means the FTC, that what the parties presented to the Court as a single settlement in resolution of a federal court complaint were separate and distinct judicial and administrative resolutions, and that the rules the government invoked by filing suit in this Court—the Federal Rules of Civil Procedure—no longer apply to the FTC.  From that side of the looking glass, the government insists that by moving to enforce the settlement memorialized in the Stipulated Order, Meta is "challeng[ing] [the] settlement."  (Opp. at 15.)  In fact, it is the FTC, not Meta, that is challenging the settlement—embodied in a federal court judgment—without the consent of its settlement counterparty and without regard to this Court's jurisdiction.

"This Court" means this Court, and the Stipulated Order includes its attachment.  Any contrary reading is belied by the plain language of the consent decree, the parties' statements to the Court requesting its entry as a federal court judgment, the parties' post-entry conduct, and the government's admissions.  This was the government's position at the time, when it represented that the Stipulated Order "imposes" the injunctive relief set forth in Attachment A.  (Dkt. No. 2 (Consent Mot.) at 1.)  That was also Meta's position, that "the proposed administrative decision and order [is] incorporated in the Stipulated Order."  (Dkt. No. 29 (Surreply) at 7.)  Since then, the Commission (and the Department of Justice) have affirmed—unambiguously and in writing—that Attachment A forms part of the Stipulated Order, and that Attachment A's requirements are the Stipulated Order's requirements.  (Suppl. Rouhandeh Decl. Ex. R (June 30, 2022 Letter).)[4]  The government cannot switch positions now.

Because the FTC's administrative proceeding invades this Court's exclusive jurisdiction, and improperly threatens its final judgment, the proper remedy under Supreme Court precedent is

---

[4] Citations to "Suppl. Rouhandeh Decl. Ex. __" refer to the Exhibits annexed to the Supplemental Declaration of James P. Rouhandeh in Further Support of Defendant's Motion to Enforce the Stipulated Order and to Enjoin the Administrative Reopening Proceeding of the Federal Trade Commission, dated September 13, 2023.

for the Court to enjoin the FTC's "rival" proceeding.  The government is no less bound by a federal court judgment and no less subject to a federal court's jurisdiction than any other litigant.

The government's responses to Meta's constitutional arguments fare no better.  For example, the government seeks to defend the Commission's improper dual roles as prosecutor and judge by analogizing the issuance of the OTSC to the prosecutorial act of filing an administrative complaint.  But the government ignores that the Commission—apparently for the first time in its history—made "preliminary findings of fact" supporting the OTSC.  Finding facts is a quintessential adjudicative function, and the agency's *simultaneous* exercise of both roles reflects a prejudgment and bias well beyond any precedent cited in the Opposition.

The FTC proceeding should be permanently and, if necessary, preliminarily enjoined.[5]

## I.    THE FTC PROCEEDING DEFIES THE COURT'S EXCLUSIVE JURISDICTION

The FTC cannot reopen the parties' settlement because the Court retained jurisdiction over the Stipulated Order—including Attachment A.

### A.    The Court's Retained Jurisdiction Includes Attachment A to the Stipulated Order

The government's Opposition asks this Court to overlook the plain language of its Stipulated Order.  The parties could not have been clearer: "[T]his Court shall retain jurisdiction in this matter for purposes of construction, modification, and enforcement of *this Stipulated Order*."  (Dkt. No. 35 (Stip. Order) at 5.)  The Opposition ignores that "Stipulated Order" is a defined term, on page 1, as the document that the parties asked the Court to enter, and which the Court entered at Docket No. 35.  "Plaintiff and Defendant stipulate to the entry of this Stipulated Order for Civil Penalty, Monetary Judgment, *and Injunctive Relief* ('Stipulated Order') to resolve

---

[5] Absent further action by this Court, Meta would have no choice but to respond in the FTC's unlawful and unconstitutional proceeding on November 30, 2023.  (*See* Suppl. Rouhandeh Decl. Ex. S (July 13, 2023 FTC Order).)

the claims for civil penalties and injunctive relief set forth in the Complaint." (*Id.* at 1.)  That definition unambiguously includes Attachment A.  The government filed the Stipulated Order and its Attachment A as a single, integrated document, and the Court entered the Stipulated Order and Attachment A in a single document and docket entry.

In any case, it is hornbook law that a contract includes documents, like Attachment A here, that are "physically attached" to it.  *Levelle, Inc. v. Scottsdale Ins. Co.*, 539 F. Supp. 2d 373, 376 (D.D.C. 2008); *see also* Restatement (Second) of Contracts § 132 (1981) (it "is sufficient . . . that the party to be charged physically attaches one document to the other" for purposes of the statute of frauds).  That conclusion is compelled by the definition of "attach," which means to "bind" or "join" together "in one place."  *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 306 (3d Cir. 1995).  That is no less true for consent decrees: Attachments "are an intrinsic part of the decree and are to be given the same effect as the main document."  *Brill v. Wing*, 937 F. Supp. 170, 175–76 (N.D.N.Y. 1996).  Even where documents are not "attached," when "a writing refers to another document, that other document . . . becomes constructively a part of the writing, and in that respect the two ***form a single instrument***."  11 *Williston on Contracts* § 30:25 (4th ed.).  There can be no serious dispute that Attachment A meets this standard.

If there were any doubt that the Court's jurisdiction extends to Attachment A,[6] one need only look to its first finding, which likewise states that "***[t]his Court*** has jurisdiction over this matter."  (Dkt. No. 35 (Stip. Order, Attach. A) at 1.)  The government's argument, that "Court" actually means "Commission" (Opp. at 13), is not credible.  As the government knows, "[t]he Commission is not a court."  *FTC v. Cement Inst.*, 333 U.S. 683, 703 n.12 (1948).  Moreover,

---

[6] And if there were such doubt, any ambiguity should be resolved against the FTC as drafter.  *Hunter-Boykin v. George Washington Univ.*, 132 F.3d 77, 82 n.6 (D.C. Cir. 1998).

Attachment A's first line defines the "Federal Trade Commission" as "Commission," and uses that term throughout, including to refer to the Commission in its adjudicatory capacity.  (Dkt. No. 35 (Stip. Order, Attach. A) at 1.)  The very same page (Finding No. 2) refers to the 2012 Order "previously issued by the ***Commission***" (*id.*), and Section XVI refers to the possibility of the "***Commission***" filing a complaint (*id.* at 20).  If the parties meant to say that the *Commission* had "jurisdiction over this matter," they would have said so using that same defined term.  *See United States v. Nordean*, 2022 WL 17583799, at *12 (D.D.C. Dec. 11, 2022) (Kelly, J.) (applying the "presumption of consistent usage").  The phrase, "Commission has jurisdiction," appears in thousands of the Commission's administrative orders—***including two announced on the very same day as the Stipulated Order***.[7]  "This Court has jurisdiction over this matter" appears in one order—this one.  Courts presume that parties intend the words they chose to use in their agreement. *Proriver, Inc. v. Red River Grill, LLC*, 83 F. Supp. 2d 42, 49 (D.D.C. 1999).  And, regardless, if "Court" really meant "Commission," there would be no reason for the Commission to delete that sentence, as it has proposed to do in its Proposed Order.  (*See* Rouhandeh Decl. Ex. C (Proposed Order) at 1.)

The Opposition also elides that other provisions of Attachment A confirm that it is incorporated into the Stipulated Order.  For instance, Section XV provides that the "Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by [specified] Federal Rules of Civil Procedure."  (Dkt. No. 35 (Stip. Order, Attach. A) at 20.)  Under the government's proposed reading, the Commission would be authorizing ***itself*** to obtain civil discovery without first seeking leave of . . . itself.  The phrase "***further*** leave of court" confirms it was this Court, in entering the Stipulated Order, that authorized the discovery set out

---

[7] *In re Kogan*, 2019 WL 3451723, at *1 (FTC July 24, 2019); *In re Nix*, 2019 WL 3451725, at *1 (FTC July 24, 2019).

in Section XV.  *See In re Cendant Corp. Sec. Litig.*, 569 F. Supp. 2d 440, 447 (D.N.J. 2008) ("Further is defined as 'additional' and 'is equivalent to . . . something beyond what has been said.'") (citing Black's Law Dictionary 675 (6th ed. 1990)).  The government's argument appears to be that in Attachment A, sometimes "Court" means Commission and sometimes "Court" means Court, and only the government gets to determine which is which.  And it is only because Attachment A is part of the Court's order that it made any sense for Attachment A to say on page 1 that "the Commission waive[s] all rights to appeal or otherwise challenge or contest the validity of" what would otherwise be its own order.

By entering the Stipulated Order, this Court imposed Attachment A's rights and obligations on the parties.  The document's title—Stipulated Order for Civil Penalty, Monetary Judgment, ***and Injunctive Relief***—makes that clear.  In Section II, Meta consented to modifying the 2012 Order "with the Decision and Order set forth in Attachment A," which bound Meta to those terms.[8]  (Dkt. No. 35 (Stip. Order) at 4.)  And Section III gave the Department of Justice the "same rights as the Commission (***as given in the Decision and Order set forth in Attachment A***)" to receive and request information and "to engage in compliance monitoring."  (*Id.*)  The Department bargained for and has exercised those rights because it shares responsibility for monitoring Meta's compliance ***with the Court's order*** in a case where the United States is Plaintiff.

The Opposition asks why, "if the 2020 Administrative Order was subsumed within the Stipulated Order . . . the parties would have bothered to specify those terms within an 'Attachment' at all."  (Opp. at 11.)  But the FTC knows the answer to the question it poses.  Absent modification

---

[8] Contrary to the Opposition (Opp. at 11), there is no redundancy between Meta's waiver of "all rights to appeal or otherwise challenge or contest the validity of this Stipulated Order," and its Section II(ii) "waiver of its rights under ***the show cause procedures set forth in Section 3.72(b) of*** the Commission's Rules of Practice."  (Dkt. No. 35 (Stip. Order) at 4.)  The government's omission of the bolded language hides the ball.  Without the Section II(ii) waiver, the Commission could not have entered Attachment A until Rule 3.72(b)'s formalities, including its thirty-day response period, had been observed.

of the 2012 Order, Meta would have been subject to conflicting and duplicative requirements under the 2012 Order and the Stipulated Order.  Likewise, a court order alone would not be enforceable through a Section 5(l) civil penalty action, limiting the FTC's ability to seek enforcement in an action brought by the United States as Plaintiff.  Incorporating a modified administrative order within the Stipulated Order addressed both issues.  This is not a secret—the parties made this plain in Section XVI, which refers to "the Commission fil[ing] a complaint . . . in federal court alleging any violation of this Order." (Dkt. No. 35 (Stip. Order, Attach. A) at 20.)  The fact that Attachment A was *also* entered by the Commission as an administrative order did not and could not *detract* from the effect of its inclusion as part of this Court's judicial decree.

The incorporation of Attachment A into the Stipulated Order is hardly a novel issue.  Another federal court addressed the same issue and concluded: "While the original 2012 version of the FTC order was issued unilaterally, the operative version issued on April 27, 2020 ***reflects a stipulation between the FTC and Facebook in a judicial enforcement proceeding***." *Facebook, Inc. v. Brandtotal Ltd.*, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021).  In its opinion entering the Stipulated Order, this Court wrote that:

- the Stipulated Order would "impose injunctive relief in the form of an amended administrative order to be entered by the FTC,"
- "the Stipulated Order contains . . . a series of measures designed to address the allegations in the Complaint,"
- the "Stipulated Order spells out Facebook's obligations precisely, it defines key terms in detail, and it incorporates specific deadlines for completion of its obligations," and
- the "proposed remedies in the Stipulated Order are reasonable in light of the allegations in the Complaint,"

(Dkt. No. 34 (Mem. Op.) at 1, 12–13.)  The Court referenced its "retain[ed] jurisdiction over this matter" in the specific context of potential future violations of "the terms of the amended administrative order." (*Id.* at 16–17.)  Those references make sense ***because*** the Stipulated Order

includes Attachment A.

The FTC **_knows_** this and has made admissions that vitiate its newfound litigation position. The FTC and the Department of Justice have issued joint requests under Section XV of Attachment A stating that Attachment A's requirements **_are the Stipulated Order's_** requirements and treating the Stipulated Order and its Attachment A as one and the same:

> As you know, the **_Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief entered by the United States District Court for the District of Columbia on April 23, 2020 (Dkt. No. 35) (the "Order")_**, authorizes the Federal Trade Commission and the Department of Justice to use discovery devices to request certain documents and information . . . . In particular, the Order entitles the Commission and the Department to request documents and information **_concerning Meta's compliance with the Order, including the Order's prohibition against misrepresentations concerning the extent to which Meta maintains the privacy or security of Covered Information, as that term is defined in the Order, and the Order's provisions concerning a mandated privacy program_**. _Id._ at 4 and Attachment A, Sections I, VII and XV.

(Suppl. Rouhandeh Decl. Ex. R.) The government has thus made clear that Meta's compliance with this Court's Stipulated Order requires it to comply with Attachment A's provisions. That "the 2020 Administrative Order was wholly incorporated as part of the Stipulated Order" is not merely "Meta's contention" (Opp. at 10); it was the government's consistent position before May 3, 2023. It is judicially estopped from contending otherwise now, having sought and obtained the relief granted by this Court with its entry of the Stipulated Order. _See Cnty. of San Miguel v. Kempthorne_, 587 F. Supp. 2d 64, 73 (D.D.C. 2008).

B.    **_Both_** Parties Represented to the Court That the Stipulated Order Includes Attachment A

The Opposition is based on a demonstrably incorrect characterization of the parties' agreement and the Court's role—that there were two separate and distinct proceedings: a "civil penalty litigation" before the Court and "the Commission's proceedings . . . commenced pursuant to the FTC's statutory authority." (Opp. at 9–10). "In interpreting a settlement agreement, the use

8

of aids to construction, including the circumstances surrounding the formation of the consent order, is permitted." *Pigford v. Vilsack*, 777 F.3d 509, 514–15 (D.C. Cir. 2015).  Courts seek to determine "what a reasonable person in the position of the parties would have thought the language meant." *Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997).  Here, there is no need for the Court to guess.  Both parties ***told the Court*** that the Stipulated Order included Attachment A.

At the FTC's election, the government commenced this action seeking—and obtaining— relief that only a ***district court*** could provide.  (Dkt. No. 1 (Compl.) ¶¶ 193–94 (citing 15 U.S.C. §§ 45(l) and 53(b)).)  Both statutes authorize district courts to impose injunctive relief, and the Complaint expressly asked this Court to award such injunctive relief.  (*Id.* at ¶ 194.); *see FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 462 (6th Cir. 1988) (holding that Section 5(l) civil penalty action is "initiated in the district court by the FTC, seeking relief from the district court").  Nothing in either statute allows a district court to outsource this authority to the Commission; they permit the Commission to seek such relief in federal court.

The parties resolved all of the government's claims through one settlement agreement— the Stipulated Order.  (Dkt. No. 35 (Stip. Order) at 1.)  The government included Attachment A as part of the Stipulated Order, provided it to the Court as a single, integrated document, asked the Court to deem it adequate and in the public interest, and repeatedly noted that the Stipulated Order "***imposed***" the injunctive relief set forth in Attachment A.  (*See* Br. at 17–18 (quoting, *e.g.*, Dkt. No. 2 (Consent Mot.) at 1 ("The Stipulated Order . . . imposes significant injunctive relief, primarily in the form of an amended administrative order that will be entered by the FTC."); *id.* at 4 ("The proposed settlement has two main components: a civil penalty award and ***injunctive relief imposing new compliance terms on Facebook***.").)  The government also specifically represented that the "Stipulated Order also gives . . . the FTC authority to monitor and enforce Facebook's

compliance with the Amended Order." (*Id.* at 3.)  That authority only appears in Attachment A. If the "Stipulated Order" gave the FTC such authority, it could only have done so ***through*** Attachment A, as the government has conceded.  (Suppl. Rouhandeh Decl. Ex. R.)

If the government's newly formed view were correct—that there were two separate proceedings leading to two separate orders—there would have been no reason for the parties to have filed Attachment A with the Court or to request that the Court review it; or for the Court to allow multiple submissions about the sufficiency of its terms, to impose its terms on Meta, or to approve it as being in the public interest.

Likewise, the record belies the Opposition's contention that "the Commission acted independently by issuing" Attachment A. (Opp. at 14.)  The government "respectfully request[ed] that . . . this Court enter the Stipulated Order and ***effectuate the comprehensive settlement negotiated by the parties***." (Dkt. No. 2 (Consent Mot.) at 1); *Basic Research, LLC v. FTC*, 807 F. Supp. 2d 1078, 1094 (D. Utah 2011) (holding that "both parties to a consent decree are bound by its terms and . . . the court may enforce its conditions against either party").  The Opposition asserts (Opp. at 9) that the Commission entered Attachment A as an independent "exercise of its statutory authority," but its one-page "Order Modifying Prior Decision and Order" does not mention Section 5(b) even once, relying instead on the government's Complaint and this Court's approval and entry of the Stipulated Order.  Indeed, the FTC Chair issued a statement "regarding the Federal Court's ***approval***" specifically noting that the Court "highlight[ed]" and approved the "conduct relief included in this settlement."  (Rouhandeh Supp. Decl. Ex. T (Apr. 24, 2020 FTC Press Release).)  As the FTC said in 2020, it "entered a modified administrative order . . . formally adding approved amendments to its 2012 privacy order to include provisions that were incorporated into the FTC's 2019 settlement with the company."  (*Id.* Ex. U (FTC 2020 Annual Report).)

Finally, **Meta's** filings belie the Opposition's baseless claim that Meta is somehow changing its position "to rewrite history."  (Opp. at 2.)  Meta has consistently made clear that the Stipulated Order includes Attachment A.  It told the Court that its obligations under Attachment A are **required** by the Stipulated Order.  (*E.g.*, Dkt. No. 30 (Resp. Br.) at 14 ("The Stipulated Order carefully protects 'Covered Information[.]'"); *id.* at 15 ("Section VII of the Stipulated Order requires Facebook to engage in annual comprehensive assessments . . . .").)  And Meta stated unambiguously that "the proposed administrative decision and order [was] **incorporated** in the Stipulated Order[.]"  (Dkt. No. 29 (Surreply) at 7.)  The FTC, on the other hand, seeks to abandon its prior positions, but is judicially estopped from doing so.  (Br. at 18–19.)

While the entirety of the 2019–20 litigation record leaves no doubt of the parties' agreement that the Stipulated Order incorporated Attachment A, if the parties **actually** had such divergent understandings about such a fundamental component of their settlement agreement, then there was no meeting of the minds and no binding, enforceable consent decree, meaning that the parties should be returned to their positions immediately before the Stipulated Order was entered. *See Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007) ("[T]o establish a contract, there must be a 'meeting of the minds' with respect to the material terms.").

C.   Stripping Attachment A from the Stipulated Order Would Violate Rule 65(d)(1)

The Opposition ignores that, under its reading, Section III of the Stipulated Order would violate Rule 65(d)(1) of the Federal Rules of Civil Procedure, which prohibits an injunctive order from "referring to . . . any other document"—let alone one that is subject to independent modification.  (Br. at 17–18 (citing cases).)  More troubling, the Commission's proposed modifications to Attachment A would result in direct inconsistencies with the Stipulated Order. Section III of the Stipulated Order gives the Department "the same right as the Associate Director

for Enforcement . . . to approve the person(s) selected to conduct the Assessments." (Dkt. No. 35 (Stip. Order) at 4.)   One of the Commission's proposed modifications is to give the Associate Director for Enforcement "sole discretion" to approve the Assessor. (Rouhandeh Decl. Ex. C. (Proposed Order) at 19.)  Two entities cannot have "sole discretion."  *See Bremer v. Johnson*, 834 F.3d 925, 930 (8th Cir. 2016).  Meta cannot be subject to the possibility of conflicting obligations between the Stipulated Order, a binding court judgment, and a new, stand-alone FTC order.

       D.      The Court's Retained Jurisdiction Is Exclusive

Meta's opening brief demonstrated that where courts retain jurisdiction to enforce their consent decrees, that jurisdiction is exclusive. (Br. at 16–17.)  The Opposition does not and cannot contend otherwise.   In fact, the Commission itself has previously argued that the same jurisdictional grant in the Stipulated Order—for "purposes of construction, modification and enforcement"—conveyed exclusivity.  *See* Brief of Defendant-Appellee United States, *Trudeau v. United States*, 2006 WL 422417, at *38 (Fed. Cir. Jan. 31, 2006) ("[W]hatever remedies Mr. Trudeau may possess for the FTC's alleged violation of the Stipulated Order must be pursued, if at all, in the court that entered and retained jurisdiction to enforce the Order.").

## II.     THE FTC CANNOT UNILATERALLY MODIFY A FINAL JUDGMENT

The FTC's proceeding should be enjoined for the independent reason that this Court's final judgment on the government's Complaint can only be modified by this Court—under Rule 60(b). (Br. at 19–23.)  This is true regardless of whether the Court expressly retains jurisdiction, as federal courts have the authority to "issue injunctions to enforce judgments and to reinforce the effects of the doctrines of res judicata and collateral estoppel," including where those effects are threatened by federal agency actions.  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 961–63 (9th Cir. 2006); *see also* 13 Wright & Miller, *Fed. Prac. & Proc.* § 3523.2 (3d ed.) ("Without doubt, a federal court has jurisdiction to enjoin actions that threaten to interfere with an order it entered.").

The government does not dispute that final judgments may be modified only in "extraordinary circumstances," or that Rule 60(b), as construed by the D.C. Circuit, prohibits the imposition of "entirely new injunctive relief" under the "guise of modification," as the Commission seeks to do through its Proposed Order.  (Br. at 20–22.)  The government simply asserts that these well-settled rules "do not apply to agency action."  (Opp. at 24.)  But the government specifically (and correctly) argued to the Court in 2019 that the Stipulated Order would be subject to the "doctrine of res judicata" as would any other federal court judgment. (Dkt. No. 28 (Gov't Response) at 11–12.)  And, in any event, the only case it cites to support its newfound position held that *state administrative findings* are not preclusive in *federal courts*. *See Astoria Fed. Svs. & Loan Ass'n v. Solimino*, 501 U.S. 104, 106 (1991).  Here, the parties' settlement, including Attachment A, was entered by this Court, as the government told the Court in 2020, to "resolve a complaint filed in *this Court* by the United States"; there was no "*administrative* complaint" or claim to resolve.  (Dkt. No. 27 (Surreply) at 7–8 (emphases in original).)  Res judicata applies when "a court of competent jurisdiction has entered a final judgment on the merits" to resolve a complaint, which this Court did in 2020.  *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 189 (D.D.C. 2011).

The FTC is no less bound by these doctrines of finality than any private litigant.  This Court has held that "government agencies that enter into settlement agreements are bound by their terms."  *Nat'l Ass'n of Realtors v. United States*, 2023 WL 387572, at *3 (D.D.C. Jan. 25, 2023) (Kelly, J.).  Courts in other contexts have uniformly rejected government entities' attempts unilaterally to avoid or modify binding judicial decrees.  A litigant—"whether a private or public entity—cannot dictate the meaning of the decree to the court or relieve itself of its obligations under the decree without the district court's approval."  *Nehmer v. U.S. Dep't of Veterans Affairs*,

494 F.3d 846, 860 (9th Cir. 2007); *see Morris v. Travisono*, 509 F.2d 1358, 1361 (1st Cir. 1975) (agency cannot "unilaterally order the elimination of rights determined in federal courts simply because the consent decree was to be enforced through [administrative] machinery").

The Opposition wrongly and conclusorily asserts that Attachment A "expressly contemplates future modifications *by the Commission*," but the provisions it cites—Sections II and III of Attachment A—provide that "*Meta* may seek modification," not the FTC.  (Opp. at 12.) At most, those provisions show that—where specifically approved by the Court in the Stipulated Order—the parties themselves can *agree* to modify two narrow provisions and set forth a process for Meta to obtain the Commission's agreement.  If Attachment A were freely modifiable under the FTC rules, those provisions—giving Meta rights to seek modification under 16 C.F.R. § 2.51 that it already enjoyed—would have been superfluous.  *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 620 (D.C. Cir. 2023) (rejecting interpretation under which provision "serves no purpose").  And the fact that the parties expressly subjected two requirements to potential modification necessarily means that other provisions are not.  *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 22 (D.D.C. 2017) ("It is well-settled that, when a legal text includes particular language in one section, but omits it in another section, courts may presume that the text's author acted *intentionally* and *purposely* in the disparate inclusion or exclusion.").[9]

Rather than address these issues, the government wrongly decries that enforcing the parties' agreement as written would prevent the Commission from exercising "its statutory

---

[9] The Opposition argues that the entire FTC Act is "implicit in every order." (Opp. at 12 n.6.) In both cases it cites, courts merely held that activity *made lawful by statute* remained lawful notwithstanding the absence of express language in orders.  *FTC v. Ruberoid Co.*, 343 U.S. 470, 475–76 (1952); *Dolcin Corp. v. FTC*, 219 F.2d 742, 750 (D.C. Cir. 1954).  But if provisions regarding modification were "implicit in every order," there would be no reason for FTC regulations to require settling respondents to specifically agree that consent orders resolving Commission complaints "may be altered, modified or set aside in the same manner provided by statute for Commission orders issued on a litigated or stipulated record."  16 C.F.R. § 2.32(c).  Attachment A lacks any such provision.

authority to protect the public." (Opp. at 2.) That is wrong as a matter of law, as D.C. Circuit precedent holds that the FTC must be held to its agreements even if they dictate when and how the Commission may exercise its enforcement tools, because it cannot "unilaterally obliterate a part of the consideration—indeed an important part—by which it secured [Meta's] assent to be bound." *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 346 (D.C. Cir. 1965). But it is also wrong as a factual matter. The Commission has a litany of enforcement options, including judicial enforcement. And to the extent that the Commission believes that modification is warranted, it remains free to use Rule 60(b), as it regularly does when litigating in federal court. (Br. at 22.) But having invoked the court's authority, the FTC "consented to judicial involvement" thereafter. *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1236 (D.C. Cir. 2012).

The Commission asked this Court for relief, including a $5 billion civil penalty, that only this Court could award. Granting that relief, the Court entered final judgment "to ***resolve*** the claims . . . set forth in the Complaint."[10] (Dkt. No. 35 (Stip. Order) at 1.) The Commission may not take a mulligan and redraft that order on its own. Parties resolve their disputes through final judgments to obtain finality, certainty, and repose, *see Archer v. Warner*, 538 U.S. 314, 321 (2003), and courts rely on the doctrine of res judicata, enforceable through injunctive relief, to ensure that those judgments "will be respected." *DeNardo v. Murphy*, 781 F.2d 1345, 1348 (9th Cir. 1986).

## III.  THE STRUCTURE OF THE FTC'S ADMINISTRATIVE PROCEEDING IS UNCONSTITUTIONAL

### A.  Meta Did Not Waive—and This Court Can Adjudicate—Meta's Constitutional and Statutory Challenges

The government advances a grab bag of arguments that Meta's constitutional and

---

[10] "An issue which is 'resolved' is an issue which is decided, determined, or settled—finished, with no need to revisit." *Bernstein v. Bankert*, 733 F.3d 190, 211 (7th Cir. 2013); *see also Territory of Guam v. United States*, 141 S. Ct. 1608, 1614 (2021) ("Resolve . . . conveys certainty and finality . . . . It would be rather odd to say that a party has resolved its liability if that party remains vulnerable to . . . suit.").

statutory challenges to the FTC's reopened proceedings are improper.  Those arguments lack

merit, and the government fails to cite a single case even remotely on point.

The government argues that because the consent decree finally determined all claims

before the Court, Meta cannot seek relief against the FTC.  (Opp. at 15.)  But that is a non sequitur.

As shown above, Meta properly seeks to enforce the consent decree by asking this Court to enjoin

the FTC's administrative proceeding.  Meta also seeks the same relief on alternative grounds—

namely, the FTC's violations of due process,[11] the FTC Act,[12] and the structural unconstitutionality

of the FTC's proceeding—over which the Court independently has jurisdiction.  *See* 28 U.S.C.

§ 1331; *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023).

To the extent the government is suggesting that Meta should have asserted its alternative

grounds for injunctive relief in a separate action, that disregards that Meta's grounds for relief all

"derive from a common nucleus of operative fact" and are such that Meta "would ordinarily be

expected to try them . . . in one judicial proceeding."  *Network Project v. Corp. for Pub. Broad.*,

561 F.2d 963, 970 (D.C. Cir. 1977).  The unsupported suggestion that Meta should have asserted

its alternative grounds in a separate action is the height of empty formalism,[13] and contrary to the

principles of the Federal Rules.  *See* Fed. R. Civ. P. 1.

---

[11] As set out in Meta's moving brief (Br. at 31–35), the FTC's use of its Section 5(b) authority to enforce purported violations of the Stipulated Order would deprive Meta of due process. The government does not dispute that: (i) Meta has no right under the OTSC to a hearing or due process protections; (ii) the FTC is seeking to find Meta in violation of the law in a proceeding its own procedures classify as nonadjudicative; and (iii) the OTSC purports to shift the burden of proof to Meta.  The Opposition argues only that due process is a flexible standard, making no effort to apply those standards to the FTC's abuse of its Section 5(b) authority. (Opp. at 26–28.)

[12] The government's limited and half-hearted efforts to defend the FTC's misuse of its Section 5(b) authority fare no better.  (*Id.* at 26–31.)  The Opposition points to three cases for the proposition that the Commission's authority to "alter" or "modify" its orders allows it to fundamentally rewrite an order.  (*Id.* at 26 n.11.)  In one, the company "***consented***" to modifications.  *In re Kellogg*, 2010 WL 2332719, at *1 (FTC June 2, 2010).  In the second, the Commission "set[] aside" one particular provision.  *Elmo Co. v. FTC*, 389 F.2d 550, 551 (D.C. Cir. 1967).  And in the third, the Commission "modified" a single clause.  *Mohr v. FTC*, 272 F.2d 401, 404 (9th Cir. 1959).

[13] The government's empty formalism continues when it argues that "the entity from whom Meta seeks relief (the FTC) is not even named in this suit." (Opp. at 19.)  The FTC is named in the signature block of the Complaint (Dkt. No. 1 (Compl.) at 50), and signed the Stipulated Order (in which it stipulated to this Court's jurisdiction) (Dkt. No.

16

The government also argues that Meta waived its challenges to the structural unconstitutionality of the FTC enforcement proceeding that Meta seeks to enjoin. (Opp. at 16–17.) It is well-established that waivers are construed narrowly and "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). To attempt to show that Meta intentionally relinquished its right to be protected against the FTC's structurally unconstitutional enforcement proceeding initiated in 2023, the government can point only to waivers by Meta relating to ***prior*** FTC actions—namely, the FTC entry of the 2012 administrative order and the 2020 administrative order. (Opp. at 16.) But those waivers, by their express terms, do not apply to the FTC's 2023 attempt to modify the 2020 administrative order unilaterally. In 2012, Meta waived challenges to "the order" (*id.*), and in 2019, Meta waived challenges to "this Order." (Dkt. No. 35 (Stip. Order, Attach. A) at 1.) Because Meta is not challenging either order, its waivers are inapplicable. Nor could Meta have intentionally waived its right to challenge the 2023 proceeding when agreeing to the consent decree in 2019 because nothing in the consent decree allowed the FTC unilaterally to modify Attachment A—and, indeed, the consent decree bars any unilateral modification, as shown above.

The government recycles its waiver argument as a judicial estoppel argument, contending that "[n]ow that Meta has 'succeeded in persuading' the Court to enter the Stipulated Order, it is judicially estopped from embracing a 'clearly inconsistent' position by claiming that the administrative proceedings were unlawful in the first place." (Opp. at 17.) But there is no inconsistency. In 2019, Meta waived its challenges to the FTC's entry of Attachment A in the

---

35 (Stip. Order) at 1 (referring to the "parties" who signed the Stipulated Order), 2 ("This Court has jurisdiction over . . . all of the parties.")). And the government opposed an intervention motion by arguing that the ***FTC*** adequately represents the interests of the public ***in this proceeding***. (Dkt. No. 11 (Gov't Opp.) at 10–11.)

interest of compromise, which did not constitute "assum[ing] a certain position" on the constitutionality of the FTC and its administrative procedures.  (*See id.*)  Such a compromise is entirely consistent with subsequent constitutional challenges.

B.     The Commission's Dual Role as Prosecutor and Judge Violates Due Process

In its brief, Meta demonstrated that the FTC's function as both prosecutor and judge in the reopened administrative proceeding violates due process.  (Br. at 35–37.)  The Opposition admits the Commission's "dual prosecutorial and adjudicative roles" (Opp. at 28), but mischaracterizes the prosecutorial role as merely investigating and "finding that there is 'good cause to believe' that Meta has violated the 2020 Administrative Order" (*id.* at 30).  In reality, the Commission already has formally determined, as its regulations require, that "changed conditions ***demonstrat[e]*** that additional modifications to the Order are ***needed*** to clarify and strengthen its requirements." (Rouhandeh Decl. Ex. B (OTSC) at 12; *see also* Br. at 36; 16 CFR § 3.72(b)(1) (requiring an OTSC to "stat[e] the changes it proposes to make in the decision ***and the reasons they are deemed necessary***").)  That determination rests on the Commission's Preliminary Findings of Facts in Support of the OTSC.  (Rouhandeh Decl. Ex. B (OTSC) at 1 n.1, 11–12.)  We are aware of no precedent for the Commission making "preliminary" findings of fact in "support" of ***any*** administrative action it has ever taken.

The government argues that the Commission's determination that "modifications to the Order are needed" is no different from a routine exercise of "its authority to initiate an administrative proceeding in the first instance."  (Opp. at 30.)  Not so.  To commence an adjudicative proceeding, the Commission votes to issue a complaint stating "alleged" facts and, "[w]here practical, a form of order which the Commission has reason to believe should issue ***if the facts are found to be as alleged in the complaint***."  16 C.F.R. § 3.11(a), (b)(2)–(3); *see also* 15

18

U.S.C. § 45(b) (providing for "findings as to the facts" by the Commission *after* a hearing); 16 C.F.R. § 3.54(a) (same).  Thus, unlike the OTSC against Meta, an FTC administrative complaint is issued *before* any finding of facts, preliminary or otherwise, by the Commission, and without an *advance* determination by the Commission of the "need" to grant relief.

Alleging facts (which the Commission does in an administrative complaint) is a prosecutorial function, whereas "finding facts" (which the Commission has done here) is an adjudicative function.  *In re Justs. of Sup. Ct. of Puerto Rico*, 695 F.2d 17, 21 (1st Cir. 1982) (Breyer, J.).  Thus, the OTSC represents a *simultaneous* exercise of prosecutorial and adjudicative roles, through which the Commission has prejudged the matter against Meta factually and legally.[14]  The structural bias in the OTSC proceeding "is even more clear" than the empirically established bias "in a typical FTC adjudication."  (Br. at 37.)  The Commission's prejudgment goes far beyond the "initial charge or determination of probable cause" in *Withrow v. Larkin*, 421 U.S. 35, 58 (1975), and *In re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011).[15]

As to the FTC's long-term record of biased adjudication, the government does not deny that the FTC "has not lost a single [administrative] case in the past quarter-century."  *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd and remanded*, 598 U.S. 175 (2023).  Instead, the government argues that the *current* Commissioners are too inexperienced to be personally implicated.  (Opp. at 31.)  The government also insists that the undisputed "statistical

---

[14] This reflects greater *prejudgment* than in *Williams* or *Murchison*.  *See Williams v. Pennsylvania*, 579 U.S. 1, 14 (2016) (justice hearing death sentence appeal had, as prosecutor, authorized subordinates to *seek* death penalty in same case); *In re Murchison*, 349 U.S. 133, 137 (1955) (judge *accused* witnesses of contempt when testifying before him as "one-man grand jury" and subsequently convicted them).  And in *Cement Institute*, the Supreme Court reasoned that disqualifying the Commission from an administrative adjudication would threaten the "congressional purposes" of the FTC Act because Congress had not provided for adjudication "by any other government agency."  333 U.S. at 701.  Here, this Court has exclusive jurisdiction to modify the consent decree.

[15] The government erroneously invokes dicta in *Withrow*, 421 U.S. at 58, which upheld a state medical board statute, to suggest that the Supreme Court has upheld the constitutionality of all APA adjudication provisions (Opp. at 29), the FTC's adjudication regulations (*id.* at 29–30), and the FTC's entire "administrative process" (*id.* at 30).

one-sidedness" is not evidence of "inherent, structural bias." (*Id.*)  But its cases holding that one-sidedness **within a single judicial opinion** or **single case** do not show judicial bias—*S. Pac. Commc'ns Co. v AT&T Co.*, 740 F.2d 980, 995 (D.C. Cir. 1984), and *In re IBM Corp.*, 618 F.2d 923, 930 (2d Cir. 1980)—do not speak to structural bias, let alone bias **in favor of the adjudicator**.

Finally, the FTC argues that it wins all of its administrative proceedings because it chooses only meritorious cases for administrative adjudication. (Opp. at 31–32.)  But that argument is difficult to square with the FTC's lackluster record when litigating in court, for example, with a reported 0–4 record in recent merger challenges, *see* Cecilia Kang, *F.T.C. Chair Faces Criticism in Congressional Hearing*, N.Y. Times (July 13, 2023).  Indeed, the structural bias inherent in its administrative adjudication is a potential explanation for the Commission's decision to seek to evade this Court's jurisdiction.

C.    The Commission's Protections Against Removal Violate Article II

The statutory provisions that protect members of the Commission from removal by the President violate Article II of the U.S. Constitution. (Br. at 37–39.)  In response, the government argues that in 1935 the Supreme Court "upheld those precise restrictions in *Humphrey's Executor*"—but then concedes that neither the reasoning nor the facts of that dated decision fit the current Commission. (Opp. at 35 (quoting *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2198 n.2 (2020)).)  The obsolete reasoning that "the FTC (**as it existed in 1935**) . . . exercis[ed] no part of the executive power," *Seila L.*, 140 S. Ct. at 2198 (quoting *Humphrey's Ex'r v. United States*, 295 U.S. 602, 628 (1935)), rested on characteristics that the current Commission lacks:

> The Court identified several organizational features that helped explain its characterization of the FTC as non-executive.  Composed of five members—no more than three from the same political party—the Board was designed to be "non-partisan" and to "act with entire impartiality."  The FTC's duties were "neither political nor executive," but instead called for "the trained judgment of a body of experts" "informed by experience."  And the Commissioners' staggered, seven-

year terms enabled the agency to accumulate technical expertise and avoid a "complete change" in leadership "at any one time."

*Seila L.*, 140 S. Ct. at 2198–99.  In contrast, the Commission's executive powers have expanded since 1935 (Opp. at 35 n.14); it currently has only three members, all from the same political party (Br. at 39); and the Opposition highlights that the Commissioners lack the tenure (Opp. at 31) that is supposed to be the source of their expertise, *see Cement Inst.*, 333 U.S. at 702.  The government cites no case upholding the constitutionality of the modern-day FTC.

The government also argues that Meta has not established the requisite harm, relying on *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and its progeny.  (Opp. at 35–36.)  But in *Collins*, the Supreme Court engaged in "retrospective" review of specific actions previously taken by unaccountable agency directors, which the plaintiffs sought to "void." *Collins*, 141 S. Ct. at 1787–89.  Similarly, the out-of-circuit cases cited by the government involved claims seeking **retrospectively** to "invalidate" specific past agency actions (including to obtain prospective relief). *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023), *and cert. denied*, 143 S. Ct. 981 (2023); *Decker Coal Co. v. Pehringer,* 8 F.4th 1123, 1126 (9th Cir. 2021).  In contrast, Meta's challenge is expressly pursuant to *Axon* (Br. at 35), in which the Supreme Court addressed a **prospective** challenge to FTC adjudication.  In *Axon*, the Supreme Court held that the harm of "being subjected to unconstitutional agency authority . . . is a here-and-now injury." *Axon*, 598 U.S. at 191; *see* Br. at 35.  And just as *Collins* was no obstacle in *Axon*, 598 U.S. at 180, *Collins* is no obstacle here.

D.  Congress Unconstitutionally Delegated the Commission
Unfettered Authority to Assign Disputes to Administrative Adjudication

In response to Meta's showing that the Commission's (purported) power to assign this dispute to administrative adjudication is an unconstitutionally delegated legislative power (Br. at 39–41), the government argues the power is executive.  (Opp. at 37.)  That argument erroneously

21

conflates (i) the **choice** to resolve a dispute administratively rather than judicially, which is at issue here, with (ii) mere discretion to seek judicial relief, which is not "merely in aid of the legislative function." (Opp. at 37 (quoting *Buckley v. Valeo*, 424 U.S. 1, 138 (1976).)  The government's cases address only the latter.  *See Buckley*, 424 U.S. at 140 (addressing agency's power to "conduc[t] civil litigation" in courts); *United States v. Batchelder*, 442 U.S. 114, 124 (1979) (addressing prosecutors' discretion to choose among criminal charges with different penalties).

Later in its own brief, the government concedes that **Congress** has the power to "assign adjudication of public rights to entities other than Article III courts."  (Opp. at 40 (quoting *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018)).)  That concession undermines the government's argument that the power is executive.  *See Crowell v. Benson*, 285 U.S. 22, 50 (1932) ("[T]he mode of determining matters [involving public rights other than by Article III courts] is completely within congressional control.").

As a fallback, the government argues that the power is not "exclusively" legislative.  (Opp. at 39.)  In response to the Fifth Circuit's holding that "the power to assign disputes to agency adjudication is 'peculiarly within the authority of the legislative department,'" *Jarkesy v. SEC*, 34 F.4th 446, 461 (5th Cir. 2022) (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909)), the government argues that *Jarkesy* was "wrongly decided" and the quote from *Oceanic Steam* is "mischaracteriz[ed] dicta."  (Opp. at 38.)  But the Supreme Court repeatedly has held that the assignment of disputes to Article I tribunals, including agencies, rather than Article III courts "is completely within congressional control."  *Crowell*, 285 U.S. at 50.  To the extent that Congress "may delegate that power to executive officers," *id.*, "Congress must lay down by legislative act an intelligible principle to which the [delegatee] is directed to conform" in exercising the power, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

For the requisite "intelligible principle," the government invokes the phrase "the interest of the public" in the FTC Act's provisions authorizing agency adjudication (Section 5(b)) and Article III adjudication (Section 13(b)).  (Opp. at 39 (citing 15 U.S.C. §§ 45(b), 53(b)).)  But the statutory language on which the Commission relies here authorizes reopening where "conditions of fact or of law have so changed as to require such action *or* if the public interest shall so require." 15 U.S.C. § 45(b); *see* Opp. at 1.  Thus, the "public interest" plays no role—and supplies no intelligible principle—when the Commission invokes changed conditions.  Indeed, as Meta has shown, the "changed" conditions and "public interest" standards are mutually exclusive, and the public interest standard is inapplicable.  (Br. at 28–30.)  By attributing the asserted intelligible principle to an "isolated" statutory phrase, the government also commits a fundamental error against which the D.C. Circuit has expressly warned.  *Owens v. Republic of Sudan*, 531 F.3d 884, 889–90 (D.C. Cir. 2008).  In *Owens*, the D.C. Circuit analyzed the "public interest" cases— namely, *NBC v. United States*, 319 U.S. 190, 225–26 (1943), and *New York Cent. Sec. Corp. v. United States*, 287 U.S. 12, 25 (1932)—that the Supreme Court views as falling at "the outer limits of [its] nondelegation precedents."  *Whitman*, 531 U.S. at 474.  It concluded that to identify an "intelligible principle," "we do not confine ourselves to the isolated phrase in question, but utilize all the tools of statutory construction."  *Owens*, 531 F.3d at 889–90.  The "isolated" phrase "the interest of the public" is facially deficient, and the government invokes nothing more.

E.     The Commission Cannot Constitutionally Adjudicate Private Rights

The government does not dispute that the Commission's proceeding "implicates Meta's 'private rights in its property.'"  (Opp. at 41 (quoting Br. at 42).)  Those rights include Meta's rights under the consent decree.  (Br. at 42–43.)  Nor does the government dispute that the Commission is ***not*** "function[ing] as a true 'adjunct' of the District Court" in its enforcement

proceeding. *Id.* (quoting *Stern v. Marshall*, 564 U.S. 462, 489 n.6 (2011)).   Instead, the government argues that the FTC is enforcing "public rights" created in the FTC Act through "a federal prohibition against unfair and deceptive acts and practices" and "various remedies for [a] violation." (Opp. at 41.)   But the gravamen of the Commission's OTSC is not that Meta has violated the FTC Act; it is that Meta has violated this Court's consent decree.  (Opp. at 6.)  And the claim that a party has violated a federal court's judgment directly invokes the court's "inherent" power under Article III to enforce its judgments.  *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).  Thus, the FTC's attempt to adjudicate its claim that Meta violated the consent decree does not entail any public right.  *Stern*, 564 U.S. at 491.

## IV.   META IS ENTITLED TO INJUNCTIVE RELIEF

First, Meta's brief (Br. at 13–15) demonstrated that under Supreme Court precedent, the proper response to a proceeding purporting to impair a consent decree is to "apply to the court that approved a settlement [this Court] for an injunction requiring dismissal of [the] rival action." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 n.* (2002).  No other showing is required. *FDIC*, 479 F. Supp. 2d at 18 ("Basic power to protect the preclusive effects of a federal judgment by injunction may well inhere in the very existence of federal courts.").

Here, the Commission invoked the jurisdiction and statutory authority of an Article III court and intentionally chose to resolve its claims through a final court judgment and to submit to this Court's exclusive authority thereafter with respect to its enforcement and modification. Because the Commission now seeks to usurp that authority, the Court should issue an injunction requiring dismissal of its rival proceeding.  *Syngenta*, 537 U.S. at 34 n.*.[16]

---

[16] Courts routinely enjoin agency proceedings under far less compelling circumstances.  Courts enjoin agency proceedings that threaten *pre*-judgment jurisdiction because "an agency may not divest a federal court of jurisdiction by unilaterally reopening its administrative proceedings." *Otero v. Johnson*, 2016 WL 6476292, at *8 (D. Ariz. Nov. 2, 2016); *see also Drs. Nursing & Rehab Ctr. v. Sebelius*, 613 F.3d 672, 677 (7th Cir. 2010) (same).  And

Second, to the extent necessary, the Court should preliminarily enjoin the Commission's proceeding before Meta's current November 30 response deadline so that Meta is protected from irreparable harm during the pendency of the present motion.  *See Winter v. NRDC*, 555 U.S. 7, 20 (2008) (setting out the four-pronged standard for a preliminary injunction).  The Opposition does not and cannot contest that courts have repeatedly held that forcing a party to relitigate a matter that was finally decided constitutes clear irreparable harm.  (Br. at 43–44.)  So, too, does "resolution of claims by an unconstitutionally structured adjudicator" create a "'here-and-now injury' that cannot later be remedied."  *Alpine Secs. Corp.*, 2023 WL 4703307, at *2 (quoting *Axon*, 598 U.S. at 191) (Walker, J., concurring).  And the Opposition's rote invocations of "public interest" ignore the authorities cited in Meta's moving brief (Br. at 44–45) and make no effort to explain the Commission's long delay in bringing the OTSC  (*id.* at 11–12).

## **CONCLUSION**

For the reasons set forth above and in the Opening Brief, Meta respectfully requests that this Court enforce its final judgment and its continuing, exclusive jurisdiction over this matter by enjoining the FTC's unlawful administrative reopening proceeding.  In the interim, Meta respectfully requests that the Court enter preliminary injunctive relief sufficient to protect Meta from the irreparable harm it would face if required to participate in that proceeding, which will arise as early as November 30, 2023, absent further action by this Court.

---

courts enjoin agency proceedings that threaten even their *prospective* jurisdiction because the "power to enjoin agency actions to *preserve* a court's jurisdiction has long been recognized by the Supreme Court."  *S.C. Coastal Conservation League v. Ross*, 2019 WL 259116, at *4 (D.S.C. Jan. 18, 2019); *see Alpine Secs. Corp. v. FINRA*, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (enjoining "expedited enforcement proceeding" pending appeal).

DATED: September 13, 2023

Respectfully submitted,

/s/ *James P. Rouhandeh*

James P. Rouhandeh (DDC Bar No. NY0390)
Michael Scheinkman (DDC Bar No. NY0381)
David B. Toscano (*pro hac vice* application pending)
John A. Atchley III (*pro hac vice* application pending)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson (DDC Bar No. 982269)
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com