# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>FACEBOOK, INC.,<br>a corporation,<br><br>        Defendant. | Case 1:19-cv-02184-TJK |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR INJUNCTION PENDING APPEAL

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
212-450-4000

*Attorneys for Defendant*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY ....................................................................................4

ARGUMENT .........................................................................................................6

     I.     Meta's Appeal Raises Serious Questions for the Court of Appeals ......................8

          a.     Meta's Appeal Raises Serious Questions about the Proper
                 Interpretation of a Consent Decree ............................................................8

          b.     There Are Serious and Substantial Questions as to the Court's
                 Application of *Kokkonen* ...........................................................................11

          c.     There Are Serious Questions about the Authority of the FTC to
                 Enter the Relief It Now Seeks Unilaterally to Modify. ...........................16

          d.     There Are Serious Questions as to the FTC's Ability to Modify the
                 Stipulated Order ........................................................................................18

     II.    Meta Will Suffer Irreparable Harm If the OTSC Is Not Enjoined Pending
          Appeal .................................................................................................................20

     III.    The Balance of Equities and Public Interest Favor an Injunction Pending
          Appeal .................................................................................................................24

CONCLUSION ....................................................................................................28

PAGE(S)

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*A.B.-B v. Morgan*,
548 F.Supp.3d 209 (D.D.C. 2020) ................................................................. 20

*Amfac Resorts, LLC v. Dep't of Interior*,
142 F. Supp. 2d 54 (D.D.C. 2001) ................................................................. 19

*Am. Sec. Vanlines, Inc. v. Gallagher*,
782 F.2d 1056 (D.C. Cir. 1986) ..................................................................... 24

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) ........................................................................................ 25

*Axon Enter., Inc. v. FTC*,
986 F.3d 1173 (9th Cir. 2021), *rev'd*, 143 S. Ct. 890 (2023) ...................... 22

*\*Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*,
97 F.3d 1479 (D.C. Cir. 1996) ....................................................................... 15

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ...................................................................................... 12

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ........................................................................................ 23

*\*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ................................................................... 3, 20

*Chisom v. Louisiana ex rel. Landry*,
85 F.4th 288 (5th Cir. 2023) .......................................................................... 12

*Ciena Corp. v. Nortel Networks Inc.*,
2005 WL 1189881 (E.D. Tex. May 19, 2005) ........................................... 21, 23

*Citizens for a Better Env't v. Gorsuch*,
718 F.2d 1117 (D.C. Cir. 1983) .................................................................. 12, 13

*Cobell v. Norton*,
2004 WL 758956 (D.C. Cir. Apr. 7, 2004) ....................................................... 7

*Dodocase VR, Inc. v. MerchSource, LLC*,
2018 WL 1475289 (N.D. Cal. Mar. 26, 2018) ................................................. 21

P<small>AGE</small>(S)

*Dolcin Corp. v. FTC*,
219 F.2d 742 (D.C. Cir. 1954) ........................................................... 19

*Facebook, Inc. v. Brandtotal, Ltd.*,
2021 WL 2354751 (N.D. Cal. June 9, 2021) ................................... 2, 11

*FDIC v. Bank of N.Y.*,
479 F. Supp. 2d 1 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007) ................... 21

*Fed. Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ........................................................................... 25

*Feinerman v. Bernardi*,
558 F. Supp. 2d 36 (D.D.C. 2008) ..................................................... 21

*FTC v. Ruberoid Co.*,
343 U.S. 470 (1952) ........................................................................... 19

*Gen. Motors Corp. v. Romein*,
503 U.S. 181 (1992) ........................................................................... 19

*\*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
651 F.3d 1355 (Fed. Cir. 2011) ............................................. 20–21, 24

*George Banta Co., Inc., Banta Div. v. NLRB*,
686 F.2d 10 (D.C. Cir. 1982) ............................................................. 19

*Hemstreet v. Spiegel, Inc.*,
851 F.2d 348 (Fed. Cir. 1988) ........................................................... 24

*Hoffman v. L&M Arts*,
838 F.3d 568 (5th Cir. 2016) ............................................................. 19

*\*In re Idaho Conservation League*,
811 F.3d 502 (D.C. Cir. 2016) ........................................................ 2, 12

*JW Gaming Dev., LLC v. James*,
544 F. Supp. 3d 903 (N.D. Cal. 2021) .......................................... 23–24

*\*Kokkonen v. Guardian Life Ins. Co. of Am.*
511 U.S. 375 (1994) ............................................... 1–2, 11–15

*\*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
731 F.2d 909 (D.C. Cir. 1984) .................................................... 21, 24

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ............................................................... 25

*Luokung Tech. Corp. v. Dep't of Def.*,
538 F. Supp. 3d 174 (D.D.C. 2021) ................................................... 26

PAGE(S)

*Massachusetts v. Microsoft Corp.*,
373 F.3d 1199 (D.C. Cir. 2004) ........................................................................... 12

*\*MediNatura, Inc. v. Food & Drug Admin.*,
2021 WL 1025835 (D.D.C. Mar. 16, 2021) ........................................................... 7

*Medley v. Dish Network, LLC*,
958 F.3d 1063 (11th Cir. 2020) ........................................................................... 18

*Metz v. BAE Sys. Tech. Sols. & Servs., Inc.*,
979 F. Supp. 2d 26 (D.D.C. 2013) ....................................................................... 19

*Murray v. Charleston*,
96 U.S. 432 (1877) ............................................................................................... 17

*Nalco Co. v. EPA*,
786 F. Supp. 2d 177 (D.D.C. 2011) ..................................................................... 21

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
656 F.Supp.3d 201 (D.D C. 2023) ....................................................................... 24

*\*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
25 F.4th 998 (Fed. Cir. 2022) ............................................................... 20, 23, 24

*Pigford v. Veneman*,
292 F.3d 918 (D.C. Cir. 2002) ...................................................................8, 14, 15

*Richardson v. Edwards*,
127 F.3d 97 (D.C. Cir. 1997) ................................................................................. 8

*\*RNC v. Pelosi*,
2022 WL 1604670 (D.D.C. May 20, 2022) ........................................................... 7

*Salazar by Salazar v. D.C.*,
896 F.3d 489 (D.C. Cir. 2018) ......................................................................... 8, 25

*SEC v. Hitachi, Ltd.*,
2015 WL 7566666 (D.D.C. Nov. 24, 2015) ......................................................... 12

*Segar v. Mukasey*,
508 F.3d 16 (D.C. Cir. 2007) ................................................................................. 8

*Shawnee Tribe v. Mnuchin*,
984 F.3d 94 (D.C. Cir. 2021), .............................................................................. 25

*Slaughter v. Nat'l R.R. Passenger Corp.*,
460 F. Supp. 3d 1 (D.D.C. 2020) ......................................................................... 19

PAGE(S)

*Thomas v. Albright*,
77 F. Supp.2d 114 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260
(D.C. Cir. 2001) ........................................................................................... 21, 25

*United States v. Daniel Chapter One*,
793 F. Supp. 2d 157 (D.D.C. 2011) ...................................................................... 17

*United States v. Facebook Inc.*,
456 F. Supp. 3d 115 (D.D.C. 2020) ................................................................ 10–14

*United States v. Facebook, Inc.*,
2023 WL 8190858 (D.D.C. Nov. 27, 2023) ........................ 2, 5, 9, 13, 14, 16, 19, 24

*United States v. J. B. Williams Co.*,
498 F.2d 414 (2d Cir. 1974) ......................................................................... 16, 26

*United States v. Microsoft Corp.*,
56 F.3d 1448 (D.C. Cir. 1995) ............................................................................ 10

*United States v. Microsoft Corp.*,
147 F.3d 935 (D.C. Cir. 1998) .............................................................................. 8

*United States v. Colorado*,
937 F.2d 505 (10th Cir. 1991) ............................................................................ 21

*United States v. Trucking Emps., Inc.*,
561 F.2d 313 (D.C. Cir. 1977) ......................................................................... 2, 13

*United States v. Twitter, Inc.*,
2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) ........................................................ 9

*United States v. Volvo Powertrain Corp.*,
758 F.3d 330 (D.C. Cir. 2014) .............................................................................. 8

*Wash. Metro. Area Transit Auth. v. Mergentime Corp.*,
626 F.2d 959 (D.C. Cir. 1980) ............................................................................ 10

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977) ......................................................................... 1, 7

*In re Wolf*,
842 F.2d 464 (D.C. Cir. 1988) ............................................................................ 12

PAGE(S)

STATUTES & RULES

15 U.S.C. § 45(b) .................................................................................... 16, 18, 19, 26, 27

15 U.S.C. § 45(c) ................................................................................................................ 10

15 U.S.C. § 45(l) ............................................................................................................. 4, 16

15 U.S.C. § 53(b) ............................................................................................................. 4, 16

16 C.F.R. § 2.32(c) ......................................................................................................... 18, 26

16 C.F.R. § 3.72(b)(2) .......................................................................................................... 22

Fed. R. App. P. 8(a)(2)(A)(i) ................................................................................................ 6

Fed. R. Civ. P. 41(a)(1)(A)(ii) ........................................................................................... 12

Fed. R. Civ. P. 62(d) ........................................................................................................ 1, 6

Defendant Meta Platforms, Inc. ("Meta")—formerly, Facebook, Inc.—hereby moves pursuant to Rule 62(d) of the Federal Rules of Civil Procedure for an injunction pending appeal of the Court's November 27, 2023 denial of Meta's Motion to Enforce the Stipulated Order and to Enjoin the Administrative Reopening Proceeding of the Federal Trade Commission (Dkt. No. 38) (the "Motion to Enforce").

## PRELIMINARY STATEMENT[1]

Absent relief before January 31, 2024, Meta must respond to the May 3, 2023 FTC Order to Show Cause ("OTSC") by which the FTC proposes to reopen an administrative proceeding (the "OTSC Proceedings") and unilaterally rewrite Meta's settlement with the FTC.  Meta requests an injunction staying the OTSC Proceedings and preserving the status quo while the Court of Appeals considers Meta's appeal from this Court's decision denying its Motion to Enforce, which Meta noticed on November 28.  This relief is appropriate under Rule 62(d), because Meta's appeal raises serious questions on the merits,[2] Meta would suffer irreparable harm absent an injunction, and the public interest points decidedly in Meta's favor.

First, Meta's appeal raises substantial and serious questions about the merits of the Court's ruling that the Court of Appeals will review de novo.  As this Court has previously noted, Meta's Motion to Enforce presents "complex and significant issues."[3]  While the Court determined that its jurisdiction over the Stipulated Order does not include Attachment A, there are significant questions about that issue.  The Court relied on *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

---

[1] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted, and defined terms have the meaning ascribed in Meta's moving brief in support of its Motion to Enforce (Dkt. No. 38-1) ("Moving Brief" or "Br.").  The government's opposition to Meta's Moving Brief (Dkt. No. 49) is referred to as "Opposition" or "Opp."; "Reply" refers to Meta's Reply on the Motion to Enforce (Dkt. No. 53).

[2] *See, e.g.*, *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843–44 (D.C. Cir. 1977).

[3] June 1, 2023 Minute Order.

375 (1994), which concerned a voluntary stipulation of dismissal following a settlement between private parties—not a consent decree like the one entered by this Court here, which is fundamentally different.  Unlike a stipulation of dismissal, a consent decree must be approved by the district court, and its terms have the force of a federal court injunction.[4]  Indeed, in 2020, this Court reviewed the parties' settlement—including Attachment A—for overall fairness and to ensure it was consistent with the public interest, as the Court acknowledged in its ruling.[5]  Meta's argument, on appeal, that the Court's jurisdiction continues over the entirety of the consent decree—including Attachment A—at a minimum raises serious questions about the application of *Kokkonen* here.

The Court's Decision also raises serious questions for appeal regarding the interpretation of a consent decree.  Here, the parties expressly provided for the retention of this Court's jurisdiction over the "Stipulated Order," and attached the full text of Attachment A to the Stipulated Order, which was entered as a single document and defined as the document the Court entered.  That Meta's appeal raises serious questions is evidenced by the fact that the FTC has stated—unambiguously and in writing—that the Stipulated Order does, in fact, include Attachment A, that Meta's obligations under Attachment A are required by the Stipulated Order, and that Meta's compliance with the Stipulated Order requires it to comply with Attachment A.[6]  Another federal court also reviewed Attachment A and independently concluded that it reflects a "stipulation between the FTC and Facebook in a ***judicial enforcement proceeding***."[7]  The appeal thus presents serious and complex questions about the scope of a district court's continuing jurisdiction, and the appropriate

---

[4] *In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016) (quoting *United States v. Trucking Emps., Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977)).

[5] *United States v. Facebook, Inc.*, 2023 WL 8190858, at *6 (D.D.C. Nov. 27, 2023) (hereinafter "Decision").

[6] Suppl. Rouhandeh Decl. Ex. R (June 30, 2022 Letter).

[7] *Facebook, Inc. v. Brandtotal Ltd.*, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021).

construction of consent decrees— in addition to questions about the FTC's statutory authority to independently impose those terms and to unilaterally modify them at will and in perpetuity.

Second, Meta would suffer irreparable harm absent an injunction.  Under controlling precedent, this Court must assume that Meta will prevail on the merits of its appeal—i.e., that the Stipulated Order does, in fact, include Attachment A—in determining whether Meta would suffer irreparable harm.[8]  The law is well settled that being deprived of a bargained-for forum and bargained-for procedures and safeguards for resolving disputes are quintessential forms of irreparable harm.[9]  Meta bargained for the right to have any modifications to the Stipulated Order litigated in this Court under the Federal Rules of Civil Procedure—not for the FTC to transform from litigation adversary to adjudicating body.  This harm cannot be remedied by after-the-fact review by the Court of Appeals, and courts routinely find irreparable harm in far less compelling circumstances. Assuming—as required—that the D.C. Circuit would conclude that this Court retained exclusive jurisdiction to enforce or modify the Stipulated Order and its Attachment A, Meta would suffer irreparable harm if it were deprived of its bargained-for forum and forced to relitigate a final court judgment in the interim.

Finally, the balance of equities and public interest weigh heavily in favor of an injunction. Courts have an overriding public interest in exercising their duly authorized jurisdiction and in promoting and enforcing voluntary settlements, especially when they result in a consent decree. To be sure, the public interest can be served by law enforcement.  But the FTC's own conduct undermines any claim that any interest it has in enforcement would be impaired by maintaining

---

[8] *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) ("Within the irreparable harm analysis itself—which assumes, without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law—we examine only whether that violation, if true, inflicts irremediable injury.").

[9] *See* Point II *infra*.

the status quo while Meta's appeal proceeds.  The FTC waited *years* before filing the OTSC in May 2023, and the OTSC is premised on facts from between 2019 and July 1, 2021 (including facts known to the FTC before it approved the settlement in July 2019).  No public interest would be impaired by allowing Meta's appeal to be resolved.

For those reasons, explained in more detail below, Meta respectfully requests that the Court enter an injunction pending appeal.

## PROCEDURAL HISTORY

Because the Court is familiar with the facts of this case, Meta only briefly recounts the relevant background.  On July 24, 2019, the FTC invoked this Court's jurisdiction by filing a civil complaint, alleging that Meta had violated a 2012 administrative order (the "2012 Order"). (Dkt. No. 1 (Compl.).)  The FTC simultaneously moved the Court to reduce to final judgment an extensively negotiated settlement agreement resolving the FTC's claims.  (Dkt. No. 2 (Consent Mot.).)  This Court entered the parties' settlement as a Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief (the "Stipulated Order").  (Dkt. No. 35 (Stip. Order).)  As the government requested in the Complaint, the Court ordered this relief under two statutes—15 U.S.C. § 45(l) and 15 U.S.C. § 53(b)—that allow district courts (not the FTC) to impose the monetary and injunctive remedies requested by the FTC.  (Dkt. No. 1 (Compl.) ¶¶ 191–94).)

On May 3, 2023, the FTC ordered Meta to show cause why the FTC should not modify the Stipulated Order, attaching a Proposed Order that bears little resemblance to the Stipulated Order this Court entered, and requiring Meta to respond by June 2, 2023.  (*See* Rouhandeh Decl. Ex. B (FTC OTSC); Rouhandeh Decl. Ex. C (2023 Proposed Decision and Order, hereinafter "Proposed Order").)

On May 31, 2023, Meta moved this Court for an order enforcing the Stipulated Order and enjoining the FTC's proceeding.  (Dkt. No. 38.)  On June 1, 2023, the Court directed the parties to propose a briefing and hearing schedule and ordered the United States to indicate whether it expected Meta's deadline to respond to the OTSC to be further extended, "in light of the complex and significant issues raised in [Meta's] motion."  (June 1, 2023 Minute Order.)  The parties conferred and agreed on a schedule, and on a new deadline for Meta to respond to the OTSC. (Dkt. No. 46 (Joint Status Report).)  As part of that consolidated schedule, the government sought two additional months in which to respond to Meta's motion, and the FTC ultimately agreed to extend Meta's time to respond to the OTSC through November 30, 2023.  (*Id.*)  The FTC subsequently agreed to a further extension of Meta's time to respond: If the Court decided Meta's Motion to Enforce on or before November 30, then Meta's deadline would be two weeks after that order, and if the Court decided Meta's Motion to Enforce after November 30, then the parties would discuss a new deadline in good faith.[10]

After hearing the parties' arguments on October 17, 2023, this Court denied Meta's Motion to Enforce on November, 27, 2023, making Meta's response to the OTSC due on December 11.  *Facebook, Inc.*, 2023 WL 8190858, at *1.  Meta timely filed a notice of appeal on November 28, 2023.  (Dkt. No. 63 (Notice of Appeal).)

On November 29, 2023, Meta filed an emergency motion for an injunction pending appeal of the District Court's November 27, 2023 Order in the D.C. Circuit.  *See* Emergency Motion for Injunction Pending Appeal, D.C. Cir. No. 23-5280, Dkt. No. 2029196 (Nov. 29, 2023) ("Emergency Motion").  Meta filed its emergency motion in the D.C. Circuit because "moving

---

[10] Order Further Extending Time for Respondent's Answer, *In the Matter of Facebook, Inc.*, FTC Docket No. C-4365 (Dec. 6, 2023).

first in the district court" would have been "impracticable" in light of its December 11, 2023 deadline to respond to the OTSC.  *See* Fed. R. App. P. 8(a)(2)(A)(i); Emergency Motion at 10–11 (citing cases).  Also on November 29, 2023, Meta filed a new action raising several structural constitutional challenges to the FTC.  *See Meta Platforms, Inc. v. FTC*, No. 23-cv-3562 (D.D.C. Nov. 29, 2023) Dkt. No. 1 (Compl.).  Meta moved in that action for a preliminary injunction to enjoin the FTC's administrative proceeding.  *See id.* Dkt. No. 4 (Mot. Prelim. Injunction).  A hearing on that motion has been scheduled for January 29, 2024.  *See id.* (Dec. 8, 2023 Minute Order).

On December 6, 2023, the government filed a response to Meta's Emergency Motion and the FTC issued a *sua sponte* order extending Meta's time to respond to the OTSC to January 31, 2024.  (*See* Response in Opposition to Emergency Motion, D.C. Cir. No. 23-5280, Dkt. No. 2030201 (Dec. 6, 2023); Order Further Extending Time for Respondent's Answer, *In the Matter of Facebook, Inc.*, FTC Docket No. C-4365 (Dec. 6, 2023).)  As a result of that extension, it is now practicable for Meta to file for an injunction pending appeal in this Court.  Accordingly, Meta withdrew without prejudice its emergency motion for an injunction pending appeal before the D.C. Circuit, and promptly filed the instant motion.  (*See* Notice of Withdrawal of Emergency Motion, D.C. Cir. No. 23-5280, Dkt. No. 2030325 (Dec. 6, 2023).)

## **ARGUMENT**

Under Rule 62(d), this Court may issue an injunction pending appeal notwithstanding its denial of preliminary injunctive relief.  *See* Fed. R. Civ. P. 62(d) (a district court may grant an injunction while "an appeal is pending" from an "interlocutory order that . . . refuses . . . an injunction").  "[T]he express language of Rule 62(d) contemplates the possibility that the district court may grant an injunction pending appeal from an interlocutory order denying preliminary

injunction . . . even if the Court believed its analysis in denying preliminary injunctive relief is correct." *MediNatura, Inc. v. Food & Drug Admin.*, 2021 WL 1025835, at \*6 (D.D.C. Mar. 16, 2021).

Thus, "the standard for granting an injunction pending appeal is, at least at times, more flexible than a rigid application of the traditional four-part standard applicable to granting a preliminary injunction." *Id.*; *see also RNC v. Pelosi*, 2022 WL 1604670, at \*3 (D.D.C. May 20, 2022) (Kelly, J.) ("in at least some circumstances an injunction pending appeal may be appropriate even if the court that just denied injunctive relief believes . . . that the movant cannot show a likelihood of success"). Under established Circuit precedent, this Court may grant an injunction pending appeal if Meta shows a serious legal question on the merits, and that the other three factors (irreparable harm, balance of equities, and public interest) weigh in favor of relief. *See, e.g.*, *Cobell v. Norton*, 2004 WL 758956, at \*1 (D.C. Cir. Apr. 7, 2004) (granting a stay pending appeal where "[a]ppellants have made a substantial case on the merits, and the remaining stay factors, particularly the irreparable harm to the appellants if a stay is not granted, strongly favor the grant of a stay"); *Wash. Metro.*, 559 F.2d at 844 (holding that "it will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation"); *RNC*, 2022 WL 1604670, at \*3 (an injunction pending appeal is appropriate "even without a likelihood of success on the merits, so long as the movant establishes a 'serious legal question' on the merits and shows that the other three factors tip sharply in its favor.").

Absent injunctive relief, Meta will suffer irreparable harm as early as January 31, 2024—the deadline by which the FTC has ordered Meta to respond to the OTSC. Appellate review of

Meta's claims could come too late to be meaningful, forcing Meta to participate in the FTC's administrative process before the D.C. Circuit can decide the merits of the appeal.

Because Meta's claims present "complex and significant issues" that raise serious legal questions for the Circuit's review, and because the public interest and balance of equities tip in Meta's favor, Meta is entitled to such an injunction.

## I.   Meta's Appeal Raises Serious Questions for the Court of Appeals

Meta's appeal presents serious questions as to whether the Court correctly concluded that Attachment A was not part of the Stipulated Order over which it retains jurisdiction.

### a.   Meta's Appeal Raises Serious Questions about the Proper Interpretation of a Consent Decree

Meta's appeal raises serious questions about the interpretation of a consent decree which will be reviewed de novo on appeal.  *See, e.g.*, *Salazar by Salazar v. District of Columbia*, 896 F.3d 489, 497 (D.C. Cir. 2018); *Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007); *Pigford v. Veneman*, 292 F.3d 918, 923–25 (D.C. Cir. 2002); *United States v. Microsoft Corp.*, 147 F.3d 935, 946 (D.C. Cir. 1998).

Consent decrees are reviewed "according to general principles of contract law."  *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014); *see also Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997) ("[U]ltimately the question for the lower court, when it interprets a consent decree incorporating a settlement agreement, is what a reasonable person in the position of the parties would have thought the language meant.").  Here, whether the Stipulated Order includes Attachment A presents serious questions for appeal, as evidenced not only by its plain language, but also by, among other things, the FTC's unambiguous admission that Attachment A's requirements *are* the Stipulated Order's requirements.  (*See* Dkt. No. 2 (Consent Mot.) at 1 ("The Stipulated Order . . . imposes significant injunctive relief, primarily in

the form of an amended administrative order that will be entered by the FTC."); Suppl. Rou-handeh Decl. Ex. R (June 30, 2022 Letter) (referring to Attachment A's requirements as the Stip-ulated Order's requirements and stating that "Meta's compliance with" the Stipulated Order re-quires it to comply with the provisions of Attachment A).)

The Stipulated Order states: "[T]his Court shall retain jurisdiction in this matter for pur-poses of construction, modification, and enforcement of this Stipulated Order."  (Dkt. No. 35 (Stip. Order) at 5.)  "Stipulated Order" is itself defined as the document that the parties asked the District Court to enter as a single docket entry at Docket No. 35; Attachment A was physically attached to the Stipulated Order; the Stipulated Order expressly refers to Attachment A; and At-tachment A—which was filed first on the docket of this Court—includes a jurisdictional provi-sion that states, "[t]his Court has jurisdiction over this matter."[11]  (Dkt. No. 35, (Stip. Order, At-tach. A) at 1.)  Meta will argue that the Court of Appeals, exercising de novo review, should ap-ply the Stipulated Order's plain language and arrive at a different conclusion than did this Court: that the Stipulated Order and Attachment A were negotiated (and reviewed and approved by the Court) as a single document and single settlement that cannot be severed into two parts.

In its Decision, this Court noted that the statement "[t]his Court has jurisdiction over this matter" in Attachment A "is a curious phrase," and concluded that "[n]either party's explanation for it is persuasive."  *Facebook, Inc.*, 2023 WL 8190858, at *5.  This uncertainty alone presents a serious question for appeal; if the Court of Appeals were to determine—consistent with contract principles under which unambiguous language is given its plain meaning—that "[t]his Court" means *this Court*, that alone could be dispositive of Meta's appeal.

---

[11] This provision distinguishes Attachment A here from the agreement at issue in *United States v. Twitter, Inc.*, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023).  In *Twitter*, Attachment A stated, by contrast, that the FTC retained jurisdiction over the matter.  *Id.*  The Magistrate Judge in *Twitter* was thus considering an entirely different Stipulated Order and Attachment A, with entirely differently language.

The Court went on to hold that whatever the phrase was supposed to mean, it does not mean this Court, but this, too, gives rise to a serious question on appeal. That is because of the plain and unambiguous language adopted by the parties, but also because the government failed to supply any evidence to support the view that "[t]his Court" could mean anything other than what it says. *See Wash. Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980) ("Under general contract law, the plain and unambiguous meaning of an instrument is controlling, and the Court determines the intentions of the parties from the language used by the parties to express their agreement."). Indeed, it is because "[t]his Court" means *this* Court that it made sense for Attachment A to also say on page 1 that "the *Commission* waive[s] all rights to *appeal* or otherwise challenge or contest the validity of" what would otherwise be its own order. This provision (stated as a finding) confirms that Attachment A was a part of this Court's Stipulated Order. Only a district court order could give rise to an appeal by the FTC. If Attachment A were purely an administrative order, it could only give rise to a petition for review by Meta. *See* 15 U.S.C. § 45(c).

The seriousness of these questions for appeal is further highlighted by the Court's Memorandum Opinion approving the Stipulated Order, which concluded by stating:

> The Court ends by noting that under the Stipulated Order it retains jurisdiction over this matter, including to enforce its terms. *See* Stipulated Order at 5. In the event that the parties return to this Court because the United States alleges—once again—that Facebook has reneged on its promises and continued to violate the law or ***the terms of the amended administrative order***, the Court may not apply quite the same deference to the terms of a proposed resolution. As the D.C. Circuit has explained . . . when 'a district judge has administered a consent decree for some period of time,' and is therefore likely more familiar with the relevant context, 'the lack of an initial trial is, at least marginally, less of an inhibition' when weighing the appropriateness of a proposed remedy.

*United States v. Facebook, Inc.,* 456 F. Supp. 3d 115, 126 (D.D.C. Apr. 23, 2020) (citing *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995)) (emphasis added). The Court

did not discuss this scenario hypothetically or in a vacuum, but in the context of its retained juris-

diction over the Stipulated Order.  In other words, citing *Microsoft,* this Court stated that its *re-

tained jurisdiction over the Stipulated Order* would allow it to consider future allegations (like

those in the OTSC) that Meta violated the terms of Attachment A.  That could only be the case if

Attachment A were part of the Stipulated Order.  In the same Memorandum Opinion, the Court

also held that the "stipulated order . . . imposes injunctive relief in the form of an amended ad-

ministrative order;" that it "retain[ed] jurisdiction over this matter, including to enforce its

terms;" and that "[t]he Stipulated Order spells out Facebook's obligations precisely."  *Facebook,*

456 F. Supp. 3d at 120, 123, 126.

This is also what the parties said.  (*See, e.g.*, Dkt. No. 29 (Surreply) at 7 (Meta telling the

District Court that "the proposed administrative decision and order" was "incorporated in the

Stipulated Order"); Dkt. No. 30 (Resp. Br.) at 14–15 (referring to multiple provisions of Attach-

ment A as what the "Stipulated Order requires"); Suppl. Rouhandeh Decl. Ex. R (June 30, 2022

Letter) (the government stating that the requirements of Attachment A are the requirements of

the Stipulated Order).)  And it is what the only other District Court to consider this Stipulated

Order also held.  *See also Brandtotal*, 2021 WL 2354751, at *8 (holding that the administrative

order as entered by the FTC is a "stipulation between the FTC and Facebook in a *judicial en-

forcement proceeding*.").  This record demonstrates the seriousness and complexity of the issues

that the D.C. Circuit will consider on appeal.

### b.  There Are Serious and Substantial Questions as to the Court's Application of *Kokkonen*

On appeal, Meta will argue that *Kokkonen*—a case that neither it nor the government

cited in briefing the motion—does not apply to the consent decree at issue here.  *Kokkonen* in-

volved a voluntary stipulation of dismissal under Rule 41(a)(1)(ii)[12] pursuant to a settlement between private parties, which is fundamentally different from the consent decree issued by the Court here. *See Kokkonen,* 511 U.S. at 376–77. Unlike a stipulation of dismissal, a consent decree *must* be approved by the district court. *See*, *e.g.*, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 n.7 (2001) ("Private settlements do not entail the judicial approval and oversight involved in consent decrees.") (citing *Kokkonen*); *In re Wolf*, 842 F.2d 464, 466 (D.C. Cir. 1988) ("[T]he entry of . . . a stipulation of dismissal [under Rule 41(a)(1)(ii)] is effective automatically and does not require judicial approval."). Court approval of a consent decree is necessary because once a decree is approved, its "prospective provisions . . . operate as an injunction" issued by the district court. *Chisom v. Louisiana ex rel. Landry*, 85 F.4th 288, 298 (5th Cir. 2023) (citing cases).

Because a consent decree has the force of a court order, a district court can approve a consent decree *only* after the court has "satisf[ied] itself of the settlement's 'overall fairness to beneficiaries and consistency with the public interest.'" *In re Idaho Conservation League*, 811 F.3d at 515 (quoting *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)); *see also Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1206 n.1 (D.C. Cir. 2004) (invoking "the generally applicable requirement of circuit law that any consent decree fairly and reasonably resolve the controversy in a manner consistent with the public interest").

In 2020, the Court exercised its duty to approve "the order [that] would require Facebook to pay a $5 billion civil money penalty . . . and impose injunctive relief in the form of an amended administrative order to be entered by the FTC that would require Facebook to take a variety of additional measures to protect its users' personal information." *Facebook, Inc.*, 456 F.

---

[12] This provision is now Rule 41(a)(1)(A)(ii).

Supp. 3d at 117; *see SEC v. Hitachi, Ltd.*, 2015 WL 7566666, at *2 (D.D.C. Nov. 24, 2015)

("Approving a consent decree is a judicial act that the Court undertakes with care.").

In its recent Decision, the Court noted that its approval of the Stipulated Order in 2020

had included approval of Attachment A.  Specifically, it reasoned that it "'approved' Attachment

A insofar as it needed to satisfy itself of the settlement's overall fairness." *Facebook, Inc.*, 2023

WL 8190858, at *6.[13]  The Court went on to quote *Kokkonen*'s statement that "[t]he judge's

mere awareness and approval of the terms of the settlement agreement do not suffice to make

them part of his order," and added "[s]o too here." *Id.*

But this language from *Kokkonen* concerned a voluntary dismissal—not a consent decree.

In *Kokkonen*, the district court 'approved of' the settlement only through the ministerial act of

"so order[ing]" the parties' "Stipulation and Order of Dismissal." *Kokkonen*, 511 U.S. at 377.

Thus, as the Supreme Court emphasized, "the only order [by the district court in *Kokkonen*] was

that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged

breach of the settlement agreement." *Id.* at 380.

As its own title makes clear, the "Stipulated Order for Civil Penalty, Monetary Judgment,

and Injunctive Relief" bears no resemblance to the dismissal order in *Kokkonen*.  Here, in stark

contrast, the Court expressly found "that the *Stipulated Order* passes muster" under the govern-

ing legal standard: "Specifically, the Court finds that the parties consented to the *order*, and that

---

[13] The Court suggested that it was drawing a distinction between *the settlement's* overall fairness and *the consent decree's* overall fairness. *Facebook, Inc.*, 2023 WL 8190858, at *6.  But there is no basis for that distinction in D.C. Circuit precedent, which refers interchangeably to the consent decree and the settlement in applying the standard for approving a consent decree. *See, e.g.*, *Citizens for a Better Env't*, 718 F.2d at 1126, 1128 (explaining that "prior to approving a consent decree a court must satisfy itself of *the settlement's* overall fairness to beneficiaries and consistency with the public interest," and holding that "the district court's role was confined to approving the fairness of *the consent decree* which incorporates" the "solution arrived at" by the parties to resolve the suit); *United States v. Trucking Emps., Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977) (explaining that "prior to approving a consent decree a court must satisfy itself of *the settlement's* overall fairness to beneficiaries and consistency with the public interest," and holding that "[w]e are unable to say that the court could properly satisfy itself of the overall fairness of this [*consent*] *decree* ....").

*it* is fair, reasonable, and in the public interest." *Facebook, Inc.*, 456 F. Supp. 3d at 121.  As the

Court acknowledged in its Decision, *Facebook, Inc.*, 2023 WL 8190858, at *6, it specifically and

necessarily considered the terms of Attachment A in making these necessary findings regarding

the Stipulated Order, reasoning (among others) that in considering "whether the Stipulated Order

is a reasonable resolution," the "injunctive relief in the amended administrative order" is "[a]s

important" as the $5 billion civil penalty.[14]

Thus, unlike in *Kokkonen*, the Court's finding that the Stipulated Order, considered with

the terms of Attachment A, "is fair, reasonable, and in the public interest," *id.*, *is* "flouted [and]

imperiled by" the FTC's determination that Attachment A needs to be modified, *Kokkonen*, 511

U.S. at 380; *see also Pigford*, 292 F.3d at 925.  The Court's consideration of Attachment A in

approving the settlement therefore confirms that it is part of the Stipulated Order, and that its

unilateral modification by the FTC would "deny [Meta] the benefit of its bargain."  *Pigford*, 292

F.3d at 918, 925 ("To hold now that the district court, through either some 'ancillary' authority

to enforce the decree absent a violation or some 'inherent' authority to interpret it, may permit

extensions of … deadlines would not only deny the Department the benefit of its bargain, but

would also discourage settlements.  Who would sign a consent decree if district courts had free-

ranging interpretive or enforcement authority untethered from the decree's negotiated terms?").

Finally, while *Kokkonen* has limited application to a consent decree, Meta would still pre-

sent a serious question for appeal—even if, as in *Kokkonen*, Attachment A reflected nothing

---

[14] *See, e.g.*, *Facebook, Inc.*, 456 F. Supp. 3d at 122; *id.* at 121 (reasoning, in considering the substantive fairness of the Stipulated Order, that "the *Stipulated Order* reflects a compromise and includes benefits to both parties" and elaborating that"[t]he United States receives what it asserts is by far the largest civil money penalty ever obtained on behalf of the FTC … as well as extensive injunctive relief, described in more detail below"); *id.* at 120 ("The United States has moved, with Facebook's consent, for the Court to enter a stipulated order that imposes a $5 billion civil money penalty on Facebook and imposes injunctive relief in the form of an amended administrative order to be entered by the FTC.").

more than a private settlement agreement.  The D.C. Circuit, citing *Kokkonen*, instructed that ancillary jurisdiction to enforce a private settlement agreement exists when the parties have either (i) "clearly provid[ed] for retention of federal district court jurisdiction in their stipulations of dismissal," or (ii) "incorporat[ed] the full text of the settlement agreement into those stipulations."  *Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1484 n.8 (D.C. Cir. 1996); *see also Pigford*, 292 F.3d at 923 (citing *Madison Hotel*) ("a district court retains enforcement jurisdiction over a settlement if litigants so provide in their stipulation of dismissal or the dismissal order incorporates the settlement terms").[15]

Here, the parties did both.  The Stipulated Order on its face reserves continuing jurisdiction with the Court by providing that the Court "shall retain jurisdiction" over it, and by reiterating in Attachment A itself that "[t]his Court has jurisdiction over this matter."  (Dkt. No. 35 (Stip. Order) at 5; Dkt. No. 35 (Stip. Order, Attach. A) at 1.).  The parties also incorporated the "full text" of Attachment A in the Stipulated Order.  Thus, under controlling authority, nothing else was required to ensure the Court's continuing jurisdiction over Attachment A.  *See Kokkonen*, 511 U.S. at 381; *Madison Hotel*, 97 F.3d at 1484 n.8.

---

[15] In briefing before the D.C. Circuit, defendants cited *Pigford*, but the decision is unavailing to them.  (Response in Opposition to Emergency Motion, D.C. Cir. No. 23-5280, Dkt. No. 2030201, at 5 (Dec. 6, 2023).)  In the relevant holding, the D.C. Circuit ruled that the district court could not modify a consent decree where "the consent decree gives the district court no such authority."  *Pigford*, 292 F.3d at 923 (summarizing the Department of Agriculture's argument); *see id.* at 924 ("We agree with the Department.").  If a court cannot unilaterally modify a consent decree without express authorization, *a fortiori* one of the parties cannot unilaterally modify a consent decree absent authorization in the decree itself.

### c.  There Are Serious Questions about the Authority of the FTC to Enter the Relief It Now Seeks Unilaterally to Modify.

On appeal, Meta will also argue that there is no authority by which the FTC could independently have entered the relief set out in Attachment A—and, in light of this absence of authority, the FTC's vote to enter Attachment A on its own administrative docket is of no moment in terms of whether federal court jurisdiction exists.

First, there are, at a minimum, serious questions about the FTC's ability to independently impose the relief in Attachment A.  The proceeding that led to the entry of the Stipulated Order was an enforcement proceeding; the Complaint filed in this Court in 2019 principally alleged violations of the 2012 Order.  (Dkt. No. 1 (Compl.) at 1.)  The FTC proceeded in this manner—by way of a federal court complaint under Sections 13(b) and 5(l) of the FTC Act—because it has no independent authority to enforce its orders, adjudicate whether they have been violated or to impose relief (monetary, injunctive or equitable) for such violations; that power falls squarely within the exclusive "enforcement responsibility of the Courts."  *United States v. J. B. Williams Co.*, 498 F.2d 414, 422 (2d Cir. 1974).  By congressional design, when its own orders are at issue the FTC cannot serve as "judge as well as prosecutor."  *Id.* at 429.  And because Section 5(b) of the FTC Act authorizes the Commission's administrative authority solely in the form of "cease and desist" orders," 15 U.S.C. § 45(b), the FTC invoked two provisions of the FTC Act—15 U.S.C. §§ 45(l) and 53(b)—that authorize District Courts to issue broader, mandatory injunctive relief.

Second, there are substantial questions about the significance of the FTC's entry of Attachment A.  The Court concluded that, after its entry of the Stipulated Order, the FTC independently determined whether to enter Attachment A.  *Facebook, Inc.*, 2023 WL 8190858, at *4.

16

By that point, however, the Stipulated Order had released all known claims against Meta, includ-

ing those in the Complaint.  (Dkt. No. 35 (Stip. Order) at 1–2 (noting that the Stipulated Order

resolves "the claims for civil penalties and injunctive relief set forth in the Complaint" and "re-

solves all consumer-protection claims known by the FTC prior to June 12, 2019, that [Meta] vio-

lated Section 5 of the FTC Act").)  There were thus no claims remaining that the FTC alone

could have resolved, even if it had the independent authority to do so—and certainly no claims

remaining related to the relief to which Meta had consented.

This same fact also belies the suggestion that the FTC was not required, by the Stipulated

Order, to enter Attachment A, in its agreed-upon form, in its own administrative proceeding.  In

the Stipulated Order, Meta consented to "modifying the [2012 Order], with the Decision and Or-

der set forth in Attachment A"—but this consent was procured as part of a broader and heavily

negotiated agreement, reflected in the Stipulated Order and reviewed and approved by the Court,

that resolved "any and all" order violation and consumer-protection claims raised in the FTC's

complaint or otherwise known to the FTC.  (*Id.* at 1, 4.)  The scope of the FTC's authority with

respect to its own administrative action was limited to the terms of this agreement, entered as a

final judgment by this Court.  Anything else exceeded Meta's consent and the parameters of the

Court's judgment.  The notion that the FTC remained at liberty to do anything other than enter

Attachment A would mean that Meta agreed to pay $5 billion and to adhere to stipulated terms

entirely on speculation as to what the FTC would do.  "A promise to pay, with a reserved right to

deny or change the effect of the promise, is an absurdity."  *Murray v. City of Charleston*, 96 U.S.

432, 445 (1877).  The fact that the FTC *also* entered Attachment A as an administrative order has

nothing to do with whether it was also a part of this Court's order.  *See United States v. Daniel*

17

*Chapter One*, 793 F. Supp. 2d 157, 159–60, 164 (D.D.C. 2011) (holding that injunctive relief was imposed as part of both court and FTC orders).

### d. There Are Serious Questions as to the FTC's Ability to Modify the Stipulated Order

Meta's appeal raises serious questions about whether the parties' agreement allows the FTC to modify it.

As a threshold matter, there are serious questions as to whether Section 5(b) applies to consent orders. 15 U.S.C. § 45(b) authorizes the FTC to issue cease and desist orders "upon" administrative hearings and to "alter, modify or set aside" orders "made or issued" by the FTC "under this section." Consistent with the provision's plain language, the FTC has determined—specifically and through formal rulemaking—that Section 5(b)'s modification language only provides for the alteration, modification, or setting aside of "Commission orders *issued on a litigated or stipulated record*." 16 C.F.R. § 2.32(c). Consent orders like Attachment A are not "issued on a litigated or stipulated record." Here, for example, no record was litigated, and page 2 of Attachment A makes clear that Meta "neither admits nor denies any of the allegations in the Complaint." It is for that reason that the rule specifically requires settling respondents to agree that their consent orders can be modified "in the same manner" as Section 5(b). The FTC's assertion that it can modify the Order without Meta's permission would render Rule 2.32(c) meaningless. Rather, Rule 2.32(c) reflects the FTC's recognition that its authority to modify consent orders is ***contractual***, and it requires settling parties to agree that their consent orders are subject to modification in the manner set forth in Section 5(b) for that reason. *See, e.g.*, *Medley v. Dish Network, LLC*, 958 F.3d 1063, 1070 (11th Cir. 2020) ("[I]t is black-letter contract law that one party to an agreement cannot, without the other party's consent, unilaterally modify the agreement once it has been executed."). Consistent with Section 5(b)'s scope, we are unaware of any

18

instance in which the FTC has modified a consent order that the respondent did not expressly agree could be modified.

There are also significant questions whether, even if Section 5(b) could be stretched to reach consent orders, it was "assumed" in the Order according to fundamental tenets of contract interpretation.  Unstated rights and obligations are not lightly assumed.  *See, e.g.*, *Metz v. BAE Sys. Tech. Sols. & Servs., Inc.*, 979 F. Supp. 2d 26, 33 (D.D.C. 2013) ("Implied covenants are disfavored . . . .").  While the Court noted that statutory rights require express waiver, *Facebook, Inc.*, 2023 WL 8190858, at *5 (citing *George Banta Co., Inc., Banta Div. v. NLRB*, 686 F.2d 10, 20 (D.C. Cir. 1982)), the Supreme Court has more recently determined that a statutory provision "should be implied as a contract term only if the term is so central to the bargained-for exchange between the parties, or to the enforceability of the contract as a whole, that it must be deemed to be a term of the contract."[16]  *Amfac Resorts, LLC v. Dep't of Interior*, 142 F. Supp. 2d 54, 73–74 (D.D.C. 2001) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 188–89 (1992)).

The express modification provision in the Stipulated Order—which assigns modification jurisdiction to the District Court—belies any suggestion that the right of unilateral modification could have been central to the parties' bargain.  Moreover, even if the parties had been silent with respect to modification, the absence of a unilateral or administrative modification right in the parties' 2019 agreement after the inclusion of such a right in their 2011 agreement must be interpreted as intentional.  *See, e.g.*, *Hoffman v. L&M Arts*, 838 F.3d 568, 582 (5th Cir. 2016) (holding that earlier agreement's "explicit requirement . . . suggests that the absence of" a similar term in later agreement "was intentional"); *Slaughter v. Nat'l R.R. Passenger Corp.*, 460 F.

---

[16] Because neither case cited by the government for the proposition that the entire FTC Act is assumed in every order involved a consent order, *see FTC v. Ruberoid Co.*, 343 U.S. 470, 475–76 (1952) (reviewing FTC cease and desist order); *Dolcin Corp. v. FTC*, 219 F.2d 742 (D.C. Cir. 1954) (same), neither provides any basis for the FTC to assert an implied contractual modification right.

Supp. 3d 1, 10 (D.D.C. 2020) (holding that omission of clause in one contract that was included in other contracts between the parties "strongly suggests that such omission was intentional").

## II.   Meta Will Suffer Irreparable Harm If the OTSC Is Not Enjoined Pending Appeal

Assuming—as required—that the D.C. Circuit would conclude that this Court—not the FTC—retained exclusive jurisdiction to enforce or modify the Stipulated Order and its Attachment A, there can be no doubt that Meta will suffer irreparable harm if it is deprived of its bargained-for forum and forced to relitigate a settlement agreement that was entered as this Court's final judgment.

As an initial matter, this Court must evaluate whether Meta would suffer irreparable harm, assuming that Meta would prevail on the merits of its appeal. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) ("Within the irreparable harm analysis itself—which assumes, without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law—we examine only whether that violation, if true, inflicts irremediable injury."); *A.B.-B v. Morgan*, 548 F. Supp. 3d 209, 221 (D.D.C. 2020) ("While the Court takes no position on whether plaintiffs are ultimately entitled to asylum, the Court must assume plaintiffs' likelihood of success on the merits when assessing whether irreparable harm exists.").

Litigation before the FTC deprives Meta of its bargained-for forum—this Court.  Courts routinely conclude that a litigant is irreparably harmed by being deprived of its bargained-for forum.  *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022) (reversing denial of preliminary injunction; under "binding precedent" being "deprived of . . . bargained-for choice of forum and forced to litigate [the same issue] in multiple jurisdictions" is irreparable harm); *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363–64 (Fed.

Cir. 2011) (upholding a finding of irreparable harm because the movant "would be deprived of its bargained-for forum"); *Dodocase VR, Inc. v. MerchSource, LLC*, 2018 WL 1475289, at \*11 (N.D. Cal. Mar. 26, 2018) (finding that the movant will suffer irreparable harm if deprived of its "bargained-for forum"); *Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881, at \*7 (E.D. Tex. May 19, 2005) (party would be irreparably harmed by ITC proceeding because it will be "deprived of its bargained-for forum—an Article III judge's court . . . .").  The harm to Meta is particularly acute because Article III courts "have a duty to protect their legitimately conferred jurisdiction to the extent necessary ***to provide full justice to litigants***."  *E.g.*, *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).

Further, because the Stipulated Order is both a consent decree and final judgment, allowing the administrative proceeding to go forward would be tantamount to changing the terms of the Stipulated Order.  That itself constitutes irreparable harm.  *United States v. Colorado*, 937 F.2d 505, 508–09 (10th Cir. 1991) (altering terms of consent decree irreparably harmed party).  Litigation before the FTC also amounts to relitigation of a final order—which "is sufficient alone" to constitute irreparable harm.  *Thomas v. Albright*, 77 F. Supp. 2d 114, 123 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001).  The injury to Meta "by having to endure wasteful relitigation in [another forum] of an issue already finally decided by this Court is clearly irreparable."  *FDIC v. Bank of N.Y.*, 479 F. Supp. 2d 1, 19 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007).[17]

---

[17] The costs that Meta will incur through this duplicative and wasteful litigation will not be recoupable from the government, meaning that that harm is also not amenable to redress after the fact.  Cases holding that recoupable litigation costs do not constitute irreparable harm thus have no application here.  *See Nalco Co. v. EPA*, 786 F. Supp. 2d 177, 188 (D.D.C. 2011) (omission in original) (quoting *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) ("Where a plaintiff 'cannot recover damages from the defendant due to the defendant's sovereign immunity . . . any loss of income suffered by plaintiff is irreparable *per se*.'").

And Meta would lose these bargained for protections in a matter where the stakes are substantial.  The more than 800 changes the FTC aims to make to the Stipulated Order would curtail Meta's rights to develop products, superintend Meta's corporate governance and Board membership, and deprive Meta of the ability to better serve its users and advertisers.  (Rou- handeh Decl. Ex. C (2023 Proposed Decision and Order), at Definition M, Parts I, X.)  Moreo- ver, Meta will face these risks in litigation before the FTC, which will strip Meta of the numer- ous due process safeguards that are inherent in litigation before an Article III court and absent in litigation before the FTC.  For example, the FTC has the sole discretion to determine whether Meta will have *any* hearing on the merits of the allegations of the OTSC, and any such hearing would be limited only to whatever factual issues the FTC identifies for hearing.  *See* 16 C.F.R. § 3.72(b)(2).  In addition, the OTSC purports to shift the burden of proof to ***Meta***.  (Rouhandeh Decl. Ex. O (2020 FTC Order FAQ) at *1 (Meta "will have the opportunity to explain why the FTC should not proceed as proposed, and to ask for further fact finding.").)

What's worse, while federal district court judges are impartial factfinders, Meta is being forced to litigate a case before a tribunal that is Meta's litigation adversary and is structurally bi- ased in its own favor.  In contrast to its litigation record in federal court, the FTC "has not lost a single [administrative] case in the past quarter-century."  *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 143 S. Ct. 890 (2023).  That bias is even clearer here.  The FTC has formally found in the OTSC that it "has good cause to believe" that Meta violated the requirements of the 2020 Order.  (Rouhandeh Decl. Ex. B (OTSC) at 1, 12.)  As judge, the FTC found in the OTSC that "changed conditions demonstrat[e] that additional modifications to the Order are needed to clarify and strengthen its requirements."  (*Id.* at 12.)  Those findings rest on preliminary findings of fact that the FTC already has made, which the OTSC refers to as "[t]he

22

full record supporting the Commission's findings." (*Id.* at 1 n.1.)  We are aware of no precedent for the FTC making "preliminary" findings of fact—much less a "full record" consisting of such findings—in "support" of any administrative action it has ever taken.  Indeed, these factual findings appear to be "preliminary" only in the sense that they were made before the FTC reopened the Proceeding against Meta.

Depriving Meta of its bargained-for forum and adjudicator is tantamount to stripping Meta of basic protections and forcing it to litigate a case that its opposing party will determine.  These deprivations will work irreparable harm.  *See, e.g.*, *Ciena*, 2005 WL 1189881, at *7 (holding that party would be irreparably harmed by ITC proceeding because it will be "deprived of its bargained-for forum—an Article III judge's court . . . .").  Issuing an injunction in such circumstances, particularly a limited injunction pending appeal, is far from extraordinary relief. *Shinyaku*, 25 F.4th at 1008.

All of these harms are irreparable because none of them can be remedied if litigation before the FTC proceeds.  It is no response to argue that Meta could simply obtain direct review of a final FTC order.  Given that irreparable harm must be assessed assuming that Meta will prevail on appeal—that is, that litigation should proceed here, and not before the FTC—the government all but concedes that Meta's harm is irreparable when it responds that Meta can take an appeal of a judgment that should never have been reached in the first place.  It is also no response to argue that Meta's harm will be redressed if the D.C. Circuit halts the administrative proceedings after deciding the merits of Meta's appeal.  As the Supreme Court has recognized, ongoing litigation may irreparably and irretrievably change parties' positions even if no judgment is ultimately rendered.  *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 87–88 (1981) (authorizing interlocutory review of denying entry of consent order; if not permitted to settle, parties would proceed to trial

and settlement might thereafter be impossible); *JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d. 903, 921 (N.D. Cal. 2021) (irreparable harm to litigant "forced to litigate in an improper forum" that would "cloud its entitlement to [a] federal judgment").

### III.   The Balance of Equities and Public Interest Favor an Injunction Pending Appeal

The balance of equities and multiple substantial public interests strongly support Meta's requested relief, while the FTC's conduct belies any assertion that a public interest in speedy prosecution of the OTSC proceedings weighs against an injunction pending appeal.

First, there is an overriding public interest in ensuring that federal courts exercise their jurisdiction. "Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants." *Laker Airways*, 731 F.2d at 927. Indeed, "it is essential to the continued function of the U.S. courts that they protect their lawful jurisdiction." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 656 F. Supp. 3d 201, 221 (D.D C. 2023). This Court has determined that its continuing jurisdiction over the Stipulated Order does not include its Attachment A. *Facebook, Inc.*, 2023 WL 8190858, at *1. However, ensuring that an Article III court, rather than an Article I agency, exercises "legitimately conferred" judicial jurisdiction is a matter of overwhelming public interest and warrants an injunction while the Court of Appeals reviews that issue de novo. *Laker Airways*, 731 F.2d at 927.

Second, "[f]ew public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute." *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986). There is, therefore, "a compelling public interest and policy in upholding and enforcing settlement agreements." *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988). Holding the FTC to its "previously negotiated contractual undertaking to litigate in a particular forum" is in the public interest, *see Gen. Protecht Grp.*, 651

F.3d at 1366, even on appeal from a ruling that such a "contractual undertaking" was inapplicable, *see Shinyaku*, 25 F.4th 998, 1008–09.  With good reason, because a "forum-selection clause . . . may have figured centrally in the parties' negotiations and may have affected how they set . . . other contractual terms . . . 'the interest of justice' is served by holding parties to their bargain."  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 (2013).  As the FTC itself acknowledged, "it is highly unlikely the Commission could have obtained [the] magnitude of injunctive relief" reflected in the Stipulated Order had Meta not agreed to it.  (Rouhandeh Decl. Ex. A (July 24, 2019 Comm'rs Simons, Phillips, Wilson Statement) at 6.)  Meta, in turn, waived its right to contest liability on the Complaint, expecting that the Stipulated Order would govern its future conduct in specific, predictable ways that the FTC now seeks to rewrite from scratch.  Preserving the status quo while the D.C. Circuit considers these issues is in the public interest.

Third, and relatedly, the "public interest favors finality" of settlements and judgments. *Thomas*, 77 F. Supp. 2d at 124. The primary function of a consent order is to achieve finality and certainty.  *See Salazar*, 896 F.3d at 498.  The FTC's proceeding would deprive Meta of the finality of the terms to which it agreed in 2019 and which this Court approved in 2020.  Because "public policy dictates that there be an end of litigation . . . and that matters once tried shall be considered forever settled as between the parties," *Fed. Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981), the public interest strongly supports enjoining the FTC from reopening the parties' settlement pending appeal.

Fourth, there is also "no public interest in the perpetuation of unlawful agency action." *See League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (noting that a party's likelihood of success on the

merits "is a strong indicator that a preliminary injunction would serve the public interest" be-
cause "[t]here is generally no public interest in the perpetuation of unlawful agency action").
The OTSC proceeding is unlawful in multiple respects.  As described above, Section 5(b) applies
only to "Commission orders issued on a litigated or stipulated record."  16 C.F.R. § 2.32(c).  The
FTC—apparently for the first time—seeks to apply that provision to a consent order that does
not provide for future modification.  It cannot lawfully do so.  Moreover, even if Section 5(b) did
apply, it cannot be used as an enforcement device where the FTC believes its orders have been
violated.  As the FTC has argued, the remedy for violation of an FTC order is order **enforce-
ment**, not order **modification**.  (Gov't Opp. to X Corp.'s Mot. for Protective Order, *United States
v. Twitter, Inc.*, No. 3:22-cv-3070-TSH, Dkt. 41, at 21 (N.D. Cal. Sept. 11, 2023).)  With good
reason.  The FTC lacks the power "to determine whether [its orders] have been violated"; that
power falls exclusively within the "enforcement responsibility of the Courts."  *J. B. Williams*,
498 F.2d at 422.  The FTC's attempt to usurp that judicial "enforcement responsibility" is unlaw-
ful.  Because there is "substantial public interest in having governmental agencies abide by the
federal laws that govern their existence and operations," *Luokung Tech. Corp. v. Dep't of Def.*,
538 F. Supp. 3d 174, 195 (D.D.C. 2021), public interest favors enjoining the FTC's unlawful
proceeding.

  In stark contrast, the FTC's conduct belies any claim that the public interest would be im-
paired in any way by allowing Meta's appeal to proceed.  The FTC first waited **years** before
challenging conduct long known to it—including conduct from before the July 24, 2019 settle-
ment.  (*See* Rouhandeh Decl. Ex. B (OTSC) at 10–11.)  If immediate action were truly neces-
sary—based on information it received between 2019 and July 1, 2021—the FTC would have

acted long before May 2023.  Meta promptly filed its motion on May 31 to seek expedited reso-

lution.  The government requested ten weeks to respond, necessitating an extension of Meta's

deadline to November 30.  The FTC then ordered that if the Court did not rule before November

30, that deadline would be lifted and the subject for future discussions.  (Dkt. No. 60.)  And,

most recently, the FTC extended Meta's deadline through January 31, 2024.[18]  If the FTC was

willing to agree to an extension *sine die*, there can be no serious argument that the public interest

would suffer from allowing the Court of Appeals to decide Meta's appeal before the OTSC Pro-

ceeding goes forward.

Nor can the government rely on Section 5(b)'s "public interest" language.  Part XVI

specifies that in the event that Meta violates Attachment A, its duration would be extended, but

its substantive terms continue unmodified.  In other words, the FTC already determined—with

this Court's approval—that if Meta were to violate Attachment A, the public interest would be

served not by changing any of its provisions, but by extending the time in which Meta is obli-

gated to follow them.  Under these circumstances, there is no basis for the FTC to argue that the

public interest would be impaired by maintaining the status quo while Meta's appeal proceeds.

---

[18] Order Further Extending Time for Respondent's Answer, *Facebook, Inc.*, FTC Docket No. C-4365 (Dec. 6, 2023).

**<u>CONCLUSION</u>**

Meta respectfully requests that this Court enjoin the OTSC Proceeding pending resolution of its appeal.

DATED: December 12, 2023

Respectfully submitted,

*/s/  James P. Rouhandeh*

_____

James P. Rouhandeh (DDC Bar No. NY0390)
Michael Scheinkman (DDC Bar No. NY0381)
David B. Toscano (*pro hac vice*)
John A. Atchley III (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson (DDC Bar No. 982269)
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com