# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                      Plaintiff,

          v.

FACEBOOK, INC.,
a corporation,

                   Defendant.

Case No.: 1:19-cv-02184-TJK

---

## THE UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR INJUNCTION PENDING APPEAL

**TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................................................1

II.  BACKGROUND ..............................................................................................1

III. ARGUMENT .....................................................................................................4

    A.  Meta Is Unlikely To Succeed On The Merits Of Its Appeal ................................5

        1.  This Court Correctly Interpreted The Stipulated Order..................................5

        2.  Meta Forfeited The New Arguments It Intends To Raise On Appeal By Failing To Raise Them In Its Initial Motion to Enforce ....................................................9

        3.  All Of Meta's New Arguments Also Fail On The Merits ...........................11

    B.  Meta Cannot Show It Will Suffer Irreparable Harm Absent An Injunction Because It Can Seek Judicial Review Of A Final, Adverse Commission Order.......................................14

    C.  The Balance Of The Equities And Public Interest Favor Allowing The Commission's Proceedings Designed To Protect Consumers To Continue ...............................................16

IV. CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Cases:**

*Barber v. Thomas*,
   560 U.S. 474 (2010).....................................................................................................7

*Brotherhood of Ry. v. National Mediation Bd.*,
   374 F.2d 269 (D.C. Cir. 1966) ...................................................................................4

*Changji Esquel Textile Co. v. Raimondo*,
   40 F.4th 716 (D.C. Cir. 2022).....................................................................................5

*\*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ...........................................................................14, 16

*Elmo Co. v. FTC*,
   389 F.2d 550 (D.C. Cir. 1967) .................................................................................17

*Facebook, Inc. v. Brandtotal Ltd.*,
   No. 20-cv-7182, 2021 WL 2354751 (N.D. Cal. June 9, 2021)....................................9

*FDIC v. Bank of New York*,
   479 F. Supp. 2d 1 (D.D.C.) .......................................................................................15

*Flynn v. Comm'r*,
   269 F.3d 1064 (D.C. Cir. 2001) ...............................................................................10

*FTC v. Church & Dwight Co.*,
   756 F. Supp. 2d 81 (D.D.C. 2010) ....................................................................... 10-11

*FTC v. Standard Oil Co. of California*,
   449 U.S. 232 (1980)..................................................................................................15

*Gov't of Manitoba v. Bernhardt*,
   923 F.3d 173 (D.C. Cir. 2019) ..................................................................................10

*Illumina, Inc. v. FTC*,
   No. 23-60167, 2023 WL 8664628 (5th Cir. Dec. 15, 2023)......................................15

*\*John Doe Co. v. CFPB*,
   849 F.3d 1129 (D.C. Cir. 2017) ........................................................................... 15-16

*\*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)..................................................................3, 5-6, 11-12

*Meta Platforms, Inc. v. Federal Trade Commission*
  No. 1:23-cv-3562 (D.D.C.) ...........................................................................................4

*\*Pigford v. Veneman*,
  292 F.3d 918 (D.C. Cir. 2002) ...................................................... 3, 5-6, 11-12

*\*Pigford v. Vilsack*,
  777 F.3d 509 (D.C. Cir. 2015) .............................................................5-6, 11-12

*\*Republican Nat'l Comm. v. Pelosi*,
  No. 22-cv-659, 2022 WL 1604670 (D.D.C. May 20, 2022)..................................4-5, 17

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
  No. 16-mc-621, 2016 WL 11681577 (D.D.C. Sept. 30, 2016).........................................10

*Sierra Club v. United States Army Corps of Engineers*,
  990 F. Supp. 2d 9 (D.D.C. 2013) ..................................................................................17

*Thomas v. Albright*,
  77 F. Supp. 2d 114 (D.D.C. 1999) ...............................................................................15

*United States v. Facebook*,
  No. 23-5280 (D.C. Cir.) ..............................................................................................3-4

*United States v. Twitter, Inc.*,
  No. 22-cv-3070, 2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) ......................................9

*United States v. Volvo Powertrain Corp.*,
  758 F.3d 330 (D.C. Cir. 2014) ....................................................................................5, 7

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ....................................................................................................4-5, 17

**Statutes and Regulations:**

Federal Trade Commission Act
  15 U.S.C. § 45 *et seq.*...................................................................................................2
  15 U.S.C. § 45(a) ......................................................................................................17
  *15 U.S.C. § 45(b) ............................................................. 3, 12-13, 15, 17
  15 U.S.C. § 45(c) .......................................................................................................15

Federal Trade Commission Rules of Practice
  16 C.F.R. § 2.32(c)................................................................................................. 13-14
  16 C.F.R. § 3.72(b) ...................................................................................................14

## I.      INTRODUCTION

Meta Platforms, Inc.'s[1] motion to enjoin a Federal Trade Commission ("FTC" or "Commission") administrative proceeding lacks merit and should be denied. In May 2023, Meta first moved to enjoin the Commission's proceeding, asserting the proceeding is barred by this Court's Stipulated Order resolving a civil penalties lawsuit between the United States and Meta. Meta also alleged that the Commission's proceeding suffers from various constitutional deficiencies. On November 27, 2023, this Court rejected Meta's motion, holding that it had "no jurisdiction to reach" Meta's claims. Op., ECF No. 62 at 6. Meta then filed an emergency motion for an injunction pending appeal in the U.S. Court of Appeals for the D.C. Circuit but withdrew that motion shortly after the United States filed its opposition.

Meta now asks this Court to enjoin the Commission's proceedings pending appeal, but it cannot make the showing required for such extraordinary relief. Meta cannot demonstrate a likelihood of success on appeal because this Court correctly interpreted its Stipulated Order. Moreover, Meta will suffer no irreparable harm absent an injunction because it may seek judicial review of any final Commission order. Lastly, rather than serving the public interest, an injunction would harm the public by further delaying Commission proceedings that seek to ensure consumers' privacy is adequately protected. Meta's motion should be denied.

## II.     BACKGROUND

The Court is familiar with the relevant background, which is fully recounted in the United States' Opposition to Meta's Motion to Enforce and the Court's November Opinion denying Meta's motion. *See* Op. at 2-5; Opp. to Mot. to Enforce the Stipulated Order ("Merits Opp."), ECF

---

[1] Meta was formerly known as Facebook, Inc. For ease of reference, this opposition simply refers to the entity as "Meta."

No. 49 at 2-8.[2] The facts pertinent to the arguments raised in Meta's latest motion are briefly outlined below.

In 2019, the United States filed this lawsuit against Meta for civil penalties and injunctive relief under the FTC Act, 15 U.S.C. § 45 *et seq.*, alleging that Meta had violated a 2012 Administrative Order issued by the Commission. On April 23, 2020, the Court issued a Stipulated Order that was proposed by the parties to resolve the suit. Section II of the Stipulated Order required Meta to "consent to" the Commission reopening its administrative proceeding, modifying the 2012 Administrative Order, and replacing it with a new administrative order, the content of which was attached to the Stipulated Order as "Attachment A." *See* Stip. Order, ECF No. 35 at 4.

After this Court issued the Stipulated Order, the Commission initiated its own process. On April 27, 2020, the Commission reopened its administrative proceedings against Meta and determined it was in the "public interest" to modify the 2012 Administrative Order. *See* Order Modifying Prior Decision and Order ("Modification Order"), ECF No. 38-11 at 2. Finding Meta had "consented to modifying the 2012 [Administrative Order] as set forth," the Commission modified the administrative order to reflect the contents of Attachment A. *Id.* Two commissioners dissented. *Id.* Consistent with the terms of the Stipulated Order, Meta did not object to the Commission reopening its proceedings or modifying its administrative order.

The 2020 Administrative Order required Meta to implement and maintain a comprehensive privacy program and to obtain initial and biennial independent assessments of that program. *See* 2020 Administrative Order, ECF No. 38-11 at 3-23. In July 2021, Meta's assessor produced an initial report that identified certain gaps and weaknesses in Meta's privacy program. Based largely

---

[2] Except where otherwise noted, in all quotations, emphases have been added, and internal alteration marks, citations, and footnotes have been omitted.

on this, FTC staff concluded that these deficiencies posed substantial risks to the public. On May 3, 2023, the Commission issued an order to show cause why it should not modify the 2020 Administrative Order under the FTC Act, 15 U.S.C. § 45(b), to address these deficiencies through additional proposed safeguards. *See* Order to Show Cause, ECF No. 38-4.

Instead of answering the allegations, on May 31, 2023, Meta filed a motion in this Court to enforce the Stipulated Order and enjoin the FTC's proceedings, claiming that the show-cause proceeding was barred by the Stipulated Order. The Commission agreed to extend Meta's deadline to respond to the show cause order, allowing Meta's motion in this Court to be fully briefed. *See* ECF No. 53-3. In mid-November, the Commission agreed to another extension that gave Meta two weeks after this Court issued its ruling to respond to the show cause order. *See* ECF No. 60.

On November 27, 2023, after briefing and argument, the Court issued an Opinion and Order denying Meta's motion. The Court recognized that its "jurisdiction to enforce consent decrees is not free-ranging, [but] is constrained by the terms of the decree and related order." Op. at 8 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Pigford v. Veneman* ("*Pigford I*"), 292 F.3d 918 (D.C. Cir. 2002)). While the Stipulated Order directed Meta to "consent to" modifying the 2012 Administrative Order as reflected in Attachment A, it "did not order [Meta] to comply with the terms of Attachment A, nor order the FTC to do anything." Op. at 9. Thus, Meta's challenges to the Commission's authority to modify its own orders, and the process by which it may do so, "do not fall within the Court's retained jurisdiction." Op. at 13.

Meta appealed, and on November 29, 2023, the company filed an emergency motion in the U.S. Court of Appeals for the D.C. Circuit to enjoin the Commission's proceeding pending its appeal. *See* Emergency Mot., *United States v. Facebook*, No. 23-5280 (D.C. Cir.). Meta's motion claimed it would be "impracticable" to seek an injunction pending appeal from this Court because

its response to the show cause order was due on December 11 and this Court had already ruled against it. *See id.* at 10. That same day, Meta also filed a new lawsuit and motion to enjoin the Commission's proceedings in the U.S. District Court for the District of Columbia, which was assigned to the Honorable Randolph Moss, raising several constitutional challenges to the proceeding. *See Meta Platforms, Inc. v. Federal Trade Commission*, No. 1:23-cv-3562 (D.D.C.).

A D.C. Circuit motions panel issued a briefing schedule on Meta's emergency motion. As required, the United States filed an opposition to Meta's emergency motion on December 6, 2023. *See* Opp. to Emergency Mot., *United States v. Facebook*, No. 23-5280 (D.C. Cir.). Later that day, Meta withdrew its emergency motion "without prejudice." *See* Notice of Withdrawal of Emergency Mot., *United States v. Facebook*, No. 23-5280 (D.C. Cir.). Meta noted that the Commission had extended its response deadline until January 31, 2024, in light of the new proceedings before the D.C. Circuit and Judge Moss. *See id.* at 5. As a result, Meta concluded it was now "practicable for Meta to move for an injunction pending appeal before [this] Court." *Id.* at 2. On December 14, 2023, Meta filed the pending Motion for Injunction Pending Appeal.

## III.   ARGUMENT

An injunction pending appeal is an "extraordinary remedy." *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emp. v. National Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966); *see Republican Nat'l Comm. v. Pelosi*, No. 22-cv-659, 2022 WL 1604670, at *2 (D.D.C. May 20, 2022) (Kelly, J.) (similar). To obtain such relief, Meta must show (1) it is likely to succeed on the merits, (2) an injunction will prevent irreparable harm, and (3) the harm is not outweighed by harm to third parties and the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Meta meets none of these requirements.[3]

---

[3] This Court has suggested that an injunction pending appeal "*may* be proper, even without a likelihood of success on the merits, so long as the movant establishes a serious legal question on

### A.    Meta Is Unlikely To Succeed On The Merits Of Its Appeal

To persuade this Court to take the extraordinary step of enjoining the Commission's proceedings pending an appeal, Meta offers reworked versions of its previous, failed arguments that the Stipulated Order barred the Commission from exercising its statutory authority to modify its own administrative order. The Court rejected many of those arguments in its November Opinion, and Meta offers nothing to suggest the Court's rulings were mistaken. Meta also belatedly—and improperly at this stage—tries out some entirely new arguments. All of Meta's claims fail on the merits. Meta is unlikely to succeed on appeal because this Court properly interpreted its own Stipulated Order.

### 1.    This Court Correctly Interpreted The Stipulated Order

"Federal courts are courts of limited jurisdiction." *Kokkonen*, 511 U.S. at 377. In *Kokkonen*, the Supreme Court held that a federal court retains jurisdiction "to enforce its consent decrees . . . if the parties' agreement or the court order dismissing the action reserves jurisdiction to enforce compliance." *Pigford v. Vilsack* ("*Pigford II*"), 777 F.3d 509, 514 (D.C. Cir. 2015) (citing *Kokkonen*, 511 U.S. at 381). "Even where, as here, the consent decree does retain jurisdiction in the district court to enforce its terms, the court still lacks a free-ranging 'ancillary' jurisdiction, and is limited by the explicit terms of the parties' agreement." *Id.* The terms of the decree "should be interpreted as a contract." *Id.* Thus, the Court must determine "what a reasonable person in the position of the parties would have thought the language meant." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 337, 339 (D.C. Cir. 2014). A party cannot escape the clear meaning of a

---

the merits and shows that the other three factors tip sharply in its favor." *Republican Nat'l Comm*, 2022 WL 1604670, at *3; *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (noting that this "sliding scale approach . . . is arguably in tension with" the Supreme Court's decision in *Winter*). Regardless of which standard the Court applies, Meta's arguments fail for the reasons laid out in this Opposition. *See Changji*, 40 F.4th at 726 (similar).

decree by offering a different interpretation. *See Pigford II*, 777 F.3d at 517.

Meta again claims that the "plain language" of the Stipulated Order indicates that this Court—not the Commission—ordered Meta to comply with the obligations imposed by the 2020 Administrative Order. *See* Mem. at 9-10. But this Court soundly rejected this argument, correctly recognizing that the plain language of the Stipulated Order "did not order [Meta] to comply with the terms of Attachment A, nor order the FTC to do anything." Op. at 9.[4] Thus, under *Kokkonen*, the Court "lacks jurisdiction" over both "the obligations imposed on [Meta] through the FTC's 2020 Administrative Order," and "claims related to potential changes to the 2020 Administrative Order and the FTC's authority to reopen its proceedings and modify that order." *Id.* at 2.

Meta reasserts many of the same misinterpretations of the Administrative Order that the Court's November Opinion previously and properly rejected. *See* Mem. at 9-10. For example, Meta again seizes on Paragraph 1 of the Commission's 2020 Administrative Order Findings, which states: "This Court has jurisdiction over this matter." 2020 Administrative Order at 1. Again, context matters. The 2020 Administrative Order is captioned "*In the Matter of Facebook, Inc.*," with the forum identified as "United States of America Federal Trade Commission." *Id.* Immediately preceding the "Findings" is the sentence: "After due consideration, the *Commission* issues its Complaint, makes the following Findings, and issues the following Order[.]" *Id.* The first Finding is: "*This* Court has jurisdiction over this matter." *Id.* The Court's November Opinion already found that this context "strongly suggests" that the phrase "this Court" "refers to the body entering the order, the FTC." Op. at 12.

---

[4] Section II of the Stipulated Order commanded Meta "to consent to the FTC's reopening of its administrative proceedings and the modification of the 2012 Administrative Order." Op. at 10. Contrary to Meta's assertions, *see* Mem. at 16, the Court correctly held that this was the "only injunctive relief it ordered" with respect to Attachment A under the FTC Act, *see* Op. at 10.

Yet again, Meta complains that the 2020 Administrative Order elsewhere refers to the Commission as the "Commission" and the district court as a "court." *See* Mem. at 10. But, again, context matters. While words are generally presumed to have the same meaning throughout a document, this presumption "yields readily to indications that the same phrase used in different parts . . . means different things." *Barber v. Thomas*, 560 U.S. 474, 484 (2010). The Stipulated Order nowhere indicates that this Court would exercise jurisdiction over the Commission's proceedings.[5] Moreover, the Commission expressly retained its statutory authority to modify the 2020 Administrative Order. This Court correctly found that the Commission unambiguously retained jurisdiction over its own administrative proceedings.[6]

Again, Meta selectively excerpts briefing statements made by the parties and by this Court when the Stipulated Order was entered, claiming both the parties and the Court believed the obligations reflected in the 2020 Administrative Order were part of the Stipulated Order. *See* Mem. at 8-11. Such statements are extrinsic evidence, and "a court may not look to extrinsic evidence of the parties' subjective intent unless the document itself is ambiguous." *Volvo Powertrain Corp.*, 758 F.3d at 340. The plain language of the Stipulated Order is unambiguous: it does not bar the Commission from modifying its 2020 Administrative Order. The Court should reject this invitation

---

[5] Contrary to Meta's assertions, the Stipulated Order does *not* define the term "Stipulated Order" to include Attachment A. *See* Mem. at 2, 9. Rather, the Stipulated Order states: "Plaintiff and Defendant stipulate to the entry of this Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief ("Stipulated Order") to resolve the claims for civil penalties and injunctive relief set forth in the Complaint." 2020 Administrative Order at 1.

[6] Meta also points to the fact that it waived its right to "appeal" the 2020 Administrative Order as indicia that it was "part of this Court's Stipulated Order." Mem. at 10. According to Meta, "if Attachment A were purely an administrative order, it could only give rise to a petition for review." *Id.* Meta ignores the irony of this argument: although this Court held that the Commission entered the 2020 Administrative Order, Meta has now filed an appeal in connection with the order. Regardless, the waiver states that Meta waives its right to "appeal or *otherwise challenge or contest*" the 2020 Administrative Order. Meta plainly waived its right to petition for review.

to consider this extrinsic evidence.

Regardless, even if the Court were to consider it, the extrinsic evidence confirms the opposite of what Meta contends: the parties and this Court understood that the Commission retained its authority to modify its administrative order. As the Court explained in its November Opinion, when the Commission issued the 2020 Administrative Order, it independently determined that reopening the proceeding and modifying the administrative order were "in the public interest." Op. at 9. Moreover, "[t]wo Commissioners felt free to dissent from that determination." *Id.* And Meta itself did not object to the Commission's finding.

None of Meta's selectively repackaged briefing excerpts suggest—much less "unambiguous[ly]" confirm, Mem. at 8—that the government, this Court, or even Meta, believed that the Stipulated Order incorporated and imposed the obligations reflected in the 2020 Administrative Order. To the contrary, the United States filed a consent motion stating that the Stipulated Order "requires [Meta] to *consent* to the reopening of the FTC's earlier administrative proceeding against it so the *FTC* can replace the 2012 Order with an Amended Order, which . . . contains substantial new compliance terms." Consent Mot., ECF No. 4 at 3. Moreover, both the consent motion and the district court stated that the Stipulated Order provides "significant injunctive relief, primarily in the form of an amended administrative order *that will be entered by the FTC*." *Id.* at 1; *see* Op. Granting Consent Mot., ECF No. 34 at 1 (similar).[7]

Remarkably, Meta seeks to distort this Court's observation in its 2020 Opinion entering the Stipulated Order that it might show less "deference" to a future "proposed resolution" if Meta

---

[7] The government has also noted there were *two* orders (a "Stipulated Order" and "Amended FTC Order") which operate "in conjunction" to allow the Department of Justice "to obtain information related to [Meta]'s privacy practices." ECF No. 28 at 14. This explains why the government cited the Stipulated Order in a discovery letter. *See* Mem. at 9.

"continued to violate the law or the terms of the amended administrative order." Op. Granting Consent Mot. at 16. This Court already explained what it meant by this: that the government could, for example, file a future civil penalties action against Meta for violating the 2020 Administrative Order, the same way the government "proceeded the first time." *See* Hr'g Tr. (Oct. 17, 2023) at 8:8-10:1; *see also id.* (the Court explaining that this excerpt from the 2020 Opinion was not intended to "say" or "imply" that the government must proceed as Meta now claims).

Finally, Meta's selectively quotes the word "incorporated" from its prior briefing. *See* Mem. at 11. The quoted sentence does not show that Meta believed its obligations under the 2020 Administrative Order were part of the Stipulated Order. Indeed, the remainder of that sentence noted the 2020 Administrative Order would become "final and effective upon the date of its publication on the Commission's website (ftc.gov) as a final order." *See* Meta's Surreply on Mot. to Intervene, ECF No. 29 at 7. Of course, terms that become effective after *Commission* action are part of an administrative order—not a judicial order.[8]

### 2.   Meta Forfeited The New Arguments It Intends To Raise On Appeal By Failing To Raise Them In Its Initial Motion to Enforce

Meta indicates that on appeal it will assert several new challenges not previously raised in its initial Motion to Enforce. Meta now claims that the Court—not the Commission—has jurisdiction over the 2020 Administrative Order, because: (1) the Court only entered the Stipulated

---

[8] Meta selectively quotes another district court, *see* Mem. at 11, noting that the 2020 Administrative Order "reflects a stipulation between the FTC and [Meta] in a judicial enforcement proceeding." *Facebook, Inc. v. Brandtotal Ltd.*, No. 20-cv-7182, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021). But that court went on to say that the 2020 Administrative Order "*resembles* a consent decree," suggesting that the judge did not in fact believe it was actually *part* of a consent decree. *Id.* Regardless, another judge in the same district reviewed a materially identical Stipulated Order between the FTC and a different party and reached the same conclusion as this Court. *See United States v. Twitter, Inc.*, No. 22-cv-03070, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023) (explaining the Stipulated Order at issue "literally . . . ordered [the defendant] to consent to the reopening of the FTC proceeding . . .", but it does not mean that the Administrative Order *became* a Court order" (emphasis in original)).

Order after finding that the entire settlement between the government and Meta was "fair, reasonable, and in the public interest," Mem. at 11-14; and (2) the Commission had "released all known claims against Meta," leaving no basis for administrative modification, *id.* at 16-17. Meta also asserts that (3) the Commission cannot further modify the 2020 Administrative Order, as the 2020 settlement resulted in a "contractual" modification by the Commission and not a statutory modification. *See id.* at 18-19.

As a preliminary matter, Meta forfeited these arguments by not raising them in its Motion to Enforce. "Absent exceptional circumstances, a party forfeits an argument by failing to press it in district court." *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019). Moreover, a veiled reference to an argument is not enough; a party also "forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work." *Id.* There is no excuse for Meta's failure. Meta is a sophisticated litigant. *See* Op. at 13. The government's briefing, if nothing else, alerted Meta that these issues were critical to its motion. *See, e.g.,* Merits Opp. at 10 (government arguing the Court's jurisdiction was "limited by the explicit terms of the parties' agreement"); *id.* at 24-26 (arguing "[t]he Commission may substantively modify its administrative orders"). Rather than raising these contentions, Meta forfeited them in favor of numerous others within its *70 pages* of briefing. Meta cannot take several more bites at the apple after all of its prior arguments were rejected. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, No. 16-mc-621, 2016 WL 11681577, at *2 (D.D.C. Sept. 30, 2016) ("A motion to stay a court order pending appeal is not a platform to relitigate an issue or preserve arguments that were not properly raised."); *see also Flynn v. Comm'r*, 269 F.3d 1064, 1069 (D.C. Cir. 2001) (explaining forfeiture "promotes efficiency and finality in the administration of justice). Having already forfeited these new arguments, Meta is unlikely to succeed by pursuing them on appeal. *See FTC v. Church &*

*Dwight Co.*, 756 F. Supp. 2d 81, 84 (D.D.C. 2010) (finding a failure to raise an argument on the merits raised "significant questions concerning [an appellant's] likelihood of success on appeal").

**3.    All Of Meta's New Arguments Also Fail On The Merits**

Even if Meta could properly raise new arguments at this late stage (it cannot), it would still be unlikely to succeed on appeal. All three of its new arguments lack merit.

*First*, Meta incorrectly claims that this Court retained jurisdiction to enforce the 2020 Administrative Order by finding that the entire settlement was "fair, reasonable, and in the public interest" before entering the Stipulated Order. *See* Mem. at 13-14. This argument plainly contravenes *Kokkonen* and its progeny. As this Court already explained, under *Kokkonen*, a federal court only retains jurisdiction to enforce settlement terms that are "made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Op. at 7-8 (quoting *Kokkonen*, 511 U.S. at 381). Moreover, "mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [an] order." *Id.* at 12 (quoting *Kokkonen*, 511 U.S. at 381). Thus, the Court's approval of the settlement did not divest the Commission of jurisdiction over its own administrative order.

Seeking to avoid this straightforward result, Meta claims *Kokkonen* has "limited application" here, as "*Kokkonen* involved a voluntary stipulation of dismissal . . . pursuant to a settlement between private parties" and "not a consent decree." Mem. at 11-14. But the D.C. Circuit has *already* applied *Kokkonen* to government consent decrees—including in a case cited by Meta's pending Motion. *See* Mem. at 14 (citing *Pigford I*, 292 F.3d at 918). Specifically, the D.C. Circuit has held that a court's jurisdiction to enforce a consent decree is "limited by the

explicit terms of the parties' agreement." *Pigford II*, 777 F.3d at 514.[9] Applying these principles, this Court properly reviewed the terms of the Stipulated Order and held that its "jurisdiction does not extend to Attachment A, or the terms of the FTC's 2020 Administrative Order." Op. at 12.

For essentially the same reason, Meta wrongly asserts that the Stipulated Order would be "imperiled by" a potential Commission modification to the 2020 Administrative Order. Mem. at 14. Again, this Court already explained that the parties negotiated their settlement "against a statutory backdrop" that allows the Commission to modify its administrative orders. Op. at 10; *see* 15 U.S.C. § 45(b). And neither the Stipulated Order nor the 2020 Administrative Order "expressly limit[] the FTC's statutory authority to modify its own administrative orders." Op. at 10. Thus, a modification to the 2020 Administrative Order would not imperil the Stipulated Order.

*Second*, Meta claims that the Commission could not have "independently" entered the 2020 Administrative Order, as the Court's "Stipulated Order had released all known claims against Meta," so there were "no claims remaining that the FTC alone could have resolved, even if it had the independent authority to do so." Mem. at 16-17. But, like the release, the proposed modification was expressly contemplated as part of the settlement between Meta and the Commission.[10] The Commission released Meta from certain claims that arose prior to June 2019. In exchange, Meta provided "consent" and "waiver of its rights" to contest the Commission replacing its 2012 Administrative Order with the modified 2020 Administrative Order as "set forth in Attachment A"

---

[9] Meta makes much of the fact that neither party cited *Kokkonen* in its briefing on the Motion to Enforce. *See* Mem. at 11. This is misleading: both the government and Meta cited *Pigford II*, in which the D.C. Circuit summarized and relied on *Kokkonen*.

[10] As this Court has explained, while "both sides" had "envisioned" that the Commission "would go through its normal process and enter the [administrative] order if [it] made the requisite [findings]," this does not mean that the Court "substantively order[ed] the contents of Attachment A" as part of the Stipulated Order. Hr'g Tr. (Oct. 17, 2023) at 3:5-5:16. Thus, this Court did not retain jurisdiction over those terms under *Kokkonen*. *See* Op. at 9.

to the Stipulated Order. *See* Stip. Order at 4. Attachment A explained that the proposed modification was intended to address certain "violations of the Federal Trade Commission Act." *See* ECF 35 at 9. Notably, the release executed by the Commission in no way precluded it from exercising its statutory authority to modify the 2012 Administrative Order, or indeed to seek to modify the 2020 Administrative Order in the future if necessary. In any event, Meta ignores that the Commission's show-cause proceeding relates to conduct that is outside of this release and aimed at prospectively protecting the public. *See* Order to Show Cause. There is no inconsistency between the Stipulated Order's release of claims and the Commission's continued authority to modify its own orders pursuant to the FTC Act.

*Third*, Meta contends that the Commission cannot modify the 2020 Administrative Order "without Meta's permission," as the previous modification was "contractual" and not pursuant to Section 5(b) of the FTC Act, 15 U.S.C. § 45(b). *See* Mem. at 18. This argument also fails. To begin, this Court has held that it lacks "jurisdiction over any claims that challenge the process through which" the Commission may modify the 2020 Administrative Order. Op. at 13.

Moreover, the FTC Act and FTC's Rules of Practice authorize the 2020 Administrative Order modification. Under the plain text of Section 5(b), the Commission has authority to modify "any" FTC administrative order, regardless of whether it resulted from a fully litigated case or a consent agreement. 15 U.S.C. § 45(b). While the Commission must provide a company with notice and an opportunity for hearing, *see id.*, Section 5(b) does not require the Commission to obtain a company's "permission" to modify an order, Mem. at 18.[11] Consistent with the plain meaning of Section 5(b), 16 C.F.R. § 2.32(c) contemplates identical treatment of orders regardless of how they

---

[11] Because Meta agreed to waive its procedural rights, it cannot now complain that it did not receive a statutory "hearing" before the modification. *See* Mem. at 18.

come about. That the Commission expressly preserved its ability to modify administrative orders resulting from settlement agreements "in the same manner" as other Commission orders, *see* 16 C.F.R. § 2.32(c), forecloses arguments like the one Meta is making now.

The Stipulated Order also reflects that both parties shared the same, plain-text understanding of the FTC Act. In connection with the proposed modification of the 2012 Administrative Order, Meta agreed to a "waiver of its rights under the show cause procedures set forth in Section 3.72(b) of the Commission's Rules of Practices, 16 C.F.R. § 3.72(b)." Stipulated Order at 4. That regulation uses language that is essentially identical to Section 5(b) of the FTC Act—the statutory basis for the Commission's administrative order modification authority—to allow the Commission to modify administrative orders due to "changed conditions of fact or law or the public interest," 16 C.F.R. § 3.72(b).

*      *      *

This Court properly rejected Meta's "attempts to retroactively characterize" the 2020 Administrative Order as part of the Stipulated Order. Op. at 6. Meta is unlikely to succeed on the merits of its appeal, and its request for an injunction pending appeal should be denied.

### B.   Meta Cannot Show It Will Suffer Irreparable Harm Absent An Injunction Because It Can Seek Judicial Review Of A Final, Adverse Commission Order

Meta's motion should also be denied because it cannot satisfy the "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). To obtain an injunction pending appeal, the alleged irreparable harm must be "both certain and great." *Id.* The harm must also be "beyond remediation." *Republican Nat'l Comm.*, 2022 WL 1604670, at *4. Meta cannot show it will suffer such harm absent an injunction.

Meta first claims it will suffer irreparable injury through "wasteful relitigation" before the Commission of an issue Meta contends was "finally" decided by this Court through the Stipulated

14

Order. *See* Mem. at 20-21. But "the expense and disruption of defending oneself in protracted adjudicatory proceedings is not irreparable harm." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134-35 (D.C. Cir. 2017); *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (similar).

Moreover, unlike in cases cited by Meta, no Court has fully adjudicated and "finally" decided the issue of jurisdiction in Meta's favor. *See, e.g., FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 19 (D.D.C.) (finding irreparable injury where a party "already had a full and fair opportunity to litigate" the issue that was subsequently raised "in another forum"), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007); *Thomas v. Albright*, 77 F. Supp. 2d 114, 123 (D.D.C. 1999) (similar), *aff'd*, 247 F.3d 260 (D.C. Cir. 2001). Indeed, the opposite is true. This Court ruled against Meta and found it lacks jurisdiction over the Commission's proceedings.

Meta also claims it will suffer irreparable harm because the Commission's administrative proceedings will allegedly violate the company's constitutional rights. *See* Mem. at 22-24. But the merits of Meta's injunction motion are devoted to the jurisdictional challenge it intends to raise on appeal—not to any constitutional challenge.[12] As this Court already explained, it is improper for Meta to "seek temporary relief on claims . . . [where] the court will have no occasion to finally adjudicate those claims on the merits." Op. at 16. Thus, Meta cannot demonstrate irreparable harm by raising "claims outside the jurisdiction retained by the Court under the Stipulated Order." *Id.*

Moreover, Meta has a statutory remedy for any potential adverse final decision by the Commission: a court of appeals may set aside any modification of the 2020 Administrative Order. *See* 15 U.S.C. § 45(b), (c). Accordingly, Meta will not suffer irreparable harm without an

---

[12] Those constitutional arguments have now been raised in the new district court proceeding before Judge Moss. In any event, Meta's constitutional arguments are baseless. Indeed, the Fifth Circuit recently rejected many of the same constitutional attacks on the FTC, finding them foreclosed by Supreme Court precedent. *See Illumina, Inc. v. FTC*, No. 23-60167, 2023 WL 8664628, at *3-4 (5th Cir. Dec. 15, 2023).

injunction. *See Chaplaincy*, 454 F.3d at 297-98 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm."); *John Doe Co.*, 849 F.3d at 1135 (holding "vacatur, even at the appeal-from-final-judgment stage, would fully vindicate" a company's rights).

### C.    The Balance Of The Equities And Public Interest Favor Allowing The Commission's Proceedings Designed To Protect Consumers To Continue

Finally, Meta fails to show that the equities and the public interest weigh in its favor. Virtually all of Meta's arguments regarding these factors are inextricably intertwined with the merits of the company's reading of the Stipulated Order—including the importance of protecting federal court jurisdiction, settlement agreements, and the finality of judgments, as well as stopping unlawful agency action. *See* Mem. at 24-26. This Court has rejected those arguments on the merits, and it should continue to do so for the reasons laid out in its November Opinion, this Opposition, and the United States' Opposition to Meta's Motion to Enforce.

The other equities Meta cites are equally unpersuasive. First, Meta complains that the Commission "waited years" before issuing the Order to Show Cause. *See* Mem. at 26. But the FTC can and should investigate and analyze relevant conduct before commencing new administrative proceedings. *See* Order to Show Cause at 3-9 (extensively describing FTC staff's investigatory findings). Meta also asserts there is no "serious" need to proceed now because the Commission has granted it previous extensions. *See* Mem. at 27. Those extensions were given to ensure this Court, the D.C. Circuit, and Judge Moss would have sufficient time and the benefit of full briefing to consider the federal court filings. Meta's filings in support of its various injunction requests alone amount to over 150 pages of briefing and 500 pages of supporting evidence. Also, Meta neglects to mention that it asked the Commission for multiple extensions, including two extra weeks to respond to this Court's November Opinion. *See* ECF No. 60.

Even if these equities somehow weighed in favor of temporarily enjoining the Commission's proceedings (they do not), harm would also flow from halting the proceedings, and the public will "benefit most from permitting [the proceedings] to continue." *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013). Indeed, the Supreme Court has emphasized that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Congress "directed [the FTC] to prevent" corporations from engaging in "unfair or deceptive acts or practices," 15 U.S.C. § 45(a), and it expressly empowered the Commission to protect consumers by modifying its prior orders where the public interest requires, *id.* § 45(b). Congress understood that an administrative order might prove insufficient to "stop the deception." *Elmo Co. v. FTC*, 389 F.2d 550, 552 (D.C. Cir. 1967). Congress thus authorized the Commission to modify administrative orders to protect the public. *See* 15 U.S.C. § 45(b).

The Commission's show cause order reflects this expert agency's concerns that Meta's recent conduct may put consumers' privacy at risk. *See* Order to Show Cause.[13] But Meta is again trying to stall Commission proceedings while it litigates its ever-evolving list of contentions before this Court, the D.C. Circuit, and Judge Moss. This Court should reject Meta's effort to further delay Commission proceedings, which could place consumers at risk. *See Republican Nat'l Comm.*, 2022 WL 1604670, at *5 (holding a movant failed to demonstrate the equities and public interest "tip[ped] sharply" in favor of an injunction pending appeal when the injunction would

---

[13] In another new argument, Meta claims the 2020 Administrative Order "specifies that in the event that Meta violates [the order's terms], . . . the public interest would be served not by changing any of its provisions, but by extending the time in which Meta is obligated to follow them." Mem. at 27. This provision does not preclude the Commission from exercising its statutory authority to modify the 2020 Administrative Order when necessary to protect the public. *Cf.* Op. at 10-11 (recognizing that "silence" is not "a waiver of the FTC's statutory right").

further "delay" and "interfere" with the "investigative efforts" of a "coordinate branch").

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to deny Meta's Motion to for Injunction Pending Appeal.

Dated: December 28, 2023

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

BRIAN M. BOYNTON (6971565)
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM (7248310)
Director
Consumer Protection Branch

LISA K. HSIAO (444890)
Assistant Director
Consumer Protection Branch

 */s/ Zachary L. Cowan*
ZACHARY L. COWAN (7579039)
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Washington, D.C. 20530
Tel: 202-353-7728
Fax: 202-514-8742
Zachary.L.Cowan@usdoj.gov