# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

              Plaintiff,

              v.

FACEBOOK, INC.,
a corporation,

              Defendant.

Case 1:19-cv-02184-TJK

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR INJUNCTION PENDING APPEAL**

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant*

# TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................3

    I.    Meta Has Presented Serious Questions for the Court of Appeals.......................3

        A.    Meta Has Raised Serious Questions about the Proper
             Interpretation of the Stipulated Order, Which Is a Consent Decree ...........3

        B.    There Are Serious Questions as to the Court's Application of
             *Kokkonen* ................................................................................................10

        C.    There Are Serious Questions about the FTC's Authority to Enter
             the Relief It Now Seeks Unilaterally to Modify .......................................13

        D.    There Are Serious Questions as to the FTC's Ability to Modify
             the Settlement ...........................................................................................15

    II.    Meta Will Suffer Irreparable Harm If the OTSC Is Not Enjoined
        Pending Appeal ...............................................................................................17

    III.    The Balance of Equities and Public Interest Favor an Injunction
        Pending Appeal ...............................................................................................20

CONCLUSION...............................................................................................................24

i

## TABLE OF AUTHORITIES

### Cases

PAGE(S)

*A.B.-B v. Morgan*,
548 F. Supp. 3d 209 (D.D.C. 2020) ........................................................ 17

*Air Line Pilots Ass'n v. Shuttle, Inc.*,
55 F. Supp. 2d 47 (D.D.C. 1999) ............................................................. 5

*Am. Sec. Vanlines, Inc. v. Gallagher*,
782 F.2d 1056 (D.C. Cir. 1986) .............................................................. 20

*Axon Enter., Inc. v. FTC*,
143 S. Ct. 890 (2023) .............................................................................. 19

*Blackmon-Malloy v. U.S. Capitol Police Bd.*,
575 F.3d 699 (D.C. Cir. 2009) ................................................................ 10

*Brill v. Wing*,
937 F. Supp. 170 (N.D.N.Y. 1996) ........................................................... 4

*Cemex Inc. v. Dep't of the Interior*,
560 F. Supp. 3d 268 (D.D.C. 2021) .......................................................... 9

*\*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........................................................... 2, 17

*Chisom v. Louisiana ex rel. Landry*,
85 F.4th 288 (5th Cir. 2023) .................................................................. 11

*Ciena Corp. v. Nortel Networks Inc.*,
2005 WL 1189881 (E.D. Tex. May 19, 2005) ....................................... 18

*\*Cigar Ass'n of Am. v. FDA*,
317 F. Supp. 3d 555 (D.D.C. 2018) ......................................... 2–3, 20, 23

*Clarian Health W., LLC v. Hargan*,
878 F.3d 346 (D.C. Cir. 2017) ................................................................ 10

*County of San Miguel v. Kempthorne*,
587 F. Supp. 2d 64 (D.D.C. 2008) ............................................................ 8

*Ctr. for Biological Diversity v. Zinke*,
260 F. Supp. 3d 11 (D.D.C. 2017) .......................................................... 16

*Dodocase VR, Inc. v. MerchSource, LLC*,
2018 WL 1475289 (N.D. Cal. Mar. 26, 2018) ....................................... 18

*Elmo Div. of Drive-X Co. v. Dixon,*
   348 F.2d 342 (D.C. Cir. 1965) ............................................................ 19

*\*Facebook, Inc. v. Brandtotal Ltd.,*
   2021 WL 2354751 (N.D. Cal. June 9, 2021) ...................................... 6–7

*Flynn v. Comm'r,*
   269 F.3d 1064 (D.C. Cir. 2001) .......................................................... 10

*FTC v. Cement Inst.,*
   333 U.S. 683 (1948) ............................................................................. 6

*FTC v. Church & Dwight Co.,*
   756 F. Supp. 2d 81 (D.D.C. 2010) ...................................................... 10

*\*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,*
   651 F.3d 1355 (Fed. Cir. 2011) .......................................................... 18

*Gov't of Manitoba v. Bernhardt,*
   923 F.3d 173 (D.C. Cir. 2019) ............................................................ 10

*\*In re Idaho Conservation League,*
   811 F.3d 502 (D.C. Cir. 2016) ............................................................ 11

*Keepseagle v. Perdue,*
   856 F.3d 1039 (D.C. Cir. 2017) .......................................................... 10

*\*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994) ..................................................................... *passim*

*\*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
   731 F.2d 909 (D.C. Cir. 1984) ............................................................ 20

*League of Women Voters v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016) ................................................................ 21

*Levelle, Inc. v. Scottsdale Ins. Co.,*
   539 F. Supp. 2d 373 (D.D.C. 2008) ....................................................... 4

*\*MediNatura, Inc. v. FDA,*
   2021 WL 1025835 (D.D.C. Mar. 16, 2021) ........................................ 1, 3

*Medley v. Dish Network, LLC,*
   958 F.3d 1063 (11th Cir. 2020) .......................................................... 16

*Murray v. City of Charleston,*
   96 U.S. 432 (1877) .............................................................................. 15

*\*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.,*
   25 F.4th 998 (Fed. Cir. 2022) ............................................................. 18

iii

*Pigford v. Veneman*,
    292 F.3d 918 (D.C. Cir. 2002) ................................................... 12

*Pigford v. Vilsack* (*Pigford II*),
    777 F.3d 509 (D.C. Cir. 2015) ............................................... 9, 12

*RE/MAX Int'l, Inc. v. Realty One, Inc.*,
    271 F.3d 633 (6th Cir. 2001) .................................................. 13

*\*RNC v. Pelosi*,
    2022 WL 1604670 (D.D.C. May 20, 2022) ..................................... 2

*Thomas v. Albright*,
    77 F. Supp. 2d 114 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260
    (D.C. Cir. 2001) ............................................................ 20–21

*United States v. Facebook, Inc.*,
    456 F. Supp. 3d 115 (D.D.C. Apr. 23, 2020) ................................... *passim*

*United States v. Facebook, Inc.*,
    2023 WL 8190858 (D.D.C. Nov. 27, 2023) ...................... 5, 10–11, 15–16

*\*United States v. J.B. Williams Co.*,
    498 F.2d 414 (2d Cir. 1974) .................................................. 21

*\*United States v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) ............................................... 7–8

*United States v. Twitter, Inc.*,
    2023 WL 8007994 (N.D. Cal. Nov. 16, 2023) ................................... 7

*\*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ................................................. 2

*Willis Re Inc. v. Herriott*,
    550 F. Supp. 3d 68 (S.D.N.Y. 2021) .......................................... 18

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ......................................................... 10

<u>Statutes & Rules</u>

15 U.S.C. § 45(b) ................................................................................14, 15, 17

15 U.S.C. § 45(c) ................................................................................... 6

15 U.S.C. § 45(l) ................................................................................... 13

16 C.F.R. § 2.32(c) ........................................................................... 15–16

Fed. R. Civ. P. 62 ............................................................................. 1–2, 20

<u>Other Authorities</u>

11 Williston on Contracts § 30:25 (4th ed.)................................................4–5

*In re Kogan*,
   2019 WL 3451723 (FTC July 24, 2019) ............................................. 6

*In re Nix*,
   2019 WL 3451725 (FTC July 24, 2019) ............................................. 6

Restatement (Second) of Contracts § 132 (1981) ........................................ 4

# PRELIMINARY STATEMENT[1]

Meta's appeal presents serious legal issues.  Its arguments are firmly grounded in binding precedent, and turn on, among other things, a plain-meaning interpretation of the FTC Act that is confirmed by the Commission's own regulations; fundamental principles of contract interpretation set forth in decades of D.C. Circuit law; the interpretation of a key term ("this Court") that this Court has recognized is ambiguous, and which the government seeks to give an unprecedented construction; the government's express concession made in the performance of the parties' obligations that the Stipulated Order incorporates Attachment A; and the holding of another court—construing the very order at issue—that Attachment A is part of the Stipulated Order.

For its part, the government does not attempt to explain why any of these arguments fails to give rise to a serious legal issue, let alone all of them.  Instead, the government argues that Meta is not likely to succeed on the merits of its claims, ignoring entirely that the standard for obtaining an injunction pending appeal is "more flexible than a rigid application of the traditional four-part standard applicable to granting a preliminary injunction."  *MediNatura, Inc. v. FDA*, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021); (*see* Opp. at 6, 8–9, 14, 16.)  Under Rule 62(d) and established Circuit precedent, this Court may grant an injunction pending appeal—even

---

[1] The D.C. Circuit has required that any procedural motions (including motions for injunction pending appeal) be filed in that court by **January 16, 2024**.  (See Order, D.C. Cir. No. 23-5280, Dkt. No. 2034470 (Jan. 4, 2024).)  The D.C. Circuit granted Meta's unopposed motion requesting that an extension of its initial January 8 deadline to afford this Court additional time to resolve this Motion.  (*See* Unopposed Motion for Extension of Time and Agreed Briefing Schedule, D.C. Cir. No. 23-5280, Dkt. No. 2034330 (Jan. 3, 2024).)

Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted, and defined terms have the meaning ascribed in Meta's moving brief in support of its Motion for Injunction Pending Appeal (Dkt. No. 65-1) ("Moving Brief" or "Br.").  The government's opposition to Meta's Moving Brief (Dkt. No. 67) is referred to as "Opposition" or "Opp."  Meta's Motion to Enforce the Stipulated Order and to Enjoin the Administrative Reopening Proceeding of the Federal Trade Commission (Dkt. No. 38) is referred to as "Motion to Enforce."

having ruled against Meta on the merits—as long as Meta raises a serious legal question on the merits and shows that the other three traditional factors (irreparable harm, balance of equities, and public interest) weigh in favor of relief.  *See* Fed. R. Civ. P. 62(d); *RNC v. Pelosi*, 2022 WL 1604670, at *3 (D.D.C. May 20, 2022) (Kelly, J.); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

The government avoids this standard by simply reciting the conclusions set out in this Court's decision denying Meta's Motion to Enforce.  It treats those conclusions as sufficient, without more, to show that an injunction pending appeal should also be denied.  For instance, it argues that Meta's claim that the Stipulated Order includes Attachment A must fail because this Court already concluded that the Stipulated Order does not include Attachment A.  (Opp. at 6.) But this is pure tautology.  It would read Rule 62(d) out of the Federal Rules, and ignores entirely that under the settled precedent in this Circuit, there are, at a minimum, serious questions whether the "Stipulated Order" is expressly defined to include the injunctive relief set out in Attachment A.

The same is true with respect to the other factors.  For example, the government's argument that Meta would not be irreparably harmed rests on little more than the fact that this Court denied Meta's Motion to Enforce.  But under D.C. Circuit precedent, irreparable harm must be assessed assuming that Meta will *prevail* on appeal—i.e., that this Court retains exclusive jurisdiction to modify the entire Stipulated Order, including Attachment A.[2]  Under that standard, the law (which the government ignores) is clear that being deprived of its bargained-for forum (this Court), bargained-for rules (the Federal Rules of Civil Procedure) and final judgment (the Stipulated Order) are elemental forms of irreparable harm.  And as to where

---

[2] *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006).

2

the public interest lies, the government "offer[s] no persuasive argument that there is an immediate public interest in enforc[ement] . . . rather than after a full hearing on appeal." *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 563 (D.D.C. 2018).

Accordingly, even though this Court denied Meta's Motion to Enforce, it should issue an injunction pending appeal. Meta has demonstrated a strong possibility that the D.C. Circuit will reach a different conclusion than did this Court and that being forced to litigate the OTSC during the pendency of its appeal would harm it irreparably. *See, e.g.*, *MediNatura*, 2021 WL 1025835, at *7 ("The principal reason for a district court to grant an injunction pending appeal based on a showing of less than a likelihood of success is to avoid the risk that the case will become moot before the court of appeals has a chance to disagree.").

## ARGUMENT

Meta has met the standard for an injunction pending appeal by raising serious questions about the merits of the Court's ruling—which the D.C. Circuit will review de novo—and showing that it would be irreparably harmed in the absence of an injunction pending appeal. The balance of equities and public interest also tip sharply in its favor.

## I.   META HAS PRESENTED SERIOUS QUESTIONS FOR THE COURT OF APPEALS

### A.   Meta Has Raised Serious Questions about the Proper Interpretation of the Stipulated Order, Which Is a Consent Decree

Whether the Court's retained jurisdiction over the Stipulated Order includes Attachment A is a serious question for the D.C. Circuit, for a number of reasons that the Opposition fails to contest.

First, "Stipulated Order" is defined to include Attachment A. The government's conclusory response ignores the actual definition. (Opp. at 7 n.5.) "Stipulated Order" is defined on page 1 as the document that the Court entered at Docket No. 35. (Dkt. No. 35 (Stip. Order) at

3

1 ("Plaintiff and Defendant stipulate *to the entry* of *this Stipulated Order* for Civil Penalty, Monetary Judgment, and Injunctive Relief ('Stipulated Order') to resolve the claims for civil penalties and injunctive relief set forth in the Complaint.").)  On a plain language reading alone, this definition includes Attachment A, as Attachment A is part of what the Court, in fact, entered. (Dkt. No. 35 (Stip. Order, Attach A).)  The Court entered the Stipulated Order as a single, integrated document.[3]  The government also ignores the very next clause, which expressly says what the Stipulated Order does, namely, "resolve the claims for civil penalties and injunctive relief *set forth in the Complaint*."  (Dkt. No. 35 (Stip. Order) at 1.)  The government has conceded in virtually identical language that Attachment A's "injunctive relief imposing new compliance terms" was a "main component" of the relief entered to "resolve a complaint filed in ***this Court*** by the United States."  (Dkt. No. 27 (Gov't Surreply) at 2; Dkt. No. 28 (Gov't Resp. to Amici) at 3.)  Without the "main component" of Attachment A, the Stipulated Order would not "resolve" the claims set forth in the Complaint.

The plain meaning construction of "Stipulated Order" is also consistent with other well-settled principles of contract law.  A stipulated order (like a contract) necessarily includes documents, like Attachment A, that are "physically attached" to it.  *Levelle, Inc. v. Scottsdale Ins. Co.*, 539 F. Supp. 373, 376 (D.D.C. 2008); *see also* Restatement (Second) of Contracts § 132 (1981) ("It is sufficient . . . that the party to be charged physically attaches one document to the other" for purposes of the statute of frauds).  Attachments "are an intrinsic part of the decree and are to be given the same effect as the main document."  *Brill v. Wing*, 937 F. Supp. 170, 175–76 (N.D.N.Y. 1996).  And even where documents are not physically "attached," when "a

_____

[3] So did the Commission when it posted the Stipulated Order on its own administrative docket.  Stipulated Order for Civil Penalty, Monetary Judgment, and Injunctive Relief, *In the Matter of Facebook, Inc.*, FTC Dkt. No. C-4365 (July 24, 2019), *available at* https://www.ftc.gov/system/files/documents/cases/182_3109_facebook_order_filed_7-24-19.pdf.

writing refers to another document, that other document . . . becomes constructively a part of the writing, and in that respect the two *form a single instrument*."  11 Williston on Contracts § 30:25 (4th ed.).  There are substantial arguments that Attachment A more than satisfies each of these standards.

Second, the government does not seriously dispute that Meta presents serious questions about the meaning and import of the very first "finding" in Attachment A—that "*[t]his Court* has jurisdiction over this matter." (Dkt. No. 35 (Stip. Order, Attach. A) at 1.)  The Court concluded that neither party's explanation for it was "persuasive"—i.e., that the phrase is ambiguous.[4] *United States v. Facebook, Inc.*, 2023 WL 8190858, at *5 (D.D.C. Nov. 27, 2023) (hereinafter "Decision").  In its Opposition, the government concedes that the Court was unable to conclusively resolve the meaning of this "curious" phrase.  (Opp. at 6.)  But it ignores the fact that this uncertainty alone gives rise to a serious, unsettled question for appeal.  If the Court of Appeals were to find that "[t]his Court" means this Court, that alone would be dispositive of the appeal and result in a reversal of the Court's ruling.

Moreover, as Meta argued before this Court and will argue before the Court of Appeals, that provision is "curious" only if Attachment A is severed from the Stipulated Order to which it is attached. (Br. at 9–10.)  It made perfect sense to say that "this Court has jurisdiction over this matter" if, as Meta contends, this Court's Stipulated Order includes Attachment A—such that the Court retains jurisdiction over Attachment A.  Referring to "this" Court is consistent with the document being filed first on this Court's docket.  Moreover, it is the only reading that renders

---

[4] The Court also speculated that "[t]his Court" could be a scrivener's error—a suggestion not raised in either party's briefing.  *Facebook, Inc.*, 2023 WL 8190858, at *5.  But there is no evidence of that, let alone the clear and convincing evidence required in this Circuit.  *Air Line Pilots Ass'n v. Shuttle, Inc.*, 55 F. Supp. 2d 47, 52 (D.D.C. 1999) (emphasis in original) ("The doctrine of scrivener's error, or *mutual* mistake, allows the reformation of a contract when clear and convincing evidence demonstrates that a mistake was made in the drafting of an instrument so that the written agreement fails to express the true agreement of the parties.").

consistency across the document:  court means court and Commission means Commission.  And the Court having jurisdiction is also consistent with the fourth finding of Attachment A that "the Commission waive[s] all rights to appeal or otherwise challenge or contest the validity of this Order."  (Dkt. No. 35 (Stip. Order, Attach. A) at 1.)  Only a district court order could give rise to an appeal (or any other challenge) by the FTC.  If, as the government contends, Attachment A were purely an administrative order, the Commission would have no such appellate "rights" to waive.  *See* 15 U.S.C. § 45(c).

The government now asserts that the Commission—apparently for the very first time in its history and in defiance of controlling Supreme Court precedent[5]—referred to itself as "this Court" and did so both in a document that includes "Commission" as a defined term otherwise used consistently and on the same day that it released two other orders involving other respondents that stated that "[t]he Commission" has jurisdiction.[6]  The far simpler explanation is that the parties intended "[t]his Court" to mean exactly what it says, in a filing with this Court, which both required this Court's approval prior to entry and that uses "Court" throughout to refer to **this** Court.

Third, the Opposition mischaracterizes the decision of the only other federal court to consider Attachment A, which held that its provisions were imposed by this Court:  "While the original 2012 version of the FTC order was issued unilaterally, the operative version issued on April 27, 2020 reflects a stipulation between the FTC and Facebook in a judicial enforcement proceeding . . . ."  *Facebook, Inc. v. Brandtotal Ltd.*, 2021 WL 2354751, at *8 (N.D. Cal. June 9, 2021).  The government argues that because the *Brandtotal* court also observed that Attachment

---

[5] *FTC v. Cement Inst.*, 333 U.S. 683, 703 n.12 (1948) ("The Commission is not a court.").

[6] *In re Kogan*, 2019 WL 3451723, at *1 (FTC July 24, 2019); *In re Nix*, 2019 WL 3451725, at *1 (FTC July 24, 2019).

A "resembles a consent decree," it somehow drew a distinction between a judicial order and administrative order.  (Opp. at 9 & n.8.)  That argument is meritless.  It ignores that the Court concluded that Attachment A "resembles a consent decree" in the same sentence in which it contrasted the parties' 2012 consent order, "issued unilaterally" by the FTC as an administrative order, with Attachment A, issued as a "stipulation between the FTC and Facebook in a judicial enforcement proceeding."  *Brandtotal*, 2021 WL 2354751, at *8.  The government cannot escape that *Brandtotal*—a case involving *the exact same* settlement[7]—held that Attachment A forms a part of the Stipulated Order.  That another court reached the opposite conclusion of this Court on an issue that is determinative of Meta's Motion to Enforce alone confirms that this is a serious issue for appeal.

Fourth, the government mischaracterizes this Court's opinion from 2020.  The government acknowledges this Court's conclusion that it "retains jurisdiction over this matter" and its caution that it may not be as deferential if the parties may "return to this Court" if the government "alleges—once again—that Facebook has reneged on its promises and *continued to violate the law or the terms of the amended administrative order*."  *United States v. Facebook, Inc.*, 456 F. Supp. 3d 115, 126 (D.D.C. Apr. 23, 2020) (citing *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995)).  However, the government contends that the Court was merely referring to the possibility that it could file another complaint in district court alleging violations of the injunctive provisions of Attachment A.  (Opp. at 8–9.)  But if the Court did not, in fact, retain jurisdiction over Attachment A, then there would be no basis for any such future complaint to be assigned to this Court.  Moreover, the Court's reference to *Microsoft*, and its

---

[7] The government's invocation of *Twitter*—a different case involving different parties and a different consent decree—is unavailing.  Among other differences, unlike Attachment A in this case, the Attachment A at issue in *Twitter* expressly stated that the FTC retained jurisdiction over the matter.  *United States v. Twitter, Inc.*, 2023 WL 8007994, at *6 (N.D. Cal. Nov. 16, 2023).

reliance on the experience and expertise of a district court judge who has "administered a consent decree for a period of time," and gained "familiarity" with the facts involved, 56 F.3d at 1461, would make no sense.  Nor would the Court's discussion of this scenario in the specific context of its "retain[ed] jurisdiction over this matter, including to enforce its terms."  *Facebook, Inc.*, 456 F. Supp. 3d at 126.

Fifth, the government has previously conceded the very issue dispositive of this case—that the Stipulated Order incorporates Attachment A—which is why, in its Opposition, it either ignores or distorts those admissions.  As it did in opposing the Motion to Enforce, the government avoids its prior briefing (from 2019 and 2020), in which it treated the Stipulated Order and Attachment A as a single, integrated document, and repeatedly represented to the Court that the Stipulated Order "imposes" the injunctive relief in Attachment A.  (*See* Dkt. No. 2 (Consent Mot.) at 1 ("*[t]he Stipulated Order . . . imposes significant injunctive relief, primarily in the form of an amended administrative* order that will be entered by the FTC."); *id.* at 4 ("The proposed settlement has two main components:  a civil penalty award and injunctive relief imposing new compliance terms on Facebook."); Dkt. No. 28 (Gov't Resp. to Amici) at 3 (same).)  The government does not attempt to explain how the Stipulated Order could—by its own admission—"impose" the relief in Attachment A without also incorporating it.  And, regardless, having maintained that the Stipulated Order's requirements and Attachment A's requirements were one and the same, the Commission is judicially estopped from arguing otherwise now.  *See County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 73 (D.D.C. 2008).

The government similarly ignores Meta's repeated representations to the Court in 2020 that Attachment A's requirements are the Stipulated Order's requirements.  Meta—like the

government—also maintained that "the proposed administrative decision and order [is] incorporated in the Stipulated Order."  (Dkt. No. 29 (Surreply) at 7; *see also* Dkt. No. 30 (Resp. Br.) at 14 ("The Stipulated Order carefully protects 'Covered Information' . . . ."); *id.* at 15 ("Section VII of the Stipulated Order requires Facebook to engage in annual comprehensive assessments . . . .").)  The government protests that these statements to the Court are "extrinsic evidence."  (Opp. at 7.)  But one of the government's own cases holds that "[i]n interpreting a settlement agreement, the use of aids to construction, including the circumstances surrounding the formation of the consent order, is permitted."  *Pigford v. Vilsack*, 777 F.3d 509, 514–15 (D.C. Cir. 2015) ("*Pigford II*").  There is no better—or more reliable—evidence of those circumstances than the parties' contemporaneous representations to the Court.

The government *has* finally acknowledged its June 30, 2022 letter addressing the relationship between the Stipulated Order and Attachment A.  (Opp. at 8 n.7 (citing Suppl. Rouhandeh Decl. Ex. R (June 30, 2022 Letter)).)  But that letter does more than merely reflect that the Stipulated Order and Attachment A operate "in conjunction."  *Id.*  The letter shows that "Meta's compliance with" the Stipulated Order requires it to comply with the provisions of Attachment A *because* Attachment A is incorporated in the Stipulated Order.  (*See* Suppl. Rouhandeh Decl. Ex. R (June 30, 2022 Letter).).  This letter is properly before the Court, moreover, because "courts may look to evidence of course of performance for interpretative assistance even when the contractual language contains no ambiguity."  *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 278–79 (D.D.C. 2021).  That the government agreed with Meta's position prior to the commencement of this litigation also confirms the seriousness of the issues for appeal, which include whether the Commission is estopped from taking an inconsistent position now.

9

B.      There Are Serious Questions as to the Court's Application of *Kokkonen*

The Court's application of *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) also presents a serious question for appeal.[8]

In its Decision, the Court concluded that its jurisdiction over the Stipulated Order does not extend to Attachment A, relying on *Kokkonen* for the proposition that "[t]he judge's mere awareness and approval of the terms of the settlement agreement [such as the ones set out in Attachment A] do not suffice to make them part of his order." *Facebook, Inc.*, 2023 WL 8190858, at *6 (citing *Kokkonen*, 511 U.S. at 381). But that language from *Kokkonen* has no application here. Here—unlike in *Kokkonen*—the Court engaged in a searching, substantive review of the parties' settlement. In a 17-page Memorandum Opinion, the Court carefully considered whether the Stipulated Order and its Attachment A were "fair, reasonable, and in the public interest" such that they could be reduced to judgment and entered as a consent decree. *Facebook, Inc.*, 456 F. Supp. 3d at 121.

The Court's explicit consideration of the injunctive provisions of Attachment A as an integral part of the consent decree that it approved as "fair, reasonable, and in the public interest"

---

[8] The government contends that this argument is new and thus unavailable on appeal, which is meritless since Meta repeatedly noted the significance of the Court's substantive review and approval of the parties' settlement in both briefs it submitted in support of its Motion to Enforce. (*See* Dkt. No. 38-1 (Mot. to Enforce) at 19–20, 25; Dkt. No. 53 (Reply on the Mot. to Enforce) at 9, 12–13, 15.) Regardless, it is well settled that parties may challenge on appeal arguments on which a district court relied. *See, e.g., Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707–08 (D.C. Cir. 2009). And, as a case cited by the government makes clear, it is up to the Court of Appeals, not the District Court, to determine whether an argument is properly preserved for appeal. *FTC v. Church & Dwight Co.*, 756 F. Supp. 2d 81, 84 (D.D.C. 2010). In any event, "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 358 (D.C. Cir. 2017) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)). The cases cited by the government reflect the doctrine that "issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017). Thus, under those cases, a party may forfeit a claim—as opposed to a specific argument in support of the claim—by not raising *any* argument in support of the claim. *See, e.g., Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (holding that plaintiff did not preserve direct injury theory of standing by failing to make any arguments in support of that theory in the district court); *Flynn v. Comm'r*, 269 F.3d 1064, 1069 (D.C. Cir. 2001) (finding forfeiture where the plaintiff failed to raise any arguments in the district court that the statute violated the nondelegation doctrine). Those cases have no application here.

10

is substantially different in kind from the judge's "mere awareness and approval" of a voluntary stipulation of dismissal in *Kokkonen*. Indeed, under settled precedent, the review the Court undertook here—at the government's request—is the hallmark of a consent decree. *See In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016). A district court can approve a consent decree only after the court has "satisf[ied] itself of the settlement's overall fairness to beneficiaries and consistency with the public interest." *Id.* And once approved, "the prospective provisions of the consent decree"—here, Attachment A—"operate as an injunction" issued by the district court. *Chisom v. Louisiana ex. rel. Landry*, 85 F.4th 288, 298 & n.37 (5th Cir. 2023) (citing cases).

In its Opposition, the government does not address why, if Attachment A is not a part of the Stipulated Order, it asked the Court to review Attachment A in assessing whether the Stipulated Order is "fair, reasonable, and in the public interest." In considering "whether the Stipulated Order is a reasonable resolution" of the case, the Court expressly considered the terms of Attachment A, noting that the "injunctive relief in the amended administrative order" is "[a]s important" as the $5 billion civil penalty. *Facebook, Inc.*, 456 F. Supp. 3d at 122–23; *see also id.* at 121 (reasoning that "the Stipulated Order reflects a compromise and includes benefits to both parties" and elaborating that "[t]he United States receives what it asserts is by far the largest civil money penalty ever obtained on behalf of the FTC . . . as well as extensive injunctive relief, described in more detail below"). In its recent Decision, the Court acknowledged that it "approved Attachment A insofar as it needed to satisfy itself of the settlement's overall fairness." *Facebook, Inc.*, 2023 WL 8190858, at *6. This review would not be necessary if the Stipulated Order were merely a voluntary stipulation of dismissal—or if Attachment A was not part of the Stipulated Order.

This treatment of Attachment A as part of the parties' overall settlement is sufficient, without more, to place the injunctive relief set out in Attachment A within the bounds of the consent decree ordered by the Court.  The Court's consideration of Attachment A as part of the Stipulated Order in finding it "fair, reasonable, and in the public interest," *Facebook, Inc.*, 456 F. Supp. 3d at 121, confirms that it is part of the Stipulated Order, and that the FTC's unilateral modification of Attachment A would both flout those findings and deny Meta its bargain.  (Br. 12–14 (citing *Kokkonen*, 511 U.S. at 380; *Pigford v. Veneman*, 292 F.3d 918, 925 (D.C. Cir. 2002)).)  *Pigford II*, relied upon by the government, is not to the contrary.  That case stands only for the uncontroversial and "well-established principle that a district court retains jurisdiction under federal law to enforce its consent decrees," but that such authority "is limited by the explicit terms of the parties' agreement." *Pigford II*, 777 F.3d at 514; *see also Pigford v. Veneman*, 292 F.3d at 925 ("Who would sign a consent decree if district courts had free-ranging interpretive or enforcement authority untethered from the decree's negotiated terms?").  On this point, the government argues that this Court already determined that the Court's express authority does not extend to Attachment A and that Attachment A can be modified by the Commission.  (Opp. at 11–12.)  But this is circular; it merely assumes away the very issue Meta seeks to raise on appeal.

Indeed, this is the other lesson of *Kokkonen*, which the government ignores entirely: While it is true that the Supreme Court in *Kokkonen* stated that "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order," the Court also instructed that a district court retains jurisdiction over even a voluntary stipulation of dismissal if the court's order includes "a provision 'retaining jurisdiction' over the

settlement agreement" or "incorporat[es] the terms of the settlement agreement."  511 U.S. at
381.

Here, the parties did both—a point the government does not address.  The Stipulated
Order included a provision retaining this Court's jurisdiction over its modification and
enforcement ***and*** incorporated the terms of Attachment A by including them in full.  (*See supra*
Point I.A.)  Attachment A also included a provision retaining this Court's jurisdiction over the
matter.  (*Id.*)  And as set out above, the Court stated in its Memorandum Opinion that it retained
jurisdiction "over this matter, including to enforce its terms."  *Facebook, Inc.*, 456 F. Supp. 3d at
126.  "Of course, the court may only enter subsequent orders involving the settlement agreement
if it has retained jurisdiction."  *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th
Cir. 2001) (finding that the district court retained jurisdiction over the settlement agreement "in
compliance with *Kokkonen*" where the "continued role for the court . . . was contemplated after
dismissal").  For the foregoing reasons, the Court's application of *Kokonnen* to the distinct
circumstances here raises serious questions for appeal.

C.     There Are Serious Questions about the FTC's Authority to Enter the Relief It Now
       <u>Seeks Unilaterally to Modify</u>

Through its Opposition, the government confirms that there are serious questions about
the Commission's ability to independently impose the relief set forth in Attachment A.

As Meta argued in its Motion to Enforce, only a district court had the authority to order
the injunctive relief in Attachment A.  That follows from two undisputed and indisputable facts.
First, the government's Complaint sought relief under two statutes authorizing only district
courts to impose relief.  (Dkt. No. 1 (Compl.) at ¶¶ 193–94 (citing 15 U.S.C. §§ 45(l) and
53(b)).)  Those statutes are also expressly invoked by the parties in the Stipulated Order (Dkt.
No. 35 (Stip. Order) at 1–2) and Attachment A (Dkt. No. 35 (Stip. Order, Attach. A) at 1).

Nothing in those documents invokes the Commission's administrative remedial authority under Section 5(b). Second, Attachment A's terms were imposed to resolve the Complaint. (Dkt. No. 35 (Stip. Order) at 1; Dkt. No. 27 (Gov't Surreply) at 2 (stating that the settlement "would resolve a complaint filed in *this Court* by the United States"); Dkt. No. 28 (Gov't Resp. to Amici) at 3 (stating that the "proposed settlement has two main components: a civil penalty award and injunctive relief imposing new compliance terms")).) That is why the government argued in 2019 and the Court concluded in 2020 that the Stipulated Order "impose[s]" those terms. (*See* Dkt. No. 2 (Consent Mot.) at 1; *Facebook, Inc.*, 456 F. Supp. 3d at 117, 120.) The Commission lacked any authority to independently impose the relief set out in Attachment A under those two statutes—and the government points to no legal authority that would permit an Article III court to cede its judicial power to a federal agency.

The government ignores the Commission's lack of authority under the statutes invoked in its Complaint. Rather, it argues—without support— that the Commission had "discretion" to enter Attachment A in its own administrative proceeding following the Court's entry of the Stipulated Order four days earlier. It did not. As the government acknowledges, entry of Attachment A in its agreed-upon form "was expressly contemplated as part of the settlement between Meta and the Commission." (Opp. at 12.) When the Court entered the Stipulated Order on April 23, 2020, Meta was legally obligated to pay $5 billion, and the Commission released all claims subject to the Stipulated Order's release. Under basic principles of contract law, the Commission had no choice but to implement the parties' settlement. As the government largely concedes, if the Commission had discretion to do anything other than enter the parties' agreed-upon (and Court-approved) terms, a "main component" of their settlement, that settlement would

have been wholly illusory and, in the words of the Supreme Court, "an absurdity." *Murray v. City of Charleston*, 96 U.S. 432, 445 (1877).

     D.     <u>There Are Serious Questions as to the FTC's Ability to Modify the Settlement</u>

Meta raised in its Motion to Enforce[9] and intends to raise on appeal the serious question whether the parties' 2019 agreement, in fact, incorporates "the FTC's statutory authority to modify its own administrative orders," as this Court concluded in November. *Facebook, Inc.*, 2023 WL 8190858, at *5. There are substantial arguments that the Commission's statutory authority does not, as a matter of law, apply to consent orders. The Commission can only modify orders if they were "issued on a litigated or stipulated record" or if the order provides that it can be modified. Attachment A meets neither requirement.

The government's response is to misquote and mischaracterize both the relevant statute (15 U.S.C. § 45(b)) and the Commission's own regulation (16 C.F.R. § 2.32(c)) interpreting that statute. First, the government wrongly asserts that Section 5(b) applies to "any" order. (Opp. at 13.) The statute says no such thing. Section § 5(b) provides that the Commission may "alter, modify or set aside . . . any report or order *made or issued by it under this section*." And it authorizes the Commission to issue cease and desist orders only "upon" administrative hearings. *Id.* The Commission construed this language decades ago, through formal rulemaking, and adopted a plain language reading determining that Section 5(b) provides for the alteration, modification, or setting aside only of "Commission orders issued on a litigated or stipulated record," as distinguished from consent orders. 16 C.F.R. § 2.32(c). To ensure that the Commission can modify consent orders, respondents must *agree* to make their consent orders modifiable "in the same manner" as Section 5(b) provides for litigated orders. *Id.* That

---

[9] *See* Dkt. No. 38-1 (Mot. to Enforce) at 25–26; Dkt. No. 53 (Reply on the Mot. to Enforce) at 14.

regulation reflects the Commission's recognition that its "statutory authority to modify its own administrative orders," *Facebook, Inc.*, 2023 WL 8190858, at \*5, does not extend to consent orders.  Rather, it effectuates "black-letter contract law" that consent is required before "one party to an agreement [can] unilaterally modify the agreement once it has been executed."  *See Medley v. Dish Network, LLC*, 958 F.3d 1063, 1070 (11th Cir. 2020).  There is no other reason for the rule, as the government concedes through its silence.  Second, the government simply asserts that Rule 2.32(c) "preserved" the Commission's ability to modify consent orders.  (Opp. at 14.)  But the government omits the operative part of the regulation.  That regulation allows the Commission to modify consent orders only when the parties' "***agreement . . . provide[s] that*** . . . [t]he order will have the same force and effect and may be altered, modified or set aside in the same manner provided by statute for Commission orders issued on a litigated or stipulated record."  16 C.F.R. § 2.32(c).  If the statute provided for modification of consent orders, the Commission would not have promulgated a rule that asks respondents to agree their consent orders can be modified "in the same manner provided by statute."  *Id.*  Indeed, the government has not pointed to *any* instance in which the Commission has modified a consent order that the respondent did not expressly agree could be modified.

Attachment A was not "issued on a litigated or stipulated record," and unlike the parties' 2011 agreement, the parties' 2019 agreement does not "provide that . . . [t]he order . . . may be altered, modified or set aside in the same manner provided by statute for Commission orders issued on a litigated or stipulated record."[10]  Thus, whether the Commission's "statutory

---

[10] On the contrary, it includes narrow provisions in Parts II and III setting forth two particular circumstances in which Attachment A could be modified.  *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 22 (D.D.C. 2017) ("It is well-settled that, when a legal text includes particular language in one section, but omits it in another section, courts may presume that the text's author acted intentionally and purposely in the disparate inclusion or exclusion.").

authority to modify its own administrative orders" applies to "any and all" orders (as the government now argues in a legal brief) or to "Commission orders issued on a litigated or stipulated record" is a serious issue for appeal.[11]

## II.   META WILL SUFFER IRREPARABLE HARM IF THE OTSC IS NOT ENJOINED PENDING APPEAL

Depriving Meta of its bargained-for forum and process for modification of the Stipulated Order and forcing it to relitigate a settlement agreement that was entered as this Court's consent decree will cause Meta irreparable harm. That Meta will be forced to litigate before its litigation adversary, and without the procedural protections inherent in federal court litigation, only compounds the harm. Harm of this nature cannot be undone after the fact. The government all but concedes these essential points.

First, and fundamentally, the government gets the applicable standard for assessing harm backwards. Binding precedent requires that irreparable harm must be assessed assuming that Meta will prevail on the merits of its appeal. *E.g.*, *Chaplaincy*, 454 F.3d at 303 ("Within the irreparable harm analysis itself—which assumes, without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law—we examine only whether that violation, if true, inflicts irremediable injury."); (Br. at 20 (citing *Chaplaincy*, 454 F.3d at 303 and *A.B.-B v. Morgan,* 548 F. Supp. 3d 209, 221 (D.D.C. 2020).) The government ignores these precedents, and instead argues that Meta will not suffer irreparable harm because

---

[11] Rather than respond to this argument—the one Meta actually made—the government focuses its opposition on debating whether the "2020 settlement resulted in a 'contractual' modification by the Commission and not a statutory modification," (Opp. at 10), and what rights Meta did or did not waive when the Commission entered Attachment A in 2020. (Opp. at 13–14.) Unlike the OTSC, which seeks to modify Attachment A over Meta's objection, the Stipulated Order set forth the specific modifications to which the parties agreed. (Dkt. No. 35 (Stip. Order, Attach. A) at 5–6.) When the Commission entered Attachment A on April 27, 2020 its order did not invoke (or even cite) Section 5(b); it expressly stated that its modification was pursuant to Meta's "consent[]" reflected in the Court's entry of the Stipulated Order. (Rouhandeh Decl. Ex. I (Apr. 27, 2020 FTC Order Modifying Prior Decision and Order) at 1.)

no court has yet ruled in Meta's favor on the merits.  (Opp. at 15.)  But assessing irreparable

harm based on a presumption that Meta may *not* prevail on appeal would itself be clear error.

When reviewed under the correct standard, the government's arguments on irreparable

harm collapse.  Courts routinely conclude that a party suffers irreparable harm by being forced to

litigate in a forum other than the one it bargained for.  (Br. at 20–21 (collecting cases).)  For

example, in *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir.

2022), the Federal Circuit reversed a district court's denial of a preliminary injunction, holding

that being "deprived of its bargained-for choice of forum" constitutes irreparable harm even

though no court had fully and finally adjudicated the issue of forum selection in its favor (and, as

here, the district court ruled against it).  *Id.*  The many other cases Meta cited in its opening

brief—and which the government simply ignores—reach the same conclusion.  *E.g.*, *Gen.*

*Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363–64 (Fed. Cir. 2011); *Dodocase VR,*

*Inc. v. MerchSource*, LLC, 2018 WL 1475289, at *11 (N.D. Cal. Mar. 26, 2018); *Ciena Corp. v.*

*Nortel Networks Inc.*, 2005 WL 1189881, at *7 (E.D. Tex. May 19, 2005).

The point of these cases—and the many others applying the same principle—is that a

litigant such as Meta is irreparably harmed by litigation in the improper forum because "if

litigation is permitted to proceed in a second forum, the benefit of a forum selection clause is

irreparably lost."  *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 97–98 (S.D.N.Y. 2021) (finding

that "dragging Plaintiffs into litigation in a court other than the court for which they bargained

constitutes irreparable harm").  And the harm to Meta of being forced to litigate before the FTC

is particularly serious.  The government fails to dispute—and thus apparently concedes—that

litigation before the FTC will strip Meta of numerous protections that are inherent in federal

court litigation.  (Br. at 22.)  The government's only response to these arguments is that Meta's

18

"constitutional challenge" is raised in a different proceeding.  (Opp. at 15.)  Whether the FTC is

unconstitutionally structured is at issue before the Honorable Randolph D. Moss.  At issue here

is the harm to Meta of being deprived of its bargained-for forum and dispute resolution process

as the Court of Appeals considers its entitlement to that forum and process de novo.  That harm

exists regardless of whether the FTC's structure passes constitutional muster and is particularly

pronounced here because "the loss of a day in court in favor of one before an agency" is no

"small thing."  *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 215 (2023) (Gorsuch, J. concurring).

      The government's final argument—that Meta can seek review of the FTC's decision in

the OTSC Proceedings (Opp. at 15–16)—fails for the same reason.  Right to appellate review of

an adverse decision is a commonplace feature of litigation in nearly every forum, whether in

federal or state court, or before an administrative agency.  But courts nonetheless conclude that

litigation in a forum other than the bargained-for one constitutes irreparable harm, and the

government cites *no case* holding that the availability of appellate review from the incorrect

forum somehow alleviates such harm.  Indeed, the D.C. Circuit has specifically and soundly

rejected the argument that judicial review after an FTC proceeding is sufficient where the party,

like Meta here, asserts that the proceeding itself is not permitted by a prior settlement. *Elmo Div.

of Drive-X Co. v. Dixon*, 348 F.2d 342, 344 (D.C. Cir. 1965) ("The prospect of ultimate appellate

review of any final order issuing out of the new complaint proceeding is not adequate.")   .

      If the OTSC Proceeding is not enjoined during the pendency of its appeal, Meta will be

forced to litigate before the Commission, not in federal court as it bargained for, and without the

bargained-for procedural protections of federal court litigation.  Developments in the OTSC

Proceedings would irreparably alter the parties' positions and deprive Meta of the benefit of its

bargain, even if the D.C. Circuit ultimately halts and vacates the OTSC Proceedings (as must be

assumed when assessing irreparable harm)—all in a case that poses significant consequences for Meta and its business.

## III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION PENDING APPEAL

Finally, the public interest and balance of equities weigh heavily in favor of an injunction.

The government does not bother to engage with any of the substantial public interests that strongly support provisional relief.  Instead, the government dismisses them as having been rejected by this Court in its Decision.  Not so, but also irrelevant, in yet another example of the government ignoring the applicable legal standard under Rule 62.  The question on this motion is where the balance of equities and public interest lie as the Court of Appeals considers this Court's ruling de novo.  There is no "immediate public interest" in allowing the FTC to go forward with the administrative proceeding ***now***, "rather than after a full hearing on appeal." *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 558, 563 (granting Rule 62 injunction pending appeal, in part, because "Plaintiffs' interest in staying the impending compliance date outweighs the minimal burden placed on [the FDA] to delay its enforcement").

The government cannot dispute that each of the strong public interests repeatedly cited by the D.C. Circuit and described in Meta's opening brief—that "[c]ourts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants," *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984); that courts must "favor voluntary settlements of litigation," *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986), that "public interest favors finality" of settlements and judgments, *Thomas v. Albright*, 77 F. Supp. 2d 114, 124 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001); and that there is "no public interest in

the perpetuation of unlawful agency action," *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)—all weigh heavily in Meta's favor.

In sharp contrast, the government's generic invocation of the public interest in enforcement is inapplicable here for multiple reasons. Indeed, the Commission's years-long course of conduct undermines any suggestion that the public interest would be impaired by the maintenance of the status quo during the pendency of Meta's appeal.

First, the government argues that "Congress understood that an administrative order might prove insufficient to 'stop the deception.'" (Opp. at 17.) But whatever the merits of that argument in the abstract, it has no application here. This is not a matter where the underlying allegedly deceptive practice continued after the entry of the Commission order, and the Commission does not claim otherwise. The OTSC cites no "deception" that has begun since Attachment A was entered, and no continuation of any deceptive practice alleged in any prior proceeding. Rather, as the Commission itself has made clear before Judge Moss, the OTSC is predicated on the Commission's belief "that Meta failed to establish and implement an effective privacy program as required under the 2020 order and also violated the 2012 order." (*Meta Platforms, Inc. v. FTC*, No. 23-cv-3562 (D.D.C. Dec. 13, 2023); Dkt. No. 18 (Opp. and Mot. to Dismiss) at 1; OTSC at 11–12.)

Second, even if true, the government's assertion would carry little weight in assessing the public interest. Congress only "vested the FTC with power . . . to make orders," not the power "to determine whether they have been violated." *United States v. J.B. Williams Co.*, 498 F.2d 414, 422 (2d Cir. 1974). Indeed, when compliance with its orders is at issue, the Commission cannot be "judge as well as prosecutor." *Id.* at 429.

Third, the text of Attachment A precludes the government's argument that maintaining the existing terms during the pendency of the appeal "may put consumers' privacy at risk." (Opp. at 17.)  The government does not and cannot dispute that Part XVI of Attachment A reflects the Commission's judgment that in the event of an order violation so material that it would warrant the filing of a federal court complaint (which Commission has not done here), the public interest would be served *by preserving Attachment A's existing terms*.[12]  The government's only response is that Part XVI "does not preclude" the Commission from seeking modification.  (Opp. at 17 n.13.)  But that is a non sequitur.  The Commission made a considered judgment (with this Court's approval) that if Meta were to violate Attachment A, the public interest would be served not by changing any of its provisions, but by extending the time in which Meta is obligated to follow them.  There is thus no basis for the Commission to argue that the public interest would be impaired by maintaining those terms in place while the D.C. Circuit resolves Meta's appeal.  The Commission has already determined otherwise.

Finally, the government acknowledges the Commission's lengthy delay in bringing the OTSC based on years-old facts, which further undermines any argument that the public interest would be impaired by maintaining that status quo marginally longer.  (Opp. at 16–17.)  The government's attempted explanation—pointing to the Commission's investigation—is makeweight.  (*Id.*)  By the Commission's own admission, Meta voluntarily "notified the FTC" of the conduct it claims violated the 2012 Order on July 15, 2019[13] *before* the FTC finalized its settlement with Meta, nearly a year before Attachment A was entered, and nearly *four years*

---

[12] Dkt. No. 35 (Stip. Order, Attach. A) at 20–21 (providing that "[t]his Order will terminate 20 years from the date of its issuance, or 20 years from the most recent date that the United States or the Commission files a complaint . . . in federal court alleging any violation of this Order, whichever comes later").

[13] Preliminary Finding of Facts in Support of the Order to Show Cause, *In the Matter of Facebook, Inc.*, FTC Docket. No. C-4365 (May 3, 2023) at ¶¶ 1153, 1164 ("PFOF"), *available at* https://www.ftc.gov/system/files/ftc_gov/pdf/c4365facebookpreliminaryfofpublic.pdf.

before the FTC issued the OTSC.  Similarly, Meta remediated and disclosed the conduct the Commission alleges violated Part I of the 2020 Order by June 29, 2020 (PFOF ¶ 1095), nearly three years before issuing the OTSC.  Even as to the most recent conduct—the initial Assessment of Meta's Privacy Program *between October 2020 and April 2021*—the Commission waited nearly two years from its receipt of the report to bring the OTSC in May 2023.  (*Id*. ¶ 19.)  By this point, the *newest* facts are nearly three years old.  Likewise, the Opposition does not answer why, if the Commission was willing to agree to an indefinite extension of Meta's OTSC response deadline, including to ensure "the D.C. Circuit . . . would have sufficient time and the benefit of full briefing to consider the federal court filings," (Opp. at 16), it is unwilling to do precisely that now.

The Commission's entire course of conduct belies any argument that the public interest would suffer from maintaining the status quo while the D.C. Circuit examines Meta's appeal anew.  The government "offer[s] no persuasive argument that there is an immediate public interest in enforc[ement] . . . rather than after a full hearing on appeal." *See Cigar Ass'n of Am.* 317 F. Supp. 3d at 563.

## CONCLUSION

For the reasons set out herein, Meta respectfully requests that this Court enjoin the OTSC

Proceeding pending resolution of its appeal.

Dated:   January 5, 2024                            Respectfully submitted,

                                                    /s/  James P. Rouhandeh
                                                    James P. Rouhandeh (DDC Bar No. NY0390)
                                                    Michael Scheinkman (DDC Bar No. NY0381)
                                                    David B. Toscano (pro hac vice)
                                                    John A. Atchley III (pro hac vice)
                                                    DAVIS POLK & WARDWELL LLP
                                                    450 Lexington Avenue
                                                    New York, NY 10017
                                                    Tel: (212) 450-4000
                                                    rouhandeh@davispolk.com
                                                    michael.scheinkman@davispolk.com
                                                    david.toscano@davispolk.com
                                                    john.atchley@davispolk.com

                                                    Paul J. Nathanson (DDC Bar No. 982269)
                                                    DAVIS POLK & WARDWELL LLP
                                                    901 15th Street, NW
                                                    Washington, DC 20005
                                                    Tel: (202) 962-7000
                                                    paul.nathanson@davispolk.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2024, true and correct copies of the foregoing were filed using the Court's CM/ECF System and served on counsel of record.


DATED: January 5, 2024                      Respectfully submitted,

*/s/ James P. Rouhandeh*

James P. Rouhandeh (DDC Bar No. NY0390)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
rouhandeh@davispolk.com