**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

               Plaintiff,

       v.

FACEBOOK, INC.,
a corporation,

               Defendant.

Case No. 1:19-cv-02184-TJK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S RENEWED MOTION TO ENFORCE THE STIPULATED ORDER
AND TO ENJOIN THE FTC'S ADMINISTRATIVE REOPENING PROCEEDING**

# TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL HISTORY .................................................................................................... 4

ARGUMENT ....................................................................................................................... 6

I.     The FTC Lacks Jurisdiction To Modify Attachment A Because this Court's Jurisdiction Is Exclusive ......................................................................................... 6

II.    The FTC Cannot Modify Terms Imposed by this Court's Judgment .............................. 10

III.   Meta Is Entitled to an Injunction ...................................................................... 13

      A.    An Injunction Is Required To Protect the Court's Jurisdiction .............................. 14

      B.    In any Event, the Traditional Injunction Factors Are Satisfied .............................. 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 446 v. Nicholson*,
475 F.3d 341 (D.C. Cir. 2007) ................................................................ 11

*Axon Enter. Inc. v. SEC*,
598 U.S. 175 (2023) ................................................................................ 16

*Bank Markazi v. Peterson*,
578 U.S. 212 (2016) ................................................................................ 11

*Battle v. Liberty Nat. Life Ins. Co.*,
877 F.2d 877 (11th Cir. 1989) ................................................................. 8

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) .......................................................................... 3, 12

*Chicago & S. Air Lines v. Waterman S. S. Corp.*,
333 U.S. 103 (1948) ......................................................................... 11, 15

*Ciena Corp. v. Nortel Networks Inc.*,
2005 WL 1189881 (E.D. Tex. May 19, 2005) ...................................... 17

*Crumpton v. Bridgeport Educ. Ass'n*,
993 F.2d 1023 (2d Cir. 1993) ................................................................ 13

*DeNardo v. Murphy*,
781 F.2d 1345 (9th Cir. 1986) ............................................................... 13

*Dodocase VR, Inc. v. MerchSource, LLC*,
2018 WL 1475289 (N.D. Cal. Mar. 26, 2018) ...................................... 17

*Doe v. Mattis*,
928 F.3d 1 (D.C. Cir. 2019) ................................................................... 16

*EEOC v. Morgan Stanley & Co.*,
256 F.R.D. 124 (S.D.N.Y. 2004) ............................................................ 9

*\*FDIC v. Bank of N.Y.*,
479 F. Supp. 2d 1 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007) ...................... 14, 15, 16

*Flanagan v. Arnaiz*,
143 F.3d 540 (9th Cir. 1998) ................................................................... 8

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004) ................................................................................ 10

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    651 F.3d 1355 (Fed. Cir. 2011) ........................................................ 17

*Gomez v. Biden*,
    2021 WL 1037866 (D.D.C. Feb. 19, 2021) ...................................... 14

*Horton v. Metro Life Ins. Co.*,
    2006 WL 8441763 (M.D. Fla. Sept. 1, 2006).................................... 15

*In re Islamic Republic of Iran Terrorism Litig.*,
    659 F. Supp. 2d 31 (D.D.C. 2009) .................................................. 12

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004) ........................................... 4, 13, 14

*Kremer v. Chemical Constr. Corp.*,
    456 U.S. 461, 467 n.6 (1982) .......................................................... 12

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ........................................................ 14

*Magnolia v. Conn. Gen. Life Ins. Co.*,
    157 F. Supp. 2d 583 (D. Md. 2001) .................................................. 8

*Meta Platforms, Inc. v. FTC*,
    723 F. Supp. 3d 64 (D.D.C. 2024) .................................................... 5

*Miller v. French*,
    530 U.S. 327 (2000) ........................................................................ 11

*Morris v. Travisono*,
    509 F.2d 1358 (1st Cir. 1975) ........................................................ 13

*Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*,
    595 U.S. 109 (2022) ........................................................................ 11

*Nehmer v. U.S. Dep't of Veterans Affairs*,
    494 F.3d 846 (9th Cir. 2007) .......................................................... 13

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
    25 F.4th 998 (Fed. Cir. 2022) ........................................................ 17

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................ 16

*N. Mariana Islands v. United States*,
    686 F. Supp. 2d 7 (D.D.C. 2009) .................................................... 17

*PETA v. U.S. Dep't of HHS*,
    901 F.3d 343 (D.C. Cir. 2018) ........................................................ 12

*Petoskey Inv. Grp., LLC v. Bear Creek Tp.*,
  2005 WL 1796130 (W.D. Mich. July 27, 2005) ........................................................ 8

*\*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995) ............................................................................ 10, 11, 16

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ..................................................................... 17

*Rohe v. Wells Fargo Bank, N.A.*,
  988 F.3d 1256 (11th Cir. 2021) .................................................................... 13, 14

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
  800 F. Supp. 2d 182 (D.D.C. 2011) .................................................................. 12

*Scardelletti v. Rinckwitz*,
  68 F. App'x 472 (4th Cir. 2003) ...................................................................... 14

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ................................................................................... 7

*Stern v. Marshall*,
  564 U.S. 462 (2011) ............................................................................. 3, 7, 8

*\*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002) ............................................................................. 4, 13, 14

*Thomas v. Albright*,
  77 F. Supp. 2d 114 (D.D.C. 1999),
  *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001) ...................... 15, 17

*United States v. ASCAP*,
  442 F.2d 601 (2d Cir. 1971) ........................................................................... 8

*United States v. Dist. of Columbia*,
  654 F.2d 802 (D.C. Cir. 1981) ....................................................................... 15

*\*United States v. Facebook*,
  136 F.4th 1129 (D.C. Cir. 2025)................................................................. *passim*

*United States v. Facebook*,
  2023 WL 8190858 (Nov. 27, 2023) ............................................................ *passim*

*United States v. N.Y. Tel. Co.*,
  434 U.S. 159 (1977) ................................................................................. 14

*United States v. Thorpe*,
  148 F.4th 768 (D.C. Cir. 2025) ..................................................................... 3, 11

*U.S. ex rel. Schweizer v. Oce N.V.*,
  677 F.3d 1228 (D.C. Cir. 2012) ...................................................................... 13

iv

*Washington Metro. Area Transit Auth. v. Loc. 689, Amalgamated Transit Union*,
    113 F. Supp. 3d 121 (D.D.C. 2015) ................................................................. 16

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................ 16

*Yamaha Corp. of Am. v. United States*,
    961 F.2d 245 (D.C. Cir. 1992) ........................................................................ 12

### STATUTES & RULES

Fed. R. Civ. P. 60(b) .......................................................................... 3, 12, 17

Loc. Civ. R. 7(f) ........................................................................................... 1

### OTHER AUTHORITIES

Alexander Hamilton, *The Federalist No. 78* (C. Rossiter ed. 1961) ............................. 7

Brief of Defendant-Appellee United States, *Trudeau v. United States*,
    2006 WL 422417 (Fed. Cir. Jan. 31, 2006) ..................................................... 9

20 Wright & Miller, *Fed. Prac. & Proc* § 104 (2d ed. 2025) .................................. 10

11A Wright & Miller, *Fed. Prac. & Proc.* § 2962 (3d ed. 2025) ............................. 6

Defendant Meta Platforms, Inc. ("Meta")—previously, Facebook, Inc.—respectfully submits this memorandum of law in support of its renewed motion to enforce this Court's Stipulated Order dated April 23, 2020, and to enjoin the administrative proceeding that the Federal Trade Commission ("FTC") brought against Meta by order to show cause dated May 3, 2023 (the "OTSC"). Meta moved on May 31, 2023.[1] The motion was denied on November 27, 2023, and the D.C. Circuit reversed the denial on May 16, 2025. In renewing its motion now, Meta hereby incorporates by reference all arguments it previously advanced in support of the motion,[2] except the structural constitutional challenges that are now being litigated in a separate action.[3] Meta respectfully requests oral argument on its motion pursuant to Local Civil Rule 7(f).

## PRELIMINARY STATEMENT[4]

In its decision last May, the D.C. Circuit resolved what it called the "central question" in this case: whether Attachment A, which the FTC seeks to rewrite, "was part of the Stipulated Order" entered by this Court.[5] The D.C. Circuit definitively answered that question, holding that this Court "directly imposed" and "retained jurisdiction" over "the terms of the amended administrative order in Attachment A."[6] And the D.C. Circuit unequivocally rejected the

---

[1] *See* Dkt. No. 38.

[2] *See* Dkt. No. 38-1; Dkt. No. 53; Dkt. No. 57.

[3] *See Meta Platforms, Inc. v. FTC*, No. 1:23-cv-3562-RDM (D.D.C.).

[4] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted, and defined terms have the meaning ascribed in Meta's moving brief in support of its Motion to Enforce (Dkt. No. 38-1) ("Moving Brief" or "Br.").

[5] *United States v. Facebook*, 136 F.4th 1129, 1132 (D.C. Cir. 2025).

[6] *Id*. at 1134.

government's position that the FTC had entered Attachment A on its docket as a "distinct" administrative order outside this Court's jurisdiction.[7]

This Court previously and correctly explained that "to the extent I have jurisdiction [over Attachment A], it has to be exclusive," emphasizing that "the question" was whether Attachment A "is part of" the Stipulated Order.[8]  The D.C. Circuit has now answered that dispositive question in the affirmative, and its answer requires permanently enjoining the FTC's unlawful attempt to usurp this Court's jurisdiction by amending its final judgment through an administrative proceeding.  The FTC cannot exercise jurisdiction this Court retained nor modify injunctive relief this Court imposed.

*First*, as this Court has recognized, its jurisdiction over the Stipulated Order's terms is necessarily exclusive.  This Court retained jurisdiction "for purposes of construction, modification, and enforcement of this Stipulated Order,"[9] and the D.C. Circuit has made clear, among other things, that because the "Stipulated Order included Attachment A, the district court retained jurisdiction over both documents."[10]  This Court's retention of jurisdiction to modify Attachment A excludes the possibility that the FTC can also modify it, as this Court correctly foreshadowed at oral argument.[11]  This reasoning rests on the bedrock separation of powers principle that Article III jurisdiction "can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with

---

[7] *Id*. at 1132–33.

[8] Dkt. No. 57 at 10:7–13.

[9] Dkt. No. 35 at 5.

[10] *Facebook*, 136 F.4th at 1135.

[11] Dkt. No. 57 at 10:9–13 ("I don't see a world in which—if [Attachment A] is part of my order— … I could amend it and we can have a part of the federal … executive branch amending it, as well.").

the Judiciary the power to override a Presidential veto."[12]  This reasoning also echoes well-established precedent holding that a district court's retained jurisdiction over a consent decree is necessarily exclusive.

*Second*, the FTC may not modify a final judgment entered by an Article III court.  The D.C. Circuit has now held that Attachment A's injunctive relief was a part of, and imposed by, this Court's final judgment.  The FTC's proceeding is thus barred by separation of powers and by fundamental principles of finality, including res judicata.  Separation of powers not only precludes another branch from sharing Article III jurisdiction, but also prevents an administrative agency from modifying an Article III judgment.[13]

As to res judicata, this Court previously reasoned that Attachment A was not a "'final judgment' with res judicata effect" because it was "not ordered by the Court at all."[14]  The D.C. Circuit's holding that Attachment A's terms *are* part of this Court's final judgment necessarily means that they have res judicata effect.  "Rule 60(b)'s standard—and *only* Rule 60(b)'s standard— … applies when a party seeks relief from final judgment."[15]  Under Rule 60(b), only "the court" can modify its judgment, and a party to the case obviously cannot.

*Third*, injunctive relief is warranted to prevent the FTC's unlawful proceeding from invading this Court's jurisdiction and modifying this Court's final judgment.  Courts have a duty to exercise their jurisdiction to protect their authority and to vindicate their judgments.  A party need only "simply point to some ongoing proceeding, or some past order or judgment, the

---

[12] *Stern v. Marshall*, 564 U.S. 462, 483 (2011).

[13] *United States v. Thorpe*, 148 F.4th 768, 776 (D.C. Cir. 2025).

[14] *United States v. Facebook*, 2023 WL 8190858, at *6 n.3 (Nov. 27, 2023).

[15] *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 214 (2025) (emphasis in original).

integrity of which is being threatened."[16]  The party need not wait for a threat to materialize into a rival order; on the contrary, as the Supreme Court instructed, it should immediately "apply to the court that approved a settlement for an injunction requiring ***dismissal*** of a rival action,"[17] as Meta did here.

The government conceded as much before the D.C. Circuit.  When Judge Walker asked the government to "imagine we disagree with you and we find that the court did retain jurisdiction," and observed that "I think at that point an injunction would be appropriate," the government readily agreed: "I think there are similar cases where the court [has] enjoined under those circumstances, yes."[18]  The government was correct then and has no legal basis to reverse course now.  The D.C. Circuit has spoken and concluded that this Court did impose, and retains jurisdiction over, Attachment A.  An injunction is now necessary to protect this jurisdiction, to enforce the Stipulated Order, and to protect the parties' bargain that this Court solemnized in a final Article III judgment.

**PROCEDURAL HISTORY**[19]

On May 31, 2023, Meta moved this Court to enforce the Stipulated Order, arguing that the OTSC violated the exclusive jurisdiction that this Court expressly retained over the Stipulated Order.  This Court denied Meta's motion on November 27, 2023, determining that the

---

[16] *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004).

[17] *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 at n.* (2002).

[18] Rouhandeh Decl. Ex. A (Nov. 5, 2024 Transcript of Oral Argument) at 36:2–6.  Citations to "Rouhandeh Decl. Ex. A" refer to the Exhibit annexed to the Declaration of James P. Rouhandeh in Support of Defendant's Renewed Motion To Enforce the Stipulated Order and To Enjoin the Administrative Proceeding of the Federal Trade Commission, dated February 13, 2026.

[19] This motion's procedural history is detailed in Meta's Moving Brief, *see* Dkt. No. 38-1 at 6–13, and those details are not duplicated here.

4

terms set forth in Attachment A "were not made part of the Stipulated Order itself," and thus "were not ordered by the Court." *Facebook*, 2023 WL 8190858, at *1, *3.[20]

Likewise, this Court reasoned that because the terms of Attachment A "were not ordered by the Court," they were not reflected in a "'final judgment' with res judicata effect." *Id.* at *6 n.3.[21] On April 1, 2024, Meta responded to the OTSC, and on July 30, 2025, the FTC stayed further administrative proceedings pending resolution of this action and the constitutional action.

On May 16, 2025, the D.C. Circuit reversed this Court's denial of Meta's motion in a decision by Judge Randolph (joined by Judges Rao and Walker). *See Facebook*, 136 F.4th at 1135. Citing Section V of the Stipulated Order, the D.C. Circuit observed that "both parties agree that the district court retained jurisdiction over the Stipulated Order itself," which makes the "central question … therefore whether Attachment A was part of the Stipulated Order." *Id.* at 1132. The D.C. Circuit determined that the record "clearly show[s] that Attachment A was part of the Stipulated Order." *Id.* at 1133. The D.C. Circuit relied on this Court's prior opinion stating that the Stipulated Order "imposes injunctive relief in the form of an amended administrative order," concluding that the Stipulated Order "directly imposed the injunctive relief contained in Attachment A." *Id.* at 1134. The D.C. Circuit further observed that the

---

[20] As subsequently noted by the D.C. Circuit:

[T]he district court believed that those terms only became binding "later, when the FTC issued its 2020 administrative order." And since the Stipulated Order retained district court jurisdiction only for disputes arising from the Stipulated Order itself, the court held that it lacked jurisdiction over the FTC's parallel administrative proceeding. The court accordingly declined to reach any of Facebook's merits arguments.

136 F.4th at 1132.

[21] On November 29, 2023, Meta filed a new action raising the constitutional issues and moved for a preliminary injunction. *See Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64 (D.D.C. 2024). On December 13, 2023, the FTC opposed Meta's motion and cross-moved to dismiss the complaint. Defs.' Mot., *Meta Platforms, Inc. v. FTC*, No. 23-cv-3562-RDM (D.D.C. Dec. 13, 2023) (Dkt. No. 18). On March 14, 2024, the district court denied both motions. *Meta*, 723 F. Supp. 3d at 71. That action is currently stayed. *See* Minute Order, *Meta Platforms, Inc. v. FTC*, No. 23-cv-3562-RDM (D.D.C. June 29, 2025).

"entire settlement [w]as contained within the 'Stipulated Order,' including provisions only listed in Attachment A," and that this Court possesses "continued jurisdiction to adjudicate violations" of Attachment A because Attachment A's terms carry "judicial force." *Id.*

The D.C. Circuit rejected the government's argument that the FTC's entry of Attachment A on its administrative docket placed it beyond this Court's jurisdiction. The D.C. Circuit explained that Attachment A's terms were ordered by this Court and took effect when this Court imposed them, not when the FTC entered Attachment A on its docket. *See Facebook*, 136 F.4th at 1133–34. Indeed, the D.C. Circuit viewed the fact that the FTC voted to enter Attachment A as "unsurprising, as the Stipulated Order expressly contemplated implementation steps by the FTC." *Id.* at 1135. The FTC's order was simply "Attachment A on its docket," not a separate order. *Id.* at 1134. For that reason, the D.C. Circuit observed that this Court "retained jurisdiction" over what it described as "the terms of the amended administrative order in Attachment A." *Id.*

The D.C. Circuit concluded that "[b]ecause the 2020 Stipulated Order included Attachment A, the district court retained jurisdiction over both documents." *Id.* The Court thus remanded in order for this Court to "consider Facebook's claims in the first instance."[22] *Id.*

## ARGUMENT

**I.    The FTC Lacks Jurisdiction To Modify Attachment A
Because this Court's Jurisdiction Is Exclusive**

The D.C. Circuit's holding precludes any exercise of jurisdiction over Attachment A by the FTC. The D.C. Circuit held unequivocally that "[b]ecause the 2020 Stipulated Order

---

[22] *See, e.g.*, 11A Wright & Miller, *Fed. Prac. & Proc.* § 2962 (3d ed. 2025) ("In general, when the appellate court determines that the trial court's order denying injunctive relief was erroneous, it will reverse and remand the case for further proceedings below.").

included Attachment A, the district court retained jurisdiction over both documents." *Facebook*, 136 F.4th at 1135. As shown below, the district court's jurisdiction is exclusive, and the FTC therefore lacks any power to modify Attachment A.

This Court already has addressed the issue of exclusivity, observing at oral argument: "To the extent I have jurisdiction, it has to be exclusive." Dkt. No. 57 at 10:7–8. The Court explained: "I don't see a world in which—if [Attachment A] is part of my order—… I could amend it and we can have a part of the federal … executive branch amending it, as well." *Id.* at 10:9–13.[23] The Court's reasoning reflects fundamental separation of powers principles.

The Constitution squarely precludes a district court from sharing its jurisdiction with a federal agency. The "judicial Power of the United States" is vested in Article III courts, and cannot be shared with any other branch of government. *Stern*, 564 U.S. at 483; *see SEC v. Jarkesy*, 603 U.S. 109, 127 (2024) ("Under the basic concept of separation of powers … that flow[s] from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States cannot be shared with the other branches."). "In establishing the system of divided power in the Constitution, the Framers considered it essential that the judiciary remain truly distinct from both the legislature and the executive." *Stern*, 564 U.S. at 483 (quoting The Federalist No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)).

---

[23] For fuller context, the relevant exchange was:

[META'S COUNSEL]: But there are two reasons why [the government has] to [come back to this Court if they think Attachment A has been violated]. One is this court's jurisdiction. The federal district court's jurisdiction is exclusive. It doesn't share it with any other body. It certainly doesn't share it with a federal agency.

THE COURT: I agree with you. To the extent I have jurisdiction, it has to be exclusive. … I don't see a world in which — if [Attachment A] is part of my order — the question is, is it? But if it is, I don't see how I could amend it and we can have a part of the federal branch — federal — the executive branch amending it, as well. I agree with you.

Dkt. No. 57 at 10:2–13.

7

The Court's conclusion that its retained jurisdiction is exclusive also reflects black letter law that a court's retention of jurisdiction "for future enforcement of a settlement order … implies that the retention was meant to be exclusive." *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (citing cases); *see Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 881 (11th Cir. 1989) (holding that although retained jurisdiction was not expressly exclusive, "the 'need for exclusive jurisdiction in the federal district court' was recognized by the district court's explicit retention of jurisdiction in its final judgment") (quoting *United States v. ASCAP*, 442 F.2d 601, 603 (2d Cir. 1971) (reasoning that "the need for exclusive jurisdiction in the federal district court was recognized" by the retention of jurisdiction to construe, enforce, or modify a consent decree even though exclusivity was not express)).  The Court's reasoning as to the exclusivity of its retained jurisdiction is based on well-established precedent:  "The reason why exclusivity is inferred is that it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a [rival] court construing what the federal court meant in the judgment." *Flanagan*, 143 F.3d at 545; *accord Petoskey Inv. Group, LLC v. Bear Creek Tp.*, 2005 WL 1796130, at *7–8 (W.D. Mich. July 27, 2005) (retention of jurisdiction provision necessarily implied that retained jurisdiction is exclusive because, as in *Flanagan*, "it would not make sense for the state court to retain jurisdiction, yet have [the district court] determine what the state court meant in the Consent Judgment"); *Magnolia v. Conn. Gen. Life Ins. Co.*, 157 F. Supp. 2d 583, 587 (D. Md. 2001) (holding that retention of jurisdiction "'as to all matters' relating to the 'enforcement and

interpretation' of the settlement agreement" clearly conveyed "exclusive jurisdiction" because it would make no sense to "permit another court to construe what it meant").[24]

The exclusivity of this Court's retained jurisdiction is reflected in the Court's prior determination that the FTC cannot modify Attachment A in any manner inconsistent with the Stipulated Order, because the Court retained jurisdiction over the Stipulated Order. *See Facebook*, 2023 WL 8190858, at *3. Now that the D.C. Circuit has held that the Court's retained jurisdiction extends to Attachment A, any modification of Attachment A by the agency would, by definition, be inconsistent with Attachment A, and therefore impermissible.

Moreover, the D.C. Circuit decisively rejected the government's position that the FTC's "implementation steps" of entering Attachment A on its administrative docket somehow placed terms ordered by this Court beyond this Court's jurisdiction. The D.C. Circuit concluded that this Court "directly imposed the injunctive relief contained in Attachment A . . . in the form of an amended administrative order," and "the terms of the ***amended administrative order in Attachment A***" carry "judicial force." *Facebook*, 136 F.4th at 1134. For that reason, the D.C. Circuit disagreed that the administrative and judicial orders were "distinct." *Id.* at 1131.

Nor is the Court's exclusive jurisdiction altered by the provisions in Attachment A permitting the parties bilaterally to modify it by agreement in two narrow respects. As previously observed, consent decrees routinely authorize the parties to modify certain injunctive provisions without further court approval.[25] These provisions do not provide the FTC with the

---

[24] Notably, the United States previously has argued on behalf of the FTC that exclusivity is conveyed by the same jurisdictional language set forth in the Stipulated Order—for "purposes of construction, modification and enforcement." *See* Brief of the United States in *Trudeau v. United States*, 2006 WL 422417, at *38 (Fed. Cir. Jan. 31, 2006) ("[W]hatever remedies Mr. Trudeau may possess for the FTC's alleged violation of the Stipulated Order must be pursued, if at all, in the court that entered and retained jurisdiction to enforce the Order.").

[25] *See, e.g.*, *United States v. Civic Dev. Grp., LLC*, No. 2:07-cv-4593-FSHPS (D.N.J. Mar. 29, 2010) (Dkt. No. 93) at 7 (requiring the transfer of property within 30 days "unless otherwise agreed to in writing"); *EEOC* (….continued)

power to unilaterally modify the order, let alone limit—in any way—the Court's exclusive jurisdiction over its terms.

## II.    The FTC Cannot Modify Terms Imposed by this Court's Judgment

The D.C. Circuit's holding that Attachment A's injunctive relief was a part of, and imposed by, this Court's final judgment independently prevents the FTC from modifying Attachment A's injunctive terms.

A consent decree is "enforceable a[s] a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). As this Court previously recognized, the Stipulated Order was entered as its final judgment in this matter "to resolve the claims for civil penalties and injunctive relief set forth in the Complaint." Dkt. No. 35 at 1; *see also Facebook*, 2023 WL 8190858, at *1 ("[T]he Court entered the Stipulated Order the parties proposed to resolve the suit."). The judgment "directly imposed the injunctive relief contained in Attachment A," and ensured that those terms had "judicial force." *Facebook*, 136 F.4th at 1134, 1135.

This is no small thing. Article III rests on the foundation that a "judgment conclusively resolves the case because a 'judicial Power' is one to render dispositive judgments." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995). A final judgment "becomes the last word of the judicial department with regard to a particular case or controversy." *Id*. at 227; *see also* 20 Wright & Miller, *Fed. Prac. & Proc* § 104 (2d ed. 2025) ("A judgment … is the final decisive act of a court defining the rights of the parties.").

---

*v. Morgan Stanley & Co.*, 256 F.R.D. 124, 131 (S.D.N.Y. 2004) (designating specific sections of the consent decree that the parties can modify "without approval of the court").

Attachment A's "judicial force" precludes administrative modification of its terms for two separate reasons. *First*, the Constitution bars the FTC from modifying an order of this Court. Just as separation of powers prohibits other branches from sharing in Article III jurisdiction (*see supra* Point I), it requires that "[j]udgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government." *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948); *accord Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007); *see also Miller v. French*, 530 U.S. 327, 342 (2000) ("Article III gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior Article III courts.") (emphasis in original) (quoting *Plaut*, 514 U.S. at 218–19). As the D.C. Circuit reiterated only months ago, once "a court enters judgment," as this Court did in 2020, "only a 'superior court in the Article III hierarchy' can modify or vacate the judgment." *Thorpe*, 148 F.4th at 776 (quoting *Plaut*, 514 U.S. at 218–19).

This line of precedent not only provides that other branches cannot share in an Article III court's jurisdiction, but also "place[s] off limits to Congress 'vest[ing] review of the decisions of Article III courts in officials of the Executive Branch.'" *Bank Markazi v. Peterson*, 578 U.S. 212, 225–26 (2016) (quoting *Plaut*, 514 U.S. at 218). Because Congress could not constitutionally authorize the FTC to revisit any decision of this Court, the FTC lacks any power to modify Attachment A.[26] *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*, 595 U.S. 109, 117 (2022) (per curiam) ("Administrative agencies are creatures of statute. They accordingly

---

[26] That the FTC necessarily lacks authority to modify Attachment A dispenses with the government's prior argument that the FTC never waived its asserted statutory right to modify Attachment A. *See Facebook*, 2023 WL 8190858, at *5.

possess only the authority that Congress has provided.").  The FTC made the decision to commence this action in this Court and asked this Court to impose the settlement's terms—all of them—on Meta in the Stipulated Order.  It may not constitutionally modify those terms now.  A "case submitted to the federal judiciary and resolved in a final judgment is settled conclusively and may not be reversed, undone, or otherwise revisited as a result of subsequent actions taken by the political branches."  *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 71 (D.D.C. 2009).

*Second*, and independently, principles of finality and res judicata prevent modification of Attachment A's terms other than by this Court pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  These principles apply when "a court of competent jurisdiction has entered a final judgment on the merits" to resolve a complaint, as this Court did in 2020.  *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 189 (D.D.C. 2011).  This doctrine promotes "judicial finality; it fulfills 'the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.'"  *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)).  Consistent with this rule, disturbing the "sanctity of final judgments" is highly disfavored, *see PETA v. U.S. Dep't of HHS*, 901 F.3d 343, 355 (D.C. Cir. 2018), and "Rule 60(b)'s standard—and ***only*** Rule 60(b)'s standard" allows a final judgment to be modified, *Honickman*, 605 U.S. at 214 (emphasis in original).

Courts have uniformly rejected the argument that the government is any less bound by the finality of a judgment than any other litigant.

> [T]he district court …, and not a party before it, is the principal and proper arbiter with the responsibility to interpret [a consent] decree and oversee the litigation. Although a party may ***ask*** the district court to issue an order clarifying, enforcing,

or modifying a decree and suggest a favored interpretation, a party—whether a private or public entity—cannot dictate the meaning of the decree ….

*Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 860 (9th Cir. 2007); *see also Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023, 1030 (2d Cir. 1993) ("Clearly one party to a consent decree cannot unilaterally rewrite the agreement over another party's objections."); *Morris v. Travisono*, 509 F.2d 1358, 1361 (1st Cir. 1975) ("[Defendant state prison officials] cannot unilaterally order the elimination of rights determined in federal courts simply because the consent decree was to be enforced through [government] machinery.").

Having "invoked the court's supervisory powers," and "urg[ed] the district court to retain jurisdiction to enforce the terms of the settlement agreement," the FTC "consented to judicial involvement." *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1236 (D.C. Cir. 2012). Courts rely on the "doctrines of collateral estoppel and res judicata," enforceable through injunctive relief, to ensure that those judgments "will be respected." *DeNardo v. Murphy*, 781 F.2d 1345, 1348 (9th Cir. 1986). Under these principles, the FTC is powerless to modify Attachment A.

## III.    Meta Is Entitled to an Injunction

As the government previously conceded, the D.C. Circuit's conclusion that this Court imposed Attachment A's terms entitles Meta to an injunction. The FTC proceeding should be enjoined because it invades this Court's exclusive jurisdiction over the Stipulated Order and seeks to rewrite this Court's judgment. In these circumstances, this Court has a duty to protect its jurisdiction and the preclusive effects of its judgment by issuing "an injunction requiring *dismissal* of [the] rival action." *Syngenta*, 537 U.S. at 34 n.*.

To obtain such an injunction, Meta "must simply point to … some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1265 (11th Cir. 2021) (quoting *Klay*, 376 F.3d

13

at 1100); *see also Scardelletti v. Rinckwitz*, 68 F. App'x 472, 477 n.3 (4th Cir. 2003) (noting that "[a] permanent injunction is proper if it is necessary to protect the court's judgment against likely collateral attack," and "is not subject to the four-factor balancing test ordinarily applicable to preliminary injunctions"). The traditional injunction factors have no application here because the requested injunction is predicated on the Court's retained jurisdiction rather than any cause of action, *Klay*, 376 F.3d at 1100, and because "a court's traditional power to protect its jurisdiction … is grounded in entirely separate concerns," *id.*; *accord Gomez v. Biden*, 2021 WL 1037866, at *3 (D.D.C. Feb. 19, 2021).

### A.    An Injunction Is Required To Protect the Court's Jurisdiction

The FTC is purporting to exercise jurisdiction over Attachment A in order to modify its terms. That rival administrative proceeding threatens the integrity of this Court's final judgment and its retained jurisdiction. *See Rohe*, 988 F.3d at 1265. In these circumstances, the proper course of action is, as the Supreme Court has explained, for Meta to apply to this Court, as "the court that approved [the] settlement[,] for an injunction requiring dismissal of [the] rival action." *Syngenta*, 537 U.S. at 34 n.*. The "substantive effect" of failing to enjoin the FTC proceeding "would be to give the [FTC] the right to unilaterally withdraw the jurisdiction of the district court," *id.*, which this Court cannot allow, consistent with its constitutional "duty to protect its legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants," *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).

The authority of this Court to issue an injunction dismissing a rival action is beyond question. The "[b]asic power to protect the preclusive effects of a federal judgment by injunction may well inhere in the very existence of federal courts," but it can also "be found in the All Writs Act." *FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 18 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007); *see also United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977)

(All Writs Act authorizes federal courts "to issue such commands … as may be necessary or appropriate to effectuate and prevent the frustration of ***orders it has previously issued*** in its exercise of jurisdiction otherwise obtained"); *Horton v. Metro Life Ins. Co.*, 2006 WL 8441763, at *2 (M.D. Fla. Sept. 1, 2006) ("[A] district court that retains exclusive jurisdiction over a settlement agreement has post-judgment ancillary jurisdiction to enforce that agreement (by injunction or otherwise).").

Nor should the Court wait for the conclusion of the FTC's administrative proceeding before issuing an injunction.  As the D.C. Circuit has recognized, "[t]he law is clear … that a federal court is not required to await a final judgment by a [rival] court before acting to protect its own decrees."  *United States v. District of Columbia*, 654 F.2d 802, 810 (D.C. Cir. 1981); *see also FDIC*, 479 F. Supp. 2d at 18 (enjoining existing rival federal proceedings prior to judgment "to protect the preclusive effects of a federal judgment"); *Thomas v. Albright*, 77 F. Supp. 2d 114, 124 (D.D.C. 1999) (injunction issued at outset of rival state court proceeding), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001).  Rival proceedings before an administrative agency, like the FTC, are no different.  *See Chicago & S. Air Lines*, 333 U.S. at 113.

Indeed, as mentioned above, the government conceded at oral argument before the D.C. Circuit that Meta would be entitled to an injunction "at th[is] point" if the D.C. Circuit were to hold (as it now has) that Attachment A is part of the Stipulated Order.  *See supra* at 4.  There is no basis to argue otherwise.

Finally, the "prophylactic" purpose of constitutional separation of powers further counsels in favor of enjoining the (now stayed) FTC proceeding before it resumes.  As the Supreme Court has emphasized:

15

[S]eparation of powers is a structural safeguard rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features (of which the conclusiveness of judicial judgments is assuredly one) it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible *in the heat of interbranch conflict*.

*Plaut*, 514 U.S. at 239.

### B.    In any Event, the Traditional Injunction Factors Are Satisfied

The circumstances here also satisfy the traditional standards for a permanent injunction: (1) actual success on the merits, (2) irreparable harm if the injunction is not granted, (3) a balance of equities favoring the movant, and (4) that the injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 32 (2008); *Doe v. Mattis*, 928 F.3d 1, 7 (D.C. Cir. 2019) ("The [preliminary injunction] factors apply when a party seeks a permanent injunction, except the party must show 'actual success' on the merits rather than just a likelihood.") (quoting *Winter*, 555 U.S. at 20). When the injunction is sought against the government, factors (3) and (4) merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because the D.C. Circuit has already decided the "central issue" on which Meta's renewed motion turns, there can be no doubt of Meta's success on the merits, for the reasons set forth above. Failure to grant an injunction would, moreover, irreparably harm Meta—by subjecting it to an illegitimate proceeding before the FTC, forcing it to relitigate a matter finally decided by this Court, and depriving it of the forum for which it bargained. *See Axon Enter. Inc. v. SEC*, 598 U.S. 175, 191 (2023) (being subjected to "an illegitimate proceeding, led by an illegitimate decisionmaker" constitutes irreparable injury); *FDIC*, 479 F. Supp. 2d at 19 (relitigating "an issue already finally decided by this Court" is irreparable harm); *Washington Metro. Area Transit Auth. v. Loc. 689, Amalgamated Transit Union*, 113 F. Supp. 3d 121, 129 (D.D.C. 2015) (party demonstrated irreparable harm by establishing that it "could be subject to

16

inconsistent determinations"); *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022) (reversing denial of preliminary injunction as under "binding precedent", being "deprived of … bargained-for choice of forum and forced to litigate [the same issue] in multiple jurisdictions" is irreparable harm); *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355, 1363 (Fed. Cir. 2011) (upholding finding of irreparable harm because movant "would be deprived of its bargained-for forum"); *Dodocase VR, Inc. v. MerchSource, LLC*, 2018 WL 1475289, at *11 (N.D. Cal. Mar. 26, 2018) (finding that the movant will suffer irreparable harm if deprived of its "bargained-for forum"); *Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881, at *7 (E.D. Tex. May 19, 2005) (party would be irreparably harmed by ITC proceeding because it will be "deprived of its bargained-for forum—an Article III judge's court ….").

The balance of equities also favors Meta, because the FTC "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required," *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)—especially where, as here, there is a ready (and lawful) avenue for the FTC to seek modification of the Stipulated Order, *see* Fed. R. Civ. P. 60(b).  In addition, there is no public interest in the unlawful actions of government agencies. *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("[P]ublic interest is served when administrative agencies comply with their obligations.").  Rather, the public interest favors the finality of a court's judgment.  *Thomas*, 77 F. Supp. 2d at 124.  The FTC's unconstitutional attempt to usurp this Court's exclusive jurisdiction and modify the final judgment is unlawful, pointing the public interest squarely in favor of an injunction.

## CONCLUSION

For the reasons set forth above, Meta respectfully requests that this Court enforce this Court's Stipulated Order and enjoin the FTC proceeding.

17

DATED: February 13, 2026

Respectfully submitted,

*/s/ James P. Rouhandeh*
James P. Rouhandeh (DDC Bar No. NY0390)
Michael Scheinkman (DDC Bar No.
NY0381)
David B. Toscano (*pro hac vice*)
John A. Atchley III (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson (DDC Bar No. 982269)
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com